## IN THE UNITED STATES COURT OF APPEAL
## FOR THE ELEVENTH CIRCUIT

JANUARY LITTLEJOHN, JEFFREY LITTLEJOHN,

Plaintiffs-Appellants

v.

SCHOOL BOARD OF LEON COUNTY, FLORIDA, ROCKY HANNA,
DR. KATHLEEN RODGERS,  RACHEL THOMAS, ROBIN OLIVERI

Defendants-Appellees
_____

On Appeal from the United States District Court
Northern District of Florida, Tallahassee Division
Case No. 4:21-CV-00415-MW-MJF
_____

**PLAINTIFFS-APPELLANTS'
OPENING BRIEF**
_____

Mary E. McAlister
CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
P.O. Box 637
Monroe, VA 24574
770.448.4525
mmcalister@childparentrights.org

Vernadette R. Broyles
Ernest G. Trakas
CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
5805 State Bridge Rd., Suite G310
Johns Creek, GA 30097
770.448.4525
vbroyles@childparentrights.org
etrakas@childparentrights.org
Attorneys for Plaintiffs-Appellants

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to this Court's Local Rules 26.1-1 through 26.1-3, Appellant certifies that the name of each person, attorney, association of persons, firm, law firm, partnership, and corporation that has or may have an interest in the outcome of this action — including subsidiaries, conglomerates, affiliates, parent corporations, publicly-traded companies that own 10% or more of a party's stock, and all other identifiable legal entities related to any party in the case is limited to the following:

Broyles, Vernadette - Counsel for Appellants

Child & Parental Rights Campaign, Inc. - Counsel for Appellants

Hanna, Rocky – Defendant-Appellee

Harmon, Terry J. – Counsel for Appellees

Jones, Darryl - School Board Member

Lawson Cox, Laurie - School Board Member

Littlejohn, January – Appellant

Littlejohn, Jeffrey – Appellant

McAlister, Mary E. – Counsel for Appellants

Nicolas, Marcus - School Board Member

Oliveri, Robin – Appellee

Rodgers, Kathleen – Appellee

School Board of Leon County - Appellee

Slanker, Jeffrey D. – Counsel for Appellees

Sniffen & Spellman, P.A. – Counsel for Appellees

Spellman, Michael P. – Counsel for Appellees

Swafford Smith, Alva - School Board Member

Thomas, Rachel - Appellee

Trakas, Ernest G. - Counsel for Appellants

Walker, Hon. Mark E. - Chief United States District Judge

Wood, Rosanne - School Board Member

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34(a), Appellants respectfully request that oral argument be permitted in this appeal because it would assist the Court in understanding and deciding the complex constitutional questions raised by this emerging national mental health issue.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ..................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................... i

TABLE OF CONTENTS.................................................................................... ii

TABLE OF CITATIONS ....................................................................................v

JURISDICTIONAL STATEMENT .......................................................................1

STATEMENT OF THE ISSUES FOR REVIEW ....................................................1

STATEMENT OF THE CASE..............................................................................2

   I.  Proceedings Below ...........................................................................2

   II.  Statement of Facts ..........................................................................3

      A.  Defendants Developed and Implemented an LGBTQ Support Guide That
Eschews Parental Notice and Participation.......................................................3

      B.  Plaintiffs Discover That Defendants Used the Guide to Create a Secret
Non-Female Identity for Their Daughter............................................................6

   III.   Standard of Review ......................................................................9

SUMMARY OF ARGUMENT .............................................................................10

ARGUMENT ...................................................................................................13

   I.   The District Court Misapplied The "Shock The Conscience" Standard To
Plaintiffs' Claims For Violation Of Fundamental Parental Rights. .....................13

      A.  "Conscience shocking" behavior is not a necessary element for a
substantive due process claim involving violation of fundamental rights........14

      B.  The district court erred in applying "shock the conscience" to Defendants'
deliberative conduct pursuant to an exercise of its legislative authority. .........17

1. The district court failed to distinguish between legislative and executive actions. ...................................................................18

2. The district court erred in not distinguishing between high pressure executive decisions and deliberative actions. ................................................20

C. The District Court erred in concluding that Plaintiffs needed to and could not satisfy the "shocks the conscience" standard based on dissimilar executive action cases.......................................................................23

1. Student personal injury claims against School Officials do not support "shock the conscience" analysis for Plaintiffs' fundamental parental rights claims. .......................................................................24

2. Cases alleging wrongdoing by law enforcement do not support "shock the conscience" analysis for Plaintiffs' parental rights claims.....................29

3. This Court's grant of qualified immunity to a social worker in *Maddox* does not support applying "shock the conscience" analysis to Plaintiffs' parental rights claims. ..................................................................31

D. The district court erred in dismissing *Arnold v. Board of Education* as not controlling based on its incorrect conclusions that Plaintiffs were required to allege "conscience-shocking" conduct and coercion........................................35

1. *County of Sacramento* did not change "shock the conscience" from an alternate to compulsory standard for substantive due process cases in the Eleventh Circuit. ...........................................................36

2. The district court erred in trying to distinguish *Arnold* based on the element of coercion..........................................................38

II. The District Court Erred When It Concluded That The Individual Defendants Were Entitled To Qualified Immunity. .............................................41

A. The District Court Erred in Concluding that Parental Rights are not "Clearly Established."........................................................42

1. The district court's out of context quote from *Maddox* does not support a finding that parental rights are not clearly established.................................43

2. *Arnold,* dismissed by the District Court, and *Parham*, which the District Court ignored, are controlling precedent sufficient to put Defendants on notice for purposes of qualified immunity. ...................................................46

3. The District Court's Citation of *Troxel* Belies its Conclusion that Plaintiffs' Fundamental Parental Rights are not Clearly Established. ..........49

B. The District Court's Error in Granting Defendants Qualified Immunity Illustrates the Improper Expansion of the Concept...........................................50

III. The District Court Erred In Finding That Plaintiffs' Claims Would Impermissibly Expand A Disfavored Constitutional Concept............................51

CONCLUSION ........................................................................................................53

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENT............55

CERTIFICATE OF SERVICE ............................................................................. 55

# TABLE OF CITATIONS

## **Cases**

*Arnold v. Board of Education of Escambia County*,
  880 F.2d 305 (11th Cir. 1989) .............................................. 14, 18, 24, 35, 37, 46

*County of Sacramento v. Lewis,*
  523 U.S. 833 (1998) ................................................. 12, 15, 18, 20, 27, 29, 34-37

*Dacosta v. Nwachukwa*,
  304 F.3d 1045 (11th Cir. 2002) .................................................. 13, 14, 23, 25, 26

*Dalrymple v. Reno*,
  334 F.3d 991 (11th Cir. 2003) ................................................................................9

*Davis v. Carter*,
  555 F.3d 979 (11th Cir. 2009) ............................................................. 14, 23, 25

*Dobbs v. Jackson Women's Health Organization,*
  142 S.Ct. 2228 (2022) ..........................................................................................52

*Echols v. Lawton*,
  913 F.3d 1313 (11th Cir. 2019) ........................................................... 14. 24, 30

*Griswold v. Connecticut*,
  381 U.S. 479 (1965) .............................................................................................52

*Harrah Ind. School Dist. v. Martin*,
  440 U.S. 194 (1979) ...................................................................................... 19, 20

*Hoefling v. City of Miami*,
  811 F.3d 1271 (11th Cir. 2016) ........................................................... 14, 24, 30

*Hoggard v. Rhodes*,
  141 S. Ct. 2421 (2021) ........................................................................................50

*Kentner v. City of Sanibel,*
  750 F.3d 1274 (11th Cir. 2014) ............................................................................9

*L.S. ex rel. Hernandez v. Peterson*,
    982 F.3d 1323 (11th Cir. 2020) ................................................................ 14, 23, 26

*Lawrence v. Texas*,
    539 U.S. 558 (2003) ........................................................................................52

*Lewis v. Brown*,
    409 F.3d 1271 (11th Cir. 2005) ............................................ 12, 16, 18-20, 34, 36

*Maddox v. Stephens*,
    727 F.3d 1109 (11th Cir. 2013) ....................................................24, 31-33, 43-45

*McKinney v. Pate*,
    20 F.3d 1550 (11th Cir. 1994) .........................................15-20, 23, 26, 30, 34-36

*Meyer v. Nebraska*,
    262 U.S. 390 (1923) .................................................................................. 45-46

*Neal v. Fulton County. Bd. of Educ*.
    229 F.3d 1069 (11th Cir. 2000) ........................................................ 14, 23, 27, 28

*Nix v. Franklin County School Dist.*
    311 F.3d 1373 (11th Cir. 2002) ........................................................ 14, 23, 27, 28

*Obergefell v. Hodges*,
    576 U.S. 644 (2015) ........................................................................................52

*Palm Beach Polo, Inc. v. The Vill. of Wellington*,
    No. 21-12054, at *8-9 (11th Cir. Dec. 30, 2022) ................................................16

*Parham v. J. R.,*
    442 U.S. 584 (1979) ........................................................................ 10, 39, 46, 48

*Paul v. Davis*,
424 U.S. 693 (1976) ................................................................................................26

*Pierce v. Society of Sisters,*
    268 U.S. 510 (1925) ............................................................................ 14, 45, 46

*Robertson v. Hecksel*,
    420 F.3d 1254 (11th Cir. 2005) ..................................................................... 44, 45

*Santosky v. Kramer,*
    455 U.S. 745 (1982) ........................................................................................45

*St. George v. Pinellas County,*
  285 F.3d 1334 (11th Cir. 2002)..........................................................10

*Stanley v. Illinois,*
  405 U.S. 645 (1972). .................................................................. 44, 45

*Troxel v. Granville,*
  530 U.S. 57 (2000) ........................................... 10, 14, 15, 42, 43, 49

*Vinyard v. Wilson,*
  311 F.3d 1340 (11th Cir. 2002)................................ 12, 16, 23, 29, 35, 36, 46, 47

*Waddell v. Hendry County. Sheriff's Off.,*
  329 F.3d 1300 (11th Cir. 2003)......................................... 14, 24, 30, 31

*Waldman v. Comm'r,*
  871 F.3d 1283 (11th Cir. 2017)................................................... 15, 17, 35-37, 53

*Washington v. Glucksberg,*
  521 U.S. 702 (1997) ...................................................................37

*Wisconsin v. Yoder,*
  406 U.S. 205 (1972) ...................................................................44

*Ziglar v. Abbasi,*
  137 S. Ct. 1843 (2017) ............................................................. 42, 51

## Statutes

20 U.S.C. § 1232g.................................................................................4

## Regulations

34 C.F.R. §§ 99.3, 99.7 ..............................................................................4

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the Complaint involved a federal question. This Court has jurisdiction over the instant appeal pursuant to 28 U.S.C. § 1291 because this is an appeal from a final decision in the United States District Court for the Northern District of Florida granting a Motion to Dismiss.

