No. 23-10385-HH

# In the United States Court of Appeals for the Eleventh Circuit

———————————

JANUARY LITTLEJOHN, JEFFREY LITTLEJOHN,

*Plaintiffs-Appellants,*

v.

SCHOOL BOARD OF LEON COUNTY, FLORIDA, ROBIN OLIVERI, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS ASSISTANT PRINCIPAL OF DEERLAKE MIDDLE SCHOOL, RACHEL THOMAS, INDIVIDUALLY AND IN OFFICIAL CAPACITY AS COUNSELOR AT DEERLAKE MIDDLE SCHOOL, ROCKY HANNA, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS SUPERINTENDENT OF LEON SCHOOLS, DR. KATHLEEN RODGERS, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS FORMER ASSISTANT SUPERINTENDENT EQUITY OFFICER AND TITLE IX COMPLIANCE COORDINATOR FOR THE LEON COUNTY SCHOOLS,

*Defendants-Appellees.*

———————————

**On Appeal from the United States District Court for the Northern District of Florida Tallahassee Division, No. 4:21cv415-MW/MJF**

———————————

BRIEF OF AMICI CURIAE ADVANCING AMERICAN FREEDOM, INC.; ABLE AMERICANS; AMERICAN PRINCIPLES PROJECT; AMERICAN VALUES; CENTER FOR POLITICAL RENEWAL; CENTER FOR URBAN RENEWAL AND EDUCATION (CURE); CHRISTIAN LAW ASSOCIATION; CHRISTIANS ENGAGED; COALITION FOR JEWISH VALUES; CORNWALL ALLIANCE FOR THE STEWARDSHIP OF CREATION; DELAWARE FAMILY POLICY COUNCIL; DR. JAMES DOBSON FAMILY INSTITUTE; EAGLE FORUM; FAITH AND FREEDOM COALITION; FAMILY POLICY INSTITUTE OF WASHINGTON; FRONTLINE POLICY ACTION; GLOBAL LIBERTY ALLIANCE; CONGRESSWOMAN VICKY HARTZLER; INTERNATIONAL CONFERENCE OF EVANGELICAL CHAPLAIN ENDORSERS; MISSOURI CENTER-RIGHT COALITION; NATIONAL ASSOCIATION OF PARENTS, INC. D/B/A PARENTSUSA (OR) NATIONAL ASSOCIATION OF PARENTS, INC. ("PARENTSUSA"); NATIONAL RELIGIOUS BROADCASTERS; NATIONAL CENTER FOR PUBLIC POLICY RESEARCH; NEW JERSEY FAMILY POLICY CENTER; NEW MEXICO FAMILY ACTION MOVEMENT; PROJECT 21 BLACK LEADERSHIP NETWORK; RUSSELL KIRK CENTER FOR CULTURAL RENEWAL; STUDENTS FOR

**LIFE OF AMERICA; THE JUSTICE FOUNDATION; AND YOUNG AMERICA'S FOUNDATION.**

_____

J. MARC WHEAT
   *Counsel of Record*
ADVANCING AMERICAN FREEDOM, INC.
801 Pennsylvania Avenue, N.W., Suite 930
Washington, D.C. 20004
(202) 780-4848
MWheat@advancingamericanfreedom.com

May 25, 2023                                 *Counsel for Amici Curiae*

23-10385-HH
*January Littlejohn, et al. v. School Board of Leon County Florida, et al.*

### CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to the Eleventh Circuit rules, the following persons and corporation have an interest in the outcome of this appeal:

1)   Advancing American Freedom, Inc., Amicus Curiae

2)   Able Americans, Amicus Curiae

3)   American Principles Project, Amicus Curiae

4)   American Values, Amicus Curiae

5)   Center For Political Renewal, Amicus Curiae

6)   Center For Urban Renewal And Education (Cure), Amicus Curiae

7)   Christian Law Association, Amicus Curiae

8)   Christians Engaged, Amicus Curiae

9)   Coalition For Jewish Values, Amicus Curiae

10)   Cornwall Alliance For The Stewardship Of Creation, Amicus Curiae

11)   Delaware Family Policy Council, Amicus Curiae

12)   Dr. James Dobson Family Institute, Amicus Curiae

13)   Eagle Forum, Amicus Curiae

14)   Faith And Freedom Coalition, Amicus Curiae

15)   Family Policy Institute of Washington, Amicus Curiae

16)  Frontline Policy Action, Amicus Curiae

17)  Global Liberty Alliance, Amicus Curiae

18)  Congresswoman Vicky Hartzler, Amicus Curiae

19)  International Conference of Evangelical Chaplain Endorsers, Amicus
     Curiae

20)  Missouri Center-Right Coalition, Amicus Curiae

21)  National Association of Parents, Inc. D/B/A ParentsUSA (Or) National
     Association of Parents, Inc. ("ParentsUSA"), Amicus Curiae

22)  National Religious Broadcasters, Amicus Curiae

23)   National Center for Public Policy Research, Amicus Curiae

24)  New Jersey Family Policy Center, Amicus Curiae

25)  New Mexico Family Action Movement, Amicus Curiae

26)  Project 21 Black Leadership Network, Amicus Curiae

27)  Russell Kirk Center for Cultural Renewal, Amicus Curiae

28)   Students For Life of America, Amicus Curiae

29)  The Justice Foundation, Amicus Curiae

30)  Young America's Foundation, Amicus Curiae

31)  J. Marc Wheat, Counsel for Amicus Curiae

The amici curiae Advancing American Freedom, Inc.; Able Americans;
American Principles Project; American Values; Center For Political Renewal;

