## 23-10385

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

*for the*

# 𝔈𝔩𝔢𝔳𝔢𝔫𝔱𝔥 ℭ𝔦𝔯𝔠𝔲𝔦𝔱

JANUARY LITTLEJOHN, JEFFREY LITTLEJOHN,

*Plaintiffs – Appellants,*

versus

SCHOOL BOARD OF LEON COUNTY, FLORIDA, ROBIN OLIVERI, RACHEL THOMAS, ROCKY HANNA, DR. KATHLEEN RODGERS,

*Defendants – Appellees.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA, TALLAHASSEE DIVISION
THE HONORABLE MARK E. WALKER
CASE NO: 4:21-CV-00415-MW-MJF

## BRIEF OF *AMICUS CURIAE* PARENTAL RIGHTS FOUNDATION IN SUPPORT OF PLAINTIFFS – APPELLANTS AND IN SUPPORT OF REVERSAL

WILLIAM A. ESTRADA
PARENTAL RIGHTS FOUNDATION
One Patrick Henry Circle
Purcellville, Virginia 20132
(540) 751-1200
will@parentalrights.org

*Counsel for Amicus Curiae*
*Parental Rights Foundation*

*Littlejohn, et al. v. School Board of Lean County, Florida, et al.*

Case No. 23-10385

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Amicus curiae Parental Rights Foundation is a nonprofit corporation, and does not issue stock, and is neither owned by nor is the owner of any other corporate entity, in part or in whole. Amicus curiae does not have any parent corporation, subsidiary, affiliate, or member that has issued shares or debt securities to the public, nor is there any publicly held company that owns 10% or more of amicus curiae's stock. Amicus curiae is operated by a volunteer board of directors.

Pursuant to this Court's Local Rules 26.1-1 through 26.1-3, Amicus Curiae certifies that the name of each person, attorney, association of persons, firm, law firm, partnership, nonprofit organization, and corporation that has or may have an interest in the outcome of this action — including subsidiaries, conglomerates, affiliates, parent corporations, publicly-traded companies that own 10% or more of a party's stock, and all other identifiable legal entities related to any party in the case is limited to the following:

Broyles, Vernadette – Counsel for Appellants

Child & Parental Rights Campaign, Inc. – Counsel for Appellants

Estrada, William A. – Counsel for Amicus Curiae

Hanna, Rocky – Defendant-Appellee

Harmon, Terry J. – Counsel for Appellees

*Littlejohn, et al. v. School Board of Lean County, Florida, et al.*

Case No. 23-10385

Jones, Darryl – School Board Member

Lawson Cox, Laurie – School Board Member

Littlejohn, January – Appellant

Littlejohn, Jeffrey – Appellant

McAlister, Mary E. – Counsel for Appellants

Nicolas, Marcus – School Board Member

Oliveri, Robin – Appellee

Parental Rights Foundation – Amicus Curiae

Rodgers, Kathleen – Appellee

School Board of Leon County – Appellee

Slanker, Jeffrey D. – Counsel for Appellees

Sniffen & Spellman, P.A. – Counsel for Appellees

Spellman, Michael P. – Counsel for Appellees

Swafford Smith, Alva – School Board Member

Thomas, Rachel – Appellee

Trakas, Ernest G. – Counsel for Appellants

Walker, Hon. Mark E. – Chief United States District Judge

Wood, Rosanne – School Board Member

/s/ William A. Estrada

*Counsel for Amicus Curiae*
*Parental Rights Foundation*

C2 of 2

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ...................................................................... C1

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ..................................................................... ii

INTEREST OF AMICUS CURIAE .......................................................... 1

INTRODUCTION ....................................................................................... 2

STATEMENT OF ISSUE ........................................................................... 2

SUMMARY OF ARGUMENT .................................................................... 2

ARGUMENT ............................................................................................... 4

    I.     U.S. Supreme Court Precedent Shows that Parental Rights are Fundamental, Well-Established, and Well-Understood ........................ 4

