**CASE NO. 23-10385-HH**

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

JANUARY LITTLEJOHN, JEFFREY LITTLEJOHN,
*Plaintiffs-Appellants*,
V.
SCHOOL BOARD OF LEON COUNTY, FLORIDA, ROCKY HANNA,
INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS SUPERINTENDENT OF LEON COUNTY
SCHOOLS, DR. KATHLEEN RODGERS, INDIVIDUALLY AND IN HER OFFICIAL
CAPACITY AS FORMER SUPERINTENDENT, EQUITY OFFICER, AND TITLE IX
COMPLIANCE OFFICER FOR LEON COUNTY SCHOOLS, RACHEL THOMAS,
INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS COUNSELOR AT DEERLAKE MIDDLE
SCHOOL, ROBIN OLIVERI, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS
ASSISTANT PRINCIPAL AT DEERLAKE MIDDLE SCHOOL,
*Defendants-Appellees*.

———————

On Appeal from the United States District Court
For the Northern District of Florida, Tallahassee Division
Case No. 4:21-CV-00415-MW-MJF

———————

**BRIEF OF THE CENTER FOR AMERICAN LIBERTY AS *AMICUS
CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLANTS**

———————

MATTHEW SARELSON
Dhillon Law Group
1601 Forum Place, Suite 403
West Palm Beach, FL 33401
Telephone: (305) 773-1952
Msarelson@dhillonlaw.com

*Counsel for amicus curiae Center for
American Liberty*

GARY M. LAWKOWSKI
Dhillon Law Group, Inc.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
Telephone: 703-574-1654
GLawkowski@DhillonLaw.com

*Counsel for amicus curiae Center for
American Liberty*

*January Littlejohn, et al. v. School Board of Leon County, Florida, et al. Record No. 23-10385*

USCA11 Case: 23-10385    Document: 68    Date Filed: 06/20/2023    Page: 2 of 33

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

The Center for American Liberty has no parent corporation and there is no publicly held corporation that owns 10% or more of its stock.

Pursuant to Local Rules 26.1-1 through 26.1-3, the Center for American Liberty certifies that the name of each person, attorney, association or persons, firm, law firm, partnership, nonprofit organization, and corporation that has or may have an interest in the outcome of this action—including subsidiaries, conglomerates, affiliates, parent corporations, publicly traded companies that own 10% or more of a party's stock, and all other identifiable legal entities related to any party in the case is limited to the following:

Able Americans – Amicus Curiae

Advancing American Freedom, Inc. – Amicus Curiae

Alliance Defending Freedom – Amicus Curiae

American Principles Project – Amicus Curiae

American Values – Amicus Curiae

Anderson, Dr. Erica E. – Amicus Curiae

Anderson, Katherine L. – Counsel for Amicus Curiae Alliance Defending Freedom

Berg, Luke N. – Counsel for Amicus Curiae Dr. Erica E. Anderson

Broyles, Vernadette – Counsel for Appellants

Center for American Liberty – Amicus Curiae

Center For Political Renewal – Amicus Curiae

Center For Urban Renewal and Education (Cure) – Amicus Curiae

Child & Parental Rights Campaign, Inc. – Counsel for Appellants

Christian Law Association – Amicus Curiae

Christians Engaged – Amicus Curiae

Claybrook, Frederick W. Jr. – Counsel for Amicus Curiae Family Foundation, *et al*

Claybrook, LLC – Counsel Amicus Curiae Family Foundation, *et al*.

Coalition For Jewish Values – Amicus Curiae

Concerned Women for America – Amicus Curiae

Cornwall Alliance for the Stewardship Of Creation – Amicus Curiae

Delaware Family Policy Council – Amicus Curiae

Dewart, Deborah J. – Counsel for Amicus Curiae Institute for Faith and Family

Dhillon Law Group, Inc. – Counsel for Amicus Curiae Center for American Liberty

Dr. James Dobson Family Institute – Amicus Curiae

Eagle Forum – Amicus Curiae

Esenberg, Richard M. – Counsel to Amicus Curiae Dr. Erica E. Anderson

Estrada, William A. – Counsel for Amicus Curie Parental Rights Foundation

Faith And Freedom Coalition – Amicus Curiae

Family Foundation – Amicus Curiae

Family Policy Institute of Washington – Amicus Curiae

Fitschen, Steven W. – Counsel for Amicus Curiae Family Foundation, *et al.*

Frontline Policy Action – Amicus Curiae

Global Liberty Alliance – Amicus Curiae

Hanna, Rocky – Defendant-Appellee

Harmon, Terry J. – Counsel for Appellees

Hartzler, Hon. Vicky – Amicus Curiae

Illinois Family Institute – Amicus Curiae

Institute for Faith and Family – Amicus Curiae

International Conference of Evangelical Chaplain Endorsers – Amicus Curiae

Jones, Darryl - School Board Member

Lawkowski, Gary M. – Counsel for Amicus Curiae Center for American
       Liberty

