Case No. 23-10385-HH

---

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

JANUARY LITTLEJOHN, JEFFREY LITTLEJOHN,

Plaintiffs-Appellants,

v.

SCHOOL BOARD OF LEON COUNTY, FLORIDA; ROCKY HANNA;
DR. KATHLEEN RODGERS; RACHEL THOMAS; and ROBIN OLIVERI,

Defendants-Appellees.

---

On Appeal from the United States District Court
Northern District of Florida, Tallahassee Division
Case No. 4:21-CV-00415-MW-MJF

---

# BRIEF AMICUS CURIAE OF GOLDWATER INSTITUTE
## IN SUPPORT OF PLAINTIFFS-APPELLANTS AND REVERSAL

---

**Scharf-Norton Center for
Constitutional Litigation at the
GOLDWATER INSTITUTE**
Timothy Sandefur
Adam C. Shelton
500 E. Coronado Rd.
Phoenix, Arizona 85004
(602) 462-5000
litigation@goldwaterinstitute.org

*Attorney for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT
## AND FINANCIAL INTEREST STATEMENT

Pursuant to Rule 29(a)(4)(A) of the Federal Rules of Appellate Procedure, Amicus Goldwater Institute declares that it is a non-partisan tax-exempt education foundation under Section 501(c)(3) of the Internal Revenue Code. It has no parent corporation. It has issued no stock. It certifies that it has no parents, trust, subsidiaries, and/or affiliates that have issued shares or debt securities to the public.

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to this Court's Local Rules 26.1-1 through 26.1-3, Amicus Curiae certifies that the name of each person, attorney, association of persons, firm, law firm, partnership, and corporation that has or may have an interest in the outcome of this action—including subsidiaries, conglomerates, affiliates, parent corporations, publicly-traded companies that own 10% or more of a party's stock, and all other identifiable legal entities related to any party in the case is limited to the following:

Advancing American Freedom, Inc. – Amicus Curiae

Broyles, Vernadette – Counsel for Appellants

Child & Parental Rights Campaign, Inc. – Counsel for Appellants

Dewart, Deborah Jane – Counsel for Amicus Curiae Institute for Faith & Family

Estrada, William Anthony – Counsel for Amicus Curiae Manhattan Institute &

Parental Rights Foundation

Goldwater Institute – Proposed Amicus Curiae

Hanna, Rocky – Defendant-Appellee

Harmon, Terry J. – Counsel for Appellees

Institute for Faith & Family – Amicus Curiae

Jones, Darryl – School Board Member

Lawson Cox, Laurie – School Board Member

Littlejohn, January, Appellant

Littlejohn, Jeffrey – Appellant

Manhattan Institute – Amicus Curiae

McAlister, Mary E. – Counsel for Appellants

Nicholas, Marcus – School Board Member

Oliveri, Robin – Appellee

Parental Rights Foundation – Amicus Curiae

Rodgers, Kathleen – Appellee

Sandefur, Timothy – Counsel for Proposed Amicus Curiae Goldwater Institute

Sapir, Dr. Leon – Amicus Curiae

School Board of Leon County – Appellee

Shapiro, Ilya – Counsel for Amicus Curiae Manhattan Institute & Dr. Leon Sapir

Shelton, Adam C. – Counsel for Proposed Amicus Curiae Goldwater Institute

Slanker, Jeffrey D. – Counsel For Appellees

Sniffen & Spellman, P.A. – Counsel for Appellees

Spellman, Michael P. – Counsel for Appellees

Swafford, Smith, Alva – School Board Member

Thomas, Rachel – Appellee

Trakas, Ernest G. – Counsel for Appellants

Walker, Hon. Mark E. – Chief United States District Judge

Wheat, John Marc – Counsel for Amicus Curiae Advancing American Freedom, Inc.

