No. 23-10385

# In the United States Court of Appeals for the Eleventh Circuit

JANUARY LITTLEJOHN and JEFFREY LITTLEJOHN,
Plaintiff-Appellants,

v.

SCHOOL BOARD OF LEON COUNTY, FLORIDA, ROBIN OLIVERI,
RACHEL THOMAS, ROCKY HANNA, and DR. KATHLEEN RODGERS,
Defendants-Appellees.

On Appeal from the United States District Court
for the Northern District of Florida, Tallahassee Division,
No. 4:21cv415-MW-MJF

## BRIEF *AMICI CURIAE* OF THE FAMILY FOUNDATION, ILLINOIS FAMILY INSTITUTE, CONCERNED WOMEN FOR AMERICA, NATIONAL LEGAL FOUNDATION, and PACIFIC JUSTICE INSTITUTE IN SUPPORT OF APPELLANTS, *and urging reversal*

Frederick W. Claybrook, Jr.
Claybrook LLC
655 15th St., NW, Ste. 425
Washington, D.C. 20005
(202) 250-3833
rick@claybrooklaw.com

Steven W. Fitschen
  (Counsel of Record)
National Legal Foundation
524 Johnstown Road
Chesapeake, Va. 23322
(757) 650-9210
sfitschen@nationallegalfoundation.org

Counsel for *Amici Curiae*

## CERTIFICATE OF INTERESTED PERSONS
## and CORPORATE DISCLOSURE STATEMENT

None of the *Amici Curiae* have issued shares to the public, and none have a parent company, subsidiary, or affiliate that has issued shares to the public. Thus, no publicly held company can own more than 10% of stock of any *Amicus Curiae*.

Pursuant to this Court's Local Rules 26.1-1 through 26.1-3, *Amici Curiae* certify that the name of each person, attorney, association of persons, firm, law firm, partnership, nonprofit organization, and corporation that has or may have an interest in the outcome of this action — including subsidiaries, conglomerates, affiliates, parent corporations, publicly-traded companies that own 10% or more of a party's stock, and all other identifiable legal entities related to any party in the case is limited to the following:

Broyles, Vernadette – Counsel for Appellants

Child & Parental Rights Campaign, Inc. – Counsel for Appellants

Claybrook, Frederick W., Jr., Claybrook, LLC – Counsel for *Amici Curiae* The Family Foundation, Illinois Family Institute, Concerned Women For America, National Legal Foundation, and Pacific Justice Institute

Concerned Women for America – *Amicus Curiae*

Fitschen, Steven W., The National Legal Foundation – Counsel for
*Amici Curiae* The Family Foundation, Illinois Family Institute,
Concerned Women For America, National Legal Foundation, and
Pacific Justice Institute

Hanna, Rocky – Defendant-Appellee

Harmon, Terry J. – Counsel for Appellees

Illinois Family Institute – *Amicus Curiae*

Jones, Darryl – School Board Member

Lawson Cox, Laurie – School Board Member

Littlejohn, January – Appellant

Littlejohn, Jeffrey – Appellant

McAlister, Mary E. – Counsel for Appellants

National Legal Foundation – *Amicus Curiae*

Nicolas, Marcus – School Board Member

Oliveri, Robin – Appellee

Pacific Justice Foundation – *Amicus Curiae*

Rodgers, Kathleen – Appellee

School Board of Leon County – Appellee

Slanker, Jeffrey D. – Counsel for Appellees

Sniffen & Spellman, P.A. – Counsel for Appellees

Spellman, Michael P. – Counsel for Appellees

Swafford Smith, Alva – School Board Member

The Family Foundation – *Amicus Curiae*

Thomas, Rachel – Appellee

Trakas, Ernest G. – Counsel for Appellants

Walker, Hon. Mark E. – Chief United States District Judge

Wood, Rosanne – School Board Member

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................ii

INTERESTS OF *AMICI CURIAE* ............................................................ 1

SUMMARY OF THE ARGUMENT ............................................................ 3

ARGUMENT ............................................................................................... 5

  I.  The "Shock the Conscience" Test Does Not Apply to Legislative Acts Such as Are Involved Here...................................... 5

  II.  Under Strict Scrutiny Analysis, the Leon School Board's Actions Violate the Parents' Fundamental Rights to Direct the Upbringing and Education of Their Children ........................... 9

