**APPEAL NO. 23-10385**
───────────────────────────────

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
───────────────────────────────

JANUARY LITTLEJOHN, JEFFREY LITTLEJOHN,

Plaintiffs-Appellants,

v.

SCHOOL BOARD OF LEON COUNTY, FLORIDA, ROCKY HANNA,
DR. KATHLEEN RODGERS, RACHEL THOMAS, ROBIN OLIVERI,

Defendants-Appellees.

───────────────────────────────

On Appeal from the United States District Court
Northern District of Florida, Tallahassee Division
District Court No. 4:21-CV-00415-MW-MJF

───────────────────

**ANSWER BRIEF OF APPELLEES**
───────────────────────────────


Jeffrey D. Slanker (FBN: 100391)          Terry Harmon (FBN: 0029001)
jslanker@sniffenlaw.com                     tharmon@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
(850) 205-1996

*Appellees' Attorneys*

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to this Court's Local Rules 26.1-1 through 26.1-3 and 28-1(b), Appellees certify that the name of each person, attorney, association of persons, firm, law firm, partnership, or corporation that has or may have an interest in the outcome of this action — including subsidiaries, conglomerates, affiliates, parent corporations, publicly-traded companies that own 10% or more of a party's stock, and all other identifiable legal entities related to any party in the case is limited to the following:

1. Able Americans - Amicus Curiae

2. Advancing American Freedom, Inc. - Amicus Curiae

3. Alabama Center for Law and Liberty - Amicus Curiae

4. Alliance Defending Freedom - Amicus Curiae

5. American Principles Project - Amicus Curiae

6. American Values - Amicus Curiae

7. Anderson, Katherine L. - Counsel for Amicus Curiae

8. Anderson, PhD, Dr. Erica E. - Amicus Curiae

9. Bell, Daniel W. - Counsel for Amicus Curiae

10. Berg, Luke N. - Counsel for Amicus Curiae

11. Broyles, Vernadette – Counsel for Appellants

12. Center for Political Renewal - Amicus Curiae

13. Center for Urban Renewal and Education (CURE) - Amicus Curiae

14. Child and Parental Rights Campaign – Counsel for Appellants

15. Christian Law Association - Amicus Curiae

16. Christians Engaged - Amicus Curiae

17. Clark, Matthew J. - Counsel for Amicus Curiae

18. Claybrook LLC - Counsel for Amicus Curiae

19. Claybrook, Jr., Frederick W. - Counsel for Amicus Curiae

20. Coalition for Jewish Values - Amicus Curiae

21. Concerned Women for America - Amicus Curiae

22. Congresswoman Vicky Hartzler - Amicus Curiae

23. Cornwall Alliance for the Stewardship of Creation - Amicus Curiae

24. Corrigan, Christian B. - Counsel for Amicus Curiae

25. Delaware Family Policy Council - Amicus Curiae

26. Dewart, Deborah J. - Counsel for Amicus Curiae

27. Dhillon Law Group, Inc. - Counsel for Amicus Curiae

28. Dr. James Dobson Family Institute - Amicus Curiae

29. Eagle Forum - Amicus Curiae

30. Estrada, William A. - Counsel for Amicus Curiae

31. Ethics & Public Policy Center - Counsel for Amicus Curiae

32. Faith and Freedom Coalition - Amicus Curiae

33. Family Foundation - Amicus Curiae

34. Family Policy Institute of Washington - Amicus Curiae

35. First Liberty Institute - Counsel for Amicus Curiae

36. Fitschen, Steven W. - Counsel for Amicus Curiae

37. Frontline Policy Action - Amicus Curiae

38. Global Liberty Alliance - Amicus Curiae

39. Goldwater Institute - Amicus Curiae

40. Hanna, Rocky - Appellee

41. Harmon, Terry J. - Counsel for Appellee

42. Illinois Family Institute - Amicus Curiae

43. Institute for Faith and Family - Amicus Curiae

44. International Conference of Evangelical Chaplain Endorsers - Amicus Curiae

45. Jones, Darryl - School Board Member

46. Kniffin, Eric N. - Counsel for Amicus Curiae

47. Knudsen, Austin - Counsel for Amicus Curiae

48. Lawkowski, Gary M. - Counsel for Amicus Curiae

49. Lawson Cox, Laurie - School Board Member

50. Littlejohn, January - Appellant

51. Littlejohn, Jeffrey - Appellant

52. Manhattan Institute - Amicus Curiae

53. Martinez, Abigail - Amicus Curiae

54. Mateer, Jeffrey C. - Counsel for Amicus Curiae

55. McAlister, Mary – Counsel for Appellants

56. Missouri Center-Right Coalition - Amicus Curiae

57. Moody, Ashley - Counsel for Amicus Curiae

58. National Association of Parents, Inc. d/b/a Parents USA (or) National Association of Parents, Inc. d/b/a ("ParentsUSA") - Amicus Curiae

59. National Center for Public Policy Research - Amicus Curiae

60. National Legal Foundation - Amicus Curiae

61. National Religious Broadcasters - Amicus Curiae

62. New Jersey Family Policy Center - Amicus Curiae

63. New Mexico Family Action Movement - Amicus Curiae

64. Nicolas, Marcus - School Board Member

65. Oliveri, Robin - Appellee

66. Our Duty - Amicus Curiae

67. Pacific Justice Institute - Amicus Curiae

68. Parental Rights Foundation - Amicus Curiae

69. Project 21 Black Leadership Network - Amicus Curiae

70. Randall, Holly M. - Counsel for Amicus Curiae

71. Rodgers, Kathleen - Appellee

72. Russell Kirk Center for Cultural Renewal - Amicus Curiae

73. Russell, Keisha T. - Counsel for Amicus Curiae

74. Sandefur, Timothy - Counsel for Amicus Curiae

75. Sapir, Dr. Leor - Amicus Curiae

76. Sarelson, Matthew - Counsel for Amicus Curiae

77. Scharf-Norton Center for Constitutional Litigation - Counsel for Amicus Curiae

78. School Board of Leon County - Appellee

79. Seideman, Tina - Counsel for Amicus Curiae

80. Shapiro, Ilya - Counsel for Amicus Curiae

81. Shelton, Adam C. - Counsel for Amicus Curiae

82. Slanker, Jeffrey D. - Counsel for Appellees

83. Sniffen & Spellman, P.A. - Counsel for Appellees

84. Spellman, Michael – Counsel for Appellees

85. State of Montana, Florida and 19 Other States - Amicus Curiae

86. Students for Life of America - Amicus Curiae

87. Swafford Smith, Alva - School Board Member

88. The Center for American Liberty - Amicus Curiae

89. The Justice Foundation - Amicus Curiae

90. Thomas, Rachel - Appellee

91. Toney, Kayla A. - Counsel for Amicus Curiae

92. Torstensen, Jr., Peter M. - Counsel for Amicus Curiae

93. Trakas, Ernest – Counsel for Appellants

94. Wagner, Vincent M. - Counsel for Amicus Curiae

95. Walker, Hon. Mark E. – Chief U.S. District Court Judge

96. Wheat, J. Marc - Counsel for Amicus Curiae

97. Whitaker, Henry C. - Counsel for Amicus Curiae

98. Wood, Rosanne - School Board Member

99. Young America's Foundation - Amicus Curiae

The undersigned certifies that no publicly traded company or corporation has an interest in the outcome of the case or appeal. The undersigned will enter this information into the web-based CIP contemporaneous with the filing of this Certificate of Interested Persons and Corporate Disclosure Statement.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The Appellees do not believe oral argument would benefit this Court. The District Court's order was correct and well-reasoned, and the majority of the arguments raised by Appellants on appeal were never presented to the District Court and thus not preserved for appeal.

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT** ...................................................C-1

**STATEMENT REGARDING ORAL ARGUMENT** ............................................i

**TABLE OF CONTENTS** ................................................................. ii

**TABLE OF AUTHORITIES** .........................................................iv

**STATEMENT OF JURISDICTION** .............................................xi

**STATEMENT OF THE ISSUES** ...................................................1

**STATEMENT OF THE CASE** .......................................................1

    **I.**    **Course of Proceedings and Disposition in the Court Below** ...........1

    **II.**    **Statement of Facts** ............................................................4

    **III.**    **Standard of Review** ...........................................................7

**SUMMARY OF ARGUMENT** ........................................................8

**ARGUMENT** ................................................................................10

    **I.**    **The Littlejohns Waived the Arguments Before this Court** ..........10

    **II.**    **The District Court Did Not Err in Finding that the Littlejohns' Substantive Due Process Claims Failed to State a Claim** ................17

        *A.*    *Alleging the Infringement of a Fundamental Right Does Not Obviate the Need to Establish Conscience Shocking Behavior* .......................18

        *B.*    *The Littlejohns have Challenged Executive Action, Meaning they must Establish that the Conduct Alleged Shocked the Conscience* .......................25

        *C.*    *The Littlejohns' Objection Based on the Purported Distinction between Substantive Due Process Challenges*

*Concerning High Pressure Executive Actions and Actions Under Less Pressure is Misplaced* .............................30

D.    **The District Court was Correct in Concluding that the Littlejohns Needed to and could Not Satisfy the "Shocks the Conscience" Standard** ........................................................33

E.    **The District Court was correct to dismiss Arnold v. Board of Education as not controlling since the Littlejohns were required to prove conscience shocking conduct and coercion of the student and failed to do so** ...............................41

III.   **The District Court did Not Err in Finding that the Individual Defendants were Entitled to Qualified Immunity** .........................44

IV.   **The Littlejohns' Objection to their Belief that the District Court "Insinuated" they were Trying to Expand a "Disfavored" Concept Provides no Basis for Reversal** ..................52

**CONCLUSION** ......................................................................................53

**CERTIFICATE OF COMPLIANCE** ...................................................54

**CERTIFICATE OF SERVICE** ............................................................54

# TABLE OF AUTHORITIES

**Cases**

*Abele v. Hernando Cnty.*,
161 Fed.Appx. 809 (11th Cir. 2005)................................................................. 26, 29

*\*Access Now, Inc. v. Southwest Airlines Co.*,
385 F.3d 1324 (11th Cir. 2004) ....................................................................... *passim*

*Anspach v. City of Philadelphia, Dep't. of Public Health*,
503 F.3d 256 (3rd Cir. 2007) ...................................................................................42

*Arnold v. Board of Educ. of Escambia County Ala.*,
880 F. 2d 305 (11th Cir. 1989) ........................................................... 41, 42, 43, 48

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011)...................................................................................... 49, 50

*Berkun v. Comm'r of Internal Revenue*,
890 F.3d 1260 (11th Cir. 2018) ...............................................................................12

*Browder v. City of Albuquerque*,
787 F.3d 1076 (10th Cir. 2015) ...............................................................................23

