**CASE NO. 23-10385-HH**

IN THE UNITED STATES COURT OF APPEAL
FOR THE ELEVENTH CIRCUIT

JANUARY LITTLEJOHN, JEFFREY LITTLEJOHN,

Plaintiffs-Appellants

v.

SCHOOL BOARD OF LEON COUNTY, FLORIDA, ROCKY HANNA,
DR. KATHLEEN RODGERS,  RACHEL THOMAS, ROBIN OLIVERI

Defendants-Appellees
_____

On Appeal from the United States District Court
Northern District of Florida, Tallahassee Division
Case No. 4:21-CV-00415-MW-MJF
_____

**PLAINTIFFS-APPELLANTS' REPLY BRIEF**
_____

Mary E. McAlister
CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
P.O. Box 637
Monroe, VA 24574
770.448.4525
mmcalister@childparentrights.org

Vernadette R. Broyles
Ernest G. Trakas
CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
5805 State Bridge Rd., Suite G310
Johns Creek, GA 30097
770.448.4525
vbroyles@childparentrights.org
etrakas@childparentrights.org
Attorneys for Plaintiffs-Appellants

Case No. 23-10385-HH

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to this Court's Local Rules 26.1-1 through 26.1-3 and 28-1(b), Appellees certify that the name of each person, attorney, association of persons, firm, law firm, partnership, or corporation that has or may have an interest in the outcome of this action — including subsidiaries, conglomerates, affiliates, parent corporations, publicly-traded companies that own 10% or more of a party's stock, and all other identifiable legal entities related to any party in the case is limited to the following:

