No. 23-10385

# In the United States Court of Appeals for the Eleventh Circuit

JANUARY LITTLEJOHN, ET AL.,
*Plaintiffs–Appellants*,

v.

SCHOOL BOARD OF LEON COUNTY, FLORIDA, ET AL.,
*Defendants–Appellees*.

**BRIEF OF FLORIDA, MONTANA, AND 17 STATES
AND THE ARIZONA LEGISLATURE AS
*AMICI CURIAE* IN SUPPORT OF
APPELLANTS' PETITION FOR REHEARING EN BANC**

On Appeal from the United States District Court
for the Northern District of Florida
NO. 4:21-CV-00415-MW

AUSTIN KNUDSEN
  *Attorney General of Montana*

Christian B. Corrigan
  *Solicitor General*
Peter Torstensen, Jr.
  *Deputy Solicitor General*
Montana Department of Justice
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
(406) 444-2026
*peter.torstensen@mt.gov*

April 30, 2025

JAMES UTHMEIER
  *Attorney General of Florida*

JEFFREY PAUL DESOUSA
  *Acting Solicitor General*
DAVID M. COSTELLO
  *Chief Deputy Solicitor General*
Florida Attorney General's Office
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
*jeffrey.desousa@myfloridalegal.com*

# ADDITIONAL SIGNATORIES

STEVE MARSHALL
Attorney General
State of Alabama

STEVE MONTENEGRO
Speaker of the Arizona
House of Representatives

WARREN PETERSON
President of the
Arizona Senate

TIM GRIFFIN
Attorney General
State of Arkansas

CHRISTOPHER M. CARR
Attorney General
State of Georgia

RAÚL R. LABRADOR
Attorney General
State of Idaho

THEODORE E. ROKITA
Attorney General
State of Indiana

BRENNA BIRD
Attorney General
State of Iowa

KRIS KOBACH
Attorney General
State of Kansas

RUSSELL COLEMAN
Attorney General
Commonwealth of Kentucky

LIZ MURRILL
Attorney General
State of Louisiana

ANDREW BAILEY
Attorney General
State of Missouri

MIKE HILGERS
Attorney General
State of Nebraska

GENTNER DRUMMOND
Attorney General
State of Oklahoma

KEN PAXTON
Attorney General
State of Texas

ALAN WILSON
Attorney General
State of South Carolina

MARTY J. JACKLEY
Attorney General
State of South Dakota

JASON MIYARES
Attorney General
State of Virginia

JOHN B. MCCUSKEY
Attorney General
State of West Virginia

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

CERTIFICATE OF INTERESTED PERSONS ...................................... vi

STATEMENT OF THE ISSUES ................................................................ 1

INTEREST OF *AMICI CURIAE* AND SUMMARY OF ARGUMENT .... 2

ARGUMENT ........................................................................................... 4

The Court should grant rehearing en banc. ........................................... 4

    A.    This case poses questions of exceptional importance about fundamental parental rights. ........................................ 4

    B.    This panel opinion is not faithful to Supreme Court precedent. ................................................................... 9

    C.    Under Supreme Court precedent, the school's actions shock the conscience ............................................................. 11

CONCLUSION ....................................................................................... 14

CERTIFICATE OF COMPLIANCE ....................................................... 16

CERTIFICATE OF SERVICE ................................................................ 17

# TABLE OF AUTHORITIES

## Cases

*Brown v. Ent. Merchants Ass'n,*
  564 U.S. 786 (2011) ..................................................................6

*\*Cnty. of Sacramento v. Lewis,*
  523 U.S. 833 (1998) .................................................. 2, 9, 10, 11, 12, 13

*Keohane v. Fla. Dep't of Corr. Sec'y,*
  952 F.3d 1257 (11th Cir. 2020) .......................................................7, 8

*\*Littlejohn v. Sch. Bd. of Leon Cnty.,*
  132 F.4th 1232 (11th Cir. 2025) ............................... 2, 4, 8, 10, 11, 12, 13

*Meyer v. Nebraska,*
  262 U.S. 390 (1923) ..................................................................5

*Morse v. Frederick,*
  551 U.S. 393 (2007) .................................................................12