The district court's judgment dismissing Plaintiffs' claims was entered on January 6, 2023 (Dkt. 69). Plaintiffs filed their Notice of Appeal on February 3, 2023 (Dkt. 70).

## STATEMENT OF THE ISSUES FOR REVIEW

1. Whether the trial court erred in applying the "shock the conscience" standard to Plaintiffs' substantive due process claims challenging conduct that directly interfered with fundamental parental rights.

2. Whether the trial court erred in ruling that the fundamental right of parents to direct the upbringing of their children is not clearly established so that the individual Defendants are entitled to qualified immunity.

3. Whether the trial court erred in finding that substantive due process is a disfavored concept that Plaintiffs' claims would impermissibly expand.

## STATEMENT OF THE CASE

Plaintiffs are appealing the dismissal of their claims for violation of their substantive due process rights under 42 U.S.C. §1983. The claims for declaratory relief and damages arise from Defendants' conduct in concealing information regarding Plaintiffs' daughter's mental health and deliberately deceiving Plaintiffs as part of a districtwide protocol related to children's assertion of discordant gender identities. (First Amended Complaint, Dkt. 38).[1] Plaintiffs allege that Defendants interfered with the parent-child relationship in a way that infringed Plaintiffs' rights to familial privacy and fundamental right to direct the care and upbringing of their daughter, including making mental health decisions.

## I.    Proceedings Below

Plaintiffs filed an initial Complaint on October 18, 2021. The district court granted Defendants' motion to dismiss in part on May 13, 2022 (Dkt. 37), finding that Plaintiffs' Complaint was an impermissible "shotgun pleading." Plaintiffs filed a First Amended Complaint on May 27, 2022 (Dkt. 38). On December 22, 2022, the district court granted Defendants' Motion to Dismiss the First Amended Complaint without oral argument. (Dkt. 66). The district court dismissed all claims without prejudice, giving Plaintiffs the option of repleading or appealing.

---

[1]    Although the District Court discussed injunctive relief in its Order (Dkt. 66, p. 7), Plaintiffs did not seek injunctive relief in their First Amended Complaint.

Plaintiffs elected to appeal to this Court. The district court entered judgment dismissing all claims on January 6, 2023 (Dkt. 69).

## II. Statement of Facts

### A. *Defendants Developed and Implemented an LGBTQ Support Guide That Eschews Parental Notice and Participation.*

Plaintiffs, January and Jeffrey Littlejohn, discovered serendipitously that a 2018 guide, described as a tool for school officials, students **and parents** to use to "navigate" LGBTQ issues, had been used by Defendants to create and conceal a secret non-female identity for their 13-year-old daughter. (Dkt. 38 ¶¶ 20, 31, 32, 96, Dkt. 38-1) (emphasis added). Leon County Schools' 2018 "Lesbian, Gay, Bisexual, Transgender, Gender Nonconforming and Questioning Support Guide" ("2018 Guide")[2] was developed by the Leon County Schools LGBTQ+ Equity Committee under the supervision of Defendants Dr. Kathleen Rodgers and Superintendent Rocky Hanna. (Dkt. 38 ¶¶ 21-26). Members of the Defendant School Board were aware of the development and implementation of the 2018 Guide, as attested to by prior board Chairwoman Georgia "Joy" Bowen during a 2021 presentation. (Dkt. 38 ¶¶ 27-28).

---

[2]     As the District Court stated, the 2018 Guide was rescinded and replaced with a new guidance document on June 28, 2022 (Dkt. 66, p. 7). However, the 2018 Guidance was in effect and implemented with Plaintiffs' daughter during the relevant time period (2020-2021).

The Equity Committee described the 2018 Guide as "a tool for schools, students and their parents and legal guardians to effectively navigate existing laws, regulations and policies that support LGBTQ+ LCS students." (Dkt. 38 ¶ 31, Dkt. 38-1, p. 3). However, the directions in the 2018 Guide sent a different message, *i.e.*, that parents were not to be notified or permitted to participate in decisions regarding their children's assertion of an alternate gender identity unless their children consented. (Dkt. 38 ¶¶ 33-35, 47-48, Dkt. 38-1, pp. 14-15). The 2018 Guide instructed LCS staff:

> Under the Family Educational Rights and Privacy Act (FERPA), **students, current or former, have a right** to seek to amend their school records if said records are "inaccurate, misleading, or in violation of the student's rights of privacy." (34 C.F.R. § 99.7(a)(2)(ii)). **Transgender students wishing to change their name and gender marker on their educational records can seek such an amendment of certain records under this federal law**. (Dkt. 38-1, p. 14) (emphasis added).

However, contrary to the Guide's statement, FERPA provides that parents, not students, have the right to review and request amendments to misleading or inaccurate school records until the student reaches age 18 or is legally emancipated. 20 U.S.C. § 1232g(a)1(a), (7)(d); 34 C.F.R. §§ 99.3, 99.7(a)(2)(ii). (Dkt. 38 ¶ 36).

The 2018 Guide further stated in no uncertain terms that parents were not to be notified regarding their children's assertion of an alternate gender identity:

> Q: A student has exhibited behavior in school leading administrators or teachers to believe the student is LGBTQ+. Should the parents or legal guardians be notified?

A: **No**. Outing a student, especially to parents, can be very dangerous to the students (sic) health and well-being. Some students are not able to be out at home because their parents are unaccepting of LGBTQ+ people out. As many as 40% of homeless youth are LGBTQ+, many of whom have been rejected by their families for being LGBTQ+. Outing students to their parents can literally make them homeless.

(Dkt. 38 ¶ 47, Dkt. 38-1, p. 15) (emphasis added).

The 2018 Guide also instructed LCS staff to permit children to use any sex-separated privacy facility that the child said corresponds to the "gender identity" the child asserts, again without notice to parents:

Q: A student has complained about a person of the wrong sex in the bathroom or locker room area. What action should be taken?

A: As part of LCS policy against discrimination based on gender identity, any student may use restroom and locker room facilities in accordance with their gender identity. Students cannot be singled out, such as requiring them to use a separate bathroom from their peers (*i.e.,* using the nurse's bathroom or single occupancy bathroom only). Students may request additional privacy in locker rooms and should be provided with a private area where they can change clothes for gym class or athletic activities. Again, LGBTQ+ students cannot be singled out. The privacy areas should be offered to all students who wish to change with a higher level of privacy for any reason. Toilet stalls are not changing areas.

(Dkt. 38 ¶ 60, Dkt. 38-1, p. 14). The 2018 Guide stated that letting children choose which sex-separate privacy facility to use was part of the District's non-discrimination policy. (Dkt. 38 ¶ 60, Dkt. 38-1, p. 14). However, neither the non-discrimination policy nor any other published School Board policy or Administrative Procedure between 2018 and 2021 contained language alerting parents that children

could unilaterally choose which sex-separated privacy facility they would use based on their asserted gender identity. (Dkt. 38 ¶ 64).

The 2018 Guide also included a template for a "Leon County School District Transgender/Gender Nonconforming Student Support Plan." ("2018 Student Support Plan") (Dkt. 38 ¶ 49; Dkt. 38-1, pp. 19-27). The 2018 Student Support Plan template included an intake checklist for which school staff would ask the child whether her parents are aware of the child's asserted discordant gender identity, whether the parents are "supportive," and whether the child wanted the parents to be notified. (Dkt. 38 ¶ 50). The Student Support Plan also included questions regarding which name and pronoun the child will use, which communal sex-separated restroom, locker room or shower they will use and with which sex-separated group the child will room on overnight trips. (Dkt. 38 ¶ 54). If the minor child indicated that his or her parents were not "supportive," the Support Plan specifically directs that the parents were not to be notified of or present at the meeting, and the minor child would be permitted to make these consequential decisions on his or her own. (Dkt. 38 ¶ 55).

### B. Plaintiffs Discover That Defendants Used the Guide to Create a Secret Non-Female Identity for Their Daughter.

Unbeknownst to Mr. and Mrs. Littlejohn, that is what happened with their 13-year-old daughter A.G. who was a student at Deerlake Middle School from 2018 to 2021. (Dkt. 38 ¶ 18). A.G. had been diagnosed with ADHD and had in place an

Accommodation Plan under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et. seq.* ("504 Plan"), of which Counselor Rachel Thomas was aware. (Dkt. 38 ¶ 18). In spring 2020, A.G. told her parents that she was feeling confused about her gender. (Dkt. 38 ¶ 86). She had received messages from transgender acquaintances online and learned that three girls in her friend group had said they were transgender. (Dkt. 38 ¶ 87). Mr. and Mrs. Littlejohn found a therapist who began working with A.G. about her confusion. (Dkt. 38 ¶ 90).

As the 2020-2021 school year approached, A.G. said that she wanted to use a male name, "J," and they/them pronouns. (Dkt. 38 ¶ 91). Mr. and Mrs. Littlejohn told A.G. that she could not change her name or pronouns but could use "J" as a nickname at school. (Dkt. 38 ¶ 92). Mrs. Littlejohn informed A.G.'s homeroom teacher that A.G. could use "J" as a nickname, that she was being seen by a private therapist hired by her parents, and that she could not change her name or pronouns. (Dkt. 38 ¶ ¶ 93-94).

Unbeknownst to Mr. and Mrs. Littlejohn, A.G. approached Ms. Thomas and requested to use a different name and pronouns. (Dkt. 38 ¶ 95). Ms. Thomas broached the idea of having a Student Support Plan meeting with A.G. (Dkt. 38 ¶ 109). Ms. Thomas did not ask A.G. whether she wanted her parents at the meeting and later admitted that she did not notify Mr. and Mrs. Littlejohn because A.G. had not affirmatively said that she wanted her parents there. (Dkt. 38 ¶¶ 110-111). Ms.