Center For Urban Renewal And Education (Cure); Christian Law Association; Christians Engaged; Coalition For Jewish Values; Cornwall Alliance For The Stewardship Of Creation; Delaware Family Policy Council; Dr. James Dobson Family Institute; Eagle Forum; Faith And Freedom Coalition; Family Policy Institute Of Washington; Frontline Policy Action; Global Liberty Alliance; International Conference Of Evangelical Chaplain Endorsers; Missouri Center-Right Coalition; National Association Of Parents, Inc. D/B/A ParentsUSA (Or) National Association Of Parents, Inc. ("ParentsUSA"); National Religious Broadcasters; National Center For Public Policy Research; New Jersey Family Policy Center; New Mexico Family Action Movement; Project 21 Black Leadership Network; Russell Kirk Center For Cultural Renewal; Students For Life Of America; The Justice Foundation; and Young America's Foundation are nonprofit corporations. They do not issue stock and are neither owned by nor are the owners of any other corporate entity, in part or in whole. They have no parent companies, subsidiaries, affiliates, or members that have issued shares or debt securities to the public. The corporations are operated by volunteer boards of directors. Congresswoman Vicky Hartzler is a former member of Congress.

Advancing American Freedom, Inc., ("AAF") states under FRAP 29(a)(4)(E) that no counsel for a party other than AAF authored this brief in whole or in part, and no counsel or party other than AAF made a monetary contribution intended to

fund the preparation or submission of this brief. No person other than amicus or its counsel made a monetary contribution to its preparation or submission. Amici present this brief in support of the freedom of speech and the right to petition government for redress of grievances. Plaintiffs-Appellants have consented to the filing of this brief, Counsel for Defendants-Appellants have withheld their consent despite several attempts. We respectfully ask leave of the Court to file this brief. FRAP 29(a)(2).

Respectfully submitted,

/s/ J. Marc Wheat
J. MARC WHEAT
  *Counsel of Record*
ADVANCING AMERICAN FREEDOM, INC.
801 Pennsylvania Avenue, N.W., Suite 930
Washington, D.C. 20004
(202) 780-4848
MWheat@advancingamericanfreedom.com
*Counsel for Amici Curiae*

## TABLE OF CONTENTS

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ................................... C1

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF INTEREST OF *AMICI CURIAE* ................................. 1

STATEMENT OF ISSUE .................................................................... 10

SUMMARY OF THE ARGUMENT .................................................... 11

INTRODUCTION ........................................................................... 11

ARGUMENT .................................................................................. 17

I.   The Actions of the Leon County Schools' Officials in this Case Flout the Fundamental Right of Parents to Direct the Upbringing, Education, and Care of Their Children ..................................................................... 17

    A.   *The Supreme Court, this Court, and the Supreme Court of Florida have all recognized the fundamentality of parental rights in the education and raising of children* ............................................................. 17

    B.   *The significance of the disregard of parental rights in this case is evident when compared to the significant parental involvement in the schools' administration of medication to students* ................................. 19

II.  The Leon County Schools' Actions in This Case Violate the Free Exercise Clause of the First Amendment ..................................................... 23

III. The Leon County Schools Gender Identity Policy Violates the Protection of Pupil Rights Amendment of 1978 ................................................. 25

CONCLUSION ............................................................................... 27

CERTIFICATE OF COMPLIANCE .................................................... 28

VIRUS CHECK CERTIFICATION .................................................... 28

CERTIFICATE OF SERVICE ..................................................................29

# TABLE OF AUTHORITIES

## Cases

*American Canoe Association Inc. v. City of Louisa Water and Sewer Comm'n,*
  389 F.3d 536 (6th Cir. 2004) .................................................................26

*Arnold v. Board of Education,*
  880 F.2d 305 (11th Cir. 1989) ...............................................................17

*Cooper v. State*
  140 Fed. Appx. 845 (11th Cir. 2005) ....................................................24

*Federal Election Commission v. Akins,*
  524 U.S. 11 (1998) ...........................................................................25, 26

*Frazier v. Winn,*
  535 F.3d 1279 (11th Cir. 2008) .............................................................24

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ..............................................................................26

*\*Meyer v. State of Nebraska,*
  262 U.S. 390 (1923) .........................................................................17, 18

*Moore v. East Cleveland,*
  431 U.S. 494 (1977) .........................................................................23, 24

*Obergefell v. Hodges,*
  576 U.S. 644 (2015) ..............................................................................24

*\*Parham v. J. R.,*
  442 U.S. 584 (1979) .........................................................................15, 22

*\*Pierce v. Society of Sisters,*
  268 U.S. 510 (1925) .........................................................................18, 24

*Prince v. Commonwealth of Massachusetts,*
  321 U.S. 158 (1944) ..............................................................................18

*Pub. Citizen v. U.S. Dep't of Justice,*
   491 U.S. 440 (1989) ...............................................................................26

*Quilloin v. Walcott,*
   434 U.S. 246 (1978) ...............................................................................22

*Robertson v. Allied Sols., LLC,*
   902 F.3d 690 (7th Cir. 2018) .................................................................26

*Smith v. Organization of Foster Families,*
   431 U.S. 816 (1977) ...............................................................................19

*\*Troxel v. Granville,*
   530 U.S. 57 (2000) .................................................................................25

*Von Eiff v. Azicri,*
   720 So. 2d 510 (Fla. 1998) ....................................................................17