    II.    Strict Scrutiny is the Correct Standard of Review for Fundamental Parental Rights .............................................................. 15

    III.   This Court's Past Precedent Supports Parents' Position .................... 17

CONCLUSION ......................................................................................... 20

CERTIFICATE OF COMPLIANCE ........................................................ 21

CERTIFICATE OF SERVICE ................................................................. 22

# TABLE OF AUTHORITIES

## CASES

*Arnold v. Bd. of Educ. of Escambia County*,
    880 F.2d 305 (11th Cir. 1989), *abrogated by*
    *Leatherman v. Tarrant County Narcotics*
    *Intelligence and Coordination Unit*,
    507 U.S. 163 (1993)......................................................................18

*Booth v. Bowser*,
    597 F. Supp. 3d 1 (D.D.C. March 18, 2022) ...................................3

*Cleveland Board of Education v. LaFleur*,
    414 U.S. 632 (1974)........................................................................8

*Crider v. Williams*,
    No. 21-13797, 2022 WL 3867541 (11th Cir. Aug. 30, 2022).......19

*Doe v. Kearney*,
    329 F.3d 1286 (11th Cir. 2003).....................................................18

*Frazier ex rel. Frazier v. Winn*,
    535 F.3d 1279 (11th Cir. 2008)...............................................17, 18

*Littlejohn v. School Board of Leon County Florida*,
    2022 WL 18670372 (N.D. Fla. Dec. 22, 2022) ........................3, 19

*Lofton v. Secretary of Dept. of Children and Family Services*,
    358 F.3d 804 (11th Cir. 2004).......................................................19

*Maddox v. Stephens*,
    727 F.3d 1109 (11th Cir. 2013)..................................................3, 19

\* *Meyer v. Nebraska*,
    262 U.S. 390 (1923)...............................................................4, 5, 6

*Moore v. East Cleveland*,
    431 U.S. 494 (1977).......................................................................9

*Parham v. J. R.*,
    442 U.S. 584 (1979)..................................................................11, 12

\* *Pierce v. Society of Sisters of The Holy Names of Jesus And Mary*,
    268 U.S. 510 (1925)......................................................................6

*Prince v. Massachusetts*,
    321 U.S. 158 (1944)................................................................6, 7, 8

*Quilloin v. Walcott*,
    434 U.S. 246 (1978)....................................................................10

*Reno v. Flores*,
    507 U.S. 292 (1993)..............................................................12, 13, 15

*Santosky v. Kramer*,
    455 U.S. 745 (1982)....................................................................12

*Smith v. Organization of Foster Families*,
    431 U.S. 816 (1977)....................................................................10

*Stanley v. Illinois*,
    405 U.S. 645 (1978)..................................................................10, 11

\* *Troxel v. Granville*,
    530 U.S. 57 (2000)................................................................1, 2, 14, 16

*Washington v. Glucksberg*,
    521 U.S. 702 (1997)..............................................................13, 15

\* *Wisconsin v. Yoder*,
    406 U.S. 205 (1972)................................................................7, 8, 15

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. V.................................................................15

U.S. CONST. amend. XIV ................................................*passim*

**OTHER AUTHORITIES**

Declaration of Independence .........................................................................5

John Locke, Second Treatise of Civil Government, 1690 ....................................4, 5

*Authorities primarily relied upon*

## INTEREST OF AMICUS CURIAE

The Parental Rights Foundation (PRF) is a national, nonprofit, nonpartisan, advocacy organization with supporters in all fifty states.

PRF seeks to preserve the legal protection afforded to loving and fit parents to raise, nurture, and educate their children without undue state interference. Concerned with the erosion of this legal protection, PRF seeks to protect children by preserving the liberty of their parents. PRF furthers this mission by educating those in government and the public about the need to roll back intrusive state mechanisms that harm more children than they help, and about the need to strengthen fundamental parental rights at all levels of government.