Lawson Cox, Laurie - School Board Member

Littlejohn, January – Appellant

Littlejohn, Jeffrey – Appellant

Manhattan Institute – Amicus Curiae

McAlister, Mary E. – Counsel for Appellants

Missouri Center-Right Coalition – Amicus Curiae

National Association of Parents, Inc. D/B/A ParentsUSA (Or) National
       Association of Parents, Inc. ("ParentsUSA") – Amicus Curiae

National Legal Foundation – Amicus Curiae

National Religious Broadcasters – Amicus Curiae

National Center for Public Policy Research – Amicus Curiae

New Jersey Family Policy Center – Amicus Curiae

New Mexico Family Action Movement – Amicus Curiae

Nicolas, Marcus - School Board Member

Oliveri, Robin – Appellee

Pacific Institute for Justice – Amicus Curiae

Parental Rights Foundation – Amicus Curiae

Project 21 Black Leadership Network – Amicus Curiae

Rodgers, Kathleen – Appellee

Russell Kirk Center for Cultural Renewal – Amicus Curiae

Sapir, Leor – Amicus Curiae

Sarelson, Matthew– Counsel for Amicus Curiae Center for American Liberty

School Board of Leon County - Appellee

Shapiro, Illya – Counsel for Amicus Curiae Manhattan Institute and Dr. Leor
    Sapir

Slanker, Jeffrey D. – Counsel for Appellees

Seideman, Tina – Counsel for Amicus Curiae Alliance Defending Freedom

Sniffen & Spellman, P.A. – Counsel for Appellees

Spellman Michael P. – Counsel for Appellees

Students For Life of America – Amicus Curiae

Swafford Smith, Alva - School Board Member

The Justice Foundation – Amicus Curiae

Thomas, Rachel - Appellee

Trakas, Ernest G. - Counsel for Appellants

Young America's Foundation – Amicus Curiae

Wagner, Vincent M. – Counsel for Amicus Curiae Alliance Defending
    Freedom

Walker, Hon. Mark E. - Chief United States District Judge

Wheat, J. Marc Wheat – Counsel for Amicus Curiae Advancing American
    Freedom, Inc., *et al*.

Wisconsin Institute for Law & Liberty, Inc. – Counsel for Amicus Curiae Dr.
    Erica E. Anderson

Wood, Rosanne - School Board Member

*January Littlejohn, et al. v. School Board of Leon County, Florida, et al. Record No. 23-10385*

USCA11 Case: 23-10385    Document: 68    Date Filed: 06/20/2023    Page: 6 of 33

Dated May 30, 2023

Respectfully submitted,

/s/ Matthew Sarelson
Dhillon Law Group
1601 Forum Place, Suite 403
West Palm Beach, FL 33401
(305) 773-1952
msarelson@dhillonlaw.com

*Counsel for amicus curiae Center for*
*American Liberty*

Gary M. Lawkowski
Dhillon Law Group, Inc.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
Telephone: 703-574-1654
glawkowski@DhillonLaw.com

*Counsel for amicus curiae Center for*
*American Liberty*

# TABLE OF CONTENTS

STATEMENT OF INTEREST ..................................................................1

STATEMENT OF THE ISSUES.............................................................2

SUMMARY OF THE ARGUMENT ......................................................2

ARGUMENT ..........................................................................................5

I.  The shocks-the-conscience test does not apply to Appellants' claims. ...........5

    A.   Substantive due process claims are divided between challenges to executive action and challenges to legislative action. ....................................5

    B.   The shocks-the-conscience test only applies to executive infringements of substantive due process rights, not legislative infringements. ...................6

    C.   Appellants allege (at least in part) a legislative violation of their substantive due process rights. ........................................................7

    i.   Government action that implements broad policy is properly considered legislative; only government actions that are discretionary and individualized are properly considered executive. .........................................8

    ii.   The District Court misread and misapplied *Tatel*................................12

    iii. Appellants have plausibly challenged Appellees' conduct implementing a generally applicable policy to conceal information from parents. ................13

II.  Appellees' conduct of developing and implementing the Guide violated Appellants' substantive due process rights under the legislative test..................15

    A.   Appellees' development and implementation of the Guide violated the fundamental right of parents to direct the upbringing and care of their children. ..................................................................................15

    B.   Appellees' conduct related to the Guide was not narrowly tailored to a compelling government interest. ...................................................18

CONCLUSION ....................................................................................20

i

# TABLE OF AUTHORITIES

**Cases**

*Arnold v. Bd. of Educ. of Escambia County Ala.*, 880 F.2d 305 (11th Cir. 1989) .19, 20

*Brown v. Hot, Sexy and Safer Prods., Inc.*, 68 F.3d 525 (1st Cir. 1995)................17

*Carr v. Tatangelo*, 338 F.3d 1259 (11th Cir. 2003) ..................................................7

*Collins v. Harker Heights*, 503 U.S. 115 (1992) .......................................................6

*\*Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998)............................... 5, 6, 10, 11

*Daniels v. Williams*, 474 U.S. 372 (1986) ..............................................................10

*DePoutot v. Raffaelly*, 424 F.3d 112 (1st Cir. 2005) .................................................9

*Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022) ............................5