Wood, Rosanne – School Board Member

# TABLE OF CONTENTS

Corporate Disclosure Statement and Financial Interest Statement ........................ i

Certificate of Interested Persons ............................................................... i

Table of Contents .................................................................................. iv

Table of Authorities ............................................................................... v

Identity and Interest of Amicus Curiae .................................................... 1

Summary of Argument .......................................................................... 2

Argument ........................................................................................... 5

I.    Defendants violated Plaintiffs' fundamental parental rights by actively hiding from them the decision to recognize their child's assertion of a gender identity that differed from the child's biological sex. ..................... 5

II.   Defendants acted with deliberate indifference in a way not justifiable by any government interest. ........................................................... 11

III.  The only way to faithfully apply both the history and tradition test and the shock the conscience test is to employ the history and tradition as an initial step and the shock the conscience test as a second step that allows nonfundamental rights to still receive constitutional protection. .............. 16

Conclusion ........................................................................................ 19

Certificate of Compliance .................................................................... 21

Certificate of Service .......................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................10

*Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381 (6th Cir. 2005) ........................7

*C.N. v. Ridgewood Bd. Of Educ.*, 430 F.3d 159 (3d Cir. 2005) ...............................8

*Carey v. Population Servs. Int'l*, 431 U.S. 678 (1977).............................................9

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)..................... 4, 11, 13, 16, 17

*Darrah v. City of Oak Park*, 255 F.3d 301 (6th Cir. 2001) .....................................13

*Doe v. Heil*, 533 F. App'x 831 (10th Cir. 2013)......................................................13

*Eknes-Tucker v. Marshall*, 603 F. Supp.3d 1131 (M.D. Ala. 2022) .......................15

*Foote v. Town of Ludlow* No. 23-1069 (1st Cir. filed Mar. 13, 2023) .....................2

*Gonzalez-Fuentes v. Molina*, 607 F.3d 864 (1st Cir. 2010) ...................................12

*L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323 (11th Cir. 2020) .....................12

*Lavigne v. Great Salt Bay Community School*, No. 2-23-cv-00158-JDL (D. Me. filed Apr. 5, 2023)....................................................................................................1

*Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275 (5th Cir. 2001).......................7

*Littlejohn v. School Bd. of Leon Cnty. Fla.*, No. 4:21cv415-MW/MJF, 2022 WL 18670372 (N.D. Fla. Dec. 22, 2022) ........................................................... 10, 11

*McElhaney v. Williams*, No. 22-5903, 2022 WL 17995423 (6th Cir. Dec. 21, 2022) ....................................................................................................................2

*Meyer v. Nebraska*, 262 U.S. 390 (1923) ...........................................................6, 18

*Parham v. J.R.*, 442 U.S. 584 (1979)........................................................................3

*Parker v. Hurley*, 514 F.3d 87 (1st Cir. 2008).......................................................7, 8

*Phyllis v. Superior Court*, 183 Cal. App.3d 1193 (1986).......................................10

*Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925) .............................................. 6, 9, 18

*Prince v. Massachusetts*, 321 U.S. 158 (1944) ...........................................................6

*Stanley v. Illinois*, 405 U.S. 645 (1972) ..................................................................14

*Swanson ex rel. Swanson v. Guthrie Indep. Sch. Dist.*, 135 F.3d 694 (10th Cir. 1998) .........................................................................................................................7

*Troxel v. Granville*, 530 U.S. 57 (2000) ........................................................ passim

*Waldman v. Conway*, 871 F.3d 1283 (11th Cir. 2017) .........................................4, 17

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ........................................ 7, 17, 18

*Williams v. Pryor*, 240 F.3d 944 (11th Cir. 2001) ..................................................15

*Wisconsin v. Yoder*, 406 U.S. 205 (1972) ..................................................................6

## Other Authorities

Matt Beienburg, *De-Escalating the Curriculum Wars: A Proposal for Academic Transparency in K-12 Education*, Goldwater Institute (Jan. 14, 2020) ................2