CONCLUSION ......................................................................................... 13

# TABLE OF AUTHORITIES

<u>Cases</u>

*Citizens for Equal Educ. v. Lyons-Decatur Sch. Dist.,*
739 N.W.2d 742, 756 (Neb. 2007)............................................................8

\*Cnty. of Sacramento v. Lewis, 523 U.S. 833 (1998) ............................6, 7

*Dubbs v. Head Start, Inc.,* 336 F.3d 1194 (10th Cir. 2003) .....................8

*Fulton v. Philadelphia,* 141 S. Ct. 1868 (2021) ......................................11

*Harrah Ind. Sch. Dist. v. Martin*, 440 U.S. 194 (1979) ...........................8

*Lewis v. Brown*, 409 F.3d 1271 (11th Cir. 2005) .....................................6

*Martinez v. Cui,* 608 F.3d 56 (1st Cir. 2020) ...........................................6

*Mass. Bd. of Retirement v. Murgia,* 427 U.S. 307 (1976) ........................6

\*McKinney v. Pate, 20 F.3d 1550 (11th Cir. 1994)..............................6, 7, 8

*Meyer v. Neb.*, 262 U.S. 390 (1923) ..........................................................9

\*Parham v. J.R. 442 U.S. 584 (1979) ........................................... 10, 12, 13

*Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925)........................................9

*Price v. Comm'r, Ala. Dept. of Corrections,*
920 F.3d 1317 (11th Cir. 2019) ............................................................7

*Reno v. Flores*, 507 U.S. 292 (1993) ......................................................10

*Tatel v. Mt. Lebanon Sch. Dist.,* 2022 WL 15523185
(W.D. Pa., Oct. 27, 2022) ......................................................................8

\*Troxel v. Granville, 530 U.S. 57 (2000) .............................................9, 13

*United States v. Hughes*, 632 F.3d 956 (6th Cir. 2011) ............................9

*Wash. v. Glucksberg*, 521 U.S. 702 (1997) .............................................10

*Wis. v. Yoder,* 406 U.S. 205 (1972) ...........................................................8

<u>Rules</u>

Fed. R. Civ. Pro. 12(b)(6)).........................................................................11

## INTERESTS OF *AMICI CURIAE*[1]

The Family Foundation (TFF) is a Virginia non-partisan, non-profit organization committed to promoting strong family values and defending the sanctity of human life in Virginia through its citizen advocacy and education.  TFF serves as the largest pro-family advocacy organization in Virginia, and its interest in this case is derived directly from its members throughout Virginia who seek to advance a culture in which children are valued, religious liberty thrives, and marriage and families flourish.

The Illinois Family Institute (IFI) is a non-profit educational and lobbying organization based in Tinley Park, Illinois, that exists to advance life, faith, family, and religious freedom in public policy and culture from a Christian worldview.  A core value of IFI is to uphold religious freedom and conscience rights for all individuals and organizations.

---

[1] No counsel for any party authored this brief in whole or in part. No person or entity other than *Amici* and their counsel made a monetary contribution intended to fund the preparation or submission of this brief.  Appellants have consented to the filing of this Brief.  After repeated attempts we were not able to obtain Appellee's consent prior to filing.  *Amici* are filing the required Motion.

Concerned Women for America (CWA) is the largest public policy organization for women in the United States, with approximately half a million supports from all 50 States.  Through its grassroots organization, CWA encourages policies that strengthen women and families and advocates for the traditional virtues that are central to America's cultural health and welfare, including religious liberties. CWA actively promotes legislation, education, and policymaking consistent with its philosophy. Its members are people whose voices are often overlooked—everyday American women whose views are not represented by the powerful elite.

The National Legal Foundation (NLF) is a public interest law firm dedicated to the defense of First Amendment liberties (including the freedoms of speech, assembly, and religion) and parental rights.  The NLF and its donors and supporters, including those residing in Florida, are vitally concerned with the outcome of this case because of its effect on religion-based parental rights.

The Pacific Justice Institute (PJI) is a non-profit legal organization established under section 501(c)(3) of the Internal Revenue Code.  Since its founding in 1997, PJI has advised and represented in court and

administrative proceedings thousands of individuals, businesses, and religious institutions, particularly in the realm of First Amendment rights. PJI often represents teachers, parents, and their children to vindicate their constitutional rights in public schools. As such, PJI has a strong interest in the development of the law in this area.