*Brown v. Greer*,
No. 21-10694, 2021 WL 5085352 (11th Cir. Nov. 2, 2021) ...................................38

*Carroll v. Carman*,
574 U.S. 13 (2014)...................................................................................................45

*Castro v. Sec'y of Homeland Sec.*,
472 F.3d 1334 (11th Cir. 2006) .................................................................................7

*Chavez v. Martinez*,
538 U.S. 760 (2003)..................................................................................................23

*Coffin v. Brandau*,
642 F.3d 999 (11th Cir. 2011) ..................................................................................46

iv

*Collins v. City of Harker Heights*,
503 U.S. 115 (1992) ................................................................ 16

*\*County of Sacramento v. Lewis*,
523 U.S. 833 (1998) ....................................................... *passim*

*Dacosta v. Nwachukwa*,
304 F.3d 1045 (11th Cir. 2002) ................................................ 39

*Daniels v. Williams*,
474 U.S. 327 (1986) ......................................................... 19, 35

*Davis v. Carter*,
555 F.3d 979 (11th Cir. 2009) ................................................ 38

*Davis v. Scherer*,
468 U.S. 183 (1984) .............................................................. 45

*Dean Witter Reynolds, Inc. v. Fernandez*,
741 F.2d 355 (11th Cir. 1984) ................................................ 13

*Dobbs v. Jackson Women's Health Organization*,
142 S. Ct. 2228 (2022) ......................................................... 52

*Doe v. Moore*,
410 F.3d 1337 (11th Cir. 2005) .............................................. 21

*Doe v. Woodard*,
912 F.3d 1278 (10th Cir. 2019) .............................................. 25

*Echols v. Lawton*,
913 F.3d 1313 (11th Cir. 2019) ......................................... 34, 52

*Edwards v. Sears, Roebuck and Co.*,
512 F.2d 276 (5th Cir. 1975) ................................................. 15

*Elder v. Holloway*,
510 U.S. 510 (1994) .............................................................. 45

v

*Fenstermaker v. Nesfedder*,
802 F. Supp 1258 (E.D. Penn. 1992) ........................................................43

*Foy v. Holston,*
94 F.3d 1528 (11th Cir. 1996) ......................................................... 44, 45

*Franklin v. Curry*,
738 F.3d 1246 (11th Cir. 2013) ................................................................8

*Gossard v. JP Morgan Chase & Co.*,
389 Fed.Appx. 936 (11th Cir. 2010) ........................................................14

*Greenbriar Village, LLC v. Mountain Brook, City*,
345 F. 3d 1258 (11th Cir. 2003) .................................................... 22, 23

*Hancock v. County of Rensselaer,*
882 F.3d 58 (2d Cir. 2018) ......................................................................24

*Handy-Clay v. City of Memphis*,
695 F.3d 531 (6th Cir. 2012) ...................................................................24

*Harlow v. Fitzgerald,*
457 U.S. 800 (1982) .................................................................................44

*Harrah Ind. School Dist. v. Martin,*
440 U.S. 194 (1979) .................................................................................28

*Harris v. Coweta Cnty.*,
21 F.3d 388 (11th Cir. 1994) ...................................................................45

*Hawkins v. Freeman*,
195 F.3d 732 (4th Cir. 1999) ...................................................................24

*Hoefling v. City of Miami*,
811 F.3d 1271 (11th Cir. 2016) ...............................................................34

*Hope v. Pelzer*,
536 U.S. 730 (2002) .................................................................................46

*Keating v. City of Miami,*
598 F. 3d 753 (11th Cir. 2010) ...................................................46

*Kisela v. Hughes*,
138 S. Ct. 1148 (2018) .............................................................49

*L.S. ex rel. Hernandez v. Peterson*,
982 F.3d 1323 (11th Cir. 2020) ........................................ 32, 38

*Lee v. Ferraro,*
284 F.3d 1188 (11th Cir. 2002) ........................................ 44, 45

*Lewis v. Brown*,
409 F.3d 1271 (11th Cir. 2005) ........................................ 22, 23

*Lewis v. City of West Palm Beach, Fla.*,
561 F.3d 1288 (11th Cir. 2009) ........................................ 46, 47

*Loftus v. Clark–Moore*,
690 F.3d 1200 (11th Cir. 2012) ........................................ 46, 50

*Lumley v. City of Dade City, Fla.*,
327 F.3d 1186 (11th Cir. 2002) ...................................................45

*\*Maddox v. Stephens*,
727 F.3d 1109 (11th Cir. 2013) ................................... *passim*

*Mammaro v. New Jersey Div. of Child Prot. & Permanency*,
814 F.3d 164 (3d Cir. 2016)...................................................25

*Martinez v. Cui*,
608 F.3d 54 (1st Cir. 2010)...................................................24

*McKinney v. Pate*,
20 F.3d 1550 (11th Cir.1994) .......................... 22, 26, 28, 29

*Mills v. Foremost Ins. Co.*,
511 F.3d 1300 (11th Cir. 2008) ...............................................7

vii

*Mullenix v. Luna,*
577 U.S. 7 (2015) ........................................................................... 46, 49, 50

*Neal v. Fulton County Board of Education,*
229 F.3d 1069 (11th Cir. 2000) ................................................... 37, 38

*\*Nix v. Franklin County School Dist,*
311 F. 3d 1373 (11th Cir. 2002) .................................................. *passim*

*Palm Beach Polo, Inc. v. The Vill. of Wellington*,
No.  21-12054, 2022 WL 17998533 (11th Cir. Dec. 30, 2022) ............................21

*Parham v. J.R.,*
442 U.S. 584 (1979) ...................................................................... 48, 49

*Pearson v. Callahan*,
555 U.S. 223 (2009) ...................................................................... 45, 46

*Ramirez v. Sec'y, U.S. Dep't of Transp.*,
686 F.3d 1239 (11th Cir. 2012) ...............................................16

*Reed v. Winn Dixie, Inc.*,
677 F. App'x 607 (11th Cir. 2017) ...........................................12

*Rivas-Villegas v. Cortesluna*,
142 S. Ct. 4 (2021) ......................................................................50

*Robertson v. Hecksel*,
420 F. 3d 1254 (11th Cir. 2005) ...............................................16

*Rochin v. California*,
342 U.S. 165 (1952) ....................................................................19

*Rogers v. Pike Road Board of Ed*.,
2022 WL 4563014 (M.D. Ala, 2022) .......................................43

*Securities and Exchange Commission v. Rand*,
805 Fed.Appx. 871 (11th Cir. 2020) .......................................... 15, 16

*Slusarchuk v. Hoff*,
346 F.3d 1178 (8th Cir. 2003) ............................................................24

*Smith v. City of Sumiton*,
578 Fed. Appx. 933 (11th Cir. 2014)......................................................8

*Terrell v. Smith,*
668 F.3d 1244 (11th Cir. 2012) ...........................................................50

*Vinyard v. Wilson*,
311 F.3d 1340 (11th Cir. 2002) ..................................................... 21, 22

*Waddell v. Hendry County. Sheriff's Off.*,
329 F.3d 1300 (11th Cir. 2003) ...........................................................34

*Waldman v. Conway,*
871 F.3d 1283 (11th Cir. 2017) ..................................................... 20, 21

*Waldron v. Spicher,*
954 F.3d 1297 (11th Cir. 2020) ...........................................................32

*Walker v. Jones,*
10 F.3d 1569, (11th Cir. 1994) ............................................................11

*Washington v. Glucksberg,*
521 U.S. 702 (1997)............................................................................16

*White v. Pauly*, 5
80 US 73 (2017).......................................................................... 46, 49

**Statutes**

§ 286.011(1), *Fla. Stat.* .....................................................................27

§ 286.0114(2), *Fla. Stat.* ...................................................................27

§1014.01, *Fla. Stat.*...........................................................................17

28 U.S.C. § 1291 ..............................................................................vii

28 U.S.C. §1331 ................................................................. vi

42 U.S.C. § 1983 ............................................................... vii

**Treatises and Other Authorities**

Leon County School Board Rule 0165 (2014) ................................. 26, 27

Leon County School Board Rule 0167 (2014) ..................................... 26

Leon County School Board Rule 0169.1 (2014) .................................. 27

**Rules**

Fed. R. App. P. 4 .............................................................. vii

Fed. R. Civ. P. 12 .............................................................. 8

## <u>STATEMENT OF JURISDICTION</u>

The District Court had jurisdiction over the underlying dispute pursuant to federal question jurisdiction, 28 U.S.C. §1331, as the case arose, in part, under 42 U.S.C. § 1983. This Court has jurisdiction over this appeal as it is from a final decision of a district court disposing of the Plaintiff-Appellants' federal law claims entered on December 22, 2022, and the judgment entered by the clerk on January 6, 2023. [Docs. 66 and 69]; 28 U.S.C. § 1291. The notice of appeal was filed on February 3, 2023. [Doc. 70]; Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUES

The real issue in this appeal is whether the Appellants can obtain reversal of a District Court order based on entirely new theories never presented below. Surely, this case involves whether the Appellants sufficiently pled Section 1983 claims against the School Board of Leon County, Florida ("School Board") and a host of individual defendants, for what they claim were the actions of School Board officials and employees that violated their rights to substantive due process under the 14th Amendment. But the arguments Appellants now make, that the District Court erred in applying the "shocks the conscience" standard, were never made below.

Notwithstanding this waiver, the Appellees assert that the issues on appeal are properly framed as whether the actions alleged here, meeting with a student to discuss gender identity issues in schools upon the student's request to address the topic and not informing that student's parents of the same, is properly classified as an executive action such that a substantive due process claim needed to be supported by facts showing conscience shocking behavior on the part of the Defendants, whether such behavior has been sufficiently pled, and whether the individual defendants are entitled to qualified immunity from the claims in this case, the law on which this Court has characterized as "murky."

## STATEMENT OF THE CASE

## I.     Course of Proceedings and Disposition in the Court Below

Appellants, January and Jeffrey Littlejohn, initiated this cause by filing a

1

complaint in the United States District Court for the Northern District of Florida. [Doc. 1]. The complaint was brought against the School Board, the School Board's Superintendent, Rocky Hanna, in his individual and official capacities, and Dr. Kathleen Rodgers, then-Assistant Superintendent with the School Board, in her individual and official capacities. [*Id.* at p. 1]. The complaint contained causes of action under federal and Florida law, including claims under Section 1983 asserting that the Defendants violated Plaintiffs' substantive due process rights in violation of the 14th Amendment. [*Id.* at pp. 37-62].