1. Able Americans - Amicus Curiae

2. Advancing American Freedom, Inc. - Amicus Curiae

3. Alabama Center for Law and Liberty - Amicus Curiae

4. Alliance Defending Freedom - Amicus Curiae

5. American Principles Project - Amicus Curiae

6. American Values - Amicus Curiae

7. Anderson, Katherine L. - Counsel for Amicus Curiae

8. Anderson, PhD, Dr. Erica E. - Amicus Curiae

9. Bell, Daniel W. - Counsel for Amicus Curiae

10. Berg, Luke N. - Counsel for Amicus Curiae

11. Broyles, Vernadette – Counsel for Appellants

C -1 of 6

Case No. 23-10385-HH

12. Center for Political Renewal - Amicus Curiae

13. Center for Urban Renewal and Education (CURE) - Amicus Curiae

14. Child and Parental Rights Campaign – Counsel for Appellants

15. Christian Law Association - Amicus Curiae

16. Christians Engaged - Amicus Curiae

17. Clark, Matthew J. - Counsel for Amicus Curiae

18. Claybrook LLC - Counsel for Amicus Curiae

19. Claybrook, Jr., Frederick W. - Counsel for Amicus Curiae

20. Coalition for Jewish Values - Amicus Curiae

21. Concerned Women for America - Amicus Curiae

22. Congresswoman Vicky Hartzler - Amicus Curiae

23. Cornwall Alliance for the Stewardship of Creation - Amicus Curiae

24. Corrigan, Christian B. - Counsel for Amicus Curiae

25. Delaware Family Policy Council - Amicus Curiae

26. Dewart, Deborah J. - Counsel for Amicus Curiae

27. Dhillon Law Group, Inc. - Counsel for Amicus Curiae

28. Dr. James Dobson Family Institute - Amicus Curiae

29. Eagle Forum - Amicus Curiae

30. Estrada, William A. - Counsel for Amicus Curiae

31. Ethics & Public Policy Center - Counsel for Amicus Curiae

32. Faith and Freedom Coalition - Amicus Curiae

33. Family Foundation - Amicus Curiae

34. Family Policy Institute of Washington - Amicus Curiae

35. First Liberty Institute - Counsel for Amicus Curiae

36. Fitschen, Steven W. - Counsel for Amicus Curiae

37. Frontline Policy Action - Amicus Curiae

38. Global Liberty Alliance - Amicus Curiae

39. Goldwater Institute - Amicus Curiae

40. Hanna, Rocky - Appellee

41. Harmon, Terry J. - Counsel for Appellee

42. Illinois Family Institute - Amicus Curiae

43. Institute for Faith and Family - Amicus Curiae

44. International Conference of Evangelical Chaplain Endorsers - Amicus Curiae

45. Jones, Darryl - School Board Member

46. Kniffin, Eric N. - Counsel for Amicus Curiae

47. Knudsen, Austin - Counsel for Amicus Curiae

48. Lawkowski, Gary M. - Counsel for Amicus Curiae

49. Lawson Cox, Laurie - School Board Member

50. Littlejohn, January - Appellant

51. Littlejohn, Jeffrey - Appellant

52. Manhattan Institute - Amicus Curiae

53. Martinez, Abigail - Amicus Curiae

54. Mateer, Jeffrey C. - Counsel for Amicus Curiae

55. McAlister, Mary – Counsel for Appellants

56. Missouri Center-Right Coalition - Amicus Curiae

57. Moody, Ashley - Counsel for Amicus Curiae

58. National Association of Parents, Inc. d/b/a Parents USA (or) National

Association of Parents, Inc. d/b/a ("ParentsUSA") - Amicus Curiae

59. National Center for Public Policy Research - Amicus Curiae

60. National Legal Foundation - Amicus Curiae

61. National Religious Broadcasters - Amicus Curiae

62. New Jersey Family Policy Center - Amicus Curiae

63. New Mexico Family Action Movement - Amicus Curiae

64. Nicolas, Marcus - School Board Member

65. Oliveri, Robin - Appellee

66. Our Duty - Amicus Curiae

67. Pacific Justice Institute - Amicus Curiae

68. Parental Rights Foundation - Amicus Curiae

69. Project 21 Black Leadership Network - Amicus Curiae

70. Randall, Holly M. - Counsel for Amicus Curiae

Case No. 23-10385-HH

71. Rodgers, Kathleen - Appellee

72. Russell Kirk Center for Cultural Renewal - Amicus Curiae

73. Russell, Keisha T. - Counsel for Amicus Curiae

74. Sandefur, Timothy - Counsel for Amicus Curiae

75. Sapir, Dr. Leor - Amicus Curiae

76. Sarelson, Matthew - Counsel for Amicus Curiae

77. Scharf-Norton Center for Constitutional Litigation - Counsel for Amicus

Curiae

78. School Board of Leon County - Appellee

79. Seideman, Tina - Counsel for Amicus Curiae

80. Shapiro, Ilya - Counsel for Amicus Curiae

81. Shelton, Adam C. - Counsel for Amicus Curiae

82. Slanker, Jeffrey D. - Counsel for Appellees

83. Sniffen & Spellman, P.A. - Counsel for Appellees

84. Spellman, Michael – Counsel for Appellees

85. State of Montana, Florida and 19 Other States - Amicus Curiae

86. Students for Life of America - Amicus Curiae

87. Swafford Smith, Alva - School Board Member

88. The Center for American Liberty - Amicus Curiae

89. The Justice Foundation - Amicus Curiae

Case No. 23-10385-HH

90. Thomas, Rachel - Appellee

91. Toney, Kayla A. - Counsel for Amicus Curiae

92. Torstensen, Jr., Peter M. - Counsel for Amicus Curiae

93. Trakas, Ernest – Counsel for Appellants

94. Wagner, Vincent M. - Counsel for Amicus Curiae

95. Walker, Hon. Mark E. – Chief U.S. District Court Judge

96. Wheat, J. Marc - Counsel for Amicus Curiae

97. Whitaker, Henry C. - Counsel for Amicus Curiae

98. Wood, Rosanne - School Board Member

99. Young America's Foundation - Amicus Curiae

The undersigned certifies that no publicly traded company or corporation has an interest in the outcome of the case or appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ..............................................................C-1

TABLE OF CONTENTS ........................................................................ i

TABLE OF CITATIONS ...................................................................... iii

SUMMARY OF ARGUMENT ...............................................................1

ARGUMENT .......................................................................................4

I. This Court Should Overturn the District Court's Erroneous Application of
"Shock the Conscience" To Defendants' Alleged Violation of Plaintiffs'
Fundamental Rights                                                                          4

   A.  Plaintiffs Have Not Waived Arguments Regarding Applicability Of
"Shock The Conscience" To Their Claims.................................................4

   B.  Plaintiffs' "Shocks the Conscience" Arguments Represent Pure Questions
of Law That Involve Issues of Substantial Justice and Great Public
Concern. ........................................................................6

II. The District Court Erred In Finding No Substantive Due Process Violation.   8

   A.  *Lewis* Does Not Require A "Shocks the Conscience" Analysis For
Violations Of Fundamental Rights. ...........................................9

   B.  The Dissimilar Personal Injury Education Cases Cited By The Court And
Defendants Do Not Support Superimposing Shocks The Conscience Onto
Plaintiffs' Fundamental Rights Claims....................................................13

   C.  Neither The District Court Nor Defendants Can Justify Disregarding
Controlling Precedent. ..............................................................16

III. The District Court Erred In Finding that Fundamental Parental Rights Are
not Clearly Established And Thereby Granting Qualified Immunity.       19

   A.  *Arnold* Placed The Unconstitutional Nature of Defendants' Conduct
Beyond Debate During The Relevant Time. .............................................19

B.   *Maddox* Does Not Render Plaintiffs' Fundamental Rights Too "Murky" To Be Clearly Established. ........................................................................21

IV. The District Court's Citation To A Concurring Opinion In *Dobbs* Underscores The Errors In Its Premise That Fundamental Parental Rights Are "Murky."                                                                                        24

CONCLUSION ...........................................................................................25

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENT ...........27

CERTIFICATE OF SERVICE ...................................................................27

# TABLE OF CITATIONS

## **Cases**

*Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324 (11th Cir. 2004)............................ 4-7

*Arnold v. Board of Education of Escambia County*, 880 F.2d 305 (11th Cir. 1989)............. *passim*

*Berkun v. Comm'r*, 890 F.3d 1260 (11th Cir. 2018)..................................................... 4

*Betts v. Brady*, 316 U.S. 45562 (1942) ........................................................................ 10

*Chavez v. Martinez,* 538 U.S. 760 (2003)...................................................... 11, 12, 15

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)............................................ *passim*

*Dacosta v. Nwachukwa*, 304 F.3d 1045 (11th Cir. 2002)............................................ 15

*Davis v. Carter*, 555 F.3d 979 (11th Cir. 2009)......................................................... 15

*Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022)..................... 24, 25

*Harrah Ind. School Dist. v. Martin*, 440 U.S. 194 (1979).......................................... 22

*JCC, Inc. v. Commodity Futures Trading Commission*, 63 F.3d 1557 (11th Cir. 1995)............... 6

*Kisela v. Hughes*, 138 S. Ct. 1148 (2018)................................................................. 21

*L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323 (11th Cir. 2020)........................... 15

*Loftus v. Clark-Moore,* 690 F.3d 1200 (11th Cir. 2012)............................................. 23

*Maddox v. Stephens,* 727 F.3d 1109 (11th Cir. 2013) .................................... 2, 19, 21-23

*McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994)........................................ 12, 15, 17

*Meyer v. Nebraska,* 262 U.S. 390 (1923) ............................................................... 3, 24

*Mullenix v. Luna*, 577 U.S. 7 (2015)....................................................................... 21

*Neal v. Fulton County. Bd. of Education,* 229 F.3d 1069 (11th Cir. 2000)................... 15

*Nix v. Franklin County School District,* 311 F.3d 1373 (11th Cir. 2002) ............... 14, 15

*Parham v. J.R.,* 442 U.S. 584 (1979)....................................................................... 21

*Pierce v. Society of Sisters,* 268 U.S. 510 (1925)). ........................................................... 25

*Reed v. Winn Dixie, Inc*., 677 F. App'x 607 (11th Cir. 2017) ........................................ 4

*Reno v. Flores*, 507 U.S. 292 (1993) ................................................................................ 7

*Singleton v. Wulff,* 428 U.S. 1061 (1976) ...................................................................... 6

*Troxel v. Granville*, 530 U.S. 57 (2000) ................................................................ 1, 8, 25

*Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002)...................................................... 11

*Waldman v. Comm'r*, 871 F.3d 1283 (11th Cir. 2017); ................................ 11, 13, 17

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ........................................... 7, 24, 25

*White v. Pauly*, 137 S. Ct. 548 (2017) ........................................................................ 21

*Wright v. Hanna Steel Corp*., 270 F.3d 1336 (11th Cir. 2001)................................... 3, 6

## SUMMARY OF ARGUMENT

The fundamental right at issue in this case could not be clearer. "[T]he interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000).