*Parents Protecting Our Children v. Eau Claire Area Sch. Dist.,*
  145 S. Ct. 14 (2024) ..................................................................8

*Parham v. J.R.,*
  442 U.S. 584 (1979) ...............................................................5, 13

*Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary,*
  268 U.S. 510 (1925) ..................................................................5

*R.N. by & through Neff v. Travis Unified Sch. Dist.,*
  2020 WL 7227561 (E.D. Cal. Dec. 8, 2020) ..........................................12

*Stanley v. Illinois,*
  405 U.S. 645 (1972) ..................................................................5

*Troxel v. Granville,*
    530 U.S. 57 (2000) ........................................................... 4, 5, 13

*Washington v. Glucksberg,*
    521 U.S. 702 (1997) .......................................................... 4, 13

*Willey v. Sweetwater County Sch. District No. 1 Board of Trustees,*
    680 F. Supp. 3d 1250 (D. Wyo. 2023) .................................... 13

*Wisconsin v. Yoder,*
    406 U.S. 205 (1972) ............................................................... 5

## Rules

Fed. R. App. P. 40(b)(2)(B) ............................................................ 9

Fed. R. App. P. 40(b)(2)(D) ............................................................ 4

## Other Authorities

1 William Blackstone, *Commentaries on the Laws of England* (1753). ... 6

2 James Kent, *Commentaries on American Law* (1873). ........................ 6

2 Samuel Pufendorf, *The Whole Duty of Man According to the Law of
    Nature* (1735) ........................................................................ 6

Adele Diamond, *Normal Development of Prefrontal Cortex from Birth to
    Young Adulthood: Cognitive Functions, Anatomy, and Biochemistry*,
    in *Principles of Frontal Lobe Function* 466 (D. Stuss & R. Knight eds.,
    2002). .................................................................................. 7

Ferdinand Schoeman, *Parental Discretion and Children's Rights:
    Background and Implications for Medical-Decision-Making*, 10 J.
    Med. & Phil. 45 (1985) .......................................................... 6

Jorgensen, S.C.J. Transition Regret and Detransition: Meanings and
    Uncertainties, *Arch Sex Behav.* 52, 2173–84 (2023).
    https://doi.org/10.1007/s10508-023-02626-2. ............................ 8

iv

Toby L. Ditz, *Ownership and Obligation: Inheritance and Patriarchal Households in Connecticut, 1750-1820*, 47 Wm. & Mary Q. 235, 236 (1990) ...................................................................................... 6

# CERTIFICATE OF INTERESTED PERSONS

The State of Florida certifies that, to the best of its knowledge, the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 to 26.1-3:

1. Able Americans — Amicus Curiae

2. Advancing American Freedom, Inc. — Amicus Curiae

3. Alabama Center for Law and Liberty — Amicus Curiae

4. Alliance Defending Freedom — Amicus Curiae

5. American Principles Project — Amicus Curiae

6. American Values — Amicus Curiae

7. Anderson, Katherine L. — Counsel for Amicus Curiae

8. Anderson, Ph.D., Dr. Erica E. — Amicus Curiae

9. Bell, Daniel W. — Counsel for Amicus Curiae

10. Berg, Luke N. — Counsel for Amicus Curiae

11. Broyles, Vernadette — Counsel for Appellants

12. Center for Political Renewal — Amicus Curiae

13. Center for Urban Renewal and Education (CURE) — Amicus Curiae

14. Child and Parental Rights Campaign — Counsel for Appellants

15. Christian Law Association — Amicus Curiae

16. Christians Engaged — Amicus Curiae

17. Clark, Matthew J. — Counsel for Amicus Curiae

18. Claybrook LLC — Counsel for Amicus Curiae

19. Claybrook, Jr., Frederick W. — Counsel for Amicus Curiae

20. Coalition for Jewish Values — Amicus Curiae

21. Concerned Women for America — Amicus Curiae

22. Congresswoman Vicky Hartzler — Amicus Curiae

23. Cornwall Alliance for the Stewardship of Creation — Amicus Curiae

24. Corrigan, Christian B. — Counsel for Amicus Curiae

25. Costello, David M. — Counsel for Amicus Curiae

26. Delaware Family Policy Council — Amicus Curiae

27. DeSousa, Jeffrey Paul — Counsel for Amicus Curiae

28. Dewart, Deborah J. — Counsel for Amicus Curiae

29. Dhillon Law Group, Inc. — Counsel for Amicus Curiae

30. Dr. James Dobson Family Institute — Amicus Curiae

31.    Eagle Forum — Amicus Curiae

32.    Estrada, William A. — Counsel for Amicus Curiae

33.    Ethics & Public Policy Center — Counsel for Amicus Curiae

34.    Faith and Freedom Coalition — Amicus Curiae

35.    Family Foundation — Amicus Curiae

36.    Family Policy Institute of Washington — Amicus Curiae

37.    First Liberty Institute — Counsel for Amicus Curiae

38.    Fitschen, Steven W. — Counsel for Amicus Curiae

39.    Frontline Policy Action — Amicus Curiae

40.    Global Liberty Alliance — Amicus Curiae

41.    Goldwater Institute — Amicus Curiae

42.    Hanna, Rocky — Appellee

43.    Harmon, Terry J. — Counsel for Appellee

44.    Illinois Family Institute — Amicus Curiae

45.    Institute for Faith and Family — Amicus Curiae

46.    International Conference of Evangelical Chaplain Endorsers — Amicus Curiae

47.    Jones, Darryl — School Board Member

48.    Kniffin, Eric N. — Counsel for Amicus Curiae

49.   Knudsen, Austin — Counsel for Amicus Curiae

50.   Lawkowski, Gary M. — Counsel for Amicus Curiae

51.   Lawson Cox, Laurie — School Board Member

52.   Littlejohn, January — Appellant

53.   Littlejohn, Jeffrey — Appellant

54.   Manhattan Institute — Amicus Curiae

55.   Martinez, Abigail — Amicus Curiae

56.   Mateer, Jeffrey C. — Counsel for Amicus Curiae

57.   McAlister, Mary — Counsel for Appellants

58.   Missouri Center - Right Coalition — Amicus Curiae

59.   Moody, Ashley — Counsel for Amicus Curiae

60.   National Association of Parents, Inc. d/b/a Parents USA (or) National Association of Parents, Inc. d/b/a ("ParentsUSA") — Amicus Curiae