Thomas and other Deerlake Middle School staff met with A.G. (Dkt. 38 ¶ 114). Ms. Thomas completed the Student Support Plan for A.G. (Dkt. 38 ¶ 114).

Mr. and Mrs. Littlejohn knew nothing about the private meeting between school officials and their 13-year-old daughter and the decisions she had been permitted to make until A.G. made an offhand comment while being picked up from school. (Dkt. 38 ¶ 97). A.G. told her mother that she had met with school staff who had asked her which bathroom she wanted to use as a result of changing her name. (Dkt. 38 ¶ 98). Mrs. Littlejohn immediately contacted Ms. Thomas, who informed Mrs. Littlejohn that she was not permitted to tell Mrs. Littlejohn anything about the meeting with her daughter. (Dkt. 38 ¶¶ 99-102). Ms. Thomas told Mrs. Littlejohn that she was not invited to the meeting because A.G., "by law," had to be the one to request her parents' attendance. (Dkt. 38 ¶¶ 103-104). Moreover, and importantly, Ms. Thomas never inquired or asked A.G. if she wanted her parents to attend the meeting. (Dkt. 38 ¶¶ 110-111). Ms. Thomas also alleged that A.G. was now "protected" under a non-discrimination law that does not provide for parental notification or input. (Dkt. 38 ¶¶ 103-104). Deerlake Assistant Principal Robin Oliveri further informed Mrs. Littlejohn that the District's protocol of not including parents without children's approval was in place to protect the children's safety, implying that A.G. would not be safe if her parents were informed about the school's affirmation of a discordant gender identity. (Dkt. 38 ¶ 107).

After two months of requesting a copy of the Student Support Plan for their daughter and the legal basis for concealing information from them, Mr. and Mrs. Littlejohn received a copy of the plan. (Dkt. 38 ¶ 132). With regard to the legal basis for concealing information, Dr. Rodgers said, "We currently do not have any Florida specific law **that obligates us to inform the parents or says we cannot listen to the student without their parent present**." (Dkt. 38 ¶ 140) (emphasis added). This, despite the District's assertion that "by law" District personnel are prohibited from informing parents of their child's discordant gender expression and/or the implementation of Student Support Plans. The only document Mr. and Ms. Littlejohn received in response to their request for "legal authority" was the 2018 Guide, which had been in use by District staff for more than two years but not provided to Plaintiffs until November 2020. (Dkt. 38 ¶¶ 147-150).

## III.    Standard of Review

This Court reviews the dismissal of Plaintiffs' First Amended Complaint under F.R. Civ. P 12(b)(6) de novo. *Kentner v. City of Sanibel,* 750 F.3d 1274, 1278 (11th Cir. 2014). Questions of constitutional law, *i.e.,* Plaintiffs' claims for violation of substantive due process, are also reviewed de novo. *Id.*

The district court's decision to grant the individual Defendants qualified immunity on a motion to dismiss is reviewed de novo, accepting the factual allegations in the Complaint as true and drawing all reasonable inferences in the

Plaintiffs' favor. *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003). More particularly, the question of whether the Complaint fails to allege the violation of a clearly established constitutional right is a question of law that is reviewed de novo. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

## SUMMARY OF ARGUMENT

Do parents maintain their fundamental right to direct the care and upbringing of their children when they send them to public school, or do the children become "mere creatures of the state" subject to policies, procedures, and guidelines developed by educators and concealed from parents? That is the question at the heart of this case. For nearly 100 years the Supreme Court has recognized that parents' right to direct the care, upbringing, and education of their children is a fundamental liberty interest protected under the Due Process clause of the Fourteenth Amendment of the United States Constitution. *Troxel v. Granville*, 530 U.S. 57, 65 (2000). In fact, "the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Id.* Inherent in that fundamental liberty interest is parents' rights to direct the medical and mental health decision making for their minor children, even when the decision is disagreeable to the child. *Parham v. J. R.*, 442 U.S. 584, 603-604 (1979).

In this case, directing the care of January and Jeffrey Littlejohn's daughter meant making mental health decisions related to her assertion that she identified as

something other than female. Mr. and Mrs. Littlejohn exercised their decision-making authority by retaining a private mental health professional to help their daughter and not permitting her to use an alternate name and male pronouns. Defendants usurped the Littlejohn's authority by disregarding their direction that their daughter was not to use an alternate name and pronouns and by helping her assume a secret non-female identity while concealing it from the parents. Implementing a 2018 LGBTQ student support guide for Leon County, Florida Schools, Defendants followed the explicit instructions that parents were not to be notified when their children asked to be affirmed as something other than their sex at school. Defendants also followed the guidebook's instructions that a child's request to be affirmed as something other than their sex be concealed from parents unless their minor child consented to revealing this information. Defendants also told Mr. and Mrs. Littlejohn that school staff was legally prohibited from discussing their daughter's private meeting(s) with them because their daughter's privacy rights superseded the parents' rights.

After discovering their daughter's secret school identity by happenstance, Mr. and Mrs. Littlejohn learned about the Defendants' usurpation of their parental rights under the 2018 LGBTQ support guide. They filed suit seeking equitable relief and damages for violation of their substantive due process rights under the United States Constitution.

The district court granted the Defendants' motion to dismiss, claiming that the Littlejohns could not state a substantive due process claim for violation of their fundamental parental rights because they were required to and failed to allege that Defendants engaged in "conscience-shocking" conduct. Eschewing this Court's long-standing precedent that "conscience-shocking" conduct is required only when fundamental rights are not involved, the district court wrongly claimed that the United States Supreme Court overruled that precedent in *County of Sacramento v. Lewis,* 523 U.S. 833 (1998). In fact, the Supreme Court did not, as the district court claimed, change prevailing law to require that all substantive due process claims satisfy the "shocks the conscience" standard. Instead, the Court affirmed that "conscience-shocking" conduct is required when asserting a substantive due process violation against a police officer involved in a high-pressure spontaneous decision and that in other situations a violation is determined according to a continuum. *Id.* at 849. This Court has continued to use the "shocks the conscience" standard as an alternate test when no fundamental rights are involved. *Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002); *Lewis v. Brown,* 409 F.3d 1271, 1273 (11th Cir. 2005). The district court also failed to differentiate between high pressure executive actions and deliberative legislative-type actions such as the Defendants' adoption and implementation of the LGBTQ guidance.

Finally, the district court held that the Individual Defendants were entitled to qualified immunity because the fundamental parental right, called the oldest of the fundamental rights by the Supreme Court, *see infra,* was not clearly established so as to give Defendants notice that what they were doing violated Plaintiffs' rights. For good measure, the district court referenced a recent criticism of substantive due process by Supreme Court Justice Clarence Thomas while also affirming that the concept was binding precedent on the court. Plaintiffs ask this court to review these errors and reverse.

## ARGUMENT

## I.    The District Court Misapplied The "Shock The Conscience" Standard To Plaintiffs' Claims For Violation Of Fundamental Parental Rights.

The district court used a fundamentally flawed interpretation and application of the "shock the conscience" standard to conclude that Plaintiffs failed to state viable substantive due process claims for violation of fundamental parental rights and the right to familial privacy. While recognizing that "(a) parent's substantive due process right in the care, custody, and control of their child is a fundamental liberty interest that is protected by the U.S. Constitution" (Dkt. 66, p. 11), the district court went on to analyze Plaintiffs' claims as if there were no fundamental rights involved. The district court referenced factually dissimilar cases in school and law

enforcement settings,[3] while disregarding a substantially similar case involving the very type of interference with fundamental parental rights in a school setting alleged in this case.[4]

The district court's decision ignored and then eviscerated "perhaps the oldest of the fundamental liberty interests recognized by this (Supreme) Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). If permitted to stand, the district court's decision will effectively make children "mere creatures of the state" *Contra, Pierce v. Society of Sisters*, 268 U.S. 510, 535 (1925). Parents will become little more than bystanders to their children's upbringing.

### A. "Conscience shocking" behavior is not a necessary element for a substantive due process claim involving violation of fundamental rights.

The district court's dismissal of Plaintiffs' substantive due process claims is based on the flawed premise that "binding case law" requires that all claims for violation of substantive due process satisfy the "high threshold" of alleging that state actors engaged in behavior that "shocks the conscience." (Dkt. 66, pp. 1, 9). In fact, this Court's precedents provide that the "shock the conscience" standard is used only

---

[3]     *Neal v. Fulton County. Bd. of Educ*. 229 F.3d 1069 (11th Cir. 2000); *Dacosta v. Nwachukwa*, 304 F.3d 1045 (11th Cir. 2002); *Nix v. Franklin County School Dist.* 311 F.3d 1373 (11th Cir. 2002); *Waddell v. Hendry County. Sheriff's Off.*, 329 F.3d 1300 (11th Cir. 2003); *Davis v. Carter*, 555 F.3d 979 (11th Cir. 2009); *Hoefling v. City of Miami*, 811 F.3d 1271 (11th Cir. 2016); *Echols v. Lawton*, 913 F.3d 1313 (11th Cir. 2019); *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323 (11th Cir. 2020).
[4]     *Arnold v. Escambia County,* 880 F.2d 305 (11th Cir. 1989).

"when a fundamental liberty interest does not exist."  *Waldman v. Comm'r*, 871 F.3d 1283, 1292 (11th Cir. 2017). Since Plaintiffs are alleging violations of "perhaps the oldest of the fundamental liberty interests," *Troxel*, 530 U.S. at 65, the district court's conclusion that they had to and failed to allege conscience-shocking conduct is clear error.