*\*Wisconsin v. Yoder,*
   406 U.S. 205 (1972) ...................................................................18, 19, 24

*W.W. v. Dep't of Children & Families,*
   218 So. 3d 490 (Fla. 1st Dist., 2017)

**Constitutional Provisions and Statutes**

U.S. Const. amend. I ...................................................................................23

Protection of Pupil Rights Amendment, 20 U.S.C. § 1232h ..................................25

20 U.S.C. § 1232h(b) .................................................................................25

20 U.S.C. § 1232h(c) .................................................................................25

All Writs Act, 28 U.S.C. § 1651 .................................................................26

28 U.S.C. § 2201 ........................................................................................26

42 U.S.C. § 1983 ........................................................................................26

**Regulations**

34 CFR 98.4 ...................................................................................25

34 CFR Part 98..............................................................................25

**Other Authorities**

Virginia Aabram *Secretary of Education Betsy DeVos Speaks at Hillsdale*, (Oct. 22, 2022) https://hillsdalecollegian.com/2020/10/secretary-of-education-betsy-devos-speaks-at-hillsdale/.cite .................................................23

Cass R. Sunstein, *Informational Regulation and Informational Standing: Akins and Beyond*, 147 PA. L. Rev. 613 (1999) ...........................................................26

National Commission on Excellence in Education, *A Nation at Risk*, (1983), https://www.reaganfoundation.org/media/130020/a-nation-at-risk-report.pdf ...........................................................................12, 13, 16

Russell Kirk, *The Conservative Constitution* (1990)...............................................23

Russell Kirk, *The Politics of Prudence* (1993) .......................................................12

*Authorities primarily relied upon

## STATEMENT OF INTEREST OF *AMICI CURIAE*

Advancing American Freedom (AAF) is a nonprofit organization that promotes and defends policies that elevate traditional American values, including freedom of speech and the free exercise of religious belief. AAF believes that a person's freedom of speech and the free exercise of a person's faith are among the most fundamental of individual rights and must be secured, and that parental rights have been established beyond debate as an enduring American tradition.[1] There are 127 AAF member families in Leon County, 11,009 AAF member families in Florida, and 19,013 AAF member families in the 11th Circuit who generously support the work of AAF and wish to have this brief considered, despite Defendants-Appellees withholding consent for AAF to file it.  This calls to mind William F. Buckley, Jr.'s observation that "Liberals claim to want to give a hearing to other views, but then are shocked and offended to discover that there are other views."

Amici curiae are concerned how the Eleventh Circuit's decision in this case will affect the rights of parents living in and outside of the 11th Circuit to raise their children.   Amici are committed to securing fundamental constitutional rights for all Americans against government infringement.

---

[1] All parties received timely notice and Plaintiffs-Appellants have consented to the filing of this brief; Defendants-Appellees have not.  No counsel for a party authored this brief in whole or in part.  No person other than *Amicus Curiae* and its counsel made any monetary contribution intended to fund the preparation or submission of this brief.

Able Americans provides conservative solutions to problems faced by Americans with disabilities. It seeks to positively impact the lives of people with disabilities of all kinds — including special physical needs, mental health, behavioral and substance abuse problems—by removing government-created barriers and advancing free-market solutions that lead to better outcomes.

American Principles Project is the premier conservative political organization engaging in campaigns and elections and working to defend the American family in politics.

American Values, led by President Gary Bauer, is a public policy educational group committed to parents playing the central role in the education of America's children.

The purpose of the Center for Political Renewal (CPR) is to provide policy guidance, model legislation and related resources to lawmakers, and allied organizations, seeking to advocate for policies that further Christian culture, in particular, as it informs family life.

The Center for Urban Renewal and Education (CURE) is a policy and research center dedicated to fighting poverty and restoring dignity through messages of faith, freedom, and personal responsibility. CURE seeks free-market solutions to provide education, employment, healthcare and the opportunity for black families to grow and their communities to flourish.

For over 50 years, Christian Law Association has provided free legal assistance to Bible-believing churches and Christians who are experiencing difficulty in practicing their religious faith because of governmental regulation, intrusion, or prohibition in one form or another. The *Littlejohn* case is of special interest to our organization because we see daily how gender indoctrination at public schools inhibits families from practicing their faith by passing on their religious values to their children without competing values being secretly taught and imposed at public schools.

Christians Engaged is a national discipleship ministry that exists to awaken, motivate, educate, and empower ordinary believers in Jesus Christ to: PRAY for our nation and elected officials regularly, VOTE in every election to impact our culture, and ENGAGE our hearts in some form of civic education and involvement for the well-being of our nation. According to the Bible, God has ordained the family as the foundational institution of human society.

Coalition for Jewish Values ("CJV") is the largest Rabbinic public policy organization in America, representing over 2,500 traditional, Orthodox rabbis. CJV promotes religious liberty, human rights, and classical Jewish ideas in public policy, and does so through education, mobilization, and advocacy, including by filing *amicus curiae* briefs in defense of equality and freedom for religious institutions and individuals.

3

The Cornwall Alliance for the Stewardship of Creation, a network of Christian theologians, natural scientists, economists, and other scholars educating for Biblical earth stewardship, economic development for the poor, and the proclamation and defense of the good news of salvation by God's grace, received through faith in Jesus Christ's death and resurrection.

The vision of the Delaware Family Policy Council is that Delaware be a state where God is honored, religious freedom flourishes, families thrive, and life is cherished.