The United States Supreme Court has repeatedly recognized and held that parents have a fundamental right to direct the care, custody, education, and control of their children. *See, e.g.,* most recently in *Troxel v. Granville*, 530 U.S. 57 (2000). Yet parents continue to encounter obstacles in exercising those rights—in schools, in hospitals, in their communities, and in the family court system. When government authorities refuse to recognize the Constitution as a limit on the exercise of its power, the problem exacerbates. PRF submits this amicus brief because this case represents what is rapidly becoming all too-common in public schools: 1) school personnel ignoring the fundamental nature of parental rights; 2) school personnel believing they can encourage minor children to hide vital information from their parents;

3) school personnel encouraging children to disobey and ignore their parents' wishes; and 4) school personnel deceiving parents and hiding information about their own children from them.

No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person—other than the amicus curiae, its members, or its counsel—contributed money that was intended to fund preparing or submitting this brief. Counsel for Appellants have consented to the filing, but counsel for Appellees have not.

## INTRODUCTION

This brief examines the history of parental rights case law before the U.S. Supreme Court, as well as key decisions regarding parental rights from the Eleventh Circuit.

## STATEMENT OF ISSUE

Whether the District Court erred in ruling that the right of parents to direct the upbringing, education, and care of their children is not clearly established as a fundamental right.

## SUMMARY OF ARGUMENT

The interest of parents "in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by [the U.S.

Supreme] Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (internal punctuation removed). The issues before the Court in this case are not difficult. The District Court's conclusion that the case should be dismissed because "[p]arental liberty interests under the U.S. Constitution are a 'murky area of unenumerated constitutional rights,'" *Littlejohn v. School Board of Leon County Florida*, 2022 WL 18670372 *9 (N.D. Fla. Dec. 22, 2022) (quoting *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013)) fundamentally misunderstands the history of parental rights in our nation, and how the federal courts recognize this right.

U.S. Supreme Court precedent makes it clear that public schools may not actively attempt to hide information from a parent about the parents' thirteen-year-old child.

Other federal courts hold that an eleven-year-old is too young to consent to a vaccine without parental consent, even if the public school provided appropriate information to the child. *See, e.g., Booth v. Bowser*, 597 F. Supp. 3d 1 (D.D.C. March 18, 2022). Certainly, a thirteen-year old's name, pronouns, choice of bathroom, rooming assignment during a school field trip, and gender identity[1] should involve the child's parents, and not be hidden from the parent by the public school. Case law is clear that public schools do have broad authority – to adopt curriculum, to include

---

[1] *Littlejohn v. School Board of Leon County Florida*, 2022 WL 18670372 *1 (N.D. Fla. Dec. 22, 2022).

or not include certain books in school libraries, to administer surveys (after notifying parents), and to teach children about controversial topics. But case law is likewise clear that public schools may not attempt to deceive parents and hide key information about their own child from them.

## ARGUMENT

### I.    U.S. Supreme Court Precedent Shows that Parental Rights are Fundamental, Well-Established, and Well-Understood

The U.S. Supreme Court first examined the issue of parental rights in the context of state action infringing upon that right 100 years ago, in the case of *Meyer v. Nebraska*, 262 U.S. 390 (1923). Prior to this infringement, no controversy existed between the state and parents as the deeply rooted historical and legal traditions of the nation recognized the family as the backbone of society. For example, John Locke, wrote the following in 1690:

> "Adam was created a perfect man, his body and mind in full possession of their strength and reason, and so was capable, from the first instant of his being, to provide for his own support and preservation, and govern his action according to the dictates of the law of reason which God had implanted in him. From him the world is peopled with his descendants, who were all born infants, weak and helpless, without knowledge or understanding: but to supply the defects of this imperfect state, till the improvement of growth and age hath removed them, Adam and Eve, and after them all parents were, by the law of nature, under an obligation to preserve, nourish, and educate the children they had begotten; not as their own workmanship, but the workmanship of their own maker, the Almighty, to whom they were to be accountable for them….