*Gruenke v. Seip*, 225 F.3d 290 (3d Cir. 2000) ........................................................18

*Hancock v. Cnty. of Rensselear*, 882 F. 3d 58 (2d Cir. 2018) ..................................9

*Harrah Independent Sch. Dist. v. Martin*, 440 U.S. 194 (1979) ..............................9

*Hawkins v. Freeman*, 195 F.3d 732 (4th Cir. 1999) ...............................................10

*Ketner v. City of Sanibel*, 750 F.3d 1274 (11th Cir. 2014).......................................8

*Leebaert v. Harrington*, 332 F.3d 134 (2d Cir. 2003) ............................................17

*Littlejohn, et al. v. Sch. Bd. of Leon Cnty. Florida, et al.*, No. 4:21CV415-MW/MJF, 2022 WL 18670372 (N.D. Fla. Dec. 22, 2022) ............................ 8, 12

*\*McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994)................................... 7, 8, 9, 10

*Nicholas v. Pa. State Univ.*, 227 F.3d 133 (3d Cir. 2000) .......................................10

*Parents for Priv. v. Barr*, 141 S. Ct. 894 (2020) ....................................................18

*Parents for Priv. v. Barr*, 949 F.3d 1210 (9th Cir. 2020) ........................................17

*Paul v. Davis*, 424 U.S. 693 (1976) ........................................................................11

*Putnam v. Keller*, 332 F.3d 541(8th Cir. 2003) ......................................................10

*Reyes v. North Texas Tollway Authority*, ..................................................................9

*Rochin v. California*, 342 U.S. 165 (1952) ............................................................10

*T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty., Fla.*, 610 F.3d 588 (11th Cir. 2010) ....................................................................................................................7

*Tatel v. Mt. Lebanon School District*, No. CV 22-837, 2022 WL 15523185 (W.D. Pa. Oct. 27, 2022) ..............................................................................................12

*Thomas v. Evansville-Vanderburgh Sch. Corp.*, 258 Fed. Appx. 50 (7th Cir. 2007) ........................................................................................................................17

*Tinker v. Beasley*, 429 F.3d 1324 (11th Cir. 2005) ..................................................7

*Troxel v. Granville*, 530 U.S. 57 (2000) ............................................................ 3, 16

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ....................................... 5, 6, 8, 16

*Wisconsin v. Yoder*, 406 U.S. 205 (1972) ................................................................2

## Other Authorities

Amended Complaint, *Regino v. Staley, et al.*, No. 2:23-cv-00032-JAM-DMC (E.D. Cal. Apr. 10, 2023) ................................................................................................1

*Amicus* Brief for Center for American Liberty in Support of Plaintiffs-Appellants in Support of Reversal, *Foote, et al. v. Ludlow School Committee, et al*., No. 23-1069 (1st Cir. Mar. 20, 2023) ..............................................................................1

Defendant's Consolidated Motion to Dismiss Plaintiffs' Amended Complaint, *Littlejohn*, No. 4:21-cv-00415 (N.D. Fla. Jul. 15, 2022) ............................... 17, 19

First Amended Complaint for Declaratory Judgment and Damages, *Littlejohn, et al. v. School Board of Leon County, et al.*, No. 4:21-cv-00415 (N.D. Fla. May 27, 2022) ................................................................................................ 13, 14, 15

Lee Farnsworth, *Conscience Shocking in the Age of Trump*, 2020 Wis. L. Rev. 805 (2020) ..................................................................................................................11

Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss First Amended Complaint, *Littlejohn, et al. v. School Board of Leon County, et al.*, No. 4:21-cv-00415 (N.D. Fla. Jul. 29, 2022) ..................................................14

Plaintiff-Appellants' Opening Brief, *Littlejohn, et al. v. Sch. Bd. of Leon Cnty. Florida, et al.*, No. 23-10385-HH (11th Cir. May 22, 2023) .................................2

## STATEMENT OF INTEREST[1]

The Center for American Liberty (CAL) is a 501(c)(3) non-profit law firm dedicated to protecting free speech and civil liberties. CAL has represented litigants across the country and has an interest in ensuring that courts apply the correct legal standard in cases involving constitutional rights.  Among those rights are the rights of parents to direct the upbringing of their children and to make decisions on their behalf.  For example, CAL currently represents a parent challenging the application of a policy by a California school district to socially transition her child without her knowledge or consent.  *See* Amended Complaint, *Regino v. Staley, et al.*, No. 2:23-cv-00032-JAM-DMC (E.D. Cal. Apr. 10, 2023).  CAL also has filed an amicus brief concerning the application of the "shocks the conscience" test to legislative actions impacting fundamental parental rights.  *See Amicus* Brief for Center for American Liberty in Support of Plaintiffs-Appellants in Support of Reversal, *Foote, et al. v. Ludlow School Committee, et al.*, No. 23-1069 (1st Cir. Mar. 20, 2023).[2]

---

[1] No counsel for any party authored this brief in whole or in part, and no person or entity, other than amicus curiae or its counsel, contributed money to fund the brief's preparation or submission. Plaintiffs-Appellants have consented to the filing of this brief.  At this time, Defendants-Appellees have not.