## Rules

Fed. R. App. P. 29(4)(E) ............................................................................................1

## IDENTITY AND INTEREST OF AMICUS CURIAE[1]

The Goldwater Institute ("GI") is a nonprofit, nonpartisan public policy and research foundation established in 1988, dedicated to advancing the principles of limited government, economic freedom, and individual liberty. GI advances these principles through litigation, research papers, editorials, policy briefings, and forums. Through its Scharf-Norton Center for Constitutional Litigation, GI litigates and files amicus briefs when its or its clients' objectives are directly affected. In 2002, GI initiated a project devoted to public-school transparency, which advocates greater parental involvement in education and assists parents who wish to obtain information about the materials used in public-school classrooms. GI is currently representing the plaintiff in *Lavigne v. Great Salt Bay Community School*, No. 2-23-cv-00158-JDL (D. Me. filed Apr. 5, 2023), a case that raises questions substantially similar to those at issue here. In that case, school officials secretly gave the plaintiff's 13-year-old daughter a chest-binder as a means of "transitioning" the child without the plaintiff's knowledge or consent, which the plaintiff alleges violated her parental rights as protected by the Fourteenth Amendment. GI has also appeared as an amicus in other cases raising similar

---

[1] Pursuant to Fed. R. App. P. 29(4)(E), no counsel for any party authored this brief in whole or part, and no person or entity other than the Institute, its members, or counsel, made any monetary contribution for the preparation or submission of this brief.

issues. *See, e.g., McElhaney v. Williams*, No. 22-5903, 2022 WL 17995423 (6th Cir. Dec. 21, 2022); *Foote v. Town of Ludlow* No. 23-1069 (1st Cir. filed Mar. 13, 2023).

GI Scholars have also published extensive research on how public schools have attempted to limit the rights of parents in the educational context. *See, e.g.,* Matt Beienburg, *De-Escalating the Curriculum Wars: A Proposal for Academic Transparency in K-12 Education*, Goldwater Institute (Jan. 14, 2020).[2] This case presents a situation where a public school and its officials took affirmative steps to hide information from parents about their children—a matter of significant concern to GI.

## SUMMARY OF ARGUMENT

Parents have a right to control and direct the education, upbringing, and healthcare of their children. They cannot meaningfully exercise this right if the government hides essential information about their children from them. But that is exactly what happened here. Defendants conspired—in line with the school's official policy—to adopt a plan to use a different name and pronouns for Plaintiffs' child. They also chose to allow the minor to use their preferred restroom and sleeping arrangements matching the minor's asserted gender identity on school

---

[2] https://www.goldwaterinstitute.org/wp-content/uploads/2020/01/De-Escalating-the-Curriculum-Wars-A-Proposal-for-Academic-Transparency-in-K-12-Education-2.pdf.

field trips—all without the consent of the child's parents. Worse though, it was all decided and done without even *notifying* them of the decisions reached. That violates the Fourteenth Amendment.

The Supreme Court has long recognized that the Fourteenth Amendment's Due Process of Law Clause protects certain rights from arbitrary government interference, and that among the "fundamental" rights which the Amendment most strongly protects is the right of parents to oversee their children's care and education. *See Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Parham v. J.R.*, 442 U.S. 584, 602 (1979).

This right of custody and control does not entitle parents to dictate the internal operating procedures of public schools. *But* it *does* entitle parents to be free of the *intentional concealment* of crucially important information about decisions school officials have made regarding their treatment of children in matters that will directly affect their child's mental or physical well-being— whether positively or negatively—relating to their children's psycho-sexual health. Actively hiding such crucially vital information inhibits parents' ability to make informed decisions about their children's education, upbringing, and healthcare— thereby stifling their capacity to exercise their rights.