## SUMMARY OF THE ARGUMENT

January Littlejohn and Jeffrey Littlejohn ("Littlejohn Parents") are parents of A.G., a thirteen-year-old girl in the Leon County School District ("District"), which is under the authority of the School Board of Leon County. (Appx. 17, 19.) A.G. has been diagnosed with ADHD and at all relevant times had in place an accommodation plan under section 504 of the Rehabilitation Act of 1973 ("504 plan"). (Appx. 17.) Before the 2020-2021 school year, A.G. expressed to the Littlejohn Parents that she was experiencing "gender confusion," and wished to use "J" as her name and "they/them" pronouns. (Appx. 38.) Mrs. Littlejohn then emailed A.G.'s homeroom teacher and told her that: (1) A.G. was expressing gender confusion, (2) the Littlejohn Parents were seeking a private counselor for A.G., and (3) that the Littlejohn Parents did not consent to A.G. using "J" as a name or "they/them" pronouns. (Appx.

39.)  Despite this explicit instruction, the teacher met with A.G. and created a "Support Plan" under which A.G. was called a different name and allowed to use pronouns, bathrooms, and living arrangements on school field trips different than those corresponding with her biological sex.  All of this was done without the Littlejohn Parents' knowledge.  (Appx. 39.)

A.G.'s Support Plan was created under a "Lesbian, Gay, Bisexual, Transgender, Gender Nonconforming and Questioning Support Guide" adopted by the Leon County School Board ("Policy").  (Appx. 31-33.)   As the district court's opinion makes clear, the Littlejohn Parents allege that Leon School Board Policy required that school personnel only share information about a student's expressed gender identity with the student's parents if the student consented to such communication.  (Appx. 171.)  The Leon County School personnel who decided to create the Support Plan without involving the Littlejohn Parents did so in explicit reliance on the Policy.  (Complaint ¶¶103-107, Appx. 40-41.)

In dismissing the Littlejohn Parents' action, the district court ruled that the Policy did not meet the "shock the conscience" standard, which it held applies to substantive due process violations of

fundamental rights.  This was clear error.  Under Supreme Court precedent long established, only *executive* actions are evaluated under the "shock the conscience" framework.  When, as in this case, legislative actions are evaluated, "level of scrutiny" analysis is employed.  Given the fundamental right at issue here (the care and upbringing of one's child), strict scrutiny applies, and the district court's own analysis makes clear that the Leon School Board cannot meet this burden.  On this basis, the district court's order should be reversed, the Leon School Board's motion to dismiss should be denied, and this case should be remanded to the trial court with appropriate instructions.

## ARGUMENT

### I.  The "Shock the Conscience" Test Does Not Apply to Legislative Acts Such as Are Involved Here.

As outlined by the district court, the Littlejohn Parents allege that the Policy of the Leon School Board violates five fundamental rights: (1) their parental right to direct the upbringing of their child under the U.S. Constitution, (2) their parental right to direct the medical and mental health decision-making for their children, (3) their right to familial privacy, (4) their right to privacy, and (5) the right to substantive due process.  (Appx. 173.)  The district court required these

claims to meet a "shock the contemporary conscience" standard.  (Appx. 176, 180-187.)   This was error.

The first step in evaluating a substantive due process claim is determining whether a plaintiff is alleging harm from an executive or legislative act.  *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *Lewis v. Brown*, 409 F.3d 1271, 1273 (11th Cir. 2005); *McKinney vs. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994); *Martinez v. Cui,* 608 F.3d 56, 59-60 (1st Cir. 2020).  An executive act is evaluated under the "shock the conscience" standard, *Cnty. of Sacramento*, 523 U.S. at 846-47, while traditional levels of scrutiny (strict scrutiny, intermediate review, or rational basis) are used for legislative or quasi-legislative actions.  *See Mass. Bd. of Retirement v. Murgia,* 427 U.S. 307, 312-14 (1976) (applying levels of scrutiny to legislative actions).  In *County of Sacramento*, the Supreme Court explained that "only the most egregious" *executive* actions are subject to substantive due process review, in recognition that they apply to one state actor against few (or only one) individuals.  523 U.S. at 846.  Further, the Court reasoned that constitutional claims are not supposed to be a general replacement for common law tort claims, which are appropriate for most individual

actions.  *Id.* at 849.  Thus, executive actions are reviewed under the high bar of the "shock the conscience" standard.  523 U.S. at 854-55 (applying the "shock the conscience" standard to a case against an individual police officer who decided to undertake a high-speed chase of motorist, action unrelated to a departmental policy).