Defendants moved to dismiss the complaint arguing that it was a shotgun pleading, that the Plaintiffs failed to establish the conduct alleged deprived Plaintiffs of any substantive due process right under the 14th Amendment, that the alleged conduct of Defendants did not "shock the conscience" and that the individual defendants were entitled to qualified immunity. [Doc. 13]. The Plaintiffs responded. [Doc. 22]. The District Court dismissed the complaint as a shotgun pleading but afforded Plaintiffs an opportunity to amend. [Doc. 37].

Plaintiffs filed the amended complaint naming School Board employees Robin Oliveri and Rachel Thomas as additional defendants in their individual and official capacities. [Doc. 38]. Plaintiffs again alleged that Defendants acted with "deliberate indifference" to their constitutional rights under the 14th amendment as well as the Florida Constitution. [Doc. 38, pp. 39-121].

Counts I through III of Plaintiffs' amended complaint alleged substantive due process claims. [Doc. 38]. Plaintiffs sought a declaration that Defendants' alleged conduct violated their rights under the U.S. Constitution and the Florida Constitution, as well as nominal and compensatory damages for injuries that those alleged violations caused. [*Id.* at pp. 115–20].

Defendants moved to dismiss the complaint making many of the same arguments previously made, and pertinently, arguing that none of the alleged conduct of the Defendants violated Plaintiffs' substantive due process rights or "shocked the conscience." [Doc. 56]. Plaintiffs responded arguing that their substantive due process claims should not be dismissed, because the conduct alleged shocked the conscience. [Doc. 57 at pp. 36-40]. Nowhere in the Plaintiffs' response to the motions to dismiss did they argue that the "shocks the conscience" test should not be applied because Defendants infringed a fundamental right or that they were challenging a legislative not executive action such that the shocks the conscience test should not apply. [Doc. 57].

The District Court granted the Defendants' motion to dismiss as to the Plaintiffs' federal law claims and declined to exercise jurisdiction over Plaintiffs' claims under the Florida Constitution. [Doc. 66]. The District Court offered the Plaintiffs an opportunity to amend their amended complaint or to accept the entry of a judgment and pursue an appeal. [*Id.* at pp. 28-29]. Plaintiffs accepted a

judgment for the Defendants on their federal claims and this appeal followed. [Doc. 67].

## II.    <u>Statement of Facts</u>

The Littlejohns are the parents of A.G., a minor child who was enrolled at Deerlake Middle School ("Deerlake"), a public school in the Leon County School District ("LCS") in Tallahassee Florida. [Doc. 38, p. 6]. A.G. has been diagnosed with ADHD and at all relevant times to the actions in the complaint had in place an accommodation plan under Section 504 of the Rehabilitation Act of 1973 (the "504 Plan"). [*Id.*]. Before the beginning of the 2020–2021 school year, A.G. was experiencing "gender confusion" and asked the Littlejohns' permission to use "J." as a name and "they/them" pronouns. [*Id.* at p. 23-24]. The Littlejohns did not give A.G. permission to do so. [*Id.* at p. 24]. Thereafter, Mrs. Littlejohn emailed A.G.'s homeroom teacher to tell her that (i) A.G. was expressing gender confusion, (ii) that the Littlejohns were seeing a private counselor for A.G., and (iii) that the Littlejohns did not consent to A.G. using "J." as a name or "they/them" pronouns, but that A.G. could use "J." as a nickname with teachers and classmates. [*Id.*].

Sometime after Mrs. Littlejohn's email to A.G.'s homeroom teacher, A.G. approached Defendant-Appellee Rachel Thomas, a counselor at Deerlake, and requested to use a different name and different pronouns. [*Id.*]. In response to A.G.'s request, Thomas suggested that A.G. meet with her and several other

Deerlake staff members to discuss the request and create a support plan (the "Support Plan"). [*Id.* at p. 27]. Thomas and several other Deerlake staff members met with A.G. on September 8, 2020 (the "September Meeting"), to develop the Support Plan, which allowed A.G. to choose a preferred name, preferred pronouns, preferred restroom, and preferred room sharing arrangements on school field trips. [*Id.* at pp. 25, 27, 32-34].

The Support Plan was implemented under the LCS 2018 Lesbian, Gay, Bisexual, Transgender, Gender Nonconforming, and Questioning Support Guide (the "Support Guide"). [*Id.*]. Defendant-Appellee Dr. Kathleen Rodgers, Assistant Superintendent for Equity, and the LCS LGBTQ+ Equity Committee, developed the Support Guide and helped train LCS faculty in accordance with the guide. [*Id.* at p. 7]. Defendant-Appellee Rocky Hanna, Superintendent of Leon County Schools, ultimately approved the Support Guide. [*Id.*]. The School Board's chairwoman publicly expressed support for the Support Guide. [*Id.* at pp. 20-21].

The Littlejohns were not notified about the September Meeting or invited to attend, because A.G. did not ask for them to be present. [*Id.* at p. 27]. The Support Plan indicated that the Littlejohns were "aware, but not supportive" of A.G.'s decision to use a preferred name and preferred pronouns; however, Thomas and Deerlake staff never asked A.G. about the Littlejohns' participation in the meeting. [*Id.* at pp. 27, 32].

5

After learning from A.G. on September 14, 2020, that A.G. met with Deerlake staff who asked about restroom preferences, Mrs. Littlejohn asked Thomas and Defendant-Appellee Robin Oliveri, an assistant principal at Deerlake, about the September Meeting. [*Id*. at p. 25]. They declined to provide Mrs. Littlejohn with information about the September Meeting, stating that A.G. was "'protected' under a non-discrimination law that does not provide for parental notification or input" and that, "by law," A.G. had to be the one to request the Littlejohns' attendance at the meeting. [*Id*. at pp. 25-26]. Oliveri also stated that parents are not notified of such meetings without student approval to protect the student's safety, which the Littlejohns thought implied that A.G. would not be safe if they were informed about the Support Plan. [*Id*. at p. 26].

After meeting with Deerlake staff on November 2, 2020, and requesting additional information about the September Meeting, the Littlejohns received a copy of A.G.'s Support Plan and more information about the meeting. [*Id*. at pp. 30-31]. The Littlejohns made it clear in filings with the District Court that it is "Defendants' course of conduct, not the contents of the [Support Guide], that is the focus of Plaintiffs' action." [Doc. 57, pp. 8–9].

The Littlejohns' claims revolve around the Defendants' alleged failure to notify them about the September Meeting and their assertion that issues discussed in that meeting were concealed from them. The Littlejohns allege, based on

information and belief, that Thomas acted in accord "with the authorization and directive contained within the 2018 Guide that parents were not to be notified unless the child approved." [*Id.* at p. 27]. They also allege, again on information and belief, that Thomas acted "in accordance with the 2018 Guide and training provided by Rodgers that claimed that children such as A.G. have a legal "right of privacy" vis-a-vis their parents so that information regarding children's assertion of a discordant gender identity is not to be disclosed to parents without the child's approval." [*Id.*].

The Support Guide is directed only at interactions with members of the LGBTQ+ community within LCS schools. [Doc. 38-1, p. 3]. It contains one question and answer section concerning interactions with parents, which merely provides that teachers or administrators should not "out" a student to their parents that they might be LGBTQ+. [*Id.* at p. 15].

## III.   <u>Standard of Review</u>

"[This Court] review[s] de novo the district court's grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff[s]." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008) (quoting *Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir. 2006)). Conclusory allegations made "on information and belief" need not be taken as

true. *See Smith v. City of Sumiton*, 578 Fed. Appx. 933, 936 at n.4 (11th Cir. 2014).

In evaluating a motion to dismiss under Rule 12(b)(6), courts separate the conclusory allegations from the remaining well-pleaded factual allegations to determine if the well-pleaded allegations, when accepted as true, plausibly give rise to an entitlement to relief. *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013).

## SUMMARY OF ARGUMENT

The Littlejohns are litigating two different cases. They litigated one before the District Court and are attempting to litigate a different one on appeal. They raise different theories on appeal for why their amended complaint should not have been dismissed, that they never argued below. They should be barred from relying on them now.

Even if this Court does consider these waived theories, there are still no grounds for reversal. The Littlejohns argue that their substantive due process claims should not have been dismissed because they failed to plead conscience shocking behavior. They, for the first time, contend they only needed to prove infringement of a fundamental right, that they challenged legislative not executive action which only requires they prove infringement of a fundamental right, and that the District Court required them to satisfy too high a burden to prove conscience shocking behavior. They also argue that the alleged conduct satisfied the conscience shocking

behavior standard and that qualified immunity for the individual defendants was inappropriate. These arguments are all unavailing.

The Littlejohns fail to grapple with the fact that Supreme Court precedent requires a litigant to establish conscience shocking behavior when challenging executive action through a substantive due process claim. Contrary to their assertions, they are challenging executive action (i.e., the decisions of School Board employees and officials in conducting a meeting with their child to discuss gender identity issues without including them and not immediately disclosing what was discussed in that meeting). These are executive actions and the Littlejohns' attempt to transform their claim into one directed at the Support Guide, which itself is not legislative action, should be rejected, especially because they specifically represented to the District Court that they were challenging the Defendants' conduct - not the Support Guide.

The Littlejohns are also wrong that the District Court should have applied the deliberate indifference standard to determine whether they alleged conscience shocking conduct. This argument, also waived, fails to appreciate that this standard is only for circumstances in which the plaintiff is in a custodial relationship with the government, which is not the case here.

The Littlejohns spend so much time focusing on these waived theories, which permeate every argument they make, including their argument that the District Court

erred in finding that they failed to establish conscience shocking behavior and that qualified immunity was inappropriate, that they fail to even address the District Court's reasoning. That is, that precedent requires a cautious approach to claims alleging substantive due process violations, especially those involving infringement of unenumerated rights, of which parental liberty interests is one. Parental liberty interests and the law surrounding it is "murky" as this Court has said, and the Littlejohns ask for an unwarranted extension of the caselaw in this area to circumstances never contemplated as actionable conscience shocking behavior.

This Court has not found conscience shocking behavior even in a case where the conduct of a governmental actor resulted in the death of a child at school. The facts here simply do not meet the high bar for substantive due process claims. The District Court was right to find that the claims were not tenable, and that qualified immunity was appropriate for the individual defendants.

## **ARGUMENT**

## I.    **The Littlejohns Waived the Issues Brought Before this Court**

The Littlejohns ask this Court to reverse the lower court's determination that their substantive due process claims failed to state a cause of action on numerous grounds. Fairly summarized, the Littlejohns principally argue:

1) A party asserting a substantive due process claim alleging infringement of a fundamental right need not establish conscience shocking behavior;

2) That they are challenging legislative not executive action, and thus need not meet the conscience shocking test; and,

3) The District Court did not distinguish between high pressure executive actions and deliberative actions.

*See* Appellants' Initial Br. at pp. 13-35. These theories, which are weaved throughout the Littlejohns' arguments, including their arguments that they met the conscience-shocking standard and that the individual defendants are not entitled to qualified immunity, were not made below. *See id.* at pp. 35-51.