> Within the constitutionally protected realm rests the parental freedom to inculcate one's children with values and standards which the parents deem desirable....Indeed, parents have the right to decide free from unjustified governmental interference matters concerning the growth, development and upbringing of their children."

*Arnold v. Board of Education of Escambia County*, 880 F.2d 305, 313 (11th Cir. 1989).

Defendants' interference with that fundamental right could not be clearer as illustrated by the direct quote from their 2018 LGBTQ+ Support Guide:

> Q: A student has exhibited behavior in school leading administrators or teachers to believe the student is LGBTQ+. Should the parents or legal guardians be notified?
> A: No. (Dkt. 38 ¶ 47, Dkt. 38-1, p. 15).

The interference is also clear in Defendants' statements cited in the First Amended Complaint:

> If the minor child indicated that his or her parents were not "supportive," the Support Plan specifically directs that the parents were not to be notified of or present at the meeting, and the minor child would be permitted to make these consequential decisions on his or her own. (Dkt. 38 ¶ 55).

1

Ms. Thomas informed Mrs. Littlejohn that she was not permitted to tell Mrs. Littlejohn anything about the meeting with her daughter and was not invited to the September meeting because A.G., "by law," had to be the one to request her parents' attendance. (Dkt. 38 ¶¶ 99-104).

Former Board member Bowen said publicly that rising family tensions, "stress of living in a non-affirming household," and "parent/community pushback on LGBTQ+ inclusion" as challenges LGBTQ+ students were facing that the LCS Board had to address. (Dkt. 38 ¶ 75)

Nevertheless, Defendants now insist that the fundamental right described by this Court in *Arnold,* above, is so "murky" that they could not possibly have known that concealing information regarding the Littlejohn's daughter's gender identity and secretly affirming her discordant gender identity interfered with their rights. (Answer Brief, pp. 1, 10, 16, 17, 48, 50). "Parental liberty interests and the law surrounding it is 'murky' as this Court has said." (Answer Brief, p. 10). "The newly-pressed issues on appeal involving substantive due process rights in the area of unenumerated parental liberty rights have been dubbed by this Court as 'murky.'" (Answer Brief, p. 16). "These considerations [the Supreme Court's concerns about expanding substantive due process] disfavor wading into this murky area." (Answer Brief, p. 17). "[E]ven despite the existence of *Maddox* [*v. Stephens*, 727 F.3d 1109 (11th Cir. 2013)] and the acknowledgement of this Circuit that this area of the law is "murky…" (Answer Brief, p. 48). "No conduct alleged on the part of the individual defendants lies so obviously at the core of the 14th Amendment that the

qualified immunity defense should not apply, especially in this murky area." (Answer Brief, p.50).

What is "murky" is not the fundamental constitutional right of parents to direct the upbringing of their children, recognized by the Supreme Court 100 years ago, *Meyer v. Nebraska,* 262 U.S. 390 (1923), but rather, Defendants' arguments disclaiming knowledge that they interfered with the right. What is also murky is Defendants' argument that the issue of "substantive due process rights in the area of unenumerated parental liberty rights," which is integral to Plaintiffs' claims, is somehow "newly pressed" in this appeal. Going beyond murky to opaque is Defendant's argument that there is no conduct alleged that lies at the core of the Fourteenth Amendment so as to provide Defendants with notice that depriving parents of knowledge about their child's gender identity violates their rights.

Defendants do not provide substantive arguments to overcome the significant errors in the district court's decision. Instead, they claim that Plaintiffs somehow waived any challenge to the district court's application of the "shocks the conscience standard," which could not have been challenged before the district court engaged in it. *Wright v. Hanna Steel Corp*., 270 F.3d 1336, 1342 (11th Cir. 2001). They also claim that Defendants cannot be expected to know that withholding information from parents regarding an important issue related to their child's well-being would unjustifiably interfere with "matters concerning the growth, development and

3

upbringing of their children." *Arnold,* 880 F.2d at 313. Indeed, Defendants agree with the district court that this Court's binding precedent in *Arnold* should be disregarded. (Answer Brief, pp. 41-43).

Defendants' efforts to shore up the district court's decision are unavailing. This Court should reverse the district court's dismissal of Plaintiffs' claims.

## ARGUMENT

### I. This Court Should Overturn the District Court's Erroneous Application of "Shock the Conscience" To Defendants' Alleged Violation of Plaintiffs' Fundamental Rights

#### A. Plaintiffs have not waived arguments regarding applicability of "shock the conscience" to their claims.

Plaintiffs are not raising new theories of recovery or fact-dependent issues related to the district court's application of the "shocks the conscience" standard to Plaintiffs' substantive due process claims. Nonetheless, Defendants claim that Plaintiffs have somehow waived arguments pointing to the error of the district court's ruling. The cases cited by Defendants (*Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004), *Berkun v. Comm'r*, 890 F.3d 1260, 1264 (11th Cir. 2018), *Reed v. Winn Dixie, Inc*., 677 F. App'x 607, 612 (11th Cir. 2017)) do not support their contention that Plaintiffs' arguments are waived.