61.   National Center for Public Policy Research — Amicus Curiae

62.   National Legal Foundation — Amicus Curiae

63.   National Religious Broadcasters — Amicus Curiae

64.   New Jersey Family Policy Center — Amicus Curiae

65.   New Mexico Family Action Movement — Amicus Curiae

66. Nicolas, Marcus — School Board Member

67. Oliveri, Robin — Appellee

68. Our Duty — Amicus Curiae

69. Pacific Justice Institute — Amicus Curiae

70. Parental Rights Foundation — Amicus Curiae

71. Project 21 Black Leadership Network — Amicus Curiae

72. Randall, Holly M. — Counsel for Amicus Curiae

73. Rodgers, Kathleen — Appellee

74. Russell Kirk Center for Cultural Renewal — Amicus Curiae

75. Russell, Keisha T. — Counsel for Amicus Curiae

76. Sandefur, Timothy — Counsel for Amicus Curiae

77. Sapir, Dr. Leor — Amicus Curiae

78. Sarelson, Matthew — Counsel for Amicus Curiae

79. Scharf-Norton Center for Constitutional Litigation — Counsel for Amicus Curiae

80. School Board of Leon County — Appellee

81. Seideman, Tina — Counsel for Amicus Curiae

82. Shapiro, Ilya — Counsel for Amicus Curiae

83. Shelton, Adam C. — Counsel for Amicus Curiae

84.  Slanker, Jeffrey D. — Counsel for Appellees

85.  Sniffen & Spellman, P.A. — Counsel for Appellees

86.  Spellman, Michael — Counsel for Appellees

87.  State of Montana, Florida and 19 Other States — Amicus Curiae

88.  Students for Life of America — Amicus Curiae

89.  Swafford Smith, Alva — School Board Member

90.  The Center for American Liberty — Amicus Curiae

91.  The Justice Foundation — Amicus Curiae

92.  Thomas, Rachel — Appellee

93.  Toney, Kayla A. — Counsel for Amicus Curiae

94.  Torstensen, Jr., Peter M. — Counsel for Amicus Curiae

95.  Trakas, Ernest — Counsel for Appellants

96.  Uthmeier, James — Counsel for Amicus Curiae

97.  Wagner, Vincent M. — Counsel for Amicus Curiae

98.  Walker, Hon. Mark E. — Chief U.S. District Court Judge

99.  Wheat, J. Marc — Counsel for Amicus Curiae

100.  Whitaker, Henry C. — Counsel for Amicus Curiae

101.  Wood, Rosanne — School Board Member

102.  Young America's Foundation — Amicus Curiae

## STATEMENT OF THE ISSUES

Whether the panel majority erred when it determined that Appellees' conduct did not "shock the conscience."

## INTEREST OF *AMICI CURIAE* AND SUMMARY OF ARGUMENT

Leon County's School Board executed a detailed policy allowing it to hide from parents a school's efforts to socially transition a 13-year-old child struggling with gender identity. Yet because school officials "did not act with intent to injure" nor "force the child to attend a Student Support Plan meeting," the panel held that the conduct did not "shock the conscience"—and thus did not justify the parents' substantive-due-process claim. *Littlejohn v. Sch. Bd. of Leon Cnty.*, 132 F.4th 1232, 1245 (11th Cir. 2025) (applying *Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998)).[1]

That decision is disastrous for parents everywhere. The shocks-the-conscience standard should "be viewed with considerable skepticism." *See Sacramento*, 523 U.S. at 857 (Kennedy, J., concurring). It requires courts, in their effort to "prevent[] arbitrary [governmental] impositions," to apply "the *ne plus ultra*, the Napoleon Brandy, the Mahatma Gandhi, the Cellophane of subjective[]" judicial standards. *Id.* at 861 (Scalia, J., concurring in judgment). "That makes *no* sense." *Littlejohn*, 132 F.4th at 1286 (Newsom, J., concurring) (emphasis in original). There are thus

---

[1] Unless otherwise noted, this brief omits from its authorities all quotations, citations, emphases, and alterations original to the authority. Any alterations or emphases within this brief are added.

2

good reasons to conclude, as Appellants forcefully contend, that the shocks-the-conscience test is not the exclusive way to challenge executive action under the judicial "mess" that is the substantive-due-process doctrine. *Id.* at 1283.

But even if Supreme Court precedent did require courts to sanction all but the most "conscience shocking" of constitutional violations by executive actors, the panel erred in applying that test. It ignored the context-specific inquiry that *Sacramento* demands, and did so in a case with sweeping implications for parental rights in this Circuit. Put simply, parents have a fundamental right to make decisions concerning the care, custody, and control of their children, including controversial decisions like whether to allow their children to socially transition. Purposefully withholding from a parent critical information about supposed medical treatment that a school is providing a student not only violates that right, but does so to a disturbing and constitutionally intolerable degree. *Amici*, the States of Florida and Montana, 17 other states, and the Arizona Legislature, have an interest in safeguarding their citizens' parental rights from such significant executive abuse.

## ARGUMENT

### The Court should grant rehearing en banc.

### A.    This case poses questions of exceptional importance about fundamental parental rights.

The Court may grant rehearing en banc in cases involving "questions of exceptional importance." Fed. R. App. P. 40(b)(2)(D). This case clears that standard. The panel held that a school's deliberate effort to hide its ploy to socially transition the Littlejohns' child—that is, to systematically treat that child *as if she were of a different gender*—did not "shock the conscience," even though those acts infringed on the Littlejohns' "fundamental rights" to "make decisions concerning the care, custody, and control of their child[]" and to "direct the medical and mental health decision-making for their child[]." *Littlejohn*, 132 F.4th at 1238. Few rulings could strike closer to our "concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997).