In *Waldman,* this Court rejected an inmate's claim that classification rules regarding registered sex offenders violated substantive due process. 871 F.3d at 1293. This Court found that the classification system neither infringed a fundamental right <u>nor</u> shocked the conscience. *Id.* This Court explained, "(a) violation of substantive due process occurs when an individual's fundamental rights are infringed, regardless of the fairness of the procedure." *Id.* at 1292 (citing *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc)). "The Fourteenth Amendment forbids the government from infringing fundamental liberty interests **at all**, unless the infringement is narrowly tailored to serve a compelling state interest." *Id.* (emphasis added). The *Waldman* court clarified that the "shocks the conscience" standard is an alternate test used when fundamental rights are not at issue. "Where a fundamental liberty interest **does not exist**, substantive due process nonetheless protects against the arbitrary and oppressive exercise of government power. Executive action is arbitrary in a constitutional sense when it 'shocks the conscience.'" *Id.* (citing, *County of Sacramento v. Lewis*, 523 U.S. 833, 845-846

(1998)) (emphasis added). Where, as here, Plaintiffs are alleging infringement of a fundamental liberty interest, Plaintiffs are not required to allege that the Defendants' actions "shock the conscience." *See also, Palm Beach Polo, Inc. v. The Vill. of Wellington,* No. 21-12054, at *8-9 (11th Cir. Dec. 30, 2022) (Substantive due process claim rejected because plaintiff did not identify a fundamental right **or** any conscience shocking behavior) (emphasis added).

*Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002), also supports the proposition that violations of fundamental rights do not require a finding of "shock the conscience" to state a claim for violation of substantive due process. "The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" *Id.* (citing *McKinney* 20 F.3d at 1556). "Substantive due process rights are created by the Constitution, and 'no amount of process can justify (their) infringement.'" *Id.* (citing *McKinney,* 20 F.3d at 1557). If no amount of process can justify the infringement of fundamental rights, then that necessarily means that the district court's imposition of a procedural hurdle such as the "shock the conscience" test is clear error. *See also, Lewis v. Brown,* 409 F.3d 1271, 1273 (11th Cir. 2005) (citing *McKinney* to hold that a zoning decision was an executive act that did not infringe a fundamental liberty interest and therefore did not support a substantive due process claim).

These cases elucidate what this Court held in *McKinney,* that "shock the conscience" is "(a)n alternate substantive due process test" used in the absence of "rights that are 'implicit in the concept of ordered liberty.'" 20 F.3d at 1556 n.7. When, as is true here, Plaintiffs allege fundamental rights have been infringed, they do not have to scale the "high threshold" of alleging "conscience-shocking" conduct to state a claim for substantive due process violations. *See Waldman*, 871 F.3d at 1292 (The government cannot infringe fundamental liberty interests **at all**) (emphasis added). Instead, Defendants must satisfy strict scrutiny, *i.e.*, demonstrate that their actions were narrowly tailored to serve a compelling state interest. *Id.*

The district court is contradicting, not comporting with, binding precedent by attempting to superimpose a "shock the conscience" analysis on the infringement of fundamental rights. This Court should reverse the district court's dismissal of Plaintiffs' substantive due process claims.

## B. The district court erred in applying "shock the conscience" to Defendants' deliberative conduct pursuant to an exercise of its legislative authority.

Even if "shock the conscience" were a factor (which it is not), the district court erred in utilizing a "one size fits all" application of the "shock the conscience" standard that contravenes precedent from the Supreme Court and this Court providing for differential analysis of executive actions and legislative functions. The district court made the blanket statement that "Supreme Court and Eleventh Circuit

cases have made it clear that the 'conscience-shocking' standard is used to determine if conduct rises to the level of a substantive due process violation." (Dkt. 66, p. 14 n.3). In fact, prevailing precedent does not support the district court's conclusion that the "conscience-shocking" standard must be universally applied to all substantive due process claims.

### 1. *The district court failed to distinguish between legislative and executive actions.*

The district court's interpretation of the "shocks the conscience" test contravenes prevailing precedent that differentiates between legislative and executive actions. This Court established in *McKinney* and affirmed in *Lewis v. Brown,*[5] that application of the "shock the conscience" standard depends on whether the state actor was engaging in legislative or executive action. *McKinney,* 20 F.3d at 1557, *Lewis v. Brown,* 409 F.3d at 1273. "When discussing substantive due process protection …, it is crucial to note the distinction between 'legislative' acts

---

[5] The fact that *Lewis v. Brown* affirmed the standards set forth in *McKinney* is particularly relevant. The district court's application of "shock the conscience" to Plaintiffs' claims and rejection of *Arnold v. Board of Education of Escambia County* was based on the court's misplaced and erroneous belief that in *County of Sacramento v. Lewis,* 523 U.S. 833, 845–46 (1998), the Supreme Court concluded that the "shock the conscience" standard must be applied to all substantive due process claims. (Dkt. 66, pp. 13-14 n.3). *McKinney* predated *County of Sacramento*, but *Lewis* was decided seven years after the Supreme Court decision and continued to apply the standards set forth in *McKinney*. This illustrates that this Court does not read *County of Sacramento* as having overruled the legislative/executive distinction for substantive due process claims.

and 'non-legislative' or 'executive' acts." *McKinney*, 20 F.3d at 1557 n.9. "Executive acts characteristically apply to a limited number of persons (and often to only one person); executive acts typically arise from the ministerial or administrative activities of members of the executive branch." *Id.* Examples of executive acts are employment terminations, which was the issue in *McKinney,* and land use decisions, which were at issue in *Lewis. See id.* "Legislative acts, on the other hand, generally apply to a larger segment of — if not all of — society; laws and broad-ranging executive regulations are the most common examples." *Id.* Another example, particularly relevant to this case, is a school district policy that applies to an entire population in the district. *Id.* (citing *Harrah Ind. School Dist. v. Martin*, 440 U.S. 194, 198-99 (1979). Legislative acts are examined as a whole and subjected to a balancing test, while executive actions are examined in the context of the parties involved, when the question of whether the state actor acted arbitrarily is relevant. *Id.* (citing *id.*).

In *Lewis*, this Court applied the *McKinney* legislative/executive distinction to the plaintiffs' challenge of a county commissioner's denial of the plaintiffs' rezoning request. The Court noted that legislative actions can support substantive due process claims while executive actions cannot absent extraordinary, *i.e.,* "conscience-shocking" action by the state actor. *Lewis v. Brown,* 409 F.3d at 1273. The county

commissioner's decision was a quintessential executive action that could not support a substantive due process claim. *Id.*

Applying the *McKinney/Lewis* legislative/executive paradigm to this case yields the conclusion that Defendants' development and implementation of the 2018 Guide was a legislative act to which the "shocks the conscience" test would not apply. The 2018 Guide was developed over time by the District's Equity Committee. (Dkt. 38, ¶¶ 21-26, Dkt. 38-1). It was a protocol that was applicable throughout Leon County Schools, similar to the policy in *Harrah Independent School District* cited in *McKinney.* (Dkt. 38, ¶¶ 21-26, Dkt. 38-1). That being the case, it was a legislative act that should have been subjected to a balancing test, not an executive act to which the "shock the conscience" standard is applied. The district court's failure to properly categorize the nature of Defendants' action led to an erroneous conclusion that Plaintiffs could not allege substantive due process claims.

## 2. The district court erred in not distinguishing between high pressure executive decisions and deliberative actions.

The district court's conclusion that all substantive due process claims must satisfy the "shocks the conscience" standard also contravenes Supreme Court precedent providing for differential standards based on the context in which the decision maker had to act. *County of Sacramento v. Lewis,* 523 U.S. 833, 845–46 (1998). In *County of Sacramento,* the Supreme Court held that when the challenged executive action is deliberative, *i.e.,* implemented over the course of time after

consideration and review, then deliberate indifference can be sufficient to establish conscience-shocking conduct. 523 U.S. at 850-52.

*County of Sacramento,* the seminal Supreme Court case defining the "shocks the conscience" standard, is often cited for the proposition, adopted by the district court, that only "abusive" or "malicious" intentional conduct unjustified by any governmental interest will constitute conscience-shocking conduct sufficient to state a substantive due process claim. (Dkt 66, p. 16). In fact, *County of Sacramento* does not support such a "one size fits all" approach. *County of Sacramento* addressed first responders in high pressure situations, such as high-speed chases, who must make split-second life or death decisions. In **those** circumstances, only conduct that is intentional and aimed at harming the other party in an unjustifiably egregious manner will be found to "shock the conscience." 523 U.S. at 849 (emphasis added). Absent such exigent circumstances, a lower standard of culpability such as "deliberate indifference" might suffice for a substantive due process violation. *Id.* at 850.

The *County of Sacramento* Court explained that "preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Id.* at 850. The district court did not engage in such an analysis. Instead, it followed a "one size fits all" definition of "conscience shocking" conduct that contradicts Supreme Court

precedent. (Dkt. 66, p. 14 n.3). The *County of Sacramento* Court described a continuum of constitutional liability with negligence at one end and intentional harmful conduct at the other. *Id.* at 849. "(L)iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process," while "conduct intended to injure in some way unjustifiable by any government interest is …most likely to rise to the conscience-shocking level." *Id.* Conduct which falls between negligence and intentional harmful conduct, such as recklessness or gross negligence, might rise to the level of "conscience shocking" depending on the circumstances. *Id.* Therefore, contrary to the district court's conclusion, government conduct may be evaluated for substantive due process liability under the deliberate indifference standard even if it is not intentional. Most importantly for this case, the Court said that when decision makers have the "luxury of time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations," and fail to do the right thing, then "indifference is truly shocking." *Id.* at 853.

That is precisely the situation in this case. Defendants were not reacting to an exigent circumstance requiring hurried judgment or quick response. Instead, they had the luxury of, and in fact, took time to research, reflect and prepare the 2018 Guide and Support Plan template. Likewise, there was no urgent need to meet with A.G. to affirm her request for an alternate name and pronouns so as to justify

purposely failing to provide parental notice and obtain consent. Under those circumstances, Defendants' indifference to Plaintiffs' parental rights is "truly shocking." *See id.*

### C. The District Court erred in concluding that Plaintiffs needed to and could not satisfy the "shocks the conscience" standard based on dissimilar executive action cases.

The district court failed to perform an appropriate analysis of the circumstances of this case as required under *County of Sacramento,* 523 U.S. at 850. As a result, the district court used dissimilar executive action cases in educational and law enforcement settings to erroneously conclude that Plaintiffs were required to and failed to allege "conscience-shocking" facts as described in those dissimilar cases. (Dkt. 66, pp. 13-20). The education cases cited by the district court[6] involved state tort claims by and on behalf of students, far different from Plaintiffs' claims for violation of constitutionally protected fundamental parental rights. That difference is constitutionally significant since, as discussed *supra*, the "shock the conscience" standard is not applied to violations of fundamental liberty interests. *McKinney*, 20 F.3d at 1556 n.7; *Vinyard,* 311 F.3d at 1356. The fact that the cases cited by the

---

[6]     *Neal v. Fulton County. Bd. of Educ*. 229 F.3d 1069 (11th Cir. 2000); *Dacosta v. Nwachukwa*, 304 F.3d 1045 (11th Cir. 2002); *Nix v. Franklin County School Dist.* 311 F.3d 1373 (11th Cir. 2002); *Davis v. Carter*, 555 F.3d 979 (11th Cir. 2009); *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323 (11th Cir. 2020).

district court involved schools does not transform them into controlling precedent on which to base dismissal of Plaintiffs' claims.