The Dr. James Dobson Family Institute is a nonprofit organization that uplifts and defends the biblical and traditional framework of the family, which includes parental rights and the freedom to exercise one's religious beliefs. Inherent within these convictions are the freedom of speech and the right for parents to have the principal input and influence over their child's upbringing and academic development. These most foundational rights have been preserved for centuries and must be maintained for the institution of the family to remain intact and flourish.

The mission of Eagle Forum is to empower conservative and pro-family men and women to participate in the process of self-government and public policy-making so that America will continue to be a land of individual liberty, with respect for the nuclear family, public and private virtue, and private enterprise. Its network of statebased chapters share the mission of mobilizing and mentoring grassroots

conservative activists to impact public policy at all levels of government, from Congress to state legislatures, to local commissions and boards. Eagle Forum is organized under section 501(c)(4) of the IRS Code.

Faith and Freedom Coalition is concerned about how this case will affect the rights of parents and
their children to live by their own principles and is committed to securing fundamental constitutional rights against government infringement.

The Family Policy Institute of Washington is a 501(c)(3) non-profit organization founded to help improve and strengthen the family.

Frontline Policy Action is a Georgia-based 501(c)4 organization dedicated to forging public policy and promoting champions for our conservative family values.

The Global Liberty Alliance is a nonprofit organization based in Alexandria, Virginia, and an office in Melbourne, Florida, that defends and advocates for fundamental rights, free enterprise, and the rule of law. The Global Liberty Alliance defends religious liberty, private property, and human rights in the legal and public policy space in the U.S. and with lawyers in other countries. It has and will continue to team with like-minded organizations in the U.S. and foreign countries through litigation, advocacy, and filing amicus curiae briefs to defend equality and freedom for individuals.

Vicky Hartzler is a former Member of Congress from Missouri's Fourth congressional district from 2011 to 2023 and a former public-school teacher. Congresswoman Hartzler is concerned about the growing threat to the fundamental rights of parents to educate and raise their children.

The International Conference of Evangelical Chaplain Endorsers (ICECE) is a conference of evangelical organizations that endorse Christian clergy to be chaplains to provide for the free exercise of religion in the military and other limited-access organizations. ICECE's most important issue is protecting and advancing religious liberty for all chaplains and military personnel. That includes defending and emphasizing the right of chaplains and religious organizations to proclaim and exercise their faith in their daily lives and business transactions. ICECE supports challenges to government encroachments and/or restrictions on religious organizations' autonomy, operations, and internal governance of their affairs.

The Missouri Center-Right Coalition is concerned about how the Eleventh Circuit's decision will affect the rights of parents to raise their children and are committed to securing fundamental constitutional rights against government infringement.

The National Association of Parents, Inc. ("ParentsUSA") is a secular nonpartisan 501(c)(3) nonprofit organization. Since 2013, ParentsUSA has served all legal parents; i.e., mothers and fathers, married or unmarried, biological or

adoptive, and their children throughout the United States by preserving and supporting the parent-child relationship by protecting the constitutional rights of parents — only as the U.S. Supreme Court has recognized those rights.

National Religious Broadcasters (NRB) is a non-profit, membership association that represents the interests of Christian broadcasters throughout the nation. Most of its approximately 1100 member organizations are made up of radio stations, radio networks, television stations, television networks, and the executives, principals, and production and creative staff of those broadcast entities. NRB member broadcasters are both commercial and non-commercial entities. Since 1944, the mission of NRB has been to help protect and defend the rights of Christian media and to maintain access for Christian communicators. Additionally, NRB seeks to effectively minister to the spiritual welfare of the United States of America through the speech it advances to the public.

New Jersey Family Policy Center, Inc. is a 501(c)(4) nonprofit organization, incorporated under the laws of the State of New Jersey. The vision of the New Jersey Family Policy Center sees states where God is honored, Religious Freedom Flourishes, Families Thrive, and Life Is Cherished.

The vision of the New Mexico Family Action Movement is a New Mexico where God is honored, religious freedom flourishes, and families thrive. Thriving families are the key to a successful New Mexico.

7

The National Center for Public Policy Research is a communications and research foundation rooted in the belief that the principles of a free market, individual liberty and personal responsibility provide the greatest hope for meeting the challenges facing America in the 21st century. Its mission focuses on providing the conservative movement with new tools and capabilities to become more effective.

Project 21 Black Leadership Network, a national leadership network for black conservatives, promotes the views of black citizens whose entrepreneurial spirit, dedication to family, and commitment to individual responsibility have not traditionally been echoed by the nation's civil rights establishment. Project 21 has participated as amicus curiae in significant cases involving equal protection principles. *See, e.g., Shelby Cty. v. Holder*, 570 U.S. 529 (2013); and *Bartlett v. Strickland*, 556 U.S. 1 (2009).

The Russell Kirk Center for Cultural Renewal aims to recover, conserve, and enliven those enduring norms and principles that Russell Kirk called the Permanent Things. As Kirk put it, "There are certain permanent things in society: the health of the family, inherited political institutions that insure a measure of order and justice and freedom, a life of diversity and independence, a life marked by widespread possession of private property. These permanent things guarantee against arbitrary interference by the state. These are all aspects of conservative thought, which have

developed gradually as the debate since the French Revolution has gone on." It is the work of the Kirk Center to strengthen the Permanent Things, especially as they relate to America's tradition of order, justice, and freedom.