This is that which puts the authority into the parents' hands to govern the minority of their children. God hath made it their business to employ this care on their offspring, and hath placed in them suitable inclinations of tenderness and concern to temper this power, to apply it, as his wisdom designed it, to the children's good, as long as they should need to be under it."

John Locke, Second Treatise of Civil Government, 1690, Sec. 56, Sec. 63.

In the early 20th century, a rise of political and social activism sought to alter those deeply rooted historic views on family and government. And this activity directly led to *Meyer v. Nebraska.*

The state of Nebraska passed a law prohibiting parents from having their children taught in another language. Robert Meyer, a teacher at a small Lutheran private school, was convicted of violating the law.

The Supreme Court held in its decision that "it is the natural duty of the parent to give his children education suitable to their station in life." *Id.* at 400. This reasoning hearkened back to the Declaration of Independence, in which our Founders recognized two crucial ideas: 1) our rights come not from government, but from "the Laws of Nature and of Nature's God," and 2) that "all men are created equal [and] that they are endowed by their Creator with certain unalienable Rights[.]" *Declaration of Independence*, at 1.

In *Meyer*, the Supreme Court explained that "[t]he individual has certain fundamental rights which must be respected. ... [The individual] cannot be coerced

by methods which conflict with the Constitution — a desirable end cannot be promoted by prohibited means." *Meyer*, at 401.

And then, the Court did something logically spectacular: it went back to the family as the building block of society. As classically trained people, the justices on the Court rejected the Greek philosopher Plato's musing that "children are to be common" as contrary to our own nation's founding:

> "Although such measures have been deliberately approved by men of great genius, their ideas touching the relation between individual and State were wholly different from those upon which our institutions rest, and it hardly will be affirmed that any legislature could impose such restrictions upon the people of a State without doing violence to both letter and spirit of the Constitution."

*Meyer*, at 402.

Importantly, the Court found that parental rights are a substantive due process right within the Fourteenth Amendment. *Meyer*, at 398.

Two years later, in *Pierce v. Society of The Sisters of The Holy Names of Jesus And Mary*, 268 U.S. 510 (1925), in a case challenging an Oregon law standardizing education of children in public schools and centralizing it within state power, the Court unanimously again found that parental rights are a substantive due process right within the Fourteenth Amendment, building upon the foundation laid in *Meyer:* "[t]he child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." *Pierce*, at 535.

6

Less than twenty years later, the U.S. Supreme Court again recognized parental rights in *Prince v. Massachusetts*, 321 U.S. 158 (1944). Here, the guardian of a nine-year-old girl was convicted of allowing her child to sell Jehovah's Witness publications in violation of a state law protecting children from labor violations. While upholding the conviction, the Court affirmed a key concept of parental rights:

> "[i]t is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder. . . . It is in recognition of this that these decisions have respected the private realm of family life which the state cannot enter."

*Id.* at 166.

Four Justices dissented from the Court's decision and would have overturned the woman's conviction. Indeed, Justice Murphy wrote in his dissent, foreshadowing the Court's ruling twenty-eight years later in *Wisconsin v. Yoder*, the following: "Nor can parents or guardians be subjected to criminal liability because of vague possibilities that their religious teachings might cause injury to the child. The evils must be grave, immediate, substantial." *Prince*, at 175 (J. Murphy, dissenting).

Then came 1972, and perhaps the most well-known Supreme Court decision affirming parental rights, *Wisconsin v. Yoder*, 406 U.S. 205 (1972). There the Court overturned the convictions of members of the Old Order Amish religion and the Conservative Amish Mennonite Church who were convicted of violating Wisconsin's compulsory attendance statute by not sending their children to public

school after the eighth grade. The Court said, "[t]he values of parental direction of the religious upbringing and education of their children in their early and formative years have a high place in our society. … Even more markedly than in *Prince*, therefore, this case involves the fundamental interest of parents, as contrasted with that of the State, to guide the religious future and education of their children. The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition." *Yoder*, 406 U.S. 205, 213-214, 232 (1972).