[2] This case presents similar issues to those in *Foote*.  Accordingly, portions of this brief are substantially similar, and in some places identical, to CAL's *Foote* amicus brief.

## STATEMENT OF THE ISSUES

The issues identified by Appellants for review are:

1.  Whether the trial court erred in applying the "shocks the conscience" standard to Plaintiff' substantive due process claims challenging conduct that directly interfered with fundamental parental rights.

2.  Whether the trial court erred in ruling that the fundamental right of parents to direct the upbringing of their children is not clearly established so that the individual defendants are entitled to qualified immunity.

3.  Whether the trial court erred in finding that substantive due process is a disfavored concept that Plaintiffs' claims would impermissibly expand.

Plaintiff-Appellants' Opening Brief at 1, *Littlejohn, et al. v. Sch. Bd. of Leon Cnty. Florida, et al.*, No. 23-10385-HH (11th Cir. May 22, 2023) (ECF No. 22).

This brief primarily focuses on the first of these issues, whether the trial court erred in applying the "shocks the conscience" test.

## SUMMARY OF THE ARGUMENT

Over fifty years ago, the Supreme Court declared the "primary role of . . . parents in the upbringing of their children is now established beyond debate as an enduring American tradition." *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972). Unfortunately, the decision of the district court in this case suggests that the Court spoke too soon.

The fundamental right of parents to make decisions concerning the upbringing, care, custody, and control of their children "is perhaps the oldest of the fundamental liberty interests recognized by th[e] Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality op.). "[E]xtensive precedent" establishes that it is one of the fundamental rights protected by the Due Process Clause of the Fourteenth Amendment. *Id*. at 66.

Appellees have violated these fundamental rights by developing and implementing a policy guide (the "Guide") that authorized school officials to actively conceal the social transitioning of minor children from the children's parents, exclude parents from significant decision-making related to their children's safety and welfare, and deliberately misrepresent federal law and regulations regarding parental rights to justify these encroachments on parents' rights to determine the upbringing of their children.

Under the framework established by the Supreme Court and implemented in the Eleventh Circuit, violations of fundamental rights are assessed under one of two standards. "Executive" actions are evaluated based on whether the action is arbitrary or "shocks the conscience." "Legislative" violations are assessed under the appropriate level of scrutiny for the nature of the right claimed, with violations of fundamental rights subject to strict scrutiny analysis.

The district court applied the shocks-the-conscience standard applicable to executive actions.  This was an error.

As this Court and other federal appellate courts have recognized, the distinction between executive and legislative action is properly functional, not formal.  When state actors implement a pre-established, generally applicable policy, their actions are properly evaluated under the standard for legislative actions.  In contrast, the shocks-the-conscience test is properly reserved for discretionary, individualized determinations.

Appellants alleged that Appellees acted in accordance with the Guide, a generally applicable policy authorizing concealment of information from parents and disregard for their instructions regarding the upbringing of their children.  Accordingly, the state actions at issue in this case are legislative.

Legislative actions are evaluated under a two-part framework: first, the court defines the right at issue, and second, it determines if the liberty interest is a fundamental right.  If the right is fundamental, then the government has the burden to show that any infringement of it is narrowly tailored to a compelling state interest.

At minimum, Appellants' Amended Complaint sets forth sufficient facts that, when granted all reasonable inferences, states a claim that Appellees violated Appellants' fundamental right to direct the upbringing of their children.  Appellees

have not argued that this infringement is narrowly tailored to a compelling state interest, and the arguments they do make are insufficient to establish that it is.

Accordingly, the decision of the district court should be reversed, and this matter should be remanded for further proceedings.

## ARGUMENT

### I.    The shocks-the-conscience test does not apply to Appellants' claims.

#### A.    Substantive due process claims are divided between challenges to executive action and challenges to legislative action.

The Due Process Clause of the Fourteenth Amendment requires heightened judicial scrutiny for infringements on fundamental rights—*i.e.*, those rights that are "'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty.'" *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228, 2243 (2022) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)). Infringements on fundamental rights must be narrowly tailored to serve a compelling state interest. *Glucksberg*, 521 U.S. at 721.

In *County of Sacramento v. Lewis*, the Court drew a distinction between "legislative" and "executive" actions for purposes of substantive due process analysis. 523 U.S. 833, 846 (1998). The Court stated, "[w]hile due process protection in the substantive sense limits what the government may do in both its legislative . . . and its executive capacities, . . . criteria to identify what is fatally

arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue." *Id.* (citations omitted).

**B.    The shocks-the-conscience test only applies to executive infringements of substantive due process rights, not legislative infringements.**

The Court's "cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id.* (quoting *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)). Accordingly, "the substantive component of the Due Process Clause is violated by executive action only when it 'can be characterized as arbitrary or conscience shocking, in a constitutional sense.'" *Id.* at 847 (quoting *Collins*, 503 U.S. at 128).