Further, Defendants' concealment of their decisions and actions was done pursuant to a blanket policy that took into consideration *no* individual

3

circumstances. That is, rather than seeking to determine, on a case-by-case basis, whether active concealment is warranted, the Defendants imposed an across-the-board policy of purposely hiding from *all* parents exceptionally vital information about the steps the school was taking relating to their children's psycho-sexual development. There is no indication that the Plaintiffs here are abusive, or that any other circumstances exist to justify such concealment. Nor did Defendants consider it necessary to *have* any reason to think concealment necessary for the achievement of a compelling government interest. That alone entitles Plaintiffs to prevail.

Unfortunately, confusion abounds regarding the test for determining whether a fundamental right exists under the Fourteenth Amendment's Due Process Clause. Under the "shock the conscience" test, an individual must prove that a government action was so egregious that it "shocks the conscience," before he or she can plead a substantive due process claim. That test is riddled with confusion, particularly with respect to how it relates to the "history and tradition" test for recognizing fundamental rights under the Fourteenth Amendment. There is, however, a logical way to reconcile these two principles: the Court should apply the history and tradition test first, and if this does not resolve the matter, determine whether the government action was so egregious that it shocks the conscience. *See County of Sacramento v. Lewis*, 523 U.S. 833, 857–58 (1998) (Kennedy, J., concurring); *Waldman v. Conway*, 871 F.3d 1283, 1292 (11th Cir. 2017).

The first step of that analysis should have resolved this case in favor of Plaintiffs, given *Troxel*'s clear instruction regarding fundamental parental rights. But even if the shock-the-conscience test applies, Plaintiffs have pleaded a cognizable due process claim. The Defendants' choice to actively hide the actions they took with respect to Plaintiffs' child does shock the contemporary conscience. Our society does not accept the proposition that, absent proof of likely parental abuse, the state can effectively displace parents from their role as caregivers.

## ARGUMENT

Defendants' choice to use the child's preferred name and pronouns, and to allow the child to use the gender-preferred restroom, was made in accordance with an across-the-board, official school policy which did not include any consultation with, or agreement from, the Plaintiffs. That action represents deliberate indifference to Plaintiffs' fundamental rights to control and direct the education, upbringing, and healthcare of their child.

**I.    Defendants violated Plaintiffs' fundamental parental rights by actively hiding from them the decision to recognize their child's assertion of a gender identity that differed from the child's biological sex.**

The Supreme Court has consistently recognized that the right of parents to control and direct the education, upbringing, and healthcare of their children is one of the fundamental "liberty interests" protected by the Fourteenth Amendment's Due Process Clause. In fact, the Court has called it "perhaps the oldest of the

5

fundamental liberty interests" recognized in constitutional law. *Troxel*, 530 U.S. at 65.

The Court first described parental rights as "fundamental" in 1923, characterizing it as the right "to control the education of their [children]." *Meyer v. Nebraska*, 262 U.S. 390, 401 (1923). It reaffirmed that right two years later, holding that "the liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control." *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925). In *Pierce*, the Court further explained that "[t]he child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." *Id.* at 535. And in 1944, it reiterated that parental rights had a constitutional dimension, explaining, "the custody, care and nature of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944).

The Court has repeatedly upheld parental rights over states' attempts to interfere with their choices. It has gone as far as to say that the "primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition." *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972). It is clear, then, that this right is "objectively, deeply rooted in this Nation's history and

tradition … and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (internal marks and citations omitted). That makes it clear that the right Plaintiffs assert is not only constitutionally protected but is protected by the very highest degree of legal scrutiny.

Defendants' actions effectively contravened that right. Plaintiffs cannot exercise their right to direct the upbringing of their children, or fulfill their "high duty" to do so, if public schools actively conceal decisions made about their children—information so central to a child's well-being that any conscientious parent would consider it of the gravest significance.