"Legislative acts, on the other hand, generally apply to a larger segment of—if not all of—society; laws and broad-ranging executive regulations are the most common examples . . . ." *McKinney*, 20 F.3d at 1557.  Judicial review of their constitutionality is the only method for individuals to vindicate his or her rights infringed by general policies. Legislative actions are, therefore, reviewed under differing (and usually more restrictive) "level of scrutiny" analysis.  Recently, this Court affirmed that strict scrutiny is the appropriate level of analysis when fundamental rights are at issue:  "if a law treats individuals differently on the basis of a suspect classification, or if the law impinges on a fundamental right, it is subject to strict scrutiny." *Price v. Comm'r, Ala. Dept. of Corrections*, 920 F.3d 1317, 1323 (11th Cir. 2019) (citations omitted).

It has long held that school board actions are deemed legislative in nature. For example, in *Harrah Independent School District v. Martin*, 440 U.S. 194 (1979), the Supreme Court, when addressing a substantive due process challenge to a school board's rule, stated that it was "endowed with a presumption of *legislative* validity" and decided which of the three levels of scrutiny to apply; it did not apply the "shock the conscience" standard. *Id.* at 198-99 (emphasis added); *see, e.g., McKinney*, 20 F.35 at 1557 n.9 (applying *Martin*); *Tatel v. Mt. Lebanon Sch. Dist.,* 2022 WL 15523185 (W.D. Pa., Oct. 27, 2022) (applying level of scrutiny analysis in challenge to school policy in addressing the "rational connection"); *Citizens for Equal Educ. v. Lyons-Decatur Sch. Dist.,* 739 N.W.2d 742, 756 (Neb. 2007) (same); *see also Wis. v. Yoder,* 406 U.S. 205 (1972) (not applying the "shock the conscience" standard to parental challenge to state education law); *Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1202-03 (10th Cir. 2003) (reversing district court's use of "shock the conscience" standard when parents challenged application of regulation). And, while there is normally a presumption of validity to a school board's legislative enactments such as the Policy, that presumption only applies for policies "that do not encroach upon

fundamental rights." *United States v. Hughes*, 632 F.3d 956, 962 (6th Cir. 2011).

The district court clearly acknowledged the legislative nature of the Leon School Board's actions, terming the Policy as being "approved" by the Superintendent of Leon County Schools and outlining that the chair of the School Board "publicly expressed support" for the Policy. (Appx. 170.)  Yet, the district court applied the "shock the conscience" analytical framework reserved for executive actions.  This was plain error and requires reversal.

## II.    Under Strict Scrutiny Analysis, the Leon School Board's Actions Violate the Parents' Fundamental Rights to Direct the Upbringing and Education of Their Children.

The longest established substantive due process right under the Fourteenth Amendment is parents' rights to direct the upbringing and education, as well as to exercise care, custody, and control, of their minor children.  *Troxel v. Granville,* 530 U.S. 57, 65 (2000) (citing *Pierce v. Soc'y of Sisters,* 268 U.S. 510 (1925); *Meyer v. Neb.,* 262 U.S. 390 (1923)).   Parents "have broad parental authority over minor children," and the Supreme Court has "rejected any notion that a child is the mere creature of the state."  *Parham v. J.R.* 442 U.S. 584, 602 (1979)

(internal quotes omitted).  Furthermore, the Supreme Court presumes that "parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions." *Id.* The fact that a child may disagree with his or her parents as to a certain course of action "does not diminish the parents' authority to decide what is best for the child." *Id.* at 604.