This Court has held repeatedly that "an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (collecting cases) (quoting *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994), cert. denied, 511 U.S. 1111 (1994)). As this Court explained:

> The reason for this prohibition is plain: as a court of appeals, we review claims of judicial error in the trial courts. If we were to regularly address questions ... that districts court never had a chance to examine, we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court.

*Access Now*, 385 F.3d at 1331.

Like here, in *Access Now*, the appellant attempted to raise entirely new theories on appeal which were not asserted in response to a motion to dismiss below. *Id.* at 1330-1331. This Court has held multiple times that a party's failure to raise an issue in response to a motion to dismiss means that the issue is waived. *Berkun v. Comm'r of Internal Revenue*, 890 F.3d 1260, 1264 (11th Cir. 2018)(holding that assertion not raised in response to motion to dismiss was waived); *Reed v. Winn Dixie, Inc.*, 677 F. App'x 607, 612 (11th Cir. 2017)(same).

Whether the Littlejohns stated a claim upon which relief could be granted was briefed twice below. The District Court first dismissed the Littlejohns' complaint because it was a shotgun pleading, although the parties briefed the issue of whether the Littlejohns' properly stated a substantive due process claim. The Littlejohns filed an amended complaint and had the opportunity to address the Defendants' arguments in their motion to dismiss again. However, the Littlejohns never argued that they need not establish conscience shocking behavior because they alleged the infringement of a fundamental right, that they were challenging non-executive legislative action and therefore did not need to show conscience shocking behavior, or that the distinction between high pressure situations and other situations, and what conduct suffices to establish conscience shocking behavior based on the situation, had any bearing on this case. These theories were thus waived.

12

Of course, this Court held in *Access Now* that it will consider issues raised on appeal for the first time under special circumstances as this doctrine is not jurisdictional. 385 F.3d at 1332 (citing *Dean Witter Reynolds, Inc. v. Fernandez,* 741 F.2d 355, 360-361 (11th Cir. 1984)). Those circumstances are; (1) if the unpreserved issue involves a pure question of law and if refusal to consider it would result in a miscarriage of justice; (2) where the appellant had no opportunity to raise the objection before the district court; (3) where the interest of substantial justice is at stake; (4) where the proper resolution is beyond any doubt; and (5) if that issue presents significant questions of general impact or of great public concern. *Id.* None of these circumstances apply.

First, the issues presented do not involve pure questions of law. They concern the application of law to the facts in the amended complaint. Just like in *Access Now*, the Littlejohns are litigating entirely new theories in support of their entitlement to relief that were not pressed below.

This is particularly true as to the Littlejohns' argument they are challenging "legislative" action, meaning the Support Guide, and not "executive" action, the distinction of which is highly specific and involves an examination of the conduct challenged. Not only is the complaint lacking in necessary details from which a court could find the Littlejohns are challenging legislative action, but the Littlejohns

themselves told the District Court the focus of their action was not the Support Guide but rather the conduct of the individual defendants. [Doc. 57 at pp. 8–9].

Regardless, failure to consider these unpreserved issues would not result in a miscarriage of justice, because the Littlejohns had numerous opportunities to present these theories to the District Court. *See Gossard v. JP Morgan Chase & Co.*, 389 Fed.Appx. 936, 940, n.1 (11th Cir. 2010)(explaining that while waived issue presented a pure question of law, refusal to consider it would not result in a miscarriage of justice as the party raising the issue had ample opportunity to object in the district court, but did not). The Littlejohns had two opportunities to brief the merits of their claims before the District Court. Each time they argued the conduct of the Appellees shocked the conscience. The District Court even gave the Littlejohns another opportunity to amend their complaint, but they opted to pursue this appeal instead. [Doc. 66 at pp. 28-29 and Doc. 67]. For these same reasons, the second exception does not apply either. The Littlejohns had the opportunity to raise these issues below.

Nor are the interests of substantial justice at stake. This Court in *Access Now* noted that this exception is theoretically broad but rarely applied. 385 F.3d at 1333. It noted one case in which the former Fifth Circuit applied the exception where plaintiff's counsel made patently false statements and highly prejudicial and inflammatory remarks during closing argument. *Id. (citing Edwards v. Sears,*

14

*Roebuck and Co.,* 512 F.2d 276 (5th Cir. 1975)). The defendants appealed the judgment entered against them after trial and challenged these statements and remarks made in closing argument, even though they did not object below. *Id*. The plaintiff's counsel did "not seriously urge that their remarks were fair and proper, and they could not reasonably do so" but rather merely argued that the issue was not preserved. *Id*. (quoting and citing *Edwards*, 512 F.2d at 286). As this Court explained, the Fifth Circuit did hear the argument noting that it was one of the unusual circumstances that it would. *Id*. (citing *Edwards*, 512 F.2d at 286). This Court emphasized that the situation the Fifth Circuit confronted was unique in that the opposing party virtually admitted to wrongdoing and because it involved split-second pressure attendant to failing to object to remarks in closing argument during a jury trial as opposed to a circumstance where the party had a better opportunity to object. *Id.*

Unlike this scenario, the Littlejohns had the opportunity to present these newly asserted theories below, but did not, and because of this, the Littlejohns cannot establish the failure to consider these new theories would result in a miscarriage of justice or impair the interests of justice. *See Securities and Exchange Commission v. Rand*, 805 Fed.Appx. 871, 877-878 (11th Cir. 2020)(holding that party's failure to raise issue in the district court despite opportunity to do so did not support a

conclusion that failure to consider that issue for the first time on appeal would constitute a miscarriage of justice or impair the interests of justice).[1]

As to the fourth circumstance, the proper resolution of this issue is not beyond any doubt. The newly-pressed issues on appeal involving substantive due process rights in the area of unenumerated parental liberty rights have been dubbed by this Court as "murky." *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013). The Supreme Court has warned against expanding the concept of substantive due process in this type of scenario because the "guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended" and "judicial self-restraint requires [courts] to exercise the utmost care ..." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). This Court has similarly warned. *See, e.g., Robertson v. Hecksel*, 420 F. 3d 1254, 1256 (11th Cir. 2005)(quoting from *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) and explaining the need to tread lightly in a case involving substantive due process claims concerning parental liberty interests given the risk of taking matters outside the realm of legislative debate and constitutionalizing the

---

[1] This Court in *Rand* drew contrast with its decision in *Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1250 (11th Cir. 2012) finding that a pro se plaintiff did not waive an argument he made several times before the district court "merely because he failed to orally re-contest the issue" once at trial. *See Rand*, 805 Fed.Appx. at 878. While the *Ramirez* case spoke both in terms of the "substantial interests of justice" at stake and whether failure to consider the issue would result in a "miscarriage of justice", the facts of *Ramirez* are very different from those here where these new theories were not asserted at all below despite many opportunities.

policy preferences of the judiciary). These considerations disfavor wading into this murky area.

Finally, the issues do not present significant questions of general impact or great public concern. While this case concerns constitutional issues, the actual issue on appeal involves a challenge to the conduct of School Board staff during and surrounding one meeting with the Littlejohns' child occurring years ago. The Support Guide is not even in place anymore. [*See* Doc. 66 at p. 7].

In fact, intervening legislative change in Florida has provided extensive protections for parental rights in education effectively making this case about the September Meeting alone. Florida's Parents' Bill of Rights law was enacted in 2021. The statute contains extensive notice requirements for parents and explicitly notes that its purpose is to ensure that information is not withheld from parents. *See* §1014.01, et seq., *Fla. Stat.*

This case is not the case where new theories should be considered for the first time on appeal. These issues are like those in *Access Now*, where this Court said as to the waived issue "to evaluate it now, without the benefit of any record or district court ruling, invites disaster for an appellate court." *See* 385 F.3d at 1335.

## II.    The District Court Did Not Err in Finding that the Littlejohns' Substantive Due Process Claims Failed to State a Claim

Assuming the Appellants are not foreclosed from relying on the new theories they now advance, their arguments are nonetheless unavailing. Precedent of the

Supreme Court and this Court have held that when evaluating substantive due process claims challenging executive action, that courts must determine whether the conduct alleged shocks the conscience. Contrary to the Littlejohns' about-face on appeal, they are not challenging legislative action, but executive action. Thus, the District Court committed no error in requiring the Littlejohns to establish conscience shocking behavior, nor in determining that the allegations failed to meet that weighty standard.

### A.    *Alleging the Infringement of a Fundamental Right Does Not Obviate the Need to Establish Conscience Shocking Behavior*

The first new theory that the Littlejohns advance in support of reversal is that the District Court erred in requiring them to establish that the conduct alleged both shocked the conscience and infringed on a fundamental interest. *See* Appellants' Initial Br. at pp. 14-17. The Littlejohns assert that they have pled a plausible claim that the conduct of the defendants infringed on a fundamental right and that should have been sufficient. *See id.* at pp. 14. While the Littlejohns argue that one can read several cases of this Court to suggest this is the case, a closer examination of these cases, and more importantly, an examination of Supreme Court precedent and on-point precedent of this Court, belies that claim.

To adopt the Littlejohns' argument that irrespective of whether the substantive due process claim asserted is based on a challenged legislative action or executive action, that all that is required to state a substantive due process claim is alleging

infringement of a fundamental right, this Court would have to read out of existence the Supreme Court's decision in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998).

In *Lewis,* the Supreme Court held that to establish a substantive due process violation when executive action is challenged, one must show that the governmental defendant engaged in conscience shocking behavior. *Id.* at 846-847. It is only after determining whether conscience shocking behavior exists do courts examine whether an asserted right is fundamental. *Id*. at 847 n. 8. The Supreme Court relied on earlier precedent where it held that the cognizable level of executive abuse of power is that which shocks the conscience. *Id.* at 846-847 (citing *Rochin v. California*, 342 U.S. 165, 172-173 (1952)).

The reasoning for the requirement to establish conscience shocking behavior before a substantive due process claim may lie is to avoid substantive due process claims becoming a font of tort law. *Id*. at 848; *accord Daniels v. Williams*, 474 U.S. 327, 332 (1986). Permitting every governmental action, including executive action, to be subject to substantive due process challenges based on a fundamental rights review, risks constitutionalizing what is the province of state tort law. *See Id*. at 847 n. 8.

The Littlejohns do not meaningfully address this clear holding from *Lewis* in arguing that they need only plead facts from which a plausible infringement of a

fundamental right can be found. Rather, they rely on isolated language from cases from this Court in arguing that it is sufficient to plead facts establishing infringement of a fundamental right and that one need not also show conscience shocking behavior to state a substantive due process claim. *See* Appellants' Initial Br. at pp. 15-17. The Littlejohns principally rely on *Waldman v. Conway* for this argument and in particular one sentence from the opinion where this Court stated that "[w]here a fundamental liberty interest does not exist, substantive due process nonetheless protects against the arbitrary and oppressive exercise of government power." *Waldman v. Conway*, 871 F.3d 1283, 1292 (11th Cir. 2017)(*citing Lewis*, 523 U.S. at 845–46).