In *Access Now,* the plaintiffs brought a lawsuit claiming that Southwest Airlines Website was a public accommodation and its inaccessibility to the visually impaired violated the Americans with Disability Act. 385 F.3d at 1327. However, in

4

appealing the district court's dismissal of their complaint, Plaintiffs claimed that Southwest Airlines as a company was a public accommodation. *Id.* That new argument depended on critical facts and a new theory that were neither alleged in the complaint nor otherwise presented to the district court. *Id.* at 1329. Therefore, it exemplified the reason for this Court's admonition against considering new issues on appeal:

> [A]s a court of appeals, we review claims of judicial error in the trial courts. If we were to regularly address questions — particularly fact-bound issues — that districts court never had a chance to examine, we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court.

*Id.* at 1331. Citing that language from *Access Now,* this Court refused to consider a taxpayer's due process argument raised for the first time on appeal in *Berkun*, 890 F.3d at 1264. Similarly, this Court declined to consider an employee's proffer of an intake questionnaire for proof of timeliness of her claim when the questionnaire was not offered below. *Reed*, 677 F. App'x at 612.

Plaintiffs' arguments regarding the district court's error in applying the "shocks the conscience" test to their fundamental rights claim is not a new legal theory of recovery or fact-bound issue that requires this Court to deviate from its nature, purpose and competence. Instead, it is a claim of judicial error in the application of the law to the facts of this case that is solidly within the purview of this Court. Defendants raised the issue of "conscience-shocking" conduct in their

Motion to Dismiss (Dkt. 56 at 3, 24, 25, 28, 31, 37. 44) and Plaintiffs responded to the Defendants' arguments in the Memorandum in Opposition (Dkt. 57 at 30-33). Extending beyond the arguments of the parties, the district court devoted 13 pages of a 29-page opinion expounding upon the "shock the conscience" standard in various legal contexts before concluding that Plaintiffs were required to and failed to allege "conscience-shocking" conduct. (Dkt. 66). It is the multi-faceted errors in the district court's analysis, not some new legal theory or factual issue, that Plaintiffs are challenging. Plaintiffs could not challenge the district court's analysis until the order was issued. Therefore, they cannot be precluded from raising the arguments here. *Wright,* 270 F.3d at 1342, *JCC, Inc. v. Commodity Futures Trading Commission*, 63 F.3d 1557, 1565 (11th Cir. 1995).

### B. Plaintiffs' "Shocks the Conscience" Arguments Represent Pure Questions of Law That Involve Issues of Substantial Justice and Great Public Concern.

Even if Plaintiffs' "shocks the conscience" arguments were seen as being raised for the first time on appeal (which Plaintiffs do not concede), the question of whether this Court can consider the arguments is not jurisdictional. *Access Now,* 385 F.3d at 1332. *See also, Singleton v. Wulff,* 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases."). This Court has permitted issues to be raised for the first time on

appeal under five circumstances: 1) if it involves a pure question of law and refusal to consider it would result in a miscarriage of justice; 2) where the appellant raises an objection to an order which he had no opportunity to raise at the district court level; 3) where the interest of substantial justice is at stake; 4) where the proper resolution is beyond any doubt; 5) if the issue presents significant questions of general impact or of great public concern. *Access Now,* 385 F.3d at 1332. The question of whether Plaintiffs are required to and failed to allege "conscience shocking" conduct satisfies numbers 1, 3, and 5.

The question of whether the "shocks the conscience" standard should be applied to claims of violation of fundamental rights is not dependent on a particular set of facts, but rather, is a pure question of law. The Supreme Court has established that the Fourteenth Amendment's guarantee of "due process of law" includes "a substantive component which forbids the government to infringe certain 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292. 301-02 (1993) (emphasis in original), "[T]he Due Process Clause specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg,* 521 U.S. 702, 721 (1997). Parents'

rights to direct the upbringing of their children is not merely one such right, but "perhaps the oldest of the fundamental liberty interests." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). The propriety of superimposing a "shocks the conscience" requirement on a challenge to such a fundamental right, as the district court prescribes, is not fact dependent. Refusal to consider whether courts can require that Plaintiffs allege "conscience-shocking" conduct before Defendants need to satisfy strict scrutiny would result in a miscarriage of justice by upending decades of Supreme Court precedent protecting fundamental rights. The continuing validity of these decades of precedent is a question of great public concern. Finally, requiring proof of "conscience shocking" conduct before triggering strict scrutiny would place substantial judicial interests, *i.e.,* protection of fundamental rights, at risk of dilution. For these reasons, this Court should address Plaintiffs' argument that the "shocks the conscience" standard does not apply to violations of fundamental rights.

## II. The District Court Erred In Finding No Substantive Due Process Violation.

Defendants adopt the same flawed interpretation of *County of Sacramento v. Lewis,* 523 U.S. 833 (1998) and come to the same erroneous conclusion as did the district court, *i.e.,* that Plaintiffs did not allege a substantive due process violation. The court's and Defendants' flawed interpretation of *Lewis* is manifested in: 1) The court's and Defendants' arguments that *Lewis* imposes a mandatory conscience-shocking analysis on all substantive due process claims based on executive action,

2) Defendants' misinterpretation of this Court's post-*Lewis* precedent to support their claim that all substantive due process claims must prove conscience shocking conduct, 3) The court's and Defendants' reliance on dissimilar education cases that raise the specter of substantive due process as a fount of tort law that "shocks the conscience" is designed to prevent, and 4) The court's and Defendants' dismissal of this Court's controlling precedent, *Arnold,* 880 F.2d at 313, because it did not fit their flawed interpretation of *Lewis.*

## A. *Lewis Does Not Require A "Shocks the Conscience" Analysis For Violations Of Fundamental Rights.*

Implicit throughout the district court's order and Defendants' Answer Brief is the flawed proposition that in *Lewis* the Supreme Court decreed that all substantive due process claims must allege conscience-shocking conduct. (Dkt. 66, pp. 9-11, Answer Brief, pp. 18-21). Defendants claim that affirming Plaintiffs' conclusion "that all that is required to state a substantive due process claim is alleging infringement of a fundamental right, this Court would have to read out of existence the Supreme Court's decision in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)." (Answer Brief, pp. 18-19). Defendants also echo the district court's overbroad assertion that "the Supreme Court's pronouncement in *Lewis* that all substantive due process violations premised on executive action need to be supported by conscience-shocking behavior." (Answer Brief, p. 23). The Supreme

9

Court's actual ruling in *Lewis* and precedents since then demonstrate that it is the

district court and Defendants who are misreading the Court's opinion.