Courts, after all, have long acknowledged the importance of empowering parents to manage their child's care. Such rights, the Supreme Court has said, are "perhaps the oldest of the fundamental liberty interests recognized by th[e] Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality op.). Because children are "not able to make sound judgments

concerning many decisions," the Court has understood our Constitution to incorporate "Western civilization concepts of . . . broad parental authority over minor children." *Parham v. J.R.*, 442 U.S. 584, 602–03 (1979). Expounding on that authority, it has acknowledged a parent's right to direct children's education, *see Meyer v. Nebraska*, 262 U.S. 390, 400 (1923); *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 534–35 (1925); their religious upbringing, *see Wisconsin v. Yoder*, 406 U.S. 205, 214 (1972); and their relationship with parents, *see Stanley v. Illinois*, 405 U.S. 645, 651 (1972). Most relevant here, the Supreme Court has heralded a parent's right "to make decisions concerning the care, custody, and control of their children," *Troxel*, 530 U.S. at 65–66 (plurality op.)—"including their need for medical care or treatment." *Parham*, 442 U.S. at 603 (citing "a tonsillectomy, appendectomy, or other medical procedure" as examples). Whereas a "child may balk at hospitalization or complain about a parental refusal to provide cosmetic surgery," a parent typically will know better and should have the "authority to decide what is best for the child." *Id.*

History and tradition undergird those precedents. As early commentators recognized, children do not understand "how to govern

themselves." 2 Samuel Pufendorf, *The Whole Duty of Man According to the Law of Nature* 202 (1735). Their "wants and weaknesses" thus "render it necessary that some person maintains them" until adulthood. 2 James Kent, *Commentaries on American Law* 190 (1873); *see also* 1 William Blackstone, *Commentaries on the Laws of England* 447 (1753); Pufendorf, *Whole Duty of Man* at 202; *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 828–29 (2011) (Thomas, J., dissenting). Parents have traditionally been understood as "the most fit and proper person[s]" for that task. Kent, *American Law* at 190. And so, the common law equipped parents with equally robust parental rights. "[H]ousehold heads" were empowered to "speak for their dependents in dealings with the larger world," Toby L. Ditz, *Ownership and Obligation: Inheritance and Patriarchal Households in Connecticut, 1750-1820*, 47 Wm. & Mary Q. 235, 236 (1990), and parents enjoyed the "right . . . to govern their children's growth," *Brown*, 564 U.S. at 828 (Thomas, J., dissenting).

Medical and social-science literature only confirms the wisdom of that tradition. Modern research shows that children are not able to "deliberate maturely" towards their own best interests. Ferdinand Schoeman, *Parental Discretion and Children's Rights: Background and*

*Implications for Medical-Decision-Making*, 10 J. Med. & Phil. 45, 46 (1985). Because a child's prefrontal cortex is undeveloped and because children lack life experience, they cannot fully appreciate the implications of their decisions. *See* Adele Diamond, *Normal Development of Prefrontal Cortex from Birth to Young Adulthood: Cognitive Functions, Anatomy, and Biochemistry*, in *Principles of Frontal Lobe Function* 466 (D. Stuss & R. Knight eds., 2002) (noting that the prefrontal cortex takes "over two decades to reach full maturity"), https://tinyurl.com/4j5xvbpa. Those deficiencies also make parental involvement critical in the context of gender dysphoria, a condition some characterize as "distress that may accompany the incongruence between one's experienced or expressed gender and one's assigned gender." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1262 (11th Cir. 2020). One purported treatment for that ailment—the treatment the school provided the Littlejohns' child—is social transitioning: the practice of treating a person in line with their image of their proper gender. *See id.* at 1263. But recent reports reveal that social transitioning "can concretize gender dysphoria" and may not even

"improve[] mental health status in the short term."[2] Worse yet, "detransition and/or regret could be more frequent than previously reported" for individuals suffering from adolescent-onset gender dysphoria, and continuing down these types of treatment paths may lead to "irreversible effects."[3]

The panel's opinion raises significant questions about whether "the Constitution still protect[s] parents' fundamental right[s] to direct the upbringing of their children" in the face of those serious risks. *Littlejohn*, 132 F.4th at 1308 (Tjoflat, J., dissenting). By misapplying the Supreme Court's shock-the-conscience precedent, *see infra* Section B, the panel "water[ed] down" parents' "fundamental right[]" to know of and control what supposed medical care a school provides to their child. *Littlejohn*, 132 F.4th at 1306 (Tjoflat, J., dissenting). The correctness of that move "presents a question of great and growing . . . importance" that the full Court should answer. *Parents Protecting Our Children v. Eau Claire Area*

---

[2] Jorgensen, S.C.J. Transition Regret and Detransition: Meanings and Uncertainties, *Arch Sex Behav.* 52, 2173–84 (2023). https://doi.org/10.1007/s10508-023-02626-2.