The law enforcement cases[7] are even more dissimilar to this case. Even the one parental rights case cited by the district court, *Maddox v. Stephens*, 727 F.3d 1109 (11th Cir. 2013) does not support the court's conclusion, since it was a qualified immunity case and involved high pressure executive decisions in a hospital, not legislative policymaking in a school district. Notably, the one case that involved violation of parental rights in a school setting, *Arnold v. Board of Education of Escambia County,* 880 F.2d 305 (11th Cir. 1989), was brushed aside by the court as not controlling because it did not use the "shock the conscience" test. (Dkt. 66, pp. 13-14, n.3). The district court either ignored or failed to understand that the *Arnold* court did not use the shock the conscience test because it was clearly and obviously inapplicable to the deliberative, legislative actions of the school board of education and to an allegation of violation of fundamental parental rights.

### 1. Student personal injury claims against School Officials do not support "shock the conscience" analysis for Plaintiffs' fundamental parental rights claims.

The district court's description of the school cases belies its conclusion that "shock the conscience" analysis is appropriate for this parental rights case. The

---

[7]     *Waddell v. Hendry County. Sheriff's Off.*, 329 F.3d 1300 (11th Cir. 2003); *Hoefling v. City of Miami*, 811 F.3d 1271 (11th Cir. 2016); *Echols v. Lawton*, 913 F.3d 1313 (11th Cir. 2019).

district court's decision states: "Within the Eleventh Circuit, substantive due process claims brought by **students against school officials in public-school settings** have only ever been allowed to proceed when students allege that they received unconstitutional corporal punishment." (Dkt. 66, p. 20 n.5) (emphasis added). However, Plaintiffs here are not students bringing substantive due process claims against school officials, nor are they bringing claims on behalf of their children for tortious executive acts by school staff. Instead, Plaintiffs are parents bringing substantive due process claims against school officials for violation of their fundamental parental rights arising from legislative action. The student cases are wholly inapposite.

In *Davis,* this Court applied the "shock the conscience" test to reject parents' tort claims brought on behalf of their deceased son against a coaching staff that subjected their son to intense workouts. 555 F.3d at 984. The parents alleged that the staff violated their son's substantive due process rights by being deliberately indifferent to the risks posed by the workouts, which led to the son's death the next day. *Id.* This Court found that the coaches' actions vis-à-vis plaintiffs' son did not shock the conscience and were more appropriate for a state law tort claim. *Id.*

Similarly, in *Dacosta*, this Court agreed with defendants that a college student could not state a substantive due process claim for an assault committed by a professor. 304 F.3d at 1048.  This Court cited the Supreme Court's admonition that

substantive due process should not "become a font (sic)[8] of tort law to be superimposed upon whatever systems may already be administered by the States." *Id.* (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)). "Conduct by a government actor that would amount to an intentional tort under state law would only rise to the level of a substantive due process violation if it 'shocks the conscience' **or interferes with rights 'implicit in the concept of ordered liberty'**— in other words, only if it affects individual rights guaranteed, explicitly or implicitly, by the Constitution itself." *Id.* (emphasis added) (citations omitted). Notably, this Court characterized the "shock the conscience" standard as an alternate substantive due process test to be used when there is no fundamental right alleged as was originally articulated in *McKinney,* 20 F.3d at 1556 n.7.

This Court again rejected an attempt to recast a state law tort claim as a substantive due process action in *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d at 1329. Again referencing the Supreme Court's admonition against using substantive due process as a fount of tort law, this Court upheld the lower court's dismissal of a claim by students affected by the Parkland school shooting against the school board and county officials. *Id.* The students claimed that officials' response to the shooting

---

[8]    The opinion in *Paul v. Davis* used the word "font" instead of "fount" and subsequent citations to the case have continued to use the word "font" when quoting the language. Plaintiffs will continue to quote the language as used by the Court when directly quoting the statement but use the intended word "fount" in paraphrases.

was so incompetent that it violated the students' substantive due process rights. *Id.* at 1326-27. This Court held that the students failed to state a claim because they failed to allege any "arbitrary" or "conscience-shocking" conduct on the part of defendants. *Id.* at 1331. Because the school shooting required "rapid fire judgments in a dangerous and unpredictable circumstance," the students had to allege intentional wrongdoing, *i.e.,* conduct that "shocks the conscience" to state a substantive due process claim. *Id.* "Conduct that is not intentionally harmful can violate substantive due process only in contexts 'when actual deliberation is practical.'" *Id.* (citing *County of Sacramento,* 523 U.S. at 851). No such deliberation was practical when dealing with a school shooting. However, deliberation was practical and actually undertaken by Defendants here. Therefore, Plaintiffs were not required to allege "conscience-shocking" conduct by Defendants in order to proceed with their substantive due process claims.

The other school setting cases cited by the district court also involved claims brought by and on behalf of students seeking damages for tortious conduct by school officials. *Neal,* 229 F.3d 1069; *Nix,* 311 F.3d 1373. In *Neal*, this Court found that allegations that a coach deliberately hit the student with a metal lock following a fight between the student and another student and after saying that he would hit the student with whatever object the student used on the other were sufficient to satisfy the shock the conscience standard. 229 F.3d at 1075. This Court found that excessive

corporal punishment not administered in accordance with a valid school policy "may be actionable under the Due Process Clause when it is tantamount to arbitrary, egregious, and conscience-shocking behavior." *Id.* "Consistent with the cases, we hold that, at a minimum, the plaintiff must allege facts demonstrating that (1) a school official intentionally used an amount of force that was obviously excessive under the circumstances, and (2) the force used presented a reasonably foreseeable risk of serious bodily injury." *Id.*

In *Nix*, parents brought a claim on behalf of their deceased son who was electrocuted when he touched a live wire during an in-class electricity demonstration. 311 F.3d at 1374. The teacher repeatedly instructed the students not to touch the live wire. *Id.* The parents claimed that defendants were deliberately indifferent to their son's safety and thereby deprived him of his substantive due process rights. *Id.* at 1377. This Court compared the circumstances in *Nix* with the facts in *DaCosta* and *Neal* and found that the allegations of deliberate indifference did not satisfy the "shock the conscience" test, particularly when compared to the intentionally harmful actions of the coach in *Neal. Id.* at 1378-1379.

The district court found *Nix* particularly persuasive. (Dkt. 66 at 19). "Considering the Eleventh Circuit's decision in *Nix*, that if a government actor's deliberate indifference to serious risks to student safety that he himself created— which ultimately resulted in the death of a child—does not shock the conscience,

then Plaintiffs' allegations also fall short of this standard." (Dkt. 66 at 24). The district court's reliance on *Nix* is in error. *Nix* was a claim on behalf of a student arising from an executive act by a school staff member. While not as exigent as the school shooting in *Hernandez* or the altercation in *Dacosta*, the circumstances in *Nix* are the kind of extemporaneous, non-deliberative acts that *County of Sacramento* and *Lewis v. Brown* state require a "shocks the conscience" analysis. By contrast, the present case involves a deliberative action by Defendants, *i.e.,* development of the 2018 Guide and Student Support Plan template, for which deliberate indifference can be sufficient to support a substantive due process claim. *County of Sacramento,* 523 U.S. at 853. Furthermore, Plaintiffs allege that their fundamental parental rights have been violated by Defendants, which is sufficient for a substantive due process claim without superimposing the "shock the conscience" test. *Vinyard,* 311 F.3d at 1356.

### 2. Cases alleging wrongdoing by law enforcement do not support "shock the conscience" analysis for Plaintiffs' parental rights claims.

The district court ventured even further afield when it cited decisions that rejected substantive due process challenges to law enforcement actions in support of its conclusion that Plaintiffs could not state a substantive due process claim. (Dkt. 66, pp. 11, 20). Two of the decisions, *Hoefling* and *Echols*, did not decide whether there was a substantive due process violation because this Court found that the

claims were better addressed by the Fourth Amendment, *Hoefling,* 811 F.3d at 1282, and First Amendment, *Echols,* 913 F.3d at 1326. Notably, in *Echols,* this Court referenced the district court's use of the alternate substantive due process standard articulated in *McKinney,* 20 F.3d at 1556 n.7, *i.e.,* alleging either a violation of a fundamental liberty **or** government conduct that shocks the conscience. *Echols*, 913 F. 3d at 1326. The *Echols* Court did not overrule the district court for its use of that standard but concluded that the case was better analyzed under the First Amendment. *Id.* Therefore, *Echols* is not only factually inapposite to this case, but also supports the proposition that, contrary to the district court's conclusion, "conscience-shocking" behavior is not part of the substantive due process analysis for a claim based on fundamental rights.

*Waddell,* 329 F.3d 1300, also does not support the district court's conclusion that Plaintiffs were required to and failed to allege "conscience-shocking" behavior on the part of Defendants to state a claim for substantive due process. The district court used *Waddell* to support the proposition that Plaintiffs could not state a substantive due process claim unless they alleged that Defendants engaged in arbitrary and conscience-shocking behavior, something beyond even an intentional wrong. (Dkt. 66 at p. 11). However, as was the case with the student tort cases in the school setting, the factual dissimilarities between *Waddell* and this case vitiate any reliance on it to analyze Plaintiffs' claims. As was true in *Davis, Dacosta, Nix,* and

*Neal, Waddell* involved victims of tortious actions seeking constitutional recognition for what are quintessential personal injury claims. 329 F.3d at 1308-1309. *Waddell* is even further removed from this case than are *Davis, Dacosta, Nix,* and *Neal* since unlike those cases, *Waddell* did not take place in a school setting. Furthermore, unlike the school cases, *Waddell* did not involve direct action against the plaintiffs by a state actor. *Id.* at 1304. Instead, as the district court found and this Court affirmed, the defendant DUI driver was not a state actor at the time of the accident, the defendant sheriff's department did not take any actions against plaintiffs that shocked the conscience, and whatever actions the sheriff's department did take were not the cause of the accident for which the plaintiffs sought recovery. *Id.* It is difficult, if not impossible, to comprehend a more dissimilar case upon which to rely to find that Plaintiffs could not state a substantive due process claim for direct interference with their fundamental parental rights.