Students for Life of America ("SFLA") is the nation's largest pro-life organization with an interest in protecting life from the moment of conception, which is threatened by federal agencies' rulemaking without input from American voters. SFLA, a 501(c)(3) charity, exists to recruit, train, and mobilize the Pro-Life Generation to abolish abortion and provide policy, legal, and community support for women and their children, born and preborn. Headquartered in Fredericksburg, Virginia, SFLA has more than 1,400 student groups with thousands of members on middle school, high school, college, university, and law school campuses in all 50 states. The organization was founded in 1977 as a student-run organization, and in 2005 was launched as a full-time operation that now has a nation-wide network of staff and volunteers, including more than 150,000 pro-life advocates trained by SFLA.

The Justice Foundation is a 501(c)(3) charitable foundation that provides free legal representation to protect individual and parental rights across the nation, while enforcing constitutional limits on state authority. It supports the fundamental and natural right of parents to direct the education and upbringing of their own children. The Justice Foundation believes that parental rights are fundamental to the family

and society, and it opposes efforts to expand state authority and control over children at the expense of parental rights.

Young America's Foundation is a 501(c)(3) public charity whose mission is to educate and inspire young Americans from middle school through college with the ideas of individual freedom, a strong national defense, free enterprise, and traditional values. The Foundation accomplishes its mission by providing essential conferences, seminars, and educational materials to young people across the country, and through its school chapter program, Young Americans for Freedom. Chapters often face administrative obstacles on campus, and the Foundation supports students and parents to overcome such obstacles by, for example, filing public records requests to ensure administrators are providing complete information. The Foundation believes that parents are the best administrators of their children's own physical, moral, and educational development.

## STATEMENT OF ISSUE

Whether the trial court erred in ruling that the fundamental right of parents to direct the upbringing of their children is not clearly established so that the individual Defendants are entitled to qualified immunity.

10

## SUMMARY OF THE ARGUMENT

When parents send their children to school, they expect their children to be educated, not to have parental love and authority undermined by willful school employees. In this case, the officials of Leon County Schools (LCS) encouraged the appellant's daughter to use a new name and pronouns, to adopt an entirely new identity, and sought to hide these important personal decisions from her parents. The school in this case was acting in accordance with Guidance issued in 2018 by the District's LGBTQ+ Equity Committee, titled "LCS Lesbian, Gay, Bisexual, Transgender, Gender Nonconforming and Questioning Support Guide," which encourages schools to engage in secretive social manipulation. These actions on the part of the school, an arm of the state, are inconsistent with the fundamental, constitutionally protected right of parents to direct the upbringing of their children, the right of the parents to freely exercise their religious beliefs, and the Protection of Pupil Rights Amendment of 1978. The district court's dismissal of the appellants' claims denied parents the opportunity to have their fundamental First Amendment rights vindicated. This Court should reverse the district court's dismissal.

## INTRODUCTION

Parents expect purposeful stewardship of those formative hours students spend at school to teach children to read and write, to stretch their imagination through math and science, and to acquire through the survey of history and art a familiarity

with the ideas that hold us together.  Parents do not expect school administrators and teachers to indoctrinate children in novel and outlandish social doctrines that undermine their children's basic understanding of reality. Most of all, no parent expects those administrators and teachers to actively encourage their children to conceal important personal information from them. Should schools conceal poor academic performance from parents? Depression? Sexual activity?  Drug use? In this case, appellants sued the School Board of Leon County, Florida after school officials at Deerlake Middle School discussed with their then thirteen-year-old daughter her gender identity and began referring to her by an alternative name and with new pronouns to adopt an entirely new identity, all of which the school concealed from her parents. *Littlejohn v. Leon County Schools*, No. 4:21-CV-00415.

How did we get here?  Confusion in the classroom is not a new concern. In 1983, the National Commission of Excellence in Education released a report called *A Nation at Risk: The Imperative of Educational Reform*.[2] As Russel Kirk observed a decade later, "a great deal of talk about education, and scribbling about it, have occurred. As for any evidences of general improvement, however – why, one does not discover them easily." Russell Kirk, *The Politics of Prudence* 240 (1993). Indeed, even as early as 1983, it seemed that "Our society and its educational

---

[2] National Commission on Excellence in Education, *A Nation at Risk*, (1983), https://www.reaganfoundation.org/media/130020/a-nation-at-risk-report.pdf

institutions" had "lost sight of the basic purposes of schooling…" *A Nation At Risk* 5 (1983). Deerlake Middle School's decision to encourage (and in some cases conceal from parents) students' social gender transition is a particularly astonishing example in today's educational context of that loss of sight.

In 2018, the District's LGBTQ+ Equity Committee issued "LCS Lesbian, Gay, Bisexual, Transgender, Gender Nonconforming and Questioning Support Guide" ("Guidance").[3] This Guidance "authorized LCS administrators and staff to exclude parents from critical decisions regarding their children's care, upbringing, and physical, emotional, and mental health." *Littlejohn v. Leon County Schools*, No. 4:21-CV-00415, para 33.

The Guidance informs educators that parents do not need to be notified if their child begins to adopt an entirely new identity as doing so may be dangerous for students' wellbeing, some of whom have insufficiently tolerant parents. *Id.*, para 47. It says that when a student experiences issues related to his or her gender identity, it is up to the student whether the parents should be notified. *Id.*, para 51. If the student decides that his or her parents are not supportive enough, then, according to the guidance, the parents are not "entitled" to be notified. *Id.*, para 53. Thus, the section

---

[3] *LCS Lesbian, Gay, Bisexual, Transgender, Gender Nonconforming and Questioning Support Guide* found at https://www.politico.com/f/?id=0000017f-d30b-d9e9-a57f-d38b05900000

on privacy transfers from loving parents to vulnerable children the ultimate authority on disclosure in this profoundly serious matter. *Id.*, para 59.