The District Court's decision cannot be reconciled with the Supreme Court's decision in *Yoder*. If school officials knowingly contradict parents and hide vital information from them, there is no way that the parents can "guide the religious future and education of their children." *Id.* There is also no way that the parents can exercise "parental concern for the nurture and upbringing of their children." *Id.* The District Court's reasoning undermines the Supreme Court's decision in *Yoder*, and the Supreme Court's recognition that parents, not government officials (even public-school teachers) are the ones with the "primary role … in the upbringing of their children…" *Id.*

Two years after *Yoder* came *Cleveland Board of Education v. LaFleur*, 414 U.S. 632 (1974). Although this case dealt with school board policies requiring

pregnant teachers to take involuntary maternity leave, the Supreme Court once again reaffirmed that "[t]his Court has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." *Id.* at 639-640.

In 1977, in a case dealing with who exactly constitutes a family in the context of a local housing ordinance, the Supreme Court again reiterated that "[o]ur decisions establish that the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition. It is through the family that we inculcate and pass down many of our most cherished values, moral and cultural." *Moore v. East Cleveland*, 431 U.S. 494, 503-504 (1977).

Also in 1977, in a case dealing with New York State and New York City's policies regarding the removal of foster children from foster homes, the Supreme Court again reaffirmed the family as the building block of society that predates the government of the United States:

> "But there are also important distinctions between the foster family and the natural family. First, unlike the earlier cases recognizing a right to family privacy, the State here seeks to interfere, not with a relationship having its origins entirely apart from the power of the State, but rather with a foster family which has its source in state law and contractual arrangements. The individual's freedom to marry and reproduce is older than the Bill of Rights. Accordingly, unlike the property interests that are also protected by the Fourteenth Amendment, the liberty interest in family privacy has its source, and its contours are ordinarily

> to be sought, not in state law, but in intrinsic human rights, as they have
> been understood in this Nation's history and tradition."

*Smith v. Organization of Foster Families*, 431 U.S. 816, 845 (1977) (internal

citations and quotations omitted).

This decision from the Supreme Court once again stands in stark contrast with

the District Court's opinion in this case. Under a proper understanding of Supreme

Court precedent, the District Court should have held for the parents.

Returning to Supreme Court precedent, in the 1978 case of *Quilloin v.*

*Walcott*, 434 U.S. 246 (1978), a family law case dealing with a natural father's

challenge to the adoption of his child by the child's stepfather, the Court stated,

"[w]e have recognized on numerous occasions that the relationship between parent

and child is constitutionally protected. … We have little doubt that the Due Process

Clause would be offended if a State were to attempt to force the breakup of a natural

family, over the objections of the parents and their children, without some showing

of unfitness and for the sole reason that to do so was thought to be in the children's

best interest." *Id.* at 255.

That is exactly what is happening in the case before this Court. No parental

unfitness exists. Indeed, there has not even been an allegation of parental unfitness.

Also in 1978, in another family law case dealing with a dependency

proceeding, the Supreme Court decided *Stanley v. Illinois*, 405 U.S. 645 (1978). The

Supreme Court held for the unwed father and once again reaffirmed the importance

of parental rights:

> "The Court has frequently emphasized the importance of the family.
> The rights to conceive and to raise one's children have been deemed
> essential, basic civil rights of man, and rights far more precious than
> property rights. It is cardinal with us that the custody, care and nurture
> of the child reside first in the parents, whose primary function and
> freedom include preparation for obligations the state can neither supply
> nor hinder. The integrity of the family unit has found protection in the
> Due Process Clause of the Fourteenth Amendment, the Equal
> Protection Clause of the Fourteenth Amendment, and the Ninth
> Amendment."