In contrast, substantive due process challenges to *legislative* actions are not subject to the shocks-the-conscience test. Instead, challenges to the exercise of legislative power ask first, if the right at issue is fundamental based on our Nation's history and tradition and inherent in the concept of ordered liberty and, if so, whether the legislative act at issue is narrowly tailored and serves a compelling state interest. *Glucksberg*, 521 U.S. at 721.[3]

---

[3] If a fundamental right is not implicated, an exercise of legislative power is generally evaluated under the rational basis test.

6

This Court has long recognized the essential difference between executive and legislative action for substantive due process analysis. As this Court has observed, "[w]hen discussing substantive due process protection . . . , it is crucial to note the distinction between 'legislative' acts and 'non-legislative' or 'executive' acts." *McKinney v. Pate*, 20 F.3d 1550, 1557 n.9 (11th Cir. 1994). In addition to recognizing this essential difference, this Court has also recognized that the shocks-the-conscience test applies specifically to substantive due process claims stemming from executive action, not to *all* substantive due process claims. *See, e.g., T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty., Fla.*, 610 F.3d 588, 598 (11th Cir. 2010) ("To be arbitrary in the constitutional sense, an *executive* abuse of power must shock the conscience.") (emphasis added) (cleaned up); *Tinker v. Beasley*, 429 F.3d 1324, 1328 (11th Cir. 2005) ("[O]nly the most egregious official conduct will be the sort of abusive *executive action* that can be sufficiently arbitrary for constitutional recognition as a potentially viable substantive due process claim.") (emphasis added) (quoting *Carr v. Tatangelo*, 338 F.3d 1259, 1271 (11th Cir. 2003), *as amended* (Sept. 29, 2003)).

### C.  Appellants allege (at least in part) a legislative violation of their substantive due process rights.

Here, the district court presumed Appellee's conduct in developing and implementing the Guide and its associated policies and procedures to be executive

and analyzed Appellants' claims under the shocks-the-conscience test. *See Littlejohn, et al. v. Sch. Bd. of Leon Cnty. Florida, et al.*, No. 4:21CV415-MW/MJF, 2022 WL 18670372, at *4 (N.D. Fla. Dec. 22, 2022).

This was error. Appellants challenge the implementation of a generally applicable policy, not an individualized exercise of executive discretion. Under a functional analysis, the implementation of a generally applicable policy is properly considered legislative rather than executive and should be analyzed under the rubric set forth in *Glucksberg* and its progeny.

### i. Government action that implements broad policy is properly considered legislative; only government actions that are discretionary and individualized are properly considered executive.

This Court has clearly limned the difference between executive and legislative acts. In *Ketner v. City of Sanibel*, this Court noted that "[e]xecutive acts typically arise from the ministerial or administrative activities of the executive branch and characteristically apply to a limited number of people, often to only one." 750 F.3d 1274, 1280 (11th Cir. 2014) (citing *McKinney*, 20 F.3d at 1557 n.9). By contrast, "[l]egistlative acts . . . generally apply to a larger segment of—if not all of—society." *Id*. (quoting *McKinney*, 20 F.3d at 1557 n.9). *Ketner* further elaborated that "[l]aws and broad-ranging executive regulations are the most common examples [of legislative acts]." *Id*. (citations omitted).

Importantly, this Court has indicated that the application of a legislative act to a limited number of people does not negate its legislative character.  To wit, *McKinney* noted "[e]ven though the School Board [in *Harrah Independent School District v. Martin*] had applied its rule only to [one person], the Supreme Court examined the case as one involving a legislative act."  *McKinney*, 20 F.3d at 1557 n.9 (citing *Harrah*, 440 U.S. 194, 198–99 (1979)).

Other circuits have approached the executive/legislative distinction similarly. For example, the Second Circuit has noted that the distinction between legislative and executive action is "a functional differentiation," with "[s]ome types of executive action, such as regulations . . . more akin to legislative action." *Hancock v. Cnty. of Rensselear*, 882 F. 3d 58, 65 n.2 (2d Cir. 2018).

Likewise, the Fifth Circuit takes a functional approach.  In *Reyes v. North Texas Tollway Authority*, the Fifth Circuit summarized: "Although we have not always been transparent as to why we land on one test over the other, we have generally been consistent: . . . government action that is *individualized* to one or a few plaintiffs [is evaluated according to the] shocks the conscience" standard.  861 F.3d 558, 562 (5th Cir. 2017) (emphasis added).  The court observed that this dichotomy "is in sync with the many circuits that expressly apply . . . shocks the conscience to executive action (government acts that are more individualized)." *Id*. (citing *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005); *Nicholas v. Pa.*

9

*State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000) (Alito, J.); *Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999); *Putnam v. Keller*, 332 F.3d 541, 547 (8th Cir. 2003); *McKinney*, 20 F.3d at 1557 n.9).

Distinguishing between individualized applications of executive discretion and the application of broadly applicable rules comports with the context, purpose, and justification for the shocks-the-conscience test in *Lewis*.

*Lewis* places the shocks-the-conscience test in the context of individualized actions by state actors.  The Court distinguished such actions from matters of broader policy, observing that "'[o]ur Constitution deals with the large concerns of the governors and the governed, but does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society.'"  523 U.S. at 848 (quoting *Daniels v. Williams*, 474 U.S. 372, 332 (1986)).