It is true, of course, that parents' *Troxel* rights do not entitle them to dictate the internal operating procedures of public schools. *See Parker v. Hurley*, 514 F.3d 87, 102 (1st Cir. 2008) (holding that while parents have a constitutional right to choose either a public or private school, the Constitution does not provide a right to "'direct how a public school teaches their child[ren].'" (citation omitted)). *See also*, *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 395–96 (6th Cir. 2005) (holding that a school dress code did not violate parental rights); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 291 (5th Cir. 2001) (holding that a school uniform policy did not violate parental rights); *Swanson ex rel. Swanson v. Guthrie Indep. Sch. Dist.*, 135 F.3d 694, 699 (10th Cir. 1998) (holding that a school district

7

policy against part-time enrollment for home school students did not violate parental rights); *but see*, *C.N. v. Ridgewood Bd. Of Educ.*, 430 F.3d 159, 185 n.26 (3d Cir. 2005) (holding that parental rights as protected by the Fourteenth Amendment includes more than just the choice of whether to send their children to public or private schools, and that parental rights can still be violated by choices a public school makes).

But while parents cannot demand that schools teach only subjects they prefer, or remain silent on subjects they prefer be left unspoken, when a school goes beyond its obligations to teach and protect children, and *actively conceals* from parents vital information about decisions the school has made about a child's health or welfare, the school is no longer acting within proper managerial discretion, and is intruding on parents' *Troxel* rights.

The theory behind *Parker* is that public school officials may implement their own curriculum and operating procedures, and that if parents disapprove of these, they remain free to withdraw their children from public schools and place them in private school, home-school them, or find other alternatives. 514 F.3d at 102. But that theory presumes that the public schools are not actively hiding information from parents. When they do *that*—especially regarding decisions relating to a child's health and upbringing, such as the child's gender identity or preference regarding names, pronouns, etc.—it becomes impossible for parents even to know

8

that they should consider taking such a step. If a child "is not the mere creature of the state," and if parents have a "high duty" to do what's best for their children, then the state has a corresponding obligation not to hide from them the information necessary for them to discharge that high duty. *Pierce*, 268 U.S. at 535.

The *only* legitimate exception to this rule might be where parents are abusive or neglectful, such that revealing information might endanger the child. Even then, it is difficult to imagine a situation in which this compelling interest could be legitimately served by misleading the parent as opposed to other forms of intervention, but be that as it may, no such issue is involved here, because there is no evidence that Plaintiffs have abused or would abuse the child based on the information in question. Indeed, as discussed below, no such evidence is even considered relevant under the Defendants' existing policy. Consequently, the Defendants' actions violated the Parents' *Troxel* rights.

Children certainly have certain rights of privacy, too, *see Carey v. Population Servs. Int'l*, 431 U.S. 678, 693 (1977), but that right is ordinarily served by confidentiality rules that apply on a case-by-case basis, not by one-size-fits-all policies of actively concealing vital information. The policy here, by contrast, directly interferes with parents' rights, by purposely hiding from parents information about *affirmative actions* the school officials have chosen to take about

9

matters so central to a child's welfare that **any diligent parent would want to know it.**

Although the facts in *Phyllis v. Superior Court*, 183 Cal. App.3d 1193 (1986), were more egregious than the facts here, that case is still instructive. There, the school actively "engaged in a 'cover up'" of the fact that a girl had been sexually assaulted at the school. *Id.* at 1197. The court found that this violated not only the child's rights, but also those of the parent, because by "[taking] it upon themselves to withhold that information from [the parent]," the school made it impossible for the parent to exercise her right—and discharge her high duty—to protect her daughter. *Id.* at 1196. Thus, the court found that the school had committed a tort against the parent as well as the child. Similarly, here, by concealing vital information about a child's sexual and psychological state, the Defendants deprived the parents of their fundamental constitutional right to direct the upbringing of the child. That means Plaintiffs have stated a plausible claim for relief, and the court below committed reversible error by dismissing. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

That would be the end of the inquiry but for the existence of the "shock the conscience test." The court below held that to plead a cognizable substantive due process claim, the Plaintiffs must allege facts so egregious that they would shock the contemporary conscience. *See Littlejohn v. School Bd. of Leon Cnty. Fla*., No.