Given the longstanding and critical nature of these prerogatives, it is not surprising that parental rights with respect to their children are clearly established as "fundamental" and, therefore, subject to the highest level of review, strict scrutiny.  *See Troxel,* 530 U.S. at 65-66 at 80 (Thomas, J. concurring).  Indeed, in *Washington v. Glucksberg*, 521 U.S. 702 (1997), the Supreme Court, after identifying the parental rights being asserted here as among the most fundamental of liberty interests protected by the Fourteenth Amendment, noted that no infringement of them is permitted "*at all*" unless it "is narrowly tailored to serve a compelling state interest."  *Id.* at 721 (emphasis in original; punctuation conformed) (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)).  As the Supreme Court repeated recently in *Fulton v. Philadelphia,* a government policy can only survive strict scrutiny

analysis "if it advances interests of the highest order and is narrowly tailored to achieve those interests." 141 S. Ct. 1868, 1881 (2021). Further, "so long as the government can achieve its interests in a manner that does not burden" the fundamental right, it must do so. *Id.*

As is clear from the allegations pled by the Littlejohn Parents (which the district court rightly assumed were true for purposes of a motion to dismiss under Rule 12(b)(6)), the Leon School Board's Policy as implemented with respect to A.G. fails the strict scrutiny test by:

- Intentionally ignoring the Littlejohn Parents' explicit instructions not to permit A.G. to change her name or use different pronouns than those that correspond to her biological sex (Appx. 169-170.);

- Intentionally failing to disclose to the Littlejohn Parents A.G.'s expressed desire to identify as a different gender at school (which included, *inter alia*, allowing A.G. to use different names and pronouns, permitting A.G. to use a different bathroom, and sleep in the same room as children of the opposite sex on field trips) and the school's

determination to dishonor the Littlejohn Parents'

instructions (Appx. 170); and

- Despite being explicitly questioned by the Littlejohn
  Parents, refusing initially to discuss concerns that the Leon
  School Board was acting improperly with respect to their
  child's expressions of gender and gender identity. (Appx.
  171.)

In taking these actions, the Leon School Board acted as if the Littlejohn
Parents' child were a "creature[ ] of the state" and usurped their right to
raise and care for their child—a result expressly repudiated and
precluded by *Parham*. *See* 442 U.S. at 602-04.

In short, the Leon School Board's Policy is intended to (and in fact
did in A.G.'s case) exclude parents—a child's first, fundamental, and
most important support and advocate—from a critical and life-altering
process that will have a significant impact on both the children and
their families. The Policy effected this monumental change in this
instance without providing any explanation or process to the Littlejohn
Parents. Given that the Policy clearly and unequivocally violates the
Littlejohn Parents' fundamental right to direct their child's upbringing

and education, as well as their right to exercise care, custody, and control of their child, the Policy is clearly unconstitutional. *See id.*; *Troxel,* 530 U.S. at 65.

## CONCLUSION

Because this case is based on a legislative policy decision of the Leon School Board, and because such policy violates the fundamental parental rights of the Littlejohn Parents, this Court should reverse the District Court's Order dismissing the Littlejohn Parents' action.

Respectfully submitted,
this 30th day of May, 2023

/s/ Steven W. Fitschen
Steven W. Fitschen
   (Counsel of Record)
National Legal Foundation
524 Johnstown Road
Chesapeake, Va. 23322
(757) 650-9210
sfitschen@nationallegalfoundation.org

Frederick W. Claybrook, Jr.
Claybrook LLC
655 15th St., NW, Ste. 425
Washington, D.C. 20005
(202) 250-3833
rick@claybrooklaw.com

Counsel for *Amici Curiae*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of F.R.A.P. 32(a)7(B)(i) and F.R.A.P. 29(a)(5).  Exclusive of the exempted portions, this brief contains 2,384 words, including footnotes, in 14-point Century Schoolbook font.  This total was calculated with the Word Count function of Microsoft Office Word 365.


<u>/s/ Steven W. Fitschen</u>
Steven W. Fitschen
     Counsel of Record for *Amici Curiae*
National Legal Foundation
524 Johnstown Road
Chesapeake, Va. 23322
(757) 650-9210
sfitschen@nationallegalfoundation.org

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2023, I served the foregoing Brief *Amici Curiae* of The Family Foundation, *et al.*, on all Counsel through the CM/ECF system. I certify that all Counsel in the case are registered CM/ECF users.

/s/ Steven W. Fitschen
Steven W. Fitschen
    Counsel of Record for *Amici Curiae*
National Legal Foundation
524 Johnstown Road
Chesapeake, Va. 23322
(757) 650-9210
sfitschen@nationallegalfoundation.org