Nevertheless, the issue of whether one needs to establish both conscience shocking behavior and infringement on a fundamental liberty interest was not at issue in *Waldman*. *Id.* at 1292. The Littlejohns' argument that this statement from *Waldman* definitively stands for the proposition that these are alternative paths to establishing a due process claim, asks too much. Indeed, both legislative action and executive action were at play in *Waldman*, which involved inmate challenges to a classification statute concerning sex offenders and executive decisions to classify the inmate as a sex offender pursuant to the statute and an agency manual adopted pursuant to statute. *Id.* In fact, in determining whether a fundamental right was infringed, this Court referenced an earlier case involving a substantive due process

challenge to Florida's sex offender registration statute which this Court evaluated as a legislative action. *Id.* (citing *Doe v. Moore,* 410 F.3d 1337, 1345 (11th Cir. 2005)).

The other cases that the Littlejohns argue support their position are also inapposite. For example, regardless of any language in *Palm Beach Polo, Inc. v. The Vill. of Wellington*, No. 21-12054, 2022 WL 17998533 at *3-4 (11th Cir. Dec. 30, 2022), suggesting that either conscience shocking behavior "or" infringement of a fundamental right can support a substantive due process claim, this issue was again not before this Court in that case. In fact, this Court dismissed the substantive due process claims asserted in *Vill. of Wellington*, in quick fashion noting that the claims failed either because there were alternative sources of constitutional protection for the claims rather than the 14th Amendment's due process clause or that the claims concerned state law rights, a violation of which cannot support a substantive due process violation. *Id.*

The Littlejohns are wrong that this Court's statement in *Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002), that no amount of "process" can justify the infringement of substantive due process rights created by the Constitution supports their argument. The Littlejohns argue that because additional process cannot justify infringement of a fundamental right the imposition of the shocks the conscience standard is inappropriate because that standard is akin to "process." *See* Appellant's Initial Br. at p. 16. But they fail to appreciate that the context of this statement was

to draw contrast between claims of substantive due process and procedural due process which this Court extensively discussed in *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir.1994) (en banc). *See Vinyard*, 311 F.3d at 1356.

Procedural due process claims are different in that the deprivation of some rights can be cured through additional process. As this Court has explained, "non-legislative," or executive, "deprivations of state-created rights, which would include land-use rights, cannot support a substantive due process claim, not even if the plaintiff alleges that the government acted arbitrarily and irrationally. Constitutional due process is satisfied for these deprivations when proper procedures are employed." *Greenbriar Village, LLC v. Mountain Brook, City*, 345 F. 3d 1258, 1263 (11th Cir. 2003) (citing *McKinney,* 20 F.3d at 1559). Thus, executive acts that infringe on some non-fundamental rights may be cured by additional state provided process, and a violation is not complete unless and until the state fails to provide due process. *McKinney,* 20 F.3d at 1557. Additional process in terms of what might cure a procedural due process violation is entirely different from the standard that should apply to determine if a governmental actor can be held liable for a substantive due process violation.

For these reasons, the Littlejohns' reliance on *Lewis v. Brown*, 409 F.3d 1271, 1273 (11th Cir. 2005) is also misplaced. The Littlejohns reference the unremarkable proposition in *Lewis v. Brown* that zoning decisions are executive acts that do not

22

infringe on fundamental liberty interests such that they cannot support a due process violation. This is because this Court has held that land use rights implicated by zoning restrictions are state-created rights and not rights founded in the Constitution. *Lewis v. Brown*, 409 F.3d at 1273 (*citing Greenbriar Village, L.L.C.*, 345 F.3d at 1262)

These cases do not compel the conclusion that the Supreme Court's pronouncement in *Lewis* that *all* substantive due process violations premised on executive action need to be supported by conscience shocking behavior is not binding. That is not to say this topic is straightforward. Just a few years after *Lewis* was decided, the Supreme Court again confronted a substantive due process claim in *Chavez v. Martinez*, 538 U.S. 760 (2003). While both the fundamental rights and shocks the conscience standards were discussed in varying opinions, the only thing a majority could agree on was that "[w]hether Martinez may pursue a claim of liability for a substantive due process violation is ... an issue that should be addressed on remand, along with the scope and merits of any such action that may be found open to him." *Id.* at 779-80 (plurality opinion).

Ultimately, though numerous circuits have held that the shocks the conscience standard at the very least applies to substantive due process claims challenging executive action. *See Browder v. City of Albuquerque,* 787 F.3d 1076, 1078–79, n. 1 (10th Cir. 2015)(Then-Judge Gorsuch, writing for a unanimous panel, explaining

23

that "some question lingers about all this," but that "*Chavez* did not expressly overrule *Lewis*'s holding that the 'arbitrary or conscience shocking' test is the appropriate one for executive action so we feel obliged to apply it"); *Hancock v. County of Rensselaer,* 882 F.3d 58, 65–66 (2d Cir. 2018)(explaining how the court applies the fundamental-rights approach to legislation and the shocks the conscience test to executive action), *Handy-Clay v. City of Memphis*, 695 F.3d 531, 547 (6th Cir. 2012) (explaining the two strands of substantive due process and noting that for executive action to violate substantive due process, it must shock the conscience). Numerous circuits have also explicitly held that establishing both conduct that infringes on a fundamental right and that shocks the conscience is necessary to state a substantive due process claim premised on executive action. *Martinez v. Cui*, 608 F.3d 54, 64 (1st Cir. 2010)(explaining that a plaintiff challenging executive action must satisfy both the rights test and the shocks the conscience test to prevail); *Slusarchuk v. Hoff*, 346 F.3d 1178, 1181–82 (8th Cir. 2003) (same)*; Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999) (same).

The Littlejohns' assertion that the conduct alleged in the amended complaint need not shock the conscience is foreclosed by *Rochin*, *Lewis*, and most importantly, precedent of this Circuit. In *Maddox v. Stephens*, this Court expressly held that conduct alleged to be in violation of the substantive due process rights of parents needed to meet the conscience shocking test. 727 F.3d at 1119-1121 (holding

24

defendant was entitled to qualified immunity because the law was not clearly established that the defendant's actions "were so conscience shocking as to violate [the plaintiff's] liberty interest in the care, custody, and management of [her child]"). Other circuits have held similarly. *Doe v. Woodard*, 912 F.3d 1278, 1300 (10th Cir. 2019)(explaining that conscience shocking standard applies to substantive due process claims asserting a challenge to executive action alleged to infringe on the parental right to direct medical care and familial association); *Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016)(explaining alleged violation of a protected right to parent child required establishing both infringement of a fundamental right and conscience shocking behavior). The Littlejohns are wrong that they need not show conscience shocking behavior.

### B. The Littlejohns have Challenged Executive Action, Meaning they must Establish that the Conduct Alleged Shocked the Conscience

The next new argument the Littlejohns advance in support of reversing the District Court is their assertion that they are challenging "legislative" actions rather than "executive" actions and therefore they did not need to plead facts sufficient to constitute conscience shocking behavior to survive a motion to dismiss. Not only did Appellants fail to raise this argument in response to the Appellees' motion to dismiss, but they expressly disclaimed that they were challenging the Support Guide they now claim is the focus of their action and represented to the District Court that

they were challenging the Appellees' conduct. [Doc. 57 at pp. 8–9]. Regardless, the Littlejohns are challenging "executive action" not "legislative action."

"Executive acts" characteristically apply to a limited number of persons and typically arise from the ministerial or administrative activities of members of the executive branch. *Abele v. Hernando Cnty.*, 161 Fed.Appx. 809, 814, n. 2 (11th Cir. 2005) (citing *McKinney,* 20 F.3d at 1557 n. 9). Legislative acts, on the other hand, generally apply to a larger segment of society; laws and broad-ranging executive regulations are the most common examples. *Id.* As stated, the substantive due process analysis differs depending on which type of act is involved. *Id.*

The "legislative" action that the Littlejohns now challenge, the Support Guide, is not legislative action. The Littlejohns are actually challenging the administrative decision-making of executive governmental officials, that is, the decision to hold the September Meeting without notifying or involving the Littlejohns and then to not immediately disclose to the Littlejohns what was discussed in the meeting.

Practically, the School Board cannot take any "legislative" action unless the matter is taken up at a properly noticed School Board meeting conducted in a manner open to the public and upon a majority vote of the School Board. *See* Leon County School Board Rule 0167 (2014); Leon County School Board Rule 0165 (2014). Indeed, the State of Florida has a robust government in the sunshine law. The law requires governmental entities to conduct business publicly and in the open. *See* §

26

286.011(1), *Fla. Stat*. It requires formal notice to the public before a governmental entity takes some action at a public meeting. *Id.* It also requires governmental bodies to allow an opportunity for the public to be heard at these open meetings. *See* § 286.0114(2), *Fla. Stat*.; *accord* Leon County School Board Rule 0165 (2014); Leon County School Board Rule 0169.1 (2014).

The Littlejohns do not allege whether a majority of the School Board voted to enact the Support Guide as a District-wide policy or enacted any similar policy or rule. Nor do they allege that the School Board held any public meeting in which such a policy was considered. In fact, the Littlejohns have pled quite the opposite, alleging that School Board personnel developed the policy and trained staff on how to implement it.

While the Appellees recognize that the language in *McKinney* states that "broad-ranging executive regulations" could also constitute "legislative" action, the alleged "legislative" action here is not akin to the broad-ranging executive regulations contemplated by this Court in *McKinney*. First, School Board policy and applicable law is clear that only legislative action may be taken by the School Board in a publicly noticed meeting, in which a quorum of School Board Members are present, and on majority vote of the School Board. The facts pled in this case indicate that School Board staff developed the Support Guide, and, on information and belief, the Superintendent of Leon County Schools knew about and approved it.

Even further, the Littlejohns have failed to sufficiently plead that the challenged action was a broad-ranging executive regulation akin to a legislative act. Nor can they. The Support Guide is not a broad-ranging executive regulation that is akin to legislative action as it only applies to interactions with LGBTQ+ students and does not apply to the entirety of students in the School District. *See* Doc. 38-1 at p. 3 ("[The Support Guide] is intended to be a tool for schools, students and their parents and legal guardians to effectively navigate existing laws, regulations and policies that support LGBTQ+ LCS students.").