In *Lewis*, the Supreme Court emphasized that the concept of due process is

not subject to a mechanical application of rules but demands an exact analysis of the

circumstances of the case. 523 U.S. at 850.

> "The phrase [due process of law] formulates a concept less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights. Its application is less a matter of rule. Asserted denial [of due process] is to be tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial."

*Id.* (quoting with approval procedural due process discussion in *Betts v. Brady*, 316

U.S. 455, 462 (1942)). The critical concern in analyzing substantive due process

claims is "that the due process guarantee does not entail a body of constitutional law

imposing liability whenever someone cloaked with state authority causes harm." *Id.*

at 848. Substantive due process is not to become a substitute for state tort laws, so

conduct that lies at the negligence end of the spectrum will not support a claim. *Id.*

Conduct at the intentional harm end of spectrum is most likely to support a

substantive due process claim depending on the circumstances. *Id.* at 849.

"Culpability falling within the middle range, following from something more than

negligence but 'less than intentional conduct, such as recklessness or 'gross

negligence,'…'is a matter for closer calls.'" *Id.* (citations omitted). Again, the

context of a particular case is crucial. When a party has had time to deliberate, then "deliberate indifference" might be sufficient even to satisfy "shocks the conscience." *Id.* at 851. However, in the context of the case at issue in *Lewis,* a high-speed police chase requiring split-second decision-making, there must be an intent to harm on the part of law enforcement. 523 U.S. at 854.

Cases considered since *Lewis* have adhered to the contextual approach to substantive due process claims, contrary to the court's and Defendants' contention that the opinion requires that **all** substantive due process claims based on executive action must satisfy shocks the conscience. *Chavez v. Martinez,* 538 U.S. 760, 775-76 (2003). Most importantly for this case, post-*Lewis* opinions from this Court have continued to hold that the "shock the conscience" test is an alternate test, not an integral part of a substantive due process claim based on violation of fundamental rights. *See*, *Waldman v. Comm'r*, 871 F.3d 1283, 1292 (11th Cir. 2017); *Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002).

In *Chavez* the Supreme Court confirmed, contrary to the district court's and Defendants' assertions, that *Lewis* does not require that all executive actions must satisfy "shock the conscience." 538 U.S. at 774. "While we rejected, in *Lewis*, a § 1983 plaintiff's contention that a police officer's deliberate indifference during a high-speed chase that caused the death of a motorcyclist violated due process, we left open the possibility that unauthorized police behavior in other contexts might

11

"shock the conscience" and give rise to § 1983 liability." *Id.* (citing *Lewis,* 523 U.S. at 850, 854). After finding that the plaintiff in *Chavez* had not shown that the hospital bed police interrogation shocked the conscience, the Court did not end its analysis, as one would expect if the district court and Defendants are correct in asserting that satisfying the shock the conscience test is an absolute requirement in **all** substantive due process claims. Rather, the Court went on to explain that "the Due Process Clause **also protects** certain 'fundamental liberty interest[s]' from deprivation by the government, regardless of the procedures provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Id.* at 775. (emphasis added). The Court then analyzed separately whether the plaintiff had alleged a fundamental liberty interest. *Id.* at 775-76. After finding that the *Chavez* plaintiff had not asserted a fundamental liberty interest or alleged conscience-shocking conduct, the Court found no substantive due process violation. *Id.* at 776. The Court's analysis of shocks the conscience and fundamental rights independently, rather than as two required hurdles, supports the proposition that the "shocks the conscience" standard is an alternate to, not part of, substantive due process claims based on fundamental rights.

This Court has recognized that "shock the conscience" is "(a)n alternate substantive due process test" used in the absence of "rights that are 'implicit in the concept of ordered liberty'" since *McKinney v. Pate*, 20 F.3d 1550, 1556 n.7 (11th Cir. 1994) (en banc) and has continued to adhere to that conclusion since *Lewis* was

decided in 1998. In fact, in *Waldman*, this Court cited *Lewis* for the proposition that "[w]here a fundamental liberty interest **does not exist**, substantive due process nonetheless protects against the arbitrary and oppressive exercise of government power. Executive action is arbitrary in a constitutional sense when it 'shocks the conscience.'" 871 F.3d at 1292. (citing, *Lewis,* 523 U.S. at 845-846) (emphasis added).

Contrary to the district court's order and Defendants' arguments, *Lewis* did not impose a mandatory "shocks the conscience" test on all substantive due process claims. This Court's holding that "shocks the conscience" is an alternate used in the absence of a fundamental liberty interest remains as valid and applicable today as it was before *Lewis*. Since Plaintiffs are alleging violations of fundamental parental rights, the district court erred when it dismissed Plaintiffs' claims by concluding they failed to meet the "shocks the conscience" test.

### B. The Dissimilar Personal Injury Education Cases Cited By The Court And Defendants Do Not Support Superimposing Shocks The Conscience Onto Plaintiffs' Fundamental Rights Claims.

Faced with the reality that the student versus staff personal injury cases Defendants and the district court rely on cannot support their proposition that the "shocks the conscience" test should be applied to Plaintiffs' fundamental parent rights claim, Defendants now pivot and try to make the cases relevant by discussing custodial versus non-custodial settings. (Answer Brief, pp. 31-33). The district court

13

made two passing references to custodial versus non-custodial settings in parenthetical citations, (Dkt. 66 at 19-20) but did not rely on that distinction in its analysis. Instead, the court relied on the fact that the cited cases involved school districts, ignoring the constitutionally significant differences between student personal injury claims and Plaintiffs' fundamental parental rights claims. (Dkt. 66 at 19-20).

The district court's discussion of Eleventh Circuit student personal injury cases shows the court's error in failing to acknowledge the significant differences between a personal injury claim and fundamental parental rights claims.