[3] *Id.*

*Sch. Dist.*, 145 S. Ct. 14, 14 (2024) (Alito, J., joined by Thomas, J., dissenting from denial of certiorari).

## B.  This panel opinion is not faithful to Supreme Court precedent.

Appellants make strong arguments that the shock-the-conscience standard is inapplicable here. Pet. For Reh'g En Banc 5–9. But even if that standard were appropriate, the panel opinion misconstrued the context-specific nature of the Supreme Court's shock-the-conscience jurisprudence. The en banc Court should correct that "conflict[ing]" precedent. Fed. R. App. P. 40(b)(2)(B).

The Supreme Court outlined the shocks-the-conscience standard in *Sacramento*. There, parents of a child killed in a fast-paced police chase sued county officials for depriving the child of his "substantive due process right to life." *Sacramento*, 523 U.S. at 837. In analyzing the claim, the Court explained that executive action violates substantive due process only if it "shocks the conscience." *Id.* at 846–47. Yet because what "shocks in one environment may not be so patently egregious in another," the shocks-the-conscience standard "demands an exact analysis of circumstances." *Id.* at 850.

In explaining that the police chase in *Sacramento* did not meet the shocks-the-conscience bar, the Court identified several factors that bear on the analysis. *id.* at 858 (Kennedy, J., concurring) ("[T]he reasons the Court gives in support of its judgment go far toward establishing that objective considerations" govern the "shocks the conscience" test.). The Court first explained that where the offensive conduct resulted from "actual deliberation"—rather than from "split-second judgments"—it is more likely to be conscience shocking. *Id.* at 851–53 (majority op.). So too when the conduct occurs after the government took a "person into its custody" and "assume[d] some responsibility for his safety and general well-being." *Id.* at 851. And even more so when the "liberty" at issue has enjoyed "a history of . . . protection." *Id.* at 847 n.8; *see id.* at 858 (Kennedy, J., concurring) ("history and precedent" are "controlling principle[s]").

The panel opinion, largely relying on circuit precedent about qualified immunity, was not faithful to the Supreme Court's precedent on the shocks-the-conscience test. Latching onto *Sacramento*'s note that "conduct deliberately *intended to injure* . . . is the sort of official action most likely to rise to the conscience-shocking level," *Littlejohn*, 132 F.4th at 1243 (quoting *Sacramento*, 523 U.S. at 849), the panel gave no weight to

whether the school's actions were deliberate and measured, whether the school had assumed custody and responsibility for the child, or whether history and precedent had traditionally respected a fundamental right to parental involvement. *See Littlejohn*, 132 F.4th at 1244–46. Rather, the panel surveyed the Eleventh Circuit cases discussed above, concluded that something akin to "malicious conduct" or "obviously excessive force" is required, and determined that the school's conduct did not fit that bill because "even where a student *dies*, school officials' behavior" usually "does not shock the conscience." *Id.* (emphasis in original). The Supreme Court has disclaimed so "mechanical [an] application" of the shocks-the-conscience standard. *Sacramento*, 523 U.S. at 850. This Court should grant rehearing to bring its jurisprudence back in line with the Supreme Court's instructions.

## C. Under Supreme Court precedent, the school's actions shock the conscience.

Under a proper shocks-the-conscience analysis, the school's actions reached far beyond the pale.