### 3. This Court's grant of qualified immunity to a social worker in *Maddox* does not support applying "shock the conscience" analysis to Plaintiffs' parental rights claims.

The only parental rights case cited by the district court, *Maddox v. Stephens,* 727 F.3d 1109 (11th Cir. 2013), also does not support the court's conclusion that Plaintiffs have to and failed to allege "conscience-shocking" behavior in order to state a claim for violation of their fundamental parental rights arising from Defendants' legislative, deliberative actions. The district court acknowledged that

31

*Maddox* was a qualified immunity, not substantive due process, decision. However, it treated that distinction as insignificant as it used *Maddox* to argue that the "shock the conscience" standard is a necessary element for a substantive due process claim based on violation of a fundamental liberty interest. (Dkt. 66, pp. 13-15). As was true of the school and law enforcement cases, *supra*, *Maddox* is factually and legally dissimilar to this case. Therefore, it does not support the district court's decision that Plaintiffs cannot state a claim for substantive due process violations.

*Maddox* was an interlocutory appeal of the district court's denial of a social worker's motion for summary judgment based on qualified immunity. 727 F.3d at 1113. As this Court said:

> The **only claim** directly relevant to this appeal is whether Appellant Stephens is entitled to qualified immunity on Maddox's substantive due process claim that Stephens violated her liberty interests in the care, custody, and management of her minor child ("child" or "J.O.") with respect to Stephens' actions in preparing and implementing a safety plan that allegedly prohibited Maddox from removing the child from the paternal grandmother's care.

*Id.* (emphasis added). This Court discussed the standard for substantive due process claims, including the "shock the conscience" standard in *County of Sacramento,* and the need for exacting analysis of the circumstances of the case at issue. *Id.* at 1119. However, this Court did not determine whether defendants had violated plaintiff's substantive due process rights. *Id.* at 1120. "Even **if we were to find that Stephens violated Maddox's constitutional rights**, Stephens is not liable if she is protected

by qualified immunity." *Id.* (emphasis added). In other words, the question of whether the plaintiff had proven that her due process rights were violated was not answered. Instead, this Court based its decision on the issue of qualified immunity, that is, on whether the right allegedly violated was clearly established, without deciding whether a constitutional violation occurred at all. *Id.* at 1120-1121. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable (state official) that (her) conduct was unlawful in the situation (she) confronted." *Id.* at 1121. In the case of the social worker in *Maddox,* "we have held that 'state officials who act to investigate or protect children where there are allegations of abuse almost never act within the contours of clearly established law.'" *Id.* (citation omitted). Therefore, the social worker was entitled to qualified immunity **regardless of whether plaintiff could prove a substantive due process violation**. *Id.* (emphasis added). Since the *Maddox* Court did not analyze whether the plaintiff had stated a viable claim for violation of substantive due process, it cannot be used to support the proposition that Plaintiffs here failed to state a claim.

*Maddox* is also distinguishable because it involved extemporaneous, non-deliberative acts for which the social worker did not have the "luxury of time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations" that Defendants had here. *See*

*County of Sacramento,* 523 U.S. at 853. The social worker in *Maddox* had to make immediate decisions regarding the placement of a medically fragile child requiring around the clock care. *Maddox,* 727 F.3d at 1114-1116. These are precisely the kind of executive decisions that the Supreme Court said had to satisfy the "shock the conscience" standard. *County of Sacramento,* 523 U.S. at 849. By contrast, in this case, Defendants had the luxury of time to gather information, review research, reflect upon, draft and revise the provisions of the 2018 Guide and Student Support Plan template. In these situations, even deliberate indifference can be sufficient to state a substantive due process claim. *Id.* at 853. Therefore, even if this Court had determined that the plaintiff in *Maddox* was required to and failed to allege "conscience-shocking" conduct, that determination would not be controlling in this factually dissimilar situation.

None of the cases cited by the district court support its conclusion that substantive due process claims are not viable without allegations that state actors engaged in conduct that "shocks the conscience." Neither the Supreme Court nor this Court have made such a universal pronouncement. To the contrary, the courts have maintained that substantive due process claims require exacting analysis of the circumstances of each case and a recognition of the difference between legislative and executive functions. *County of Sacramento,* 523 U.S at 849-850; *McKinney,* 20 F.3d at 1557, *Lewis v. Brown,* 409 F.3d at 1273. Based on those determinations,

constitutional liability is analyzed along a continuum. *County of Sacramento,* 523 U.S. at 849. This Court has also maintained that the "shock the conscience" standard is an alternate used only in the absence of a fundamental liberty interest. *McKinney,* 20 F.3d at 1557; *Vinyard,* 311 F.3d at 1356; *Waldman,* 871 F.3d at 1292. Since, as the district court acknowledges, "(a) parent's substantive due process right in the care, custody, and control of their child is a fundamental liberty interest that is protected by the U.S. Constitution" (Dkt. 66, p. 11), the "shock the conscience" standard does not apply to Plaintiffs' claims. The district court's contrary conclusion is clear error that should be reversed.

### D. The district court erred in dismissing Arnold v. Board of Education as not controlling based on its incorrect conclusions that Plaintiffs were required to allege "conscience-shocking" conduct and coercion.

The district court's erroneous conclusion that Plaintiffs had to and failed to allege "conscience-shocking" conduct led to the further error of dismissing *Arnold* as "not controlling," because it did not use the "shock the conscience" standard:

> This Court, however, does not find *Arnold* controlling in this case, because subsequent Supreme Court and Eleventh Circuit cases have made it clear that the "conscience-shocking" standard is used to determine if conduct rises to the level of a substantive due process violation. *Arnold* does not apply that test.

(Dkt. 66, pp. 13-14, n.3). The district court also erred in concluding that *Arnold* was not controlling because coercion is a necessary factor in a claim for violation of fundamental parent rights and Plaintiffs did not allege coercion. (Dkt. 66, p.14, n.3).

### 1. *County of Sacramento did not change "shock the conscience" from an alternate to compulsory standard for substantive due process cases in the Eleventh Circuit.*

Implicit in the district court's rejection of *Arnold* as controlling precedent is the conclusion that *County of Sacramento* reversed this Court's longstanding determination that the "shocks the conscience" standard is used as an alternate test in the absence of violation of a fundamental right. *McKinney,* 20 F.3d at 1556 n.7. As discussed in detail *supra*, while *McKinney* was decided before *County of Sacramento,* this Court's decisions since then have continued to hold that the "shocks the conscience" standard is not applied when violation of a fundamental liberty interest is alleged. *Lewis v. Brown,* 409 F.3d at 1273; *Vinyard,* 311 F.3d at 1356; *Waldman,* 871 F.3d at 1292.

In fact, this Court cited *County of Sacramento* in *Waldman* when it affirmed that the "shocks the conscience" standard is an alternate test used when fundamental rights are not at issue. 871 F.3d at 1292. "**Where a fundamental liberty interest does not exist**, substantive due process nonetheless protects against the arbitrary and oppressive exercise of government power. Executive action is arbitrary in a constitutional sense when it 'shocks the conscience.'" *Id.* (citing *County of Sacramento*, 523 U.S. at 845-846) (emphasis added). The Supreme Court explicitly stated that its enumeration of the "shocks the conscience" test was specific to circumstances similar to those present in that case, *i.e.* high pressure executive action

requiring split second often life or death decisions. *County of Sacramento*, 523 U.S. at 849. In other situations, including, like here, when decision-makers have the luxury of time to deliberate in the development and implementation of policies, the high threshold of "shocks the conscience" does not apply. *Id.* at 853.

What was true before *County of Sacramento* remains true today. "The Fourteenth Amendment forbids the government from infringing fundamental liberty interests **at all**, unless the infringement is narrowly tailored to serve a compelling state interest." *Waldman,* 871 F.3d at 1292 (citing *Washington v. Glucksberg*, 521 U.S. 702, 721(1997) (emphasis added). In the absence of fundamental liberty interests, government action can violate substantive due process only if it is arbitrary and capricious, *i.e.* shocks the conscience. *Id.* The district court acknowledges that parents' "substantive due process right in the care, custody, and control of their child is a fundamental liberty interest that is protected by the U.S. Constitution." (Dkt. 66, p. 11). That being the case, infringement of the right, as alleged by Plaintiffs, must survive strict scrutiny, not be subject to a "shock the conscience" test. *Waldman,* 871 F.3d at 1292. The *Arnold* Court was correct in not applying the "shock the conscience" test. The district court's dismissal of *Arnold* as not controlling because it did not use the "shock the conscience" standard is clear error.

## 2. The district court erred in trying to distinguish Arnold based on the element of coercion.

The district court also attempts to distinguish *Arnold* on the basis that it involved coercing minors into not telling their parents about the pregnancy and abortion, and "Plaintiffs do not allege that A.G. was coerced by Defendants." (Dkt. 66 at p. 14, n.3). That conclusion is based on two false premises.

First, the district court is assuming that the element of coercion was necessary to this Court's determination that the plaintiffs pled sufficient facts to state a substantive due process claim. Examination of this Court's reasoning does not justify that assumption. In *Arnold,* this Court emphasized how the school counselors' conduct unduly interfered with parental rights protected as fundamental for nearly 100 years. 880 F.2d at 313.

> (T)he Constitution protects a private realm of family life which the state cannot enter without compelling justification…. Within the constitutionally protected realm rests the parental freedom to inculcate one's children with values and standards which the parents deem desirable….Indeed, parents have the right to decide free from unjustified governmental interference matters concerning the growth, development and upbringing of their children."

*Id.* (citations omitted). Supreme Court cases elucidating these parental rights "demonstrate a willingness to protect from unjustified state interference the parental right to structure the education and religious beliefs of one's children." *Id.* The undue state intrusion on parental rights and authority in *Arnold* was in the form of school counselors coercing minors to not tell their parents about a pregnancy and abortion.