The Guidance displays an underlying bias against parents who might be unwilling to affirm the capacity of their child to choose a different gender. For example, the Guidance notes that students coming forward are not openly so at home for reasons such as safety concerns or lack of acceptance. *Id.*, para 47. None of the "real-world examples" the Guidance includes to illustrate the issues it discusses describe parents who objected to their child's social gender transition, nor does the document anywhere suggest that such opposition would be acceptable.

Additionally, despite the fundamental right of parents to direct the upbringing and mental/medical health care of their children, as well as privacy laws under FERPA, the Guidance makes the dubious claim that, in light of its duty to protect the wellbeing of its students, the school has no obligation to inform, and parents have no right to know, that their child believes he or she lacks sufficient support at home or that their the child does not consent to their being informed. *Id.*, para 59. The Guidance then explains that if a student exhibits signs of or expresses a desire to change his or her gender, school employees should discuss the issue with the student and begin a gender support plan.[4] First there is an intake checklist for the initial meeting which asks whether the student's parents are aware and supportive of the

---

[4] https://www.politico.com/f/?id=0000017f-d30b-d9e9-a57f-d38b05900000

student's gender identity, whether should they be notified, and asks for the student's preferred pronouns and name/gender identification. *Id.* And that is just the beginning. Where it is claimed that (1) the student is the person best situated to determine his or her gender identity and (2) parents should be informed of a change in their child's gender identity only when it is, in a school official's opinion, in the best interest of the child, fundamental questions about the child's wellbeing are necessarily shifted from the parents to the state. *See Parham v. J. R.*, 442 U.S. 584, 602-603 (1979) ("Simply because the decision of a parent is not agreeable to a child or because it involves risks does not automatically transfer the power to make that decision from the parents to some agency or officer of the state.").

Finally, the Guidance reaches the apex of its anti-parent bias when it encourages school officials to conspire with their students to conceal information from those students' parents. The Guidance allows for school personnel to speak with the student first before discussing a student's gender nonconformity or transgender status with the student's parent or guardian, and school officials are also to ask how to refer to the student when talking to their parents or guardians. Guidance at 15. In other words, school officials are to ask whether a student's preferred pronouns should be used in communications with the parents to avoid inadvertently revealing the social transition to the student's parents.

The Guidance's utter disregard for the authority of parents and its encouragement of students to lie to their parents is abhorrent and is inconsistent with the most basic moral norms upon which our society is based. Unless school officials are prepared to make a claim that the child is being abused as defined by law, they have no authority to insert themselves between parents and their children. The actions of Leon County Schools officials in this case directly conflict with one of the most ancient liberties of parents: to direct the upbringing, education, and care of their children.

The most memorable conclusion from *A Nation At Risk* merits new currency in light of the actions of the Leon Schools officials: "If an unfriendly foreign power had attempted to impose… the … educational [policy] that exists today, we might well have viewed it as an act of war. As it stands, we have allowed this to happen to ourselves." *A Nation At Risk* 5 (1983).

American law, from criminal and contract law to sexual and medical consent law, recognizes that juveniles are often not yet mature enough to take full responsibility for their decisions and actions. *Amici* ask this Court to overturn the district court's dismissal of Plaintiffs' claims and thus to recognize parents' natural and fundamental right to protect their children from impulsive and possibly ill-informed decisions and from the adults intent on enabling such decisions.

# ARGUMENT

## I.    The Actions of the Leon County Schools' Officials in this Case Flout the Fundamental Right of Parents to Direct the Upbringing, Education, and Care of Their Children.

### A. The Supreme Court, this Court, and the Supreme Court of Florida have all recognized the fundamentality of parental rights in the education and raising of children.

The Florida Supreme Court has consistently recognized that a parent's liberty interest in child rearing and education is indeed fundamental and "demands the compelling state interest standard." *Von Eiff v. Azicri,* 720 So. 2d 510, 513 (Fla. 1998).    Appeals Courts of Florida have also recognized that "parents have a fundamental liberty interest...in determining the care and upbringing of their children." *W.W. v. Dep't of Children & Families,* 218 So. 3d 490, 493 (Fla. 1st Dist., 2017). This Court has recognized that, as a general matter, parents have the freedom "to inculcate [their] children with values and standards which [they] deem desirable." *Arnold v. Board of Education,* 880 F.2d 305, 313 (11th Cir. 1989). Further, the precedent of the Florida Supreme Court and this Court are consistent with a long line of U.S. Supreme Court cases that have found a parental rights doctrine rooted in the First and Fourteenth Amendments of the U.S. Constitution. *See, e.g.*, *Meyer v. Nebrsaka*, 262 U.S. 390, 399 (1923) ("While this court has not attempted to define with exactness the [due process] liberty . . . Without doubt, it denotes . . . the right of the individual to . . . marry, establish a home and bring up

17

children."); *Pierce v. Society of Sisters*, 268 U.S. 510, 534-35 (1925) (finding that the act challenged in that case, "unreasonably interferes with the liberty of parents and guardians to direct the upbringing and education of children under their control."); *Wisconsin v. Yoder*, 406 U.S. 205, 214 (1972) (citing *Pierce*, 286 U.S. at 535) ("[A] State's interest in education . . . is not totally free from a balancing process when it impinges on fundamental rights and interests, such as those specifically protect by the Free Exercise Clause of the First Amendment, and the traditional interests of parents with respect to the religious upbringing of their children.").