*Id.* at 651 *(cleaned up).*

One year later came *Parham v. J. R.*, 442 U.S. 584 (1979), where the Supreme

Court made this ringing pronouncement that stands in stark contrast to the District

Court's decision in this case:

> "Our jurisprudence historically has reflected Western civilization
> concepts of the family as a unit with broad parental authority over
> minor children. Our cases have consistently followed that course; our
> constitutional system long ago rejected any notion that a child is the
> mere creature of the State and, on the contrary, asserted that parents
> generally have the right, coupled with the high duty, to recognize and
> prepare their children for additional obligations. … The law's concept
> of the family rests on a presumption that parents possess what a child
> lacks in maturity, experience, and capacity for judgment required for
> making life's difficult decisions. More important, historically it has
> recognized that natural bonds of affection lead parents to act in the best
> interests of their children. 1 W. Blackstone, Commentaries * 447; 2 J.
> Kent, Commentaries on American Law * 190. … The statist notion that
> governmental power should supersede parental authority in *all* cases
> because *some* parents abuse and neglect children is repugnant to
> American tradition. Simply because the decision of a parent is not
> agreeable to a child or because it involves risks does not automatically

11

transfer the power to make that decision from the parents to some agency or officer of the state. … Most children, even in adolescence, simply are not able to make sound judgments concerning many decisions, including their need for medical care or treatment. Parents can and must make those judgments. … We cannot assume that the result in *Meyer v. Nebraska*, and *Pierce v. Society of Sisters*, would have been different if the children there had announced a preference to learn only English or a preference to go to a public, rather than a church, school. The fact that a child may balk at hospitalization or complain about a parental refusal to provide cosmetic surgery does not diminish the parents' authority to decide what is best for the child. Neither state officials nor federal courts are equipped to review such parental decisions."

*Id.* at 602-604 *(cleaned up).*

In 1982, in a child neglect case from New York, the Supreme Court again reaffirmed the importance of parental rights, saying,

"[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. … [U]ntil the State proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship."

*Santosky v. Kramer*, 455 U.S. 745, 753, 760 (1982).

Eleven years later, the Supreme Court decided a case dealing with non-resident immigrant juveniles who were detained by the federal government, *Reno v. Flores*, 507 U.S. 292 (1993). A particular line of the case is exceedingly helpful in reminding the lower courts that parental rights must be respected as a constitutional

limit on the exercise of state power, even if nonparents believe they would do a better

job making decisions for a child than the child's parents:

> "'The best interests of the child,' a venerable phrase familiar from
> divorce proceedings, is a proper and feasible criterion for making the
> decision as to which of two parents will be accorded custody. But it is
> not traditionally the sole criterion—much less the sole constitutional
> criterion—for other, less narrowly channeled judgments involving
> children, where their interests conflict in varying degrees with the
> interests of others. Even if it were shown, for example, that a particular
> couple desirous of adopting a child would best provide for the child's
> welfare, the child would nonetheless not be removed from the custody
> of its parents so long as they were providing for the child adequately.
> Similarly, 'the best interests of the child' is not the legal standard that
> governs parents' or guardians' exercise of their custody: So long as
> certain minimum requirements of child care are met, the interests of the
> child may be subordinated to the interests of other children, or indeed
> even to the interests of the parents or guardians themselves."

*Id.* at 303-304 (internal citations omitted).

In the 1997 case of *Washington v. Glucksberg*, 521 U.S. 702 (1997), the

Supreme Court upheld Washington State's law banning assisted suicide. The Court

in that case reaffirmed that parental rights are a fundamental right, and that strict

scrutiny should be utilized in reviewing governmental actions infringing upon

parental rights: "In a long line of cases, we have held that, in addition to the specific

freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due

Process Clause includes the rights . . . to direct the education and upbringing of one's

children. … The Fourteenth Amendment forbids the government to infringe

'fundamental' liberty interests *at all*, no matter what process is provided, unless the

infringement is narrowly tailored to serve a compelling state interest." *Id.* at 720 - 721 (cleaned up).