*Lewis* involved allegations that police deprived a motorcycle passenger of his substantive due process rights when accidently killing him during a high-speed police chase.  *Id.* at 836.  Similarly, *Rochin v. California*, which first articulated the shocks-the-conscience test, concerned a highly individualized action: the forced pumping of a suspect's stomach to extract capsules the suspect was believed to have swallowed.  342 U.S. 165 (1952).

The purpose and justification for the shocks-the-conscience test also supports limiting its application to individualized actions. In *Lewis*, the Court was concerned that an expansive interpretation of substantive due process would impermissibly constitutionalize tort claims. 523 U.S. at 848. The Court stated, "the Fourteenth Amendment is not a 'font of tort law to be superimposed upon whatever systems may already be administered by the States.'" *Id.* (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)). The Court noted that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id.*

Put differently, *Lewis*'s shocks-the-conscience test is effectively a heightened *mens rea* requirement for individual torts by state actors in cases "where the facts [do] not allow time for deliberation." Lee Farnsworth, *Conscience Shocking in the Age of Trump*, 2020 Wis. L. Rev. 805, 821, 824 (2020) (asserting that the shocks-the-conscience test "gets at a possible difference in mens rea between executive and legislative enactments" and examining the difference between broad policies and traditional tort claims). This framework does not make sense for broad, generally applicable policy determinations. After all, legislative bodies and rulemaking authorities do not make "the sort of snap decision[s] that would justify [the] kind of latitude" inherent in the shocks-the-conscience test. *Id.*

11

### ii.     The District Court misread and misapplied *Tatel*.

The closest the district court comes to grappling with the distinction between legislative and executive action is in its analysis of *Tatel v. Mt. Lebanon School District*, No. CV 22-837, 2022 WL 15523185 (W.D. Pa. Oct. 27, 2022).

The district court in this case concluded "*Tatel* did not determine, nor did it need to, whether the defendants' alleged conduct in that case rose to the level of conscience-shocking necessary to support a substantive due process claim" because that case "involved a challenge to an elementary school's de facto policy" rather than "seek[ing] to recover damages based on Defendant's alleged conduct." *Littlejohn*, 2022 WL 18670372, at *9.

But this conclusion misstates the substantive due process claims at issue in *Tatel*. There, the court concluded "two distinct grounds for liability [were] set forth in the complaint: (1) [the teacher's] pursuit of her own agenda about transgender topics throughout the school year . . . and (2) the adoption by the District of the de facto policy to permit that conduct in the future." *Tatel*, 2022 WL 15523185, at *6. Moreover, contrary to the district court's assertion, the plaintiffs in *Tatel* sought compensatory and punitive damages. *Id*. ("Plaintiffs also seek compensatory and punitive damages.").

In short, *Tatel* does not support the district court's bright-line distinction between "conduct" and "policy." *Littlejohn*, 2022 WL 18670372, at *9. Instead,

the proper analysis is functional.  Where conduct is undertaken pursuant to a generally applicable policy, the legislative test for assessing substantive due process claims is the appropriate standard. Accordingly, the district court's recitation here "that it is Defendants' course of conduct, not the contents of the [Guide], that is the focus of Plaintiffs action," *id.* at 3 (cleaned up), does not transform the applicable actions into executive rather than legislative acts.  This is particularly true in light of Appellants' allegation "that each individual defendant's conduct was 'consistent with the customs, policies, and practices of [Leon County Schools].'"  *Id.* (quoting First Amended Complaint for Declaratory Judgment and Damages, *Littlejohn, et al. v. School Board of Leon County, et al.*, No. 4:21-cv-00415 (N.D. Fla. May 27, 2022) ("FAC") (ECF No. 38) ¶¶ 11–14).

### iii. Appellants have plausibly challenged Appellees' conduct implementing a generally applicable policy to conceal information from parents.

Appellants challenged the constitutionality of Appellees' conduct implementing a generally applicably policy. For example, Appellants alleged and argued:

- "Plaintiffs were not aware of the 2018 Guide or protocols contained within the Guide until . . . after [Leon County Schools] staff had implemented the protocols with Plaintiffs' child without Plaintiffs' knowledge or consent, in violation of their parental rights," (FAC ¶ 29);

13

- "Acting in accordance with the 2018 Guide and training . . . [Defendants] told Mrs. Littlejohn that they could not tell her anything about her daughter's September 8, 2020, meeting with [Leon County Schools] staff," (*id.* ¶ 102);

- "Ms. Thomas was acting in accordance with the 2018 Guide and training . . . that claimed that children such as A.G. have a legal 'right of privacy' vis-à-vis their parents so that information regarding children's assertion of discordant gender identity is not to be disclosed to parents without the child's approval," (*id.* ¶ 113);

- "On or about November 6, 2020, Mr. and Mrs. Littlejohn learned for the first time that for at least two years, [Leon County Schools] staff had been following a protocol" that parents were not to be notified that their child asserted a different gender identity and that staff could "deceive parents by using different names and pronouns to refer to children in the presence of their parents than were used to refer to the children at school," (*id.* ¶¶ 148–150);

- "Defendants acted in accordance with [the Guide] developed by the Leon County Schools LGBTQ+ Equity Committee," (Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss First Amended Complaint at 1, *Littlejohn, et al. v. School Board of Leon County, et al.*, No. 4:21-cv-00415 (N.D. Fla. Jul. 29, 2022) (ECF No. 57) (citing FAC ¶ 20));

14

- "[T]he 2020-2021 actions of Defendants in accordance with the 2018 Guide violated their rights to direct their daughter's upbringing, make mental health decisions for their daughter and maintain family privacy," (*id*. at 6); and

- "Defendants acted in accordance with the [Guide] when they violated Plaintiffs' constitutional rights," (*id.* at 9).