4:21cv415-MW/MJF, 2022 WL 18670372, at *5 (N.D. Fla. Dec. 22, 2022). That holding contradicts precedent and assumes without discussion, reason, or argument that the challenged actions are executive rather than legislative.[3] But even if the shock the conscience test applies, the Plaintiffs have pleaded sufficient facts to meet that admittedly high barrier.

## II.  Defendants acted with deliberate indifference in a way not justifiable by any government interest.

Even if the shock-the-conscience test applies, Plaintiffs have pleaded sufficient facts to establish deliberate indifference on the Defendants' part.

The fact that the right of parents to control and direct the education, upbringing, and healthcare of their children has received consistent and longstanding recognition from this court is relevant even under the shock-the-conscience test. In *Lewis*, for example, the Court explained that the historical recognition of a right informs the judgment of whether an executive action is conscience-shocking. 523 U.S. at 847, n.8. Further, situations such as this—where

---

[3] One question that has not yet been addressed is whether a policy approved by the school committee qualifies as an executive act. Because the policy at issue—which allows school officials to hide from parents the affirmative steps taken regarding the child's mental or physical wellbeing—was promulgated by the committee in a rule-making capacity, rather than a rule-enforcing capacity, it is best seen as a *legislative* act. But that means the shock-the-conscience test should not apply at all. *Lewis*, 523 U.S. at 846 ("criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue.").

the Defendants *could have* actually deliberated about their actions before taking them—call for the application of the "deliberate indifference" standard, which does not require Plaintiffs to prove any intent to cause harm. This case is not like one in which police officers must make a split-second, life-or-death decision. This is a case in which the government could easily have chosen to respect the Plaintiffs' rights.

The Supreme Court has held that deliberate indifference can rise to the level of conscience-shocking. *Id*. at 850–51. This Court, however, has not fully determined what showing an individual must make to succeed on a deliberate indifference claim, and has not resolved whether deliberate indifference requires a higher level of egregiousness than a claim alleging an intentional violation of rights, or how the deliberate indifference standard applies in custodial versus noncustodial settings. *See L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1330–31 (11th Cir. 2020).

Fortunately, other Circuits have more settled precedent on the application of the deliberate indifference standard for pleading a cognizable substantive due process claim. The First Circuit has held that "'where actual deliberation on the part of a governmental defendant is practical, the defendant may be held to have engaged in conscience-shocking activity' by exercising 'deliberate indifference.'" *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 881 (1st Cir. 2010) (citation omitted).

It went on to explain that deliberate indifference requires a lower showing of egregiousness than a claim alleging intentional harm. *Id*. at 883. Other Circuits have likewise said that individuals can prevail on a substantive due process claim by proving deliberate indifference and a lack of government interest sufficient to excuse that indifference. *See, e.g., Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001) (explaining that when a government actor is "afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action, their actions will be deemed conscience-shocking if they were taken with deliberate indifference towards the plaintiff's federally protected rights.") (internal marks and citation omitted); *Doe v. Heil*, 533 F. App'x 831, 844 (10th Cir. 2013) (explaining that a government actor acting with deliberate indifference can be held liable for violating substantive due process rights.).

The holdings of these other circuits are consistent with the Supreme Court's recognition that activities other than intentional harm can rise to the level of conscience-shocking. *Lewis* explained that conscience-shocking injuries may result when they are "produced with culpability … from something more than negligence but less than intentional conduct, such as recklessness or gross negligence." 523 U.S. at 849 (internal marks and quotation omitted).