Contrary to the Littlejohns' assertions, the Support Guide is unlike the school board rule evaluated by the Supreme Court in *Harrah Ind. School Dist. v. Martin,* 440 U.S. 194 (1979), that this Court examined in *McKinney*. *See McKinney,* 20 F. 3d at 1557, n. 9. First, that case involved a rule passed by a school board, the legislative entity tasked with taking legislative action. *Harrah*, 440 U.S. at 198-199 (explaining that "[t]he School Board's rule is endowed with a presumption of legislative validity"). Second, the rule in that case, which concerned the continuing employment of teachers upon satisfaction of continuing education requirements, applied to the whole population of teachers employed by the school board. *Id.* at 195-196.

In that vein, this Court in *McKinney* emphasized that the Supreme Court in *Harrah* was evaluating the legality of the rule itself and not the application of the

28

rule. 20 F.3d at 1557 n. 9. Here, as the Littlejohns represented to the District Court, they are focusing on the Appellees' conduct, not the Support Guide. They are challenging, at best, the administrative application of something they believe is akin to a legislative act, or the application of the Support Guide to interactions with them concerning their child, which constitutes a challenge to executive acts. *See Abele*, 161 Fed.Appx. at 814, n. 2.

Finally, that the Littlejohns are challenging "executive" not "legislative" action is evident from an examination of the challenged conduct and the contents of the Support Guide. The factual underpinning of the Littlejohns' claims is that School Board employees met with A.G. and developed a support plan touching on gender identity issues without their knowledge or consent and subsequently did not immediately divulge what occurred in that meeting. While the Littlejohns now seek to connect these actions to the Support Guide, nothing in that guide speaks to this conduct. The Littlejohns do not even allege that Oliveri and Thomas mentioned the Support Guide in their conversations concerning the September Meeting. At best, the Support Guide indicates that School District staff should not "out" a student to their parents if they believe that student is LGBTQ+, but this is different from the conduct the Littlejohns challenge.

The Littlejohns' contention they are challenging legislative conduct is unavailing. The challenge is to executive action, and the District Court properly applied the conscience shocking standard.

### C.    *The Littlejohns' Objection Based on the Purported Distinction between Substantive Due Process Challenges Concerning High Pressure Executive Actions and Actions Under Less Pressure is Misplaced*

The Littlejohns claim that the District Court inappropriately applied a "one size fits all" approach to substantive due process claims. Specifically, they argue that the District Court did not appreciate the actions challenged did not concern high pressure scenarios requiring quick decisions such that a lower standard for finding conscience shocking behavior than the District Court applied should have governed. *See* Appellants' Initial Br. at pp. 20-21. The Littlejohns are wrong that the District Court applied too high of a standard to determine if they adequately pled conscience shocking behavior based on the nature of the executive actions at play.

The thrust of the Littlejohns' argument is that it is only necessary to show intentional conduct aimed at harming another party to establish conscience shocking behavior in high pressure situations involving split-second decisions. They argue that deliberative indifference over a course of time can be sufficient to constitute conscience shocking behavior in other situations and that the District Court thus erred in applying a standard that was more onerous than this one. They reason that

the Defendants were not operating in a similar high-pressure situation as the law enforcement officer in pursuit in *Lewis*.

The Supreme Court's discussion of the deliberate indifference standard in *Lewis* though was in the context of persons in a custodial setting. *See* 523 US 833 at 851-853 (explaining that deliberate indifference to serious medical needs of inmates can shock the conscience). The Littlejohns cite no precedent for the proposition that the deliberate indifference standard is used to evaluate claims like theirs, where the plaintiff is in a non-custodial setting.

This Court "has been explicit in stating that 'deliberate indifference' is insufficient to constitute a due-process violation in a non-custodial setting." *Nix v. Franklin County School Dist,* 311 F. 3d 1373, 1377 (11th Cir. 2002). It should be noted that the Littlejohns are asserting that their own constitutional rights have been violated. The Littlejohns were certainly never in a custodial relationship with the Appellees, and neither was their child. *See id.* (explaining that schoolchildren are not in a custodial relationship with the state).

This Court concluded in *Nix* that "generally, those individuals not in state custody will have no due-process claim for unsafe conditions; and (2) specifically, in a classroom setting, courts have not allowed due-process liability for deliberate indifference, and, moreover, will only allow recovery for intentional conduct under limited circumstances." *Id.* at 1378. It should be noted also that this Court in *Maddox*

did not even mention deliberate indifference in the context of evaluating whether a defendant was entitled to qualified immunity from claims asserting substantive due process violations premised on decisions alleged to infringe on parental liberty interests. *See* 727 F.3d at 1119-1120.[2]

This Court recently elaborated on this issue in *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1330-1331 (11th Cir. 2020). There, this Court explained while one previous case in the Circuit suggested that deliberate indifference in a non-custodial setting might be sufficient if it, at the very least, involved deliberate indifference to an extremely great risk of serious injury, that the greater weight of authority supports the statement in *Nix* that deliberate indifference can never be conscience shocking or arbitrary in a non-custodial setting. *See id.* As this Court pointed out, "[n]o case in the Supreme Court, or in this Circuit, ... has held that ... deliberate indifference is a sufficient level of culpability to state a claim of violation of substantive due process rights in a non-custodial context." *Id.* at 1331 (quoting *Waldron v. Spicher,* 954 F.3d 1297, 1310 (11th Cir. 2020)). The District Court properly evaluated the conduct alleged here in light of these principles to determine that the Littlejohns did not establish conscience-shocking behavior.

---

[2] Contrary to the Littlejohns' assertions the claims in *Maddox* and *Nix* did not involve split-second decisions like the scenario confronted by the Supreme Court in *County of Sacramento v. Lewis*, further militating against finding that deliberate indifference is the appropriate standard here.

32

### D.   The District Court was Correct in Concluding that the Littlejohns Needed to and could Not Satisfy the "Shocks the Conscience" Standard

The District Court did not fail to perform an appropriate analysis of the circumstances of this case as argued by Littlejohns. Their argument concerning the shocks the conscience standard focuses little, if at all, on the actual conduct alleged.

The Littlejohns generally claim that the District Court erred in finding that they did not meet the conscience shocking standard because they do not believe it applies given they allege infringement of a fundament right, and/or because they contend legislative action is at issue. As stated, these theories of liability have been waived, and they would not save their amended complaint from dismissal even if they were preserved.

The same issue plagues the Littlejohns' argument that deliberative indifference should have been the standard given a lack of exigency in decision making. Again, this issue was not preserved, and misses the mark as already described.

The Littlejohns further argue that the education setting cases cited by the District Court are not appropriate to be evaluated because they did not involve parental rights, but they also object to the District Court's reliance on this Court's decision in *Maddox* which did involve parental rights. Frankly, the Littlejohns' objection to the education setting cases, in that they involved tort claims and not a

fundamental liberty interest, does not make sense. *Nix* involved a fundamental liberty interest enumerated in the Constitution; life. 311 F.3d at 1374-75. What is important from these varying decisions, which will be further discussed herein, and what the District Court did in evaluating these decisions, was to establish a continuum of conduct upon which a finding of conscience shocking behavior might be appropriate considering the facts alleged.

Finally, the Littlejohns object to what they believe to be the reliance of the District Court on cases involving law enforcement personnel, which they say are distinguishable. But the cases involving law enforcement personnel that the District Court cited were cited for general points of law. *See* Doc. 66 at pp. 10-11, 20 (citing *Echols v. Lawton*, 913 F.3d 1313, 1326 (11th Cir. 2019) for the proposition that some judges have described the due process clause as not providing protection for unenumerated rights, *Hoefling v. City of Miami*, 811 F.3d 1271, 1282 (11th Cir. 2016) for the requirements to state a substantive due process claim, and *Waddell v. Hendry County. Sheriff's Off.*, 329 F.3d 1300 (11th Cir. 2003) for general points of law concerning substantive due process claims).

The District Court was right to apply the shocks the conscience test and right in determining that the Littlejohns did not meet it. In *Nix*, the parents of a high school student who died from electrical shock during a voltage-reading demonstration in electromechanical class brought an action alleging violations of their son's due

process rights. 311 F.3d at 1374-75. This Court held that even if the defendants were deliberately indifferent to the safety of the student, such deliberate indifference did not constitute violation of student's substantive due process rights. *Id.* at 1378. The Court found that, as a general rule, to prevail on a claim of a substantive due-process violation, a plaintiff must prove that a defendant's conduct shocks the conscience. *Id.* at 1375.

The *Nix* Court rightly recognized that the Supreme Court has always been reluctant to expand the concept of substantive due process to prevent the 14th Amendment from becoming a surrogate for tort principles. *Id.* at 1376 (citing *Daniels,* 474 U.S. at 331). Then this Court proceeded to hold that the conditions in the electromechanical course, giving rise to the death of the student, while unfortunate, do not shock the conscience or rise to the level of an affront of a constitutional dimension. *Id.* at 1378-1379.

Although the *Nix* Court acknowledged that the shocks the conscience test can be somewhat nebulous, it made it clear that mere negligence is not enough. *Id*. at 1375-1376. This Court has "pointed out that actions 'intended to injure in some way unjustifiable by any government interest' are those most likely to rise to the conscience-shocking level." *Id*. at 1376 (quoting *Lewis*, 523 U.S. at 849).

The Littlejohns argue that "[t]he only parental rights case cited by the District Court, *Maddox v. Stephens*, 727 F.3d 1109 (11th Cir. 2013), [] does not support the

court's conclusion that Plaintiffs have to and failed to allege "conscience-shocking" behavior in order to state a claim for violation of their fundamental parental rights arising from Defendants' legislative, deliberative actions." *See* Appellants' Initial Br. At p. 31. Appellants are incorrect that the holding in this Court's decision in *Maddox* does not support the District Court's order. The Littlejohns' attempt to distinguish *Maddox* focuses either on the supposed import of their waived arguments that the conscience shocking standard does not apply or that the deliberate indifference standard should have been applied, or the inconsequential fact, for the purposes of this appeal at least, that the case involved a qualified immunity determination and not the ultimate determination of whether a constitutional violation occurred.

In *Maddox*, a mother brought a substantive due process claim against a social worker for "interfering with her protected liberty interest in the care, custody, and management" of her hospitalized child after the social worker determined that the child should be discharged to her grandmother and not her mother. 727 F.3d at 1113–18. The social worker made this decision after finding that the mother was unfit to care for the child, and that the child's grandmother was the only living relative with the necessary training to care for the child. *Id.* This Court evaluated whether the social worker was entitled to qualified immunity for discharging the child to her grandmother and not her mother and importantly, evaluated whether that conduct —

was "arbitrary or conscience shocking" such that a reasonable social worker would have been on notice that they were violating the plaintiff's substantive due process rights. *Id.* at 1119–20. This Court ruled that the social worker was entitled to qualified immunity finding that it would not have been clear to a reasonable social worker that her conduct, which directly interfered with the mother's physical custody of her child, was arbitrary or conscience shocking. *Id.* at 1126–1127. This Court found that even intentional and direct interference with one's parental liberties and even the most severe infringement of parental liberties—intentionally depriving a parent of custody over their child—is not, by itself, conduct that is clearly conscience shocking as defined by binding caselaw.