> The Eleventh Circuit's holding in *Nix* [*v. Franklin County School District*, 311 F.3d 1373 (11th Cir. 2002) that **the high school teacher's deliberate indifference to student safety** does not shock the conscience, is instructive to this Court in its determination that Plaintiffs fail to state a claim for which relief can be granted.

(Dkt. 66 at 18-19, n.4) (emphasis added).

> Within the Eleventh Circuit, substantive due process claims **brought by students against school official**s in public-school settings have only ever been allowed to proceed when students allege that they received unconstitutional corporal punishment.
> …[B]ecause these cases still require courts to determine if a state actor's conduct shocks the conscience, the Eleventh Circuit's analysis in these cases is helpful in deciding the present case.

(Dkt. 66 at 20, n.5) (emphasis added).

The district court's claim that this Court's holdings in student versus staff personal injury claims are "instructive" and "helpful" in finding that Plaintiffs

14

cannot state a claim for violation of their fundamental parental rights exhibits a fundamental misinterpretation of *Lewis* and this Court's post-*Lewis* precedents. The *Lewis* Court emphasized the need for precise contextual analysis in substantive due process. 523 U.S.at 850. "Asserted denial [of due process] is to be tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial." *Id.* The *Lewis* Court also held that the purpose of the "shock the conscience" test was to prevent substantive due process from becoming a fount of tort law. *Id.* at 848. Student personal injury claims, such as *Nix, Neal v. Fulton County. Bd. of Education,* 229 F.3d 1069 (11th Cir. 2000); *Davis v. Carter*, 555 F.3d 979 (11th Cir. 2009); *Dacosta v. Nwachukwa*, 304 F.3d 1045 (11th Cir. 2002) and *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323 (11th Cir. 2020), pose the threat of becoming the "fount of tort law" discussed in *Lewis* and, therefore, should be subject to a "shocks the conscience" analysis. By contrast, Plaintiffs are alleging violations of a "'fundamental liberty interest" that is protected from deprivation by the government, "unless the infringement is narrowly tailored to serve a compelling state interest." *Chavez,* 538 U.S. at 774. As this Court said in *McKinney,* 20 F.3d at 1556 n.7, and *Waldman,* 871 F.3d at 1292, "shocks the conscience" is not part of that analysis.

Defendants' diversionary discussion of custodial versus non-custodial situations, which was not part of the district court's analysis, does nothing to resolve the district court's error in superimposing "shocks the conscience" onto Plaintiffs' fundamental parental rights claims. That flawed analysis requires reversal.

### C. Neither The District Court Nor Defendants Can Justify Disregarding Controlling Precedent.

The most startling aspect of the district court's fundamental misinterpretation of *Lewis* is the court's use of the error to relegate to a footnote and dismiss as "not controlling" the most relevant and factually similar precedent from this Court, *Arnold,* 880 F.2d 305. Unlike the student versus staff personal injury education cases cited by the court and Defendants, *Arnold* involved violations of fundamental parental rights arising from school staff concealing information from parents, as Plaintiffs allege here. *Id.* at 309. Despite insisting that it was following "binding caselaw," (Dkt 66, pp. 1, 3, 9, 13, 15, 17, 19, 20, 21, 24, 26), the district court rejected *Arnold* because it did not fit the court's narrative regarding *Lewis'* purported mandatory "shocks the conscience" test. (Dkt. 66, pp. 13-14 n.3).

> This Court is aware of *Arnold v. Board of Education of Escambia County.*, in which the Eleventh Circuit determined that a school official allegedly coercing a minor child into obtaining an abortion unconstitutionally interfered with her parents' protected liberty interest in maintaining family relations. 880 F. 2d 305, 311–314 (11th Cir. 1989). This Court, however, does not find *Arnold* controlling in this case, because subsequent Supreme Court and Eleventh Circuit cases have made it clear that the "conscience-shocking" standard is used to determine if conduct rises to the level of a substantive due process

16

> violation. *Arnold* does not apply that test. Rather, the Eleventh Circuit in *Arnold* determined outright that parental rights are violated when minor children are coerced to refrain from discussing such intimate decisions with parents.

(*Id.*). The district court's conclusion, endorsed by Defendants (Answer Brief p. 41), is erroneous not only because it misstates the holding in *Lewis,* but also because it claims that post-*Lewis* cases from this Court have adopted the district court's flawed interpretation of *Lewis.* As discussed *supra*, this Court has continued to follow *McKinney*'s finding that the "shocks the conscience" test is an alternate test used when a substantive due process claim does not involve fundamental liberty interests. *Waldman*, 871 F.3d at 1292. Consequently, neither *Lewis* nor this Court's post-*Lewis* precedent "have made it clear that the 'conscience-shocking' standard is used to determine if conduct rises to the level of a substantive due process violation." *Arnold*'s failure to apply "shocks the conscience" does not transform it from binding precedent to an irrelevant afterthought.

Neither does the use of the descriptive word "coercion" in *Arnold* mean, as asserted by the court and Defendants, that coercion is a necessary element to state a claim for violation of parental rights in the school setting. (Dkt. 66, pp. 13-14 n.3: "Here, Plaintiffs do not allege that A.G. was coerced by Defendants, so Arnold is also distinguishable on those grounds."). Defendants claim that the district court was correct because "[c]oercion lies at the heart of the *Arnold* decision," and "the Plaintiffs do not allege that A.G. was coerced by the Defendants." (Answer Brief, p.

17

42). Neither contention is true. Coercive actions on the part of school counselors were part of the factual context in *Arnold*, so this Court referenced those facts in its discussions. 880 F.3d at 312-13. However, just as the Supreme Court's reference to "shocks the conscience" in *Lewis* did not create a new mandate for substantive due process, so the reference to the coercion of the school counselors did not create a new mandate for a fundamental parental rights claim. Instead, the *Arnold* court applied parents' long-established "right to decide free from unjustified governmental interference matters concerning the growth, development, and upbringing of their children" to the facts, which included coercive conduct by counselors, to find that the parents stated a claim for violation of their fundamental rights. *Id.* at 313. Allegations of coercion by school staff certainly met the standard but were not deemed to be a requirement.