First off, the school's disregard for the Littlejohn's rights resulted from "actual deliberation." *Sacramento*, 523 U.S. at 851. The school did not make a "split-second" decision to conceal its effort to transition the

11

Littlejohns' child, *id.* at 853—it developed a detailed and deliberate guide that "instructed staff not to notify parents if a student's behavior led staff to believe the student was LGBTQ+." *Littlejohn*, 132 F.4th at 1236. And "[a]fter the Littlejohns' child expressed a desire to socially transition at school, . . . school staff met with the child to develop a Student Support Plan," but "in accord with the Guide, school officials did not notify the Littlejohns" because the child had not requested parental presence. *Id.* The school thus had an "unhurried" opportunity to consider its actions and whether they would violate parents' rights to direct the care, custody, and control of their children. *Sacramento*, 523 U.S. at 853. Those "extended opportunities to do better," "teamed with [the school's] protracted failure even to care" about the Littlejohn's parental rights, makes its misconduct "truly shocking." *Id.*

Next, the school was entrusted with temporary "custody" over the Littlejohn's child and thus "assume[d]" greater "responsibility" to keep the Littlejohn's informed about the child's wellbeing. *Id.* at 851. "When parents place minor children in [schools], the teachers and administrators of those schools stand *in loco parentis* over the children entrusted to them." *Morse v. Frederick*, 551 U.S. 393, 416 n.6 (2007) (Thomas, J.,

concurring). But by assuming custody of the child, the "school owes a duty of care not only to its students, but also to parents" who have entrusted the school with the student's care. *R.N. by & through Neff v. Travis Unified Sch. Dist.*, 2020 WL 7227561, at *8 (E.D. Cal. Dec. 8, 2020). And given our Nation's longstanding recognition of parental rights, *supra* Section A, that duty surely includes an obligation to inform parents about a form of ostensible "medical care" that the school is providing the child. *Parham*, 442 U.S. at 603. The school's violation of such a significant "responsibility" only exacerbates the seriousness of its misconduct. *Sacramento*, 523 U.S. at 851.

Last, as discussed, the right of a parent "to direct the upbringing of their children" is "fundamental." *Littlejohn*, 132 F.4th at 1308 (Tjoflat, J., dissenting); *supra* Section A. The power to "make decisions concerning the care, custody, and control of their children" is "perhaps the oldest of the fundamental liberty interests recognized by th[e] Court." *Troxel*, 530 U.S. at 65 (plurality op.). The school's deliberate and clandestine violation of a right so deeply engrained in our "concept of ordered liberty" is simply astonishing. *Glucksberg*, 521 U.S. at 721; *see Willey v. Sweetwater County Sch. District No. 1*, 680 F. Supp. 3d 1250, 1277 (D. Wyo. 2023)

13

(noting that "[t]o the extent [a school policy] prohibits a teacher or school employee . . . from responding or providing accurate and complete information concerning their minor child (and absent a threat to the wellbeing of the student), it burdens a parent's fundamental right to make decisions concerning the care, custody and education of their child").

## CONCLUSION

The Court should grant Appellants' petition for rehearing en banc.

Dated: April 30, 2025

Respectfully submitted,

AUSTIN KNUDSEN
 *Attorney General of Montana*

JAMES UTHMEIER
 *Attorney General of Florida*

*/s/ Christian B. Corrigan*
CHRISTIAN B. CORRIGAN
 *Solicitor General*
PETER M. TORSTENSEN, JR.
 *Deputy Solicitor General*
Montana Department of Justice
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
(406) 444-2026
*peter.torstensen@mt.gov*

*/s/ Jeffrey Paul DeSousa*
JEFFREY PAUL DESOUSA
 *Acting Solicitor General*
DAVID M. COSTELLO
 *Chief Deputy Solicitor General*
Florida Attorney General's Office
The Capitol, PL-01
Tallahassee, Florida 32399
(850) 414-3300
*jeffrey.desousa@myfloridale-
gal.com*

*Counsel for Amicus Curiae State of
Montana*

*Counsel for Amicus Curiae State
of Florida*

## CERTIFICATE OF COMPLIANCE

1.   This document complies with the type-volume limits of Federal Rule of Appellate Procedure 29(b)(4) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 2,425 words.

2.   This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Jeffrey Paul DeSousa*
Acting Solicitor General

## CERTIFICATE OF SERVICE

I certify that on April 30, 2025, I electronically filed this document with the Clerk of Court using the Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

*/s/ Jeffrey Paul DeSousa*
Acting Solicitor General