*Id.* Such intrusions "deprive() the parents of the opportunity to counter influences on the child the parents find inimical to their religious beliefs or the values they wish instilled in their children." *Id.* It was the undue state intrusion in parental decision-making and the inculcation of values and standards the parents deem desirable, not the fact that coercion was alleged, that was critical in *Arnold.*

The district court's ill-conceived and improper focus on coercion as the decisive issue in *Arnold* remarkably permitted it to gloss over what it all but admitted was a clear interference with the Littlejohn's parental rights. A critical aspect of parents' fundamental right to direct the upbringing, care and custody of their children is their right to make medical and mental health decisions without interference from the state. *Parham v. J.R.,* 442 U.S. 584, 603-604 (1979). Parents "retain a substantial, if not the dominant, role in the decision, absent a finding of neglect or abuse, and that the traditional presumption that the parents act in the best interests of their child should apply." *Id.* at 604. Even when a decision, such as the decision here to not honor a child's request for gender discordant names and pronouns, is disagreeable to the child, the parents' rights take precedence. *Id.* at 603. "Most children, even in adolescence, simply are not able to make sound judgments concerning many decisions, including their need for medical care or treatment. Parents can and must make those judgments." *Id.*

Notably, the *Arnold* Court cited *Parham* in support of its conclusion that the parents had stated a valid substantive due process violation, pointing to the primacy of the right to make medical/mental health decisions, not coercion, as the reason for the decision. *Arnold*, 880 F.2d at 314. Since the district court dismissed *Arnold* as not controlling, it could avoid resolving the conflict between *Arnold* and the court's circuitous admission that Plaintiffs alleged interference with their right to make mental health decisions. (Dkt. 66, p. 13, n.2).

> It cannot be said that Defendants did not interfere with that liberty interest, as Defendants implemented a Support Plan for A.G. that contradicted Plaintiffs' decisions regarding A.G.'s alleged gender confusion. This allegedly ran contrary to the mental health outcomes that Plaintiffs were seeking through private counseling and allegedly interfered with Plaintiffs' ability to make mental health decisions for A.G. Even so, since this Court is dismissing this case on other grounds, it need not resolve this question.

(Dkt. 66, p. 13, n.2). Notably, the district court failed to even consider *Parham* in its decision.

The district court's second false assumption is that the allegations of the Complaint do not show coercion. While the word "coercion" is not present, there are allegations which, if accepted as true, raise a plausible claim that A.G. was coerced into not including her parents in the gender support plan meetings. Since the meetings were private and Plaintiffs have not yet been able to complete discovery, the complete facts regarding the conversations are not yet known. What **is** alleged is

that Ms. Thomas was the one who raised the idea of the meeting with A.G. (Dkt. 38 ¶ 109). Ms. Thomas did not ask A.G. whether she wanted her parents there. (Dkt. 38 ¶¶ 110-111). Ms. Thomas filled out the Student Support form for A.G. (Dkt. 38 ¶ 114). While Ms. Thomas represented that she filled out the form using answers provided by A.G., (Dkt. 38 ¶ 114), that cannot yet be verified. Even without the word "coercion," it is plausible that A.G., a 13-year-old with ADHD (Dkt. 38 ¶ 18), would feel coerced in a meeting with, and answering the questions of, adult authority figures where her parents were excluded.

Therefore, even if coercion were a necessary factor to finding a violation of fundamental parental rights under *Arnold*, the facts alleged state a plausible claim of coercion. The district court erred in disregarding *Arnold* based on its flawed assumptions regarding coercion and the continuing viability of the decision following *County of Sacramento*.

## II. The District Court Erred When It Concluded That The Individual Defendants Were Entitled To Qualified Immunity.

The district court made a cursory and contradictory determination that the individual Defendants were entitled to qualified immunity because "the law regarding substantive due process rights afforded to parents is an unsettled area of constitutional law, such that a reasonable person would not be able to know when their conduct is in violation of the law." (Dkt. 66, p. 9). That conclusion defies Supreme Court and this Court's precedent and contradicts the district court's own

statement about the fundamental nature of parental rights. *See Troxel,* 530 U.S.at 65, *Arnold,* 880 F.2d at 313. It also reflects the underlying, pervasive flaw of the district court's insistence that Plaintiffs had to allege "conscience-shocking" conduct to state a valid substantive due process claim. The district court's conclusion also illustrates a broader problem of improper expansion of the concept of qualified immunity. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1871 (2017) (Thomas, J. concurring).

### A. The District Court Erred in Concluding that Parental Rights are not "Clearly Established."

In a show of what can only be characterized as linguistic legerdemain, immediately after concluding that parental rights are not "clearly established," the district court correctly acknowledged that "(a) parent's substantive due process right in the care, custody, and control of their child is a fundamental liberty interest that is protected by the U.S. Constitution." (Dkt. 66, p. 11, citing *Troxel,* 530 U.S. at 66 (2000)). The district court could make this remarkable acknowledgement while finding the Defendants entitled to qualified immunity only by selectively citing precedent that comports with its flawed premise that "conscience-shocking" conduct is required for a substantive due process claim and ignoring controlling precedent that does not apply the "shock the conscience" standard.

### 1. The district court's out of context quote from *Maddox* does not support a finding that parental rights are not clearly established.

The district court's conclusion that fundamental parental rights are not clearly established comes from a single out of context quote from *Maddox:* "parental rights …are a 'murky area of unenumerated constitutional rights' where courts must "tread lightly" to avoid placing important matters "outside the arena of public debate and legislative action." (Dkt. 66, p. 12, citing *Maddox*, 727 F.3d at 1120). When the statement is read in context and in light of the citations notably omitted from the district court's decision, it becomes clear that *Maddox* does not support the court's conclusion that parental rights are not clearly established.

In *Maddox,* this Court prefaced its conclusion that the social worker was entitled to qualified immunity with a discussion of how violations of substantive due process can be the basis of claims under Section 1983. *Maddox,* 727 F.3d at 1118-1120. This Court examined the longstanding recognition that parents' constitutionally protected liberty interest in the care, custody, and management of their children is "perhaps the oldest of the fundamental liberty interests recognized by (the Supreme Court)." *Id.* at 1119 (citing *Troxel*, 530 U.S. at 65). "'The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring

American tradition.'" *Id.* (citing *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972)). Based on that precedent, this Court held that it was undisputed that the plaintiff in *Maddox* had a liberty interest in the care, custody, and management of her child. *Id.* What was still in dispute was whether the plaintiff had stated a violation of that interest in the circumstances of that case. *Id.*

As discussed *supra*, this Court did not reach that question, but did expound on the Supreme Court's concern about substantive due process becoming a fount of tort law and the "shocks the conscience" test in *County of Sacramento. Id.* This Court discussed the Supreme Court's reluctance to expand the reach of substantive due process. *Id.* at 1120. This Court then cited to the quote used by the district court, a statement from *Robertson v. Hecksel*, 420 F.3d 1254, 1256 (11th Cir. 2005). *Id.* As is true with the *Maddox* decision, the *Robertson* decision acknowledged the longstanding constitutional protection of parents' interest in the care, custody, and upbringing of their children. *Robertson,* 420 F.3d at 1256-1258. Importantly, this Court pointed out that the constitutionally protected parental right focuses on relationships with minor children. *Id.* at 1257. The plaintiff in *Robetrson* tried to claim a parental right to companionship with her adult son. *Id.* at 1258. This Court determined that right was not cognizable. *Id.* at 1260.

Robertson does not allege the state has interfered with how she raises her minor child, as was the case in *Meyer*[9] and *Pierce*[10], nor does she claim the state action targeted her custody of her minor child, as in *Santosky*[11] and *Stanley*[12]. Therefore, her claim finds no support in Supreme Court precedent, and we decline to further expand the substantive protections of the Due Process Clause.

*Id.* It was the plaintiff's purported expansion of the parental right to adult children that would have made the "waters" of substantive due process "murky," not the long-established fundamental right of parents to direct the care and upbringing of their minor children. That was the context of the *Maddox* Court's quote from *Robertson*, not, as the district court claimed, the idea that constitutional protection of parental rights is "unsettled" and therefore not clearly established.

The other portion of the statement from *Maddox* cited by the district court also does not support the court's conclusion that fundamental parental rights are not clearly established. The phrase "courts must 'tread lightly' to avoid placing important matters 'outside the arena of public debate and legislative action,'" also from *Robertson*, is itself a quote from *Washington v. Glucksburg*, 521 U.S. 702, 720 (1997). As was true in *Robertson*, in *Glucksburg* the Supreme Court was concerned about expanding the concept of substantive due process beyond long-established

---

[9]    *Meyer v. Nebraska,* 262 U.S. 390 (1923)
[10]   *Pierce v. Society of Sisters,* 268 U.S. 510 (1925)
[11]   *Santosky v. Kramer,* 455 U.S. 745 (1982)
[12]   *Stanley v. Illinois,* 405 U.S. 645 (1972).

fundamental rights, "which are, objectively, 'deeply rooted in this Nation's history and tradition and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed." *Id.* at 721. Those established fundamental rights include "to direct the education and upbringing of one's children" *id.* at 720 (citing *Meyer* and *Pierce*), not the plaintiff's proffered right to assisted suicide. *Id.* at 738.

The district court's attempt to hijack *Maddox* to support its claim that Plaintiffs' fundamental right to direct the care and upbringing of their daughter is not clearly established is unavailing, and frankly, specious. In *Maddox*, this Court did not overrule, but affirmed, decades of Supreme Court precedent providing that parents' right to direct the care and upbringing of their children is constitutionally protected.