There is no constitutional justification for school officials to conceal from parents some of the most sensitive matters a family may face, except in the most extreme circumstances. For nearly a century, the Supreme Court has repeatedly affirmed the rights and responsibilities inherent in parenthood. *See Pierce*, 268 U.S. at 535 ("The fundamental theory of liberty upon which all governments in this Union repose excludes any general power of the State to standardize its children by forcing them to accept instruction . . . The child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations."); *Meyer*, 262 U.S. at 400 ("It is the natural duty of the parent to give his children education suitable to their station in life."); *Prince v. Commonwealth of Massachusetts*, 321 U.S. 158, 166 (1944) ("It is cardinal with us that the custody, care and nurture of the child reside first in the

parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder . . . It is in recognition of this that these decisions have respected the private realm of family life which the state cannot enter.") *Yoder*, 406 US at 232 (declaring that parental rights have been "established beyond debate as an enduring American tradition."); *Smith v. Organization of Foster Families*, 431 U.S. 816, 845 (1977) ("The liberty interest in family privacy has its source, and its contours are ordinarily to be sought, not in state law, but in intrinsic human rights, as they have been understood in 'this Nation's history and tradition.'") This consistent and clear recognition of parental rights demands on the part of public educators a high regard for the will of parents.

   B. *The significance of the disregard of parental rights in this case is evident when compared to the significant parental involvement in the schools' administration of medication to students.*

The Leon County Schools' policy on the distribution of medication to students demonstrates that they understand the importance of parental consent for even basic interventions. In the Leon County Schools, the distribution of all medications, prescription and over the counter, is closely controlled. With narrow exceptions, medications must be delivered to the school district personnel by hand by the student's parents and administered by the school nurse.[5] The school personnel may

---

[5] Medication Paperwork (floridahealth.gov) at https://leon.floridahealth.gov/programs-and-services/clinical-and-nutrition-services/school-health/_documents/Medication%20Paperwork.pdf

only administer the medication when they have in-writing authorization from a parent on the Medication Permission Form.[6] Further, "whenever possible, an individualized medication administration plan [must] be completed by the school nurse in collaboration with" the student's parents.[7] The medications, if prescription, must be in the labeled pharmacy container, and if over the counter, must be in their original container.[8]

In contrast to Leon's meticulous medication policy, the Guidance requires almost no parental input and the school officials in this case sought none. As discussed above, parents are not to be consulted on issues regarding the student and the Guidance feigns support for parental involvement in other issues of student gender transition. In reality, parents may be kept completely in the dark as school officials coax their children into deep personal confusion. In cases like the one before this Court, students may be allowed to choose new names and demand the use pronouns of the opposite gender or contrived pronouns wholly unconnected to reality, all while school officials encourage those children to lie to their parents, supposedly for their safety. We used to know that when someone told a child, "don't tell mommy and daddy about this," something bad was almost certain to follow. Now, apparently, this approach is the normal course of business for officials at Leon County Schools.

---

[6] *Id.*

[7] *Id*.

[8] *Id*.

As stated above, unless school administrators are prepared to make the serious claim that a parent is abusing his or her child, they have no business involving themselves in the raising of children without parental consent. Representatives of the state cannot simply claim that they are acting in the best interest of the child and on those grounds insinuate themselves between the parents and their children. *See Quilloin v. Walcott*, 434 U.S. 246, 255 (1978) ("We have little doubt that the Due Process Clause would be offended if a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest."). Nor can school officials hide behind the supposed consent of the children in this case. *See Parham v. J. R*., 442 U.S. 584, 602-603 (1979) ("Simply because the decision of a parent is not agreeable to a child or because it involves risks does not automatically transfer the power to make that decision from the parents to some agency or officer of the state."). The child in this case was thirteen years old. She would not be allowed to provide consent for taking medication at school. She cannot legally consent to sexual activity. Contracts with minors may be voidable. She would be tried as a minor in a criminal context. The school's decision to encourage the students to socially transition without their parents' knowledge or consent is as reprehensible as it is illegitimate.

In a speech at Hillsdale College, then-Secretary of Education Betsy DeVos said "the family [is a] sovereign sphere... A sphere that predates the government altogether. It's been said, after all, that the family is not only an institution; it's also the foundation for all other institutions."[9] The right of parents to raise their children, barring extraordinary circumstances, is just as old as the institution of the family and has long been recognized by the Supreme Court as protected by the United States Constitution. By encouraging minor students to socially transition in this case, the Leon County Schools administrators trampled over that fundamental right.

## II.   The Leon County Schools' Actions in This Case Violate the Free Exercise Clause of the First Amendment.

The Free Exercise Clause of the First Amendment, applicable to the States under the Fourteenth Amendment, provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. amend. I. This Court has a duty to safeguard religious freedom because "[a]*ny political constitution develops out of a moral order; and every moral order has been derived from religious beliefs.*" Russell Kirk, *The Conservative Constitution* 174 (1990). And it is the family, the most basic societal institution, where religious beliefs are most often passed on to the next generation. Indeed, "Our decisions establish that the Constitution protects

---

[9] Virginia Aabram *Secretary of Education Betsy DeVos Speaks at Hillsdale*, (Oct. 22, 2022) https://hillsdalecollegian.com/2020/10/secretary-of-education-betsy-devos-speaks-at-hillsdale/.cite

the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition. It is through the family that we inculcate and pass down many of our most cherished values, moral and cultural." *Moore v. East Cleveland*, 431 U.S. 494, 503 (1977). The parental right to raise children includes the right to teach them to live according to a particular religion's teachings. *See Yoder*, 406 U.S. at 233 ("[T]he Court's holding in *Pierce* stands as a charter of the rights of parents to direct the religious upbringing of their children."). As the Supreme Court observed in *Obergefell v. Hodges*, 576 U.S. 644, 679 (2015), "[t]he First Amendment ensures that religious organizations and persons are given proper protection as they seek to teach the principles that are so fulfilling and so central to their lives and faiths."