And most recently, in the grandparent visitation case of *Troxel v. Granville*, 530 U.S. 57 (2000), the Supreme Court summed up almost a century's worth of precedence, stating, "[t]he liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court. … In light of this extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children. … The Due Process Clause does not permit a State to infringe on the fundamental right of parents to make childrearing decisions simply because a state judge believes a 'better' decision could be made." *Id.* at 65-66, 72-73.

In this case the Leon County School District and the Leon County School District personnel believed that a "better" decision could be made concerning the names, pronouns, rooming assignments, and personal decisions of a thirteen-year-old minor child than the decisions made by the child's fit and loving parents. Under clear Supreme Court precedent, such interference with the fundamental rights of parents violates the Due Process Clause of the Fourteenth Amendment.

## II.    Strict Scrutiny is the Correct Standard of Review for Fundamental Parental Rights

As demonstrated *supra*, parental rights are fundamental. And as a fundamental right, the correct standard of review is strict scrutiny: "The Fourteenth Amendment forbids the government to infringe 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (cleaned up). In *Reno v. Flores*, 507 U.S. 292, 301-302 (1993) the Court said "the Fifth and Fourteenth Amendments' guarantee of 'due process of law' [] include[s] a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." Using different terminology, but still standing for strict scrutiny, the Supreme Court explained this in *Wisconsin v. Yoder:* "The essence of all that has been said and written on the subject is that only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion. We can accept it as settled, therefore, that, however strong the State's interest in universal compulsory education, it is by no means absolute to the exclusion or subordination of all other interests." *Id.* at 215.

15

In *Troxel* the Court reaffirmed the fundamental nature of parental rights and, in the context of nonparental visitation cases decided under state law,[2] the Court held for the parent and found Washington's nonparental visitation statute unconstitutional without needing to reach a strict scrutiny determination: "[Washington's nonparental visitation statute] unconstitutionally infringes on that fundamental parental right. The Washington nonparental visitation statute is breathtakingly broad." *Id.*at 67. And the Supreme Court made it clear prior to its declaration that parental rights are a fundamental right that "[t]he [Fourteenth Amendment's Due Process] Clause also includes a substantive component that 'provides heightened protection against government interference with certain fundamental rights and liberty interests.'" *Id.* at 65.

Parental rights are fundamental rights. As such, they require strict scrutiny analysis.

---

[2] "Because we rest our decision on the sweeping breadth of [Washington's nonparent visitation statute] and the application of that broad, unlimited power in this case, we do not consider the primary constitutional question passed on by the Washington Supreme Court—whether the Due Process Clause requires all nonparental visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation. We do not, and need not, define today the precise scope of the parental due process right in the visitation context." *Troxel*, at 73.

### III.    This Court's Past Precedent Supports Parents' Position

This Court has a rich history of protecting parental rights as fundamental, and of ensuring that parents do not lose their fundamental parental rights simply because they choose to enroll their children in a public school that is funded by their own tax dollars.

First, and most applicable to the case before the Court, is *Frazier ex rel. Frazier v. Winn*, 535 F.3d 1279 (11th Cir. 2008). This Court upheld in part Florida's law requiring *all* public-school students, whether elementary school students or high school students, to recite the Pledge of Allegiance, unless a student provided the school with a written excusal from the student's parent (this Court struck down the requirement in the Florida law that students stand at attention when the Pledge of Allegiance was recited). This Court wrote strongly in favor of the parental rights of their own children in public schools:

> "We see the statute before us now as largely a parental-rights statute. … The State, in restricting the student's freedom of speech, advances the protection of the constitutional rights of parents: an interest which the State may lawfully protect. … Although we accept that the government ordinarily may not compel students to participate in the Pledge, we also recognize that a parent's right to interfere with the wishes of his child is stronger than a public school official's right to interfere on behalf of the school's own interest. And this Court and others have routinely acknowledged parents as having the principal role in guiding how their children will be educated on civic values. We conclude that the State's interest in recognizing and protecting the rights of parents on some educational issues is sufficient to justify the restriction of some students' freedom of speech. Even if the balance of parental, student, and school rights might favor the rights of a mature

17

high school student in a specific instance, Plaintiff has not persuaded us that the balance favors students in a substantial number of instances—particularly those instances involving elementary and middle school students—relative to the total number of students covered by the statute."

*Frazier*, at 1284-1285 (cleaned up).

The *Frazier* decision is critically relevant for several reasons. It shows that this Court has a history of protecting the rights of parents over their own children in public schools. It shows that this Court understands that the protection of parental rights may even be more important than a minor's own rights. And it shows that this Court recognizes that there is a difference between an elementary or middle school student (like the then-thirteen-year-old child in the case before this Court) and a mature high school student. Under *Frazier*, the parents in the case before this Court should prevail, and the District Court's dismissal of the parents' suit should be reversed.

Second, this Court has long recognized that parental rights are fundamental. In addition to *Frazier*, other key cases are *Arnold v. Bd. of Educ. of Escambia County*, 880 F.2d 305, 313 (11th Cir. 1989), *abrogated by Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993) ("Within the constitutionally protected realm rests the parental freedom to inculcate one's children with values and standards which the parents deem desirable."); *Doe v. Kearney*, 329 F.3d 1286, 1292 (11th Cir. 2003) ("Parents have a fundamental right

to the custody of their children, and the deprivation of that right effects a cognizable injury."); *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 812 (11th Cir. 2004) ("…Supreme Court precedent has long recognized that "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children."); *Maddox v. Stephens*, 727 F.3d 1109, 1118-1119 (11th Cir. 2013) (quoting favorably many of the parental rights cases from the U.S. Supreme Court discussed *supra* in this *amicus curiae* brief); and *Crider v. Williams*, No. 21-13797, 2022 WL 3867541, at *9 (11th Cir. Aug. 30, 2022) (parental rights are clearly established "given the Supreme Court's continued emphasis on the paramount importance of parents' fundamental liberty interest in raising their children.").

Under these strong precedents, the District Court's conclusion that the case should be dismissed because "[p]arental liberty interests under the U.S. Constitution are a 'murky area of unenumerated constitutional rights,'" (*Littlejohn*, 2022 WL 18670372 *9 (N.D. Fla. Dec. 22, 2022) (quoting *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013)) fundamentally misunderstands not only the history of parental rights in our nation, but this Court's own precedents, and should be reversed.

# CONCLUSION

This Court should reverse the District Court and enter a preliminary injunction in favor of the parents.

Respectfully submitted this 30th Day of May, 2023,

/s/ William A. Estrada
Attorney for Parental Rights Foundation
One Patrick Henry Circle
Purcellville, VA 20132
(540) 751-1200
will@parentalrights.org

*Counsel for Amicus Curiae*

20

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Fed. R. App. P. 29(a)(5) because:

Pursuant to Fed. R. App. P. 32(g)(1), this brief contains 4,894 words, including footnotes, but excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.


DATED: May 30, 2023                            /s/ William A. Estrada
                                               *Counsel for Amicus Curiae*
                                               *Parental Rights Foundation*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th Day of May, 2023, I electronically filed the foregoing Brief of *Amicus Curiae* Parental Rights Foundation in Support of Plaintiffs – Appellants and in Support of Reversal with the Clerk for filing and transmittal of a Notice of Electronic Filing to the participants in this appeal who are registered CM/ECF users.


DATED: <u>May 30, 2023</u>          <u>/s/ William A. Estrada</u>
                                        *Counsel for Amicus Curiae*
                                        *Parental Rights Foundation*