This is properly considered a challenge to legislative—not executive—action. After all, laws do not apply themselves. Government necessarily acts through its agents and employees to implement and enforce legislative practices such as laws, rules, and regulations. The role of those agents and employees in applying the law does not change the fundamentally legislative nature of the policy at issue.

## II. Appellees' conduct of developing and implementing the Guide violated Appellants' substantive due process rights under the legislative test.

As alleged in the FAC, Appellees' conduct in developing and implementing the Guide and its associated policies and procedures violated Appellants' fundamental rights as parents to direct the care and upbringing of their children. Moreover, this conduct was not narrowly tailored to a compelling state interest. Accordingly, the FAC states a claim.

### A. Appellees' development and implementation of the Guide violated the fundamental right of parents to direct the upbringing and care of their children.

"The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental

liberty interests recognized by [the Supreme] Court." *Troxel*, 530 U.S. at 65 (plurality op.). The fundamental right "to direct the education and upbringing of one's children" is so deeply rooted in our Nation's history and tradition and implied in concepts of ordered liberty that it is one of the handful of fundamental rights explicitly recognized by the Court as protected by substantive due process. *Glucksberg*, 521 U.S. at 720.

As the Supreme Court recognized in *Parham v. J.R.*, "[t]he law's concept of the family rests upon a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions." 442 U.S. 584, 602 (1979). The Court rejected "[t]he statist notion that governmental power should supersede parental authority in *all* cases because *some* parents abuse and neglect children" as "repugnant to American tradition." *Id*. at 603 (emphases in original). Rather, "[s]imply because the decision of a parent is not agreeable to a child or because it involves risks does not automatically transfer the power to make that decision from the parents to some agency or officer of the state." *Id*.

Through developing and implementing the Guide and its associated policies and procedures, Appellees did precisely what the Court in *Parham* forbade: supersede parental authority to direct the upbringing of their children merely because such authority is not agreeable to the child. Parents have a necessary and vital role

16

in decisions concerning the social transitioning of their children because "parents possess what a child lacks in maturity, experience, and capacity of judgment required for making life's difficult decisions." *Id.* at 602. Even if state officials believe that the decision of parents is wrong or "involves some risk," it is still "repugnant to American tradition" to unilaterally arrogate such decisions to the state. *Id.* Appellees' development and implementation of the Guide violated the fundamental right of parents to direct the upbringing and direction of their children.

Appellees argued below that the Guide and its associated policies were akin to mere curricular decisions rather than substantive intrusions into the fundamental rights of parents to direct the upbringing of their children. *See generally* Defendant's Consolidated Motion to Dismiss Plaintiffs' Amended Complaint at 30-31, *Littlejohn*, No. 4:21-cv-00415 (N.D. Fla. Jul. 15, 2022) (ECF No. 56) ("Motion to Dismiss"). Appellees cited decisions from other circuits for the proposition that "courts have rejected attempts by parents to establish a fundamental right to dictate curriculum and program choices at public schools where they send their children." *See id.* (citing *Thomas v. Evansville-Vanderburgh Sch. Corp.*, 258 Fed. Appx. 50, 53–54 (7th Cir. 2007); *Leebaert v. Harrington*, 332 F.3d 134, 140–42 (2d Cir. 2003); *Brown v. Hot, Sexy and Safer Prods., Inc.*, 68 F.3d 525, 533–34 (1st Cir. 1995); *Parents for Priv. v. Barr*, 949 F.3d 1210, 1230–33 (9th Cir. 2020), *cert. denied*, 141

S. Ct. 894 (2020)). Appellees' argument that their implementation of the Guide was merely curricular is misplaced.

As the Third Circuit observed, "[p]ublic schools must not forget that '*in loco parentis*' does no mean 'displace parents'[] It is not educators, but parents who have primary rights in the upbringing of children." *Gruenke v. Seip*, 225 F.3d 290, 307 (3d Cir. 2000). In developing and implementing the Guide and its associated policies and procedures, Appellees did not institute a mere "curriculum." Appellees were not simply seeking to add information about gender identity to the course of study for all students. Rather, they were socially transitioning students without informing parents, and in some cases affirmatively misleading parents, that such transition was occurring. Appellees were officious intermeddlers, intimately involved in effecting deep and life-altering changes in the lives of children while keeping parents in the dark about what was happening. No mere curriculum involves such action or has such dire effects on families. On these facts, Appellants have sufficiently pleaded a violation of Appellants' fundamental right to direct the upbringing and care of their children.