Here, the deliberate indifference evinced by Defendants toward Plaintiffs' constitutional rights rises to conscience-shocking level due to the lack of *any*

important, compelling, or substantial government interest supporting the Defendant's actions in concealing from Plaintiffs vital information about the actions it took to address the mental and physical well-being of their child—including information and decisions relating to their child's psycho-sexual circumstances.

There is no indication that Defendants, when implementing this policy, gave any weight or consideration to parents' *Troxel* rights—and that is because the policy—being a blanket policy of concealment in all such cases—lacks *any* form of tailoring. This is not a case-by-case policy; it is a one-size-fits-all rule.

The Supreme Court has made clear, however, that if there is one area in which one-size-fits-all rules are not appropriate, it is in the realm of child welfare. In *Stanley v. Illinois*, 405 U.S. 645 (1972), the Court held it unconstitutional for the state to impose a blanket presumption that unmarried fathers were unfit for custody. It emphasized that parents' fundamental rights are so significant that states can interfere only for extraordinarily important purposes, such as protecting the best interests of the child, and *even then,* only through a process that focuses on the facts and circumstances of the particular case. *See id.* at 656–57. Having a blanket policy of presumption instead "risks running roughshod over the important interests of both parent and child," and therefore violates the due process clause. *Id.* at 657.

14

Here, the district court did not determine what government interest was served by Defendants hiding decisions about how school officials would address the circumstances of the Plaintiffs' child. Neither did the court below explain how a blanket policy that restricts information from parents can serve whatever government interest may be at stake. As a result, the court below engaged in no balancing of rights and interests, but simply held—based on a misunderstanding of precedent and the right at issue—that the Defendants' actions were not "bad" enough. That was reversible error.

A better understanding of the right at issue and the precedent of this Circuit, other Circuits, and the Supreme Court, would have led the court to require the Defendants to justify the policy, and actions in accordance with that policy, by pointing to a government interest sufficient to justify hiding from parents decisions made by school officials about the welfare of their children. Further, as a fundamental right, the court should have weighed these interests through strict scrutiny. *Troxel*, 530 U.S. at 80 (Thomas, J., concurring); *Williams v. Pryor*, 240 F.3d 944, 947 (11th Cir. 2001); *Eknes-Tucker v. Marshall*, 603 F. Supp.3d 1131, 1145 (M.D. Ala. 2022) (applying strict scrutiny and holding that parents were likely to succeed with their substantive due process claim alleging that a law prohibiting the prescribing of puberty blockers to transgender minors violated parental rights).

15

Absent any evidence of abuse or likelihood of abuse, the Defendants' choice to conceal the actions that they chose to take regarding the child's gender identity simply cannot pass that kind of test. But the District Court never inquired about such evidence. Nor did it ever consider the need (*vel non*) for a blanket policy that disregards the choices of parents. Nor did it consider the age of the children involved. It simply accepted the blanket policy and actions in accordance with that policy as sufficiently important. That would barely suffice under rational basis, let alone strict scrutiny.

III.  **The only way to faithfully apply both the history and tradition test and the shock the conscience test is to employ the history and tradition as an initial step and the shock the conscience test as a second step that allows nonfundamental rights to still receive constitutional protection.**

The Supreme Court adopted the "shock the conscience test" to combat an alleged rise in cases brought under Section 1983 turning the Constitution into a mere "font of tort law." *See Lewis*, 523 U.S. at 848 (citation omitted). It is no surprise, then, that the Court formally adopted that test at the same time it was restricting the availability of *Bivens* remedies and expanding the then-new objective qualified immunity theory. That history, and the facts of *Lewis*—which concerned a death in an officer-involved high-speed chase—makes clear that the shocks-the-conscience test was meant to apply to rights not already recognized as fundamental. In other words, it was meant to stop the expansion—while still

16

leaving open the possibility of remedying truly outrageous actions—not to retreat from rights already recognized.