As noted by the District Court, "[t]here are very few cases where the Eleventh Circuit has found conduct to be conscience-shocking, which is not surprising given the high bar plaintiffs face in establishing such claims." [Doc. 66, p. 13]. Only "extraordinary circumstances," *Nix*, 727 F.3d at 1379, involving the "most egregious" government conduct, *Maddox*, 727 F.3d at 1119 (citations omitted), can be considered conscience shocking as defined by binding case law.

This Court's decision in *Neal v. Fulton County Board of Education*, where a high school coach allegedly violated a student's substantive due process right to be free from excessive corporal punishment, is instructive. 229 F.3d 1069 (11th Cir. 2000). In that case, the alleged misbehavior of a high school coach in deliberately

striking a student in the eye with a metal weight, using enough force to cause permanent blindness to the student, was sufficient to show conscience shocking behavior, because that behavior was an egregious use of official abuse of force, obviously excessive, and presented a foreseeable risk of serious bodily injury. *Id*. at 1076.

The *Neal* case demonstrates that evidence that conduct was malicious or abusive in nature and intended to cause harm passes the conscience shocking test. Compare this to the *Nix* case, where this Court found that a teacher's in class experiment with a live wire resulting in the death of a student was not conscience shocking; because even though the death of the student was tragic, the conduct was only deliberately indifferent and fell within the middle range of the culpability spectrum. 727 F.3d at 1376-1377. As noted by the District Court, "[t]he Eleventh Circuit has made it clear that deliberate indifference alone, no matter how severe the alleged injury, does not rise to the level of conscience shocking as defined by binding case law." [Doc. 66, p. 19] citing *Davis v. Carter*, 555 F.3d 979, 980–984 (11th Cir. 2009) (holding that deliberate indifference to student safety by school officials, without more, is not conscience-shocking behavior); *Peterson*, 982 F.3d at 1330 ("We doubt that deliberate indifference can ever be "arbitrary" or "conscience shocking" in a noncustodial setting."); *Brown v. Greer*, No. 21-10694, 2021 WL 5085352, at *3 (11th Cir. Nov. 2, 2021) (finding that "deliberate indifference to [the

plaintiff's] safety in a non-custodial school setting ... , without more, does not state a valid substantive due process claim").

Indeed, this Court in *Nix*, found a high school teacher that performed an electrical experiment with a live wire—knowing that students could electrocute themselves on exposed sections of the wire and had done so in the past—and which resulted in the *death of a student*, did not shock the conscience. 727 F.3d at 1378–1379. The *Nix* court came to this conclusion by comparing the facts there to those in *Dacosta v. Nwachukwa*, where this Court found that a college professor intentionally striking a student did not even give rise to a substantive due process violation. *Id.* at 1378; *see also Dacosta v. Nwachukwa*, 304 F.3d 1045 (11th Cir. 2002). As this Court held, even an "act at the upper end of the culpability spectrum—an intentional act— will not necessarily support a [substantive] due-process claim." *Nix*, 311 F.3d at 1378.

The Defendants' alleged actions in failing to notify the Littlejohns of the meeting that school personnel had with A.G. and with A.G. not requesting parental involvement, and then subsequently not immediately disclosing to the Littlejohns what occurred during that meeting upon their request, simply do not rise to the high level of shocking the conscience in light of these precedents. The Littlejohns have not argued that their child was singled out and forced to have these conversations or adopt the support plan. The Littlejohns do not argue that the meeting was held

39

contrary to the child's wishes. The Littlejohns do not contend that their child wanted the Littlejohns present but that this request was refused. There is no contention that the Appellees denigrated the Littlejohns in an attempt to disrupt the family relationship and sever the custodial relationship of a parent to child. The Littlejohns have not even argued that the Defendants acted with any kind of specific intent to injure or interfere with the parental relationship.[3]

Mere negligence or deliberate indifference in not notifying the Littlejohns of the meeting and not immediately disclosing what occurred during the meetings simply are not enough to rise to the level of shocking the conscience. "Even conduct that is untoward, unfortunate, and understandably upsetting does not necessarily rise to the level of a substantive due process violation." *Maddox*, 727 F.3d at 1127 (citations omitted). That is not to say that even this type of conduct is at play here, but regardless, as the District Court cogently stated, "[c]onsidering the Eleventh Circuit's decision in *Nix*, that if a government actor's deliberate indifference to serious risks to student safety that he himself created—which ultimately resulted in the *death of a child*—does not shock the conscience, then [the Littlejohns']

---

[3] The Littlejohns argued that the Appellees intended to exclude them from the meeting by not inviting them and intended to deceive them by not notifying them, but do not allege any kind of a malicious intent to harm the Plaintiffs by their actions in failing to notify the parents or to invite them to the meeting.

allegations also fall short of this standard. [Doc. 66 at p. 24 (citing *Nix*, 311 F.3d at 1379)(Emphasis in the original)].

> **E.    The District Court was correct to dismiss *Arnold v. Board of Education* as not controlling since the Littlejohns were required to prove conscience shocking conduct and coercion of the student and failed to do so**

The Littlejohns make two arguments centered on this Court's decision in *Arnold v. Board of Educ. of Escambia County Ala.*, 880 F. 2d 305 (11th Cir. 1989). First, they argue that the District Court erred in finding that *Arnold* did not control because it predated the Supreme Court's holding in *County of Sacramento v. Lewis*, that all substantive due process claims premised on executive action must allege conscience shocking behavior. Second, they argue that the District Court erred in finding that the facts of the *Arnold* case were distinguishable from this case, because the defendants in the *Arnold* case exhibited a degree of coercion not alleged here. The Littlejohns are wrong on both counts.

First, the Appellees have already extensively discussed why, contrary to the arguments of the Littlejohns, that one asserting a substantive due process claim premised on executive action, must prove both infringement of a fundamental right and conscience shocking behavior, or at the very least, conscience shocking behavior.

Second, the District Court was correct in distinguishing *Arnold* based on the element of coercion. The Littlejohns reliance on *Arnold* is misplaced based on the

facts. In *Arnold*, a minor student who had an abortion, the putative father who was also a student, and the student's parents brought a civil rights suit against the school guidance counselor, vice-principal, and school board for allegedly coercing the student into having an abortion. 880 F. 2d 305 at 311–314. The student alleged that she was coerced by the school guidance counselor and vice-principal into deciding to have an abortion. *Id*. This Court determined that a school official allegedly coercing a minor child into obtaining an abortion unconstitutionally interfered with her parents' protected liberty interest in maintaining familial relations. *Id*.

As noted by the District Court, *Arnold* is a case about coercion of a student both to have an abortion and not to discuss it with her parents, not about a lack of parental notice, easily distinguishable on the facts alone. This is not a minor point. Coercion lies at the heart of the *Arnold* decision. This Court in *Arnold* determined that parental rights are violated when minor children are coerced to refrain from discussing such intimate decisions such as an abortion with parents. As noted by the District Court, the Plaintiffs do not allege that A.G. was coerced by the Defendants.

Numerous other cases have distinguished *Arnold* based on the element of coercion. In *Anspach v. City of Philadelphia, Dep't. of Public Health*, 503 F.3d 256 (3rd Cir. 2007), an unemancipated minor and her parents brought action against the city of Philadelphia and certain of its employees and agents, alleging 1st and 14th Amendment violations stemming from the provision of emergency contraception to

minor at a health center operated by the City Department of Public Health. In that case, the Court distinguished *Arnold* based on the issue of a lack of coercion as well as the fact that the minor was in no way compelled, constrained, or coerced into a course of action she objected to as was the case in *Arnold*. *Anspach*, 503 F.3d at 265-266. This case is not alone. *See*, *e.g.*, *Fenstermaker v. Nesfedder*, 802 F. Supp 1258, n. 9 (E.D. Penn. 1992)(distinguishing *Arnold* on coercion); *Rogers v. Pike Road Board of Ed.*, 2022 WL 4563014, *4 (M.D. Ala, 2022)(finding *Arnold* distinguishable on facts given elements of coercion of the student and even going on to explain, in the context of plaintiff's suggested constitutionally-protected right to be free from unwarranted governmental intrusion and interference with familial relations, that "even if *Arnold* stands for that proposition-it is too generalized to clearly establish a right to comprehensive parental notification ...").

Simply put, *Arnold* was primarily decided on the fact the student alleged coercive pressure on the part of school officials. That this case is different from *Arnold* is all the clearer given this Court expressly held in *Arnold* that parental rights are not unlimited and that guidance counselors played an important role as a "trusted confidant" to students. *See* 880 F.2d at 313-314. This Court expressly disclaimed that it was constitutionally mandating that counselors inform parents that their minor child received pregnancy counseling. *See id.* at 314. The Littlejohns allege that exact kind of conduct in nature and fail to allege coercion on the part of any of the

43

Appellees. At best, they merely suggest that A.G. might have felt coerced given A.G.'s ADHD diagnosis. *See* Appellants' Initial Br. at p. 51. To compare this case with *Arnold*, where the Littlejohns do not come close to alleging the type of coercion at issue in *Arnold,* would be inappropriate.

## III.  The District Court did Not Err in Finding that the Individual Defendants were Entitled to Qualified Immunity

Qualified immunity offers complete protection for government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Critical public policy considerations, such as the "social costs [associated with claims against public officials] including the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office" are bedrock principles of the defense. *Id.* at 814.

Qualified immunity protects from suit "all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002). It is a "muscular doctrine that impacts on the reality of the workaday world as long as judges remember that the central idea is this pragmatic one: officials can act without fear of harassing litigation only when they can reasonably anticipate—*before* they act or do not act—if their conduct will give rise to damage liability for them." *Foy v. Holston,* 94 F.3d 1528, 1534 (11th Cir. 1996)

(citing *Davis v. Scherer,* 468 U.S. 183, 195 (1984)). "If objective observers cannot predict—at the time the official acts—whether the act was lawful or not, and the answer must await full adjudication in a district court years in the future, the official deserves immunity from liability for civil damages." *Id.* (citing *Elder v. Holloway,* 510 U.S. 510, 513–15 (1994)).

Qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity "operates as a shield against civil damages due to mistaken judgments." *Harris v. Coweta Cnty.*, 21 F.3d 388, 390 (11th Cir. 1994). Stated differently, qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments." *Carroll v. Carman*, 574 U.S. 13, 17 (2014) (per curiam).