Furthermore, even if coercion were an element, the fact that Plaintiffs might not have used the term "coercion" to describe Defendants' conduct does not mean that there are no allegations of coercion. Plaintiffs allege that A.G. was emotionally immature and developmentally delayed, which made her more vulnerable to the influence of adult staff members, and that Defendants' secret meetings adversely affected A.G. (Dkt. 38, ¶¶ 115, 118, 158, 161). Most importantly, the gravamen of Plaintiffs' claims is that Defendants concealed information. That includes details of what occurred during private in-school meetings, meaning Plaintiffs do not yet know

precisely what was said to their daughter and whether it could be viewed as coercive. Any claimed shortfall in allegations of coercion lies with Defendants and cannot be definitively determined until the parties engage in discovery.

### III.  The District Court Erred In Finding that Fundamental Parental Rights Are not Clearly Established And Thereby Granting Qualified Immunity.

By improperly rejecting *Arnold* as controlling precedent, the district court and Defendants could not only wrongly conclude that Plaintiffs did not allege violation of a fundamental right, but also that the right confirmed by this Court in 1989 under substantially similar circumstances was somehow not clearly established in 2020-2021. By dismissing *Arnold* out of hand, the court and Defendants could wrongly conclude that the individual Defendants were protected by qualified immunity. By disregarding a fundamental parental rights case in the school context, the court and Defendants could claim the rights asserted by Plaintiffs were somehow "murky" based on a dissimilar child protective services parental rights case. *Maddox v. Stephens,* 727 F.3d 1109 (11th Cir. 2013). Defendants cannot escape qualified immunity by simply disregarding clearly established case law.

#### A. *Arnold Placed The Unconstitutional Nature of Defendants' Conduct Beyond Debate During The Relevant Time.*

Only by ignoring *Arnold* could Defendants make the incredible claim that "[t]he undersigned can identify no case establishing the conduct alleged constitutes a constitutional violation and the Littlejohns do not identify such a case." (Answer

19

Brief, p. 50). In *Arnold,* this Court found that parents successfully alleged that a school district violated their fundamental rights when school counselors intentionally concealed critical information related to their children's health and well-being (in that case a pregnancy and abortion). 880 F.3d at 313-14. As discussed *supra*, in *Arnold* there was evidence of coercion on the part of the school counselors (discovery had been conducted), but coercion was not determinative. *Id.* What was determinative was the government's unjustified interference with the parents' rights to decide "matters concerning the growth, development, and upbringing of their children." *Id.* at 313. In this case, like *Arnold*, Plaintiffs have alleged that school staff intentionally concealed critical personal information related to their daughter's health and well-being. (Dkt. 38, ¶¶ 96, 102-104, 106-110). As this Court said in *Arnold*, Defendants' conduct here "unduly interferes with parental authority in the household and with the parental responsibility to direct the rearing of their child. This deprives the parents of the opportunity to decide appropriate medical treatment, counter influences on the child the parents find inimical to their religious beliefs, or the values they wish instilled in their children." *Id.*

In *Arnold,* this Court clearly established that the conduct of school officials of concealing critical information regarding children's health and well-being violated fundamental rights. *Id.* Plaintiffs' case similarly alleges that the conduct of school officials of concealing critical information regarding their child's health and well-

20

being violated Plaintiffs' fundamental rights. In light of the specific context of this case, the violative nature of Defendants' particular conduct is clearly established by *Arnold. Mullenix v. Luna*, 577 U.S. 7, 12 (2015). As of 1989, *Arnold* placed the question of whether parental rights are violated when school officials conceal information regarding children's health and well-being "beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (citing *White v. Pauly*, 137 S. Ct. 548, 552 (2017)). Therefore, when Defendants intentionally concealed information from Plaintiffs in 2020-2021, they should have reasonably anticipated they were violating clearly established law and are not entitled to qualified immunity.

### B. *Maddox Does Not Render Plaintiffs' Fundamental Rights Too "Murky" To Be Clearly Established.*

Having cast aside *Arnold*'s clear recitation of the fundamental rights being asserted by Plaintiffs, Defendants and the court use *Maddox* to wrongly assert that the rights are so "murky" as to be incomprehensible to Defendants. (Answer Brief, pp. 46-50). Defendants argue that *Maddox* is "on point," (Answer Brief, p. 47), but applying the principles Defendants used to dismiss *Arnold* demonstrate that *Maddox* is factually and legally dissimilar. Therefore, it cannot support the court's and Defendants' arguments regarding the murkiness of fundamental parental rights in the school context.

A critical difference between *Maddox* and this case, and one that Defendants used to attempt to distinguish *Parham v. J.R.,* 442 U.S. 584 (1979), is that *Maddox*

21

does not involve a school setting. (Answer Brief, p. 49). Instead, the parent in *Maddox* challenged the difficult judgment call of a child protective services social worker related to the plaintiff's infant daughter's fragile medical condition and with whom she should be placed after leaving the hospital. 727 F.3d at 1113-1117. In addition, unlike in *Arnold* and this case, there were questions regarding the mother's fitness, and thus, the sick child's safety. *Id.* Those differences are significant and were determinative for this Court's conclusion that the right in such a challenging context was not clearly established. *Id.* at 1121.[1] "Violations of the right to family association are determined by a balancing of competing interests, and we have held that **state officials who act to investigate or protect children where there are allegations of abuse almost never act within the contours of 'clearly established law.'"** *Id.* (citations omitted) (emphasis added). This Court affirmed that "[t]he inquiry whether a federal right is clearly established 'must be undertaken in light of