### 2. *Arnold, dismissed by the District Court, and Parham, which the District Court ignored, are controlling precedent sufficient to put Defendants on notice for purposes of qualified immunity.*

This Court's decision in *Arnold,* finding that parents stated a substantive due process violation when school counselors convinced their children to conceal information regarding a pregnancy and abortion, provides factually and legally similar authority to give the Individual Defendants the "fair and clear notice" required to show that Plaintiffs' constitutional rights are clearly established. *Vinyard,* 311 F.3d at 1350. As this Court explained in *Vinyard*, "fair and clear notice" can be

established either through the language of a statute or constitutional provision, controlling precedent containing broad statements of principle not tied to particularized facts or controlling precedent tied to particularized facts. *Id.* at 1351-1352. *Arnold* is an Eleventh Circuit case involving: 1) unauthorized conversations between public school officials and minor students, 2) regarding personal issues of health and well-being, 3) which were purposefully concealed from parents. 880 F.2d at 308-309. This case arises in the Eleventh Circuit and involves: 1) unauthorized conversations with Plaintiffs' minor child, 2) regarding personal issues of health and well-being, 3) which were purposefully concealed from Plaintiffs. (Dkt. 38 ¶¶ 99-102, 110-114). The *Arnold* Court found that the circumstances stated a claim for violation of the parents' fundamental constitutional rights. 880 F.2d at 312. That 1989 decision would have put reasonable educators such as Defendants on notice in 2021 that having secret meetings with a minor discussing personal issues without notifying her parents would violate the parents' rights. *See Vinyard*, 311 F.3d at 1355 (finding that the law in 1998 gave the police officer notice that his behavior violated the plaintiff's right to be free from the use of excessive force).

Nevertheless, the district court remarkably found that there was no controlling precedent to put Defendants on notice for the reason that it did not regard *Arnold* as controlling since the Court did not apply "shock the conscience." (Dkt 66 at pp. 13-14 n.3). As discussed *supra*, the district court's dismissal of *Arnold* was flawed and

incredulous. Regardless of the validity of the Court's dismissal of *Arnold,* the fact that the court did not find it controlling did not erase the existence and clear applicability of the precedent. Its striking similarity to this case should have put these similarly situated Defendants on notice that meeting with the Plaintiffs' minor daughter without notice or consent violated the parents' constitutional rights. Defendants should not be given a pass because the district court thought this Court should have applied "shock the conscience."

Furthermore, though not involving the school setting, the Supreme Court's decision in *Parham* should also have put the Defendants on sufficient notice that actions taken pursuant to policies that infringe on the right to make decisions concerning the mental health and well-being of their children would violate the parents' fundamental rights. The district court however failed to even consider, much less properly apply, *Parham* to this case. This is particularly remarkable since the district court actually acknowledged that "It cannot be said that Defendants did not interfere with that liberty interest [to make mental health decisions for their child] as Defendants implemented a Support Plan for A.G. that contradicted Plaintiffs' decisions regarding A.G.'s alleged gender confusion" and that "ran contrary to the mental health outcomes that Plaintiffs were seeking." (Dkt. 66, p. 13, n.2).

### 3. The District Court's Citation of Troxel Belies its Conclusion that Plaintiffs' Fundamental Parental Rights are not Clearly Established.

The district court's conclusion that Defendants did not violate any clearly established constitutional rights is all the more incredulous in light of its citation to *Troxel* for the proposition that parents' right to control the care and upbringing of their children is a fundamental liberty interest. (Dkt. 66, p. 11). *Troxel* called parental rights "perhaps the oldest of the fundamental liberty interests recognized by this Court," and detailed the decades-long history of Supreme Court enumeration and protection of the right. 530 U.S. at 65. In his concurrence Justice Souter said that constitutional protection for parental rights was a "settled principle." *Id.* at 77.

The district court does not and cannot explain how a concept that the Supreme Court labeled a settled principle in 2000 is now "an unsettled area of constitutional law, such that a reasonable person would not be able to know when their conduct is in violation of the law." (Dkt. 66 p. 9). The district court did not present any intervening Supreme Court or Eleventh Circuit authority that diminishes the fundamental nature of parental rights or subjects them to procedural hurdles such as "shock the conscience." As discussed *supra*, *County of Sacramento* did not alter the analysis for substantive due process claims based on violation of fundamental rights. Absent such authority, there is no basis for shielding Defendants from liability on

the grounds that the fundamental right of parents to direct their children's upbringing is not clearly established.

**B. The District Court's Error in Granting Defendants Qualified Immunity Illustrates the Improper Expansion of the Concept.**

The district court selectively disregarded controlling precedent to justify finding that rights recognized as fundamental for decades are not clearly established. That concerted effort to grant qualified immunity to Defendants is part of a trend of improperly expanding the concept of qualified immunity to protect administrators who took deliberative action while knowing that they were violating constitutional rights.

Much like the "shock the conscience" standard, the "clearly established" factor in qualified immunity has become a "one size fits all" shield for all manner of executive decision-makers who exercise a wide range of responsibilities and functions under varying circumstances. *Hoggard v. Rhodes*, 141 S. Ct. 2421, 2422 (2021) (Thomas J. dissenting from denial of petition for certiorari). "But why should university officers (or in this case K-12 school administrators), who have time to make calculated choices about enacting or enforcing unconstitutional policies, receive the same protection as a police officer who makes a split-second decision to use force in a dangerous setting? We have never offered a satisfactory explanation to this question." *Id.*

In an earlier concurrence Justice Thomas cautioned: "Because our analysis is no longer grounded in the common-law backdrop against which Congress enacted" Section 1983, "we are no longer engaged in interpret(ing) the intent of Congress in enacting the Act. Our qualified immunity precedents instead represent precisely the sort of 'freewheeling policy choice(s)' that we have previously disclaimed the power to make." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1871 (2017) (Thomas, J. concurring).

The district court's decision here is clearly one of the "freewheeling policy choices" that Justice Thomas warned about. To ignore controlling precedent and Supreme Court determinations that constitutional protection of parental rights is settled law is not engaging in constitutional interpretation so much as molding judicial decisions to fit a preferred and predetermined policy outcome. This Court should reject the district court's freewheeling choices.

### III. The District Court Erred In Finding That Plaintiffs' Claims Would Impermissibly Expand A Disfavored Constitutional Concept.

Underlying the district court's decision is a fundamental misconception that Plaintiffs are seeking to expand the "disfavored" concept of substantive due process. While acknowledging that binding precedent has established a right to substantive due process, the district court nevertheless referenced a Supreme Court justice's statements criticizing the concept. (Dkt. 66, pp. 20-21). Viewed in context with the court's misapplication of the "shocks the conscience" standard to fundamental rights claims, dismissal of binding precedent on parental rights in the school setting and

the incredible statement that fundamental parental rights are not clearly established, the court's use of the quote further underscores the inherent flaws in the court's decision.

The district court prefaced its analysis of the particular facts of Plaintiffs' case by quoting a portion of Justice Thomas' statement regarding substantive due process in his concurrence in *Dobbs v. Jackson Women's Health Organization,* 142 S.Ct. 2228, 2301(2022) (Thomas, J., concurring). The district court quoted one statement from Justice Thomas in which he questioned the concept of "substantive" due process. (Dkt 66, pp. 20-21, citing *id.*). Justice Thomas agreed with the majority's conclusion that the decision should not "cast doubt on precedents that do not concern abortion." *Dobbs,* 142 S.Ct. at 2302. He then discussed that in the future the Court should reconsider its other substantive due process cases, in particular, *Griswold v. Connecticut,* 381 U.S. 479 (1965) (right of married persons to obtain contraceptives); *Lawrence v. Texa,* 539 U.S. 558 (2003) (right to engage in private, consensual sexual acts); and *Obergefell v. Hodges,* 576 U.S. 644 (2015) (right to same-sex marriage). Neither those cases nor the cases addressing fundamental parental rights were at issue in *Dobbs,* and protection of parental rights was not mentioned as a candidate for reconsideration by Justice Thomas. Therefore, the statement by Justice Thomas is neither relevant nor applicable to the court's analysis of Plaintiffs' parental rights claims.

The district court's admission that "binding precedent recognizes a right to substantive due process and this Court must apply that precedent..." (Dkt 66, p. 21), raises further questions about the court's inclusion of Justice Thomas' statement. Since it is not binding or even persuasive precedent it has no bearing on the analysis of the plausibility of Plaintiffs' claims. The district court reference to Justice Thomas' view about the wisdom of the concept of substantive due process is not a valid basis for dismissing Plaintiffs' claims. The district court acknowledges that parental rights are protected as fundamental under the Constitution (Dkt. 66, p. 11). That means, under established precedent, that their infringement, *ipso facto,* is a violation of substantive due process, *Waldman*, 871 F.3d at 1292. The district court's insinuation that Plaintiffs are trying to expand a constitutional concept that is of questionable validity is without merit.

## CONCLUSION

The district court erred when it ruled that Plaintiffs failed to state a viable substantive due process claim for violation of fundamental parental rights because they did not allege conduct that "shocks the conscience." The district court wrongly assumed that the Supreme Court decision in *County of Sacramento* changed the law so that "conscience shocking" behavior was a universal prerequisite for a substantive due process violation.

The district court also failed to differentiate between extemporaneous, high pressure executive actions to which the "shock the conscience" standard applies, and deliberative legislative actions, such as Defendants' guidance here, to which it does not. The district court erred in jettisoning the *Arnold* case in favor of dissimilar student personal injury cases to justify dismissing Plaintiffs' claims.

Finally, the district court erred in concluding that the Individual Defendants were entitled to qualified immunity because parents' rights to direct the upbringing, mental health care and custody of their children is not clearly established. For these reasons, the district court's decision granting Defendants' motion to dismiss should be reversed.

Dated: May 22, 2023

/s/*Mary E. McAlister*
Mary E. McAlister
CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
P.O. Box 637
Monroe, VA 24574
770.448.4525
mmcalister@childparentrights.org
Attorney for Plaintiffs-Appellants

Vernadette R. Broyles
Ernest G. Trakas
CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
5805 State Bridge Rd., Suite G310
Johns Creek, GA 30097
770.448.4525
vbroyles@childparentrights.org
etrakas@childparentrights.org
Attorneys for Plaintiff-Appellants

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENT

This document complies with the word limit of Fed. R. App.P. 27(d)(2)(A), because this document contains 12.985 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), incorporated by reference into Rule 27 and 11th Cir. R. 27-1, because this document has been prepared in a proportionally spaced typeface using Microsoft Office Word in fourteen-point font, Times New Roman.

*/s/ Mary E. McAlister*
MARY E. McALISTER

## **CERTIFICATE OF SERVICE**

I certify that on May 22, 2023, I electronically filed the foregoing with the Clerk of Court using the Eleventh Circuit CM/ECF system which will send notification of filing to all parties of record.

*/s/ Mary E. McAlister*
**MARY E. McALISTER**