The First Circuit has considered cases like the case at bar and some that are distinct. First, in *Cooper v. State*, 140 Fed. Appx. 845 (11th Cir. 2005), this Court held that the State of Florida was under no obligation to subsidize the parents' exercise of their fundamental right to choose the education of their children, due to which the parents were free to make the determination that the schools were failing at any time. In *Frazier v. Winn*, 535 F.3d 1279 (11th Cir. 2008), this Court said the parents' fundamental right to control their children's upbringing is greater than that of a student's right of refusal to participate in the pledge, therefore that mandating a

parental consent requirement before allowing a student's nonparticipation is constitutional.

The Supreme Court has clearly recognized, time and again, the fundamentality of the parental right. Therefore, given the significance of the harm to constitutional interests in this case, the parents' claims deserve to be heard and so the district court's dismissal should be reversed.

## III. The Leon County Schools Gender Identity Policy Violates the Protection of Pupil Rights Amendment of 1978.

The Protection of Pupil Rights Amendment, 20 U.S.C. § 1232h and 34 CFR Part 98, protects public school children by empowering parents in two primary ways. First, it provides parents with robust informational rights regarding school activities that touch upon or affect family privacy. *See* 20 U.S.C. §§ 1232h(b), (c). Second, it guarantees to parents the right to prior notice and an opportunity to opt out their children from (1) surveys and information gathering not directly related to academic instruction that is designed to elicit information about attitudes, habits, traits, opinions, beliefs or feelings; and (2) activities involving the planned, systematic use of methods or techniques that are not directly related to academic instruction and that are designed to affect behavioral, emotional, or attitudinal characteristics of an individual or group (e.g., socio-emotional learning). 34 CFR 98.4. The Pupil Rights Amendment codifies, in part, parents' well-established constitutional liberty interest

in family privacy and in controlling their children's education and upbringing. *See Troxel v. Granville*, 530 U.S. 57, 65 (2000). (citations omitted).

The District's violations of the Pupil Rights Amendment are actionable in federal court. The Supreme Court has repeatedly recognized that a statutory right to information also confers constitutional standing. *See Federal Election Commission v. Akins*, 524 U.S. 11, 20-21 (1998) ("injury in fact" includes the inability to obtain information that must be disclosed by statute); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 (1992) (standing if plaintiffs "are seeking to enforce a procedural requirement the disregard of which could impair a separate concrete interest of theirs"); *American Canoe Association Inc. v. City of Louisa Water and Sewer Comm'n*, 389 F.3d 536 (6th Cir. 2004); *see also* Cass R. Sunstein, *Informational Regulation and Informational Standing: Akins and Beyond*, 147 PA. L. Rev. 613, 650 (1999). The injury is not that the appellees are merely failing to obey the law; it is that they are disobeying the law by failing to turn over information that parents desire and need, and thereby directly impairing their ability to use it for the Pupil Rights Amendment's substantive purpose – protecting familial privacy and ensuring parents have the right to control their child's education. *See Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989); *Robertson v. Allied Sols., LLC*, 902 F.3d 690, 694 (7th Cir. 2018). Remedies could include a declaration of rights under 28

U.S.C. § 2201, a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651, and/or damages under 42 U.S.C. § 1983.

There is always a more life-affirming solution to gender confusion in a minor than secret advice from a non-parent authority that months or years later may lead to chemical sterilization and surgical mutilation of what is otherwise a healthy young boy or girl. The Leon County Schools' approach to social transitioning students from one gender to the other concretely harms parents and is not, and does not purport to be, directly related to academic instruction. By acting consistent with the Guidance, Leon County Schools have adopted a policy of withholding information from parents absent the student's supposed consent. In other words, the District explicitly denies parents their statutory rights to know about, and opt out of, its federally regulated information gathering and its activities designed to affect their child's behavior, emotions, or attitudes. Accordingly, the actions of the Leon County Schools officials in this case were unlawful.

## CONCLUSION

This Court should reverse the district court and enter a preliminary injunction in favor of the parents.

Respectfully submitted,

<u>/s/ J. Marc Wheat</u>
J. Marc Wheat
Advancing American Freedom, Inc.
801 Pennsylvania Avenue, N.W.
Suite 930
Washington, D.C. 20004
(202) 780-4848
mwheat@advancingamericanfreedom.com

*Counsel for Amicus Curiae*

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Fed. R. App. P. 29(d) because:

This brief contains 5,956 words, including footnotes, but excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.


DATED:    May 25, 2023          /s/ J. Marc Wheat
                                J. Marc Wheat

**VIRUS CHECK CERTIFICATION**

The electronic version of the addendum has been scanned for viruses and is virus-free.


DATED:    May 25, 2023          /s/ J. Marc Wheat
                                J. Marc Wheat

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2023, I electronically filed the foregoing brief with the Clerk for filing and transmittal of a Notice of Electronic Filing to the participants in this appeal who are registered CM/ECF users.


DATED:      March 25, 2023                    /s/ J. Marc Wheat
                                              J. Marc Wheat