**B. Appellees' conduct related to the Guide was not narrowly tailored to a compelling government interest.**

Appellees did not argue below that the Guide or their conduct in developing and implementing it are narrowly tailored to serve a compelling state interest. Based on the briefing and arguments before the district court, however, it is possible to

anticipate arguments Appellees might raise. Appellees may argue that their development and implementation of the Guide and its associated policies and procedures was not coercive. *See generally* Motion to Dismiss at 26–28. This justification is insufficient to establish that Appellees' development and implementation of the Guide was narrowly tailored to a compelling state interest.

Any argument that Appellees' conduct was not coercive fails because coercion is not a necessary element for proving a violation of parents' rights to inculcate their values in their children or make medical decisions for them. *See Arnold v. Board of Educ. Of Escambia County Ala.*, 880 F.2d 305, 313 (11th Cir. 1989). In *Arnold*, this Court found that a school official who coerced a student into having an abortion violated parental rights. Appellees are mistaken in their characterization that "the key to [the holding in *Arnold*] was the school officials' coercive pressure on a child to seek an invasive and controversial medical procedure, and to conceal that procedure and the condition that led to it from the child's parents." Motion to Dismiss at 31.

The Court in *Arnold* itself stated that coercion was not necessary for its conclusion that the school official had violated parental rights:

> Coercing a minor to obtain an abortion **or** to assist in procuring an abortion and to refrain from discussing the matter with the parents unduly interferes with parental authority in the household and with the parental responsibility to direct the rearing of their child. This deprives the parents of the opportunity to counter influences on the

19

> child the parents find inimical to their religious beliefs or the values
> they wish instilled in their children.

*Arnold*, 880 F.2d at 313 (emphasis added). While the *Arnold* Court did acknowledge

that school officials' mere silence to parents about their child's counseling regarding

an abortion would not be a violation of parental rights, *see id.* at 314, Appellees

engaged in more than mere silence. Instead, they actively participated in gender-

transitioning children, including through using new pronouns and facilitating their

minor child's use of different sex-specific facilities like bathrooms and locker rooms

and rooming with students of different sexes on overnight trips. Rather than mere

silence about a student's personal decision-making, the conduct alleged by

Appellants resembles the "assist[ance] in procuring an abortion and refrain[ing]

from discussing the matter with parents" that "unduly interferes with parental

authority in the household." *See Arnold*, 880 F.2d at 313.

## CONCLUSION

The district court erred by applying the shocks-the-conscience test for

executive action rather than the *Glucksberg* analysis applicable to legislative

infringements on fundamental rights. Appellants have plausibly alleged that

Appellees developed and implemented a suite of policies—the Guide. They have

plausibly alleged that this conduct violated their fundamental rights. And, on the

record before the Court, there is no factual or legal justification sufficient to meet

the government's burden to show that the development and implementation of the

Guide was narrowly tailored to a compelling state interest. Accordingly, the district court erred in granting Appellees' Motion to Dismiss. The opinion of the district court should be reversed and this matter should be remanded for further proceedings consistent with the functional legislative action analysis.

Dated May 30, 2023                          Respectfully submitted,

                                            /s/ Matthew Sarelson
                                            Dhillon Law Group
                                            1601 Forum Place, Suite 403
                                            West Palm Beach, FL 33401
                                            (305) 773-1952
                                            msarelson@dhillonlaw.com

                                            *Counsel for amicus curiae Center for American Liberty*

                                            Gary M. Lawkowski
                                            Dhillon Law Group, Inc.
                                            2121 Eisenhower Avenue, Suite 608
                                            Alexandria, VA 22314
                                            Telephone: 703-574-1654
                                            glawkowski@DhillonLaw.com

                                            *Counsel for amicus curiae Center for American Liberty*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel for amicus curiae, certifies that the foregoing amicus brief complies with the word limit of Fed. R. App. P. 29(a)(5) and contains 4,533 words according to the word processing program used to prepare it, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). Pursuant to 11th Cir. R. 27-1(a)(10), the brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

Dated May 30, 2023

Respectfully submitted,

 /s/ Matthew Sarelson
Dhillon Law Group
1601 Forum Place, Suite 403
West Palm Beach, FL 33401
(305) 773-1952
msarelson@dhillonlaw.com

*Counsel for amicus curiae Center for American Liberty*

Gary M. Lawkowski
Dhillon Law Group, Inc.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
Telephone: 703-574-1654
glawkowski@DhillonLaw.com

*Counsel for amicus curiae Center for American Liberty*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully submitted,

/s/ Matthew Sarelson
Dhillon Law Group
1601 Forum Place, Suite 403
West Palm Beach, FL 33401
(305) 773-1952
msarelson@dhillonlaw.com

*Counsel for amicus curiae Center for American Liberty*

Gary M. Lawkowski
Dhillon Law Group, Inc.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
Telephone: 703-574-1654
glawkowski@DhillonLaw.com

*Counsel for amicus curiae Center for American Liberty*