In fact, just a year before the Court adopted the shocks-the-conscience test, the Court laid out a method for determining whether a right was one of those "fundamental rights and liberties" protected by the Fourteenth Amendment. *See Glucksberg*, 521 U.S. at 720–22. The *Glucksberg* test asks whether the right asserted is "objectively deeply rooted in this Nation's history and tradition," and whether it is "implicit in the concept of ordered liberty such that neither liberty nor justice would exist if they were sacrificed." *Id.* at 720–21 (internal marks and citations omitted). *Lewis* did not, of course, overturn this test. *See* 523 U.S. at 847 n.8. In fact, Justice Kennedy explained the relationship between *Lewis* and *Glucksberg* when he said in the former case that "history and tradition are the starting point, but not in all cases the ending point of the substantive due process inquiry." *Id.* at 857 (Kennedy, J., concurring).

This Court picked up on this logic, recognizing that the shocks-the-conscience test only applies when the right alleged to be protected is *not* one of those already held to be "fundamental" under the *Glucksberg* test. In *Waldman*, 871 F.3d at 1292, for example, this Court explained that "[a] violation of substantive due process occurs when an individual's fundamental rights are infringed, regardless of the fairness of the procedure." It then explained that the

first step is determining "whether the asserted right is deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Id*. (internal marks and citation omitted). In other words, the first step is *Glucksberg*. Then, if the historical or conceptual analysis *Glucksberg* calls for does not resolve the question, the Court proceeds to determine whether the government's actions were so egregious that they shock the contemporary conscience, thereby violating Due Process of Law.

That reasoning is the only way to reconcile both the history and tradition test and the shock the conscience test and apply both faithfully.

Here, application of the proper two-step procedure is a simple matter. Cases like *Pierce, Meyer,* and *Troxel* make clear that parents' right to direct the upbringing of their children is fundamental under either the historical or conceptual approaches *Glucksberg* calls for. Given the extreme importance of the information at issue here—regarding the child's psycho-sexual development—the state's active concealment of that information, and the actions it took in response to that information, crossed that line and violated the Plaintiffs' rights.

But even if the *Glucksberg* test did not resolve the question, the Defendants' actions shock the conscience, and therefore still violate due process, because it is indeed egregious—far outside the acceptable limits of contemporary social

18

mores—for the state to take steps such as it took here without informing parents or obtaining their consent. The fact that Defendants did so under a blanket policy which takes no account of a child's individual circumstances—does not require any showing of risk to the child from disclosing this information, and included no consideration of whether concealment was warranted by the facts—is alone sufficient to cross the due process boundary.

## CONCLUSION

Parents have a fundamental right to direct and control the education, upbringing, and healthcare of their children. That should make the "shock the conscience" test unnecessary: the sole questions should be, *is there a constitutional right* and *was the government's action adequately tailored to advance an interest sufficiently important to warrant intruding upon that right?* But even if the "shock the conscience" test applies, it is plainly satisfied here. Withholding information of this importance from parents, in the absence of any evidence of a risk that disclosure might result in the parent abusing the child, displayed an indifference to parental rights that is not justified by any state interest.

The judgment should be *reversed*.

Date: May 30, 2023

/s/ *Timothy Sandefur*
Timothy Sandefur
Adam C. Shelton
**Scharf-Norton Center for**
**Constitutional Litigation**
**at the GOLDWATER INSTITUTE**
*Attorney for Amicus Curiae*

20

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,434 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionately spaced typeface using Microsoft Word 2016 Times New Roman 14-point font.

Date: May 30, 2023

/s/ *Timothy Sandefur*
Timothy Sandefur
Adam C. Shelton
**Scharf-Norton Center for**
**Constitutional Litigation**
**at the GOLDWATER INSTITUTE**
*Attorney for Amicus Curiae*

21

**CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2023, I electronically filed the

foregoing document with the Clerk of the Court for the United States Court of

Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and

that service will be accomplished by the appellate CM/ECF system.

/s/ *Timothy Sandefur*
Timothy Sandefur