To receive qualified immunity, a public official must first establish they were "acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee*, 284 F.3d at 1194. The Littlejohns do not dispute on appeal that that the individual defendants were acting within their discretionary authority and thus the burden shifts to Littlejohns to establish that qualified immunity is inappropriate. *Lumley v. City of Dade City, Fla.*, 327 F.3d 1186, 1194 (11th Cir. 2002). To do so, they must satisfy the following two-part test: (1) that they have alleged a violation of a constitutional right; and (2) that the constitutional violation

45

was "clearly established" at the time of the misconduct. *Keating v. City of Miami,* 598 F. 3d 753, 762 (11th Cir. 2010) (citing *Pearson,* 555 U.S. at 236 and *Hope v. Pelzer,* 536 U.S. 730, 736 (2002)). The steps in the test may be considered in whatever order is deemed appropriate for the case. *Pearson,* 555 U.S. at 241-242. Meaning, this Court can determine that the right allegedly violated was not clearly established without deciding whether a constitutional violation occurred at all. *See, e.g.*, *Loftus v. Clark–Moore,* 690 F.3d 1200, 1204 (11th Cir. 2012); *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009).

"The inquiry whether a federal right is clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Loftus*, 690 F.3d at 1204 (quoting *Coffin v. Brandau,* 642 F.3d 999, 1013 (11th Cir. 2011) (en banc)). "Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 580 US 73, 78-79 (2017) (quoting *Mullenix v. Luna,* 577 U.S. 7, 11 (2015)).

Based on the specific facts of this case, the individual Defendants-Appellees are entitled to qualified immunity. This is because the Littlejohns fail to establish that any constitutional violation occurred at all, but also because any alleged violation was not clearly established. A right may be clearly established for qualified immunity purposes in one of three ways: "(1) case law with

indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis,* 561 F.3d at 1291–92 (internal citations omitted). The Littlejohns argue on appeal that a case of this Court and the Supreme Court put the individual defendants on notice that their conduct constituted a constitutional violation. They are wrong.

The District Court was correct in holding that "the law regarding substantive due process rights afforded to parents is an unsettled area of constitutional law, such that a reasonable person would not be able to know when their conduct is in violation of the law." *See* Doc. 66 at p. 9. This Court's decision in *Maddox v. Stephens,* finding that a social worker was entitled to qualified immunity on substantive due process claims asserting infringement on parental rights is on point. As discussed, *Maddox,* involved the intentional and direct interference in the custodial relationship between a parent and child. Even this type of action was subject to the qualified immunity defense.

The Littlejohns principally attempt to distinguish *Maddox* by distinguishing the cases relied on by *Maddox,* but they fail to say why the finding of qualified immunity in that case, involving direct interference with parental rights, supports a finding that the lesser degree of interference in this case should not be afforded the

same defense. *See* Appellants' Initial Br. at pp. 43-46.[4] And even despite the existence of *Maddox*, and the acknowledgement of this Circuit that this area of the law is "murky", the Littlejohns nonetheless argue that two cases were sufficient to put the individual defendants on notice that their conduct amounted to a constitutional violation. The two decisions the Littlejohns point to are this Court's decision in *Arnold v. Board of Educ. of Escambia County Ala.,* and the Supreme Court's decision in *Parham v. J.R.,* 442 U.S. 584 (1979). *See* Appellants' Initial Br. at pp. 46-48.

The Littlejohns claim that *Arnold* and this case have "striking similarity." *See* Appellant Initial Br. at p. 48. They claim that both cases involve unauthorized conversations between public school officials and minor students regarding personal issues of health and well-being, which were purposefully concealed from parents. *See id.* at 47. But the Littlejohns do not acknowledge the significant relevant differences between this case and *Arnold,* most notably the element of coercion central to the decision in *Arnold* as already discussed herein. That is not to mention the fact that *Arnold* did not apply the conscience-shocking test that the Supreme

---

[4] The Littlejohns do claim that *Maddox* involved "contemporaneous, non-deliberative acts" that they believe are not at issue here. *See* Appellants' Initial Br. at p. 33-34. But the facts do not support the notion that the social worker in *Maddox* had to make a split-second decision like the law enforcement officer in *Lewis* and, in any event, the Appellees have already explained why the Littlejohns' waived theory that deliberate indifference should apply in this case is incorrect.

Court unequivocally held in *Lewis* to apply to claims like this one.

Parham does not involve a school setting, which the Littlejohns admit. *See* Appellants' Initial Br. at p. 48. Nevertheless, they argue that *Parham* should have put the Appellees on notice that actions taken pursuant to policies that infringe on a parents' right to make decisions concerning the mental health and well-being of their children would violate the parents' fundamental rights. *See id. Parham* though dealt with the voluntary commitment of children by their parents. 442 U.S. at 604. The Littlejohns do not explain how the factual circumstances are so alike that the individual Defendants here would be put on notice that the conduct alleged violated the Littlejohns' constitutional rights.

The Littlejohns' claim that *Parham* put Appellees on notice that actions taken pursuant to a policy that infringes on liberty interests is unconstitutional. But the Supreme Court has emphasized "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White*, 580 U.S. at 79, quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). *See also Kisela v. Hughes*, 138 S. Ct. 1148, 1152-1153 (2018); *Mullenix*, 577 U.S. at 12. The Littlejohns reliance on broad statements concerning parental liberty interests in *Parham,* and *Troxel* for that matter, is misplaced because the concepts in these cases is at too high a level of generality to be sufficient to put the individual defendants on notice that

their conduct in this case constituted a constitutional violation.[5]

The Littlejohns argue that parental liberty interests are clearly established but fail to argue that it is clearly established that the conduct alleged violates such liberty interests. "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix*, 577 U.S. at 12, quoting *al-Kidd*, 563 U.S. at 742 (emphasis in original); *see also Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7-8 (2021)("Although this Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate")(citation and internal quotation marks omitted). The undersigned can identify no case establishing the *conduct alleged* constitutes a constitutional violation and the Littlejohns do not identify such a case.

It is noted the Littlejohns again assert waived theories of liability centering on their belief the District Court should not have applied the shocks the conscience

---

[5] It is unclear if the Littlejohns are arguing that qualified immunity is inappropriate because this case involves alleged conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law. If they are, they have failed to establish this is the case. This third category is "narrow" and "encompasses those situations where 'the official's conduct lies so obviously at the very core of what the [relevant constitutional provision] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law.'" *Loftus,* 690 F.3d at 1205 (quoting *Terrell v. Smith,* 668 F.3d 1244, 1257 (11th Cir. 2012)). No conduct alleged on the part of the individual defendants lies so obviously at the core of the 14th Amendment that the qualified immunity defense should not apply, especially in this murky area.

standard. They contend the District Court's decision, and its determination that the individual Defendants were entitled to qualified immunity, is based on the "flawed premise" that conscience shocking behavior is necessary to establish a constitutional violation. *See* Appellants' Initial Br. at p. 42. Again, these arguments do not focus on the conduct alleged and whether a case exists that would put the individual Defendants on fair notice that their conduct constituted a constitutional violation. If anything, the Littlejohns' novel arguments about the nature of how these constitutional claims are evaluated militates against finding the clearly established prong has been met.

Finally, the Littlejohns argue that the District Court's holding illustrates the improper expansion of the concept of qualified immunity claiming that the District Court "selectively disregarded controlling precedent to justify finding that rights recognized as fundamental for decades are not clearly established." *See* Appellants' Initial Br. at pp. 50-51. Again, the Littlejohns do not address whether it is clearly established that the *conduct* alleged violates a clearly established right. As discussed, under this Court's precedent it is not clearly established that the conduct alleged would constitute a substantive due process violation.

**IV.**  **The Littlejohns' Objection to their Belief that the District Court "Insinuated" they were Trying to Expand a "Disfavored" Concept Provides no Basis for Reversal**

The Littlejohns take issue with the District Court's citation to Justice Thomas's statement in his concurring opinion in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022) that the concept of substantive due process lacks any basis in the Constitution and with what they believe was "[t]he district court's insinuation that [they] are trying to expand a constitutional concept that is of questionable validity." *See* Appellant's Initial Br. at p. 53. The District Court referred to Justice Thomas's concurring opinion in the context of explaining why the bar for substantive due process claims is high, noting:

> This high bar, however, should come as a shock to no one. Judges on the Eleventh Circuit have described substantive due process as being "untethered from the text of the Constitution," and that "on its face . . . the Due Process Clause guarantees no substantive rights, but only (as it says) process. . . ." *Echols v. Lawton*, 913 F.3d 1313, 1326 (11th Cir. 2019) (quotations omitted). Even a current Supreme Court justice does not believe that the due process clause permits a claim for substantive due process. *See Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2301 (2022) (Thomas, J., concurring) ("[S]ubstantive due process is an oxymoron that lacks any basis in the Constitution . . . [t]he notion that a constitutional provision that guarantees only 'process' before a person is deprived of life, liberty, or property could define the substance of those rights strains credulity for even the most casual user of words.") (citations omitted).

[Doc. 66 pp. 20-21]. There was nothing remarkable about the District Court's explanation that some jurists interpret the 14th Amendment's due process clause to

52

not provide any protection to unenumerated rights at all in the context of explaining the high bar for such claims.

The Littlejohns admit the District Court evaluated their substantive due process claims. *See* Appellant's Initial Br. at p. 53. Their assertion that the District Court's inclusion of Justice Thomas's position on whether the due process clause of the 14th Amendment protects unenumerated constitutional rights, "raises … questions", attempts to create a mystery where none exists.

## CONCLUSION

For the reasons set forth herein, the District Court's judgment should be affirmed.

Respectfully submitted this 21st day of July 2023.

*/s/* Jeffrey D. Slanker

**JEFFREY D. SLANKER**
Florida Bar Number: 100391
E-mail: jslanker@sniffenlaw.com
**TERRY J. HARMON**
Florida Bar Number: 0029001
E-mail: tharmon@sniffenlaw.com
**MICHAEL P. SPELLMAN**
Florida Bar Number: 937975
E-mail: mspellman@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, FL 32301
Telephone: (850) 205-1996
Fax: (850) 205-3004

*Appellees' Attorneys*

## <u>CERTIFICATE OF COMPLIANCE</u>

I CERTIFY that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B). This brief contains 12,828 words (within the limit of 13,000) excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I FURTHER CERTIFY that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in 14-point Times New Roman.

<u>/s/ Jeffrey D. Slanker</u>
**JEFFREY D. SLANKER**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 21st day of July 2023, one true and accurate copy of the foregoing document has been electronically filed with the Clerk of the Eleventh Circuit using the CM/ECF system which will send notification of filing to all parties of record.

I also hereby certify that, on this 21st day of July 2023, four copies of this brief with red covers have been delivered via Federal Express to:

Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St. N.W.
Atlanta, GA 30303

<u>/s/ Jeffrey D. Slanker</u>
**JEFFREY D. SLANKER**