---

[1] The contextual differences between *Maddox* and this case also demonstrate why *Maddox* cannot be used to support the proposition that Plaintiffs were required to and did not satisfy the "shocks the conscience" standard. While *Maddox* involved parental rights, it did not involve fundamental parental rights in the context of education. Instead, it involved a child protection situation where a social worker had to make a life-or-death decision regarding a medically fragile child in the context of allegations of maternal unfitness. Therefore, it is more like the law enforcement cases such as *Lewis*, in which "shocks the conscience" is applied than implementation of school policies that interfere with fundamental rights, such as *Harrah Ind. School Dist. v. Martin*, 440 U.S. 194 (1979) and this case where "shock the conscience" is not the appropriate test.

the specific context of the case, not as a broad general proposition.'" *Id.* (citing *Loftus v. Clark-Moore,*690 F.3d 1200, 1205 (11th Cir. 2012)). Therefore, in the context of that case, a social worker faced with the difficult judgment of which placement would protect the plaintiff's medically fragile infant where there are allegations of unfitness, the substantive due process right asserted by plaintiff was not clearly established. *Id.*

That is not the context of this case (nor of *Arnold*). Defendants are not social workers deciding placement of Plaintiffs' daughter where there are allegations of abuse. Instead, they are school staff interacting with Plaintiffs' daughter who have information regarding the student's personal health and well-being and who are legally obligated to inform the parents. There are no allegations of unfitness or abuse and no life-or-death consequences as were present in *Maddox*. The question of whether the rights asserted by Plaintiffs are clearly established must be answered in the light of the context of school counseling related to personal matters, not a social worker in a hospital with a medically fragile child as in *Maddox*. That is the context in *Arnold*. Analyzing Plaintiffs' asserted rights in light of *Arnold* yields the conclusion that the rights were not "murky," but clearly established in 2020-2021. Defendants are not entitled to qualified immunity. The district court's contrary conclusion based on its improper dismissal of *Arnold* as not controlling is clear error.

23

**IV.    The District Court's Citation To A Concurring Opinion In *Dobbs* Underscores The Errors In Its Premise That Fundamental Parental Rights Are "Murky."**

Defendants attempt to rationalize the district court's citation to a portion of Justice Thomas' concurring opinion in *Dobbs v. Jackson Women's Health Organization*, __ U.S. ___, 142 S. Ct. 2228, 2301 (2022) (Thomas, J., concurring) as part of their flawed argument that the fundamental parental rights at the heart of Plaintiffs' claims are somehow too "murky" to be clearly established. (Answer Brief, pp. 52-53).  However, the court's and Defendants' discussion of the statement from the concurring opinion is a further example of the court's selective use of precedent to support its conclusion. Justice Thomas opined about the constitutional basis for substantive due process, *id.,* which the district court and Defendants believe supports its assertion that fundamental parental rights are not clearly established. However, the majority opinion, which Justice Thomas joined, is fatal to the district court's and Defendants' argument.

In particular, Justice Thomas agreed with the majority's holding that the Court's substantive due process precedents protect liberty interests that are "deeply rooted in this Nation's history and tradition" or "implicit in the concept of ordered liberty." *Id.* at 2300, referencing *id.* at 2235 and *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).  Among the rights so recognized in *Glucksberg* is "the right to direct the education and upbringing of one's children." *Id.* at 720. (citing *Meyer,* 262

U.S. 390 (1923); *Pierce v. Society of Sisters,* 268 U.S. 510 (1925)). Citing *Glucksberg*, the *Troxel* Court found that the parental right to direct the upbringing of one's children was not merely an interest protected by substantive due process, but "perhaps the oldest of the fundamental liberty interests." 530 U.S. at 65.

Notably, the district court cited to the language in *Troxel* when it conceded that Plaintiffs' asserted "substantive due process right in the care, custody, and control of their children, …is a fundamental liberty interest protected by the Constitution." (Dkt. 66 at 11). However, as was true with *Arnold*, the court disregarded the controlling precedent of the majority opinion in *Dobbs* and embraced dicta in Justice Thomas' concurrence in order to support its claims that Plaintiffs had not stated a claim for violation of a substantive due process right and that parental rights are a murky area of unenumerated rights. (Dkt. 66, p. 21).

Such selective use of precedent undermines both of the court's claims and its order dismissing Plaintiffs' Complaint.

## CONCLUSION

Defendants' claims that Plaintiffs waived arguments that could not have been made until the district court issued its order and that Plaintiffs misread established precedent do nothing to cure the errors in the district court's order. Defendants and the court misinterpret *Lewis* as establishing a "shocks the conscience" mandate for all substantive due process claims. Building on that flawed premise, the court and

Defendants disregard the most relevant and factually similar binding precedent from this Court as "not controlling." With that binding precedent out of the way, Defendants use a dissimilar case to wrongly argue that fundamental parental rights recognized by the Supreme Court for 100 years are too "murky" to be clearly established so that the individual Defendants are entitled to qualified immunity.

The district court committed reversible error when it granted Defendants' Motion to Dismiss. For these reasons, the district court's decision should be reversed.

Dated: August 11, 2023

<div style="margin-left: 2em;">

/s/*Mary E. McAlister*
Mary E. McAlister
CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
P.O. Box 637
Monroe, VA 24574
770.448.4525
mmcalister@childparentrights.org
Attorney for Plaintiffs-Appellants

Vernadette R. Broyles
Ernest G. Trakas
CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
5805 State Bridge Rd., Suite G310
Johns Creek, GA 30097
770.448.4525
vbroyles@childparentrights.org
etrakas@childparentrights.org
Attorneys for Plaintiff-Appellants

</div>

26

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENT**

This document complies with the word limit of Fed. R. App.P. 27(d)(2)(A), because this document contains 6,330 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), incorporated by reference into Rule 27 and 11th Cir. R. 27-1, because this document has been prepared in a proportionally spaced typeface using Microsoft Office Word in fourteen-point font, Times New Roman.

*/s/ Mary E. McAlister*
MARY E. McALISTER

**CERTIFICATE OF SERVICE**

I certify that on August 11, 2023, I electronically filed the foregoing with the Clerk of Court using the Eleventh Circuit CM/ECF system which will send notification of filing to all parties of record.

*/s/ Mary E. McAlister*
**MARY E. McALISTER**

27