APPEAL NO. 23-10385

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

JANUARY LITTLEJOHN, JEFFREY LITTLEJOHN,

Plaintiffs-Appellants,

V.

SCHOOL BOARD OF LEON COUNTY, FLORIDA, ROCKY HANNA,
DR. KATHLEEN RODGERS, RACHEL THOMAS, ROBIN OLIVERI,

Defendants-Appellees.

_____

On Appeal from the United States District Court
Northern District of Florida, Tallahassee Division
District Court No. 4:21-CV-00415-MW-MJF

_____

**APPELLEES' RESPONSE IN OPPOSITION TO THE APPELLANTS'
PETITION FOR REHEARING EN BANC**

_____

Jeffrey D. Slanker (FBN: 100391)          Terry Harmon (FBN: 0029001)
jslanker@sniffenlaw.com                    tharmon@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
(850) 205-1996

Appellees' Attorneys

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Appellees, School Board of Leon County, Florida, Rocky Hanna, Dr. Kathleen Rodgers, Rachel Thomas, and Robin Oliveri, by and through their undersigned counsel, hereby discloses the following pursuant to Rules 26.1-1 and 26.1-2 of this Court's rules:

1.   Able Americans – Amicus Curiae

2.   Advancing American Freedom, Inc. – Amicus Curiae

3.   Alabama Center for Law and Liberty – Amicus Curiae

4.   Alliance Defending Freedom – Amicus Curiae

5.   American Parents Coalition – Amicus Curiae

6.   American Principles Project – Amicus Curiae

7.   American Values – Amicus Curiae

8.   Anderson, Katherine L. – Counsel for Amicus Curiae

9.   Anderson, PhD, Dr. Erica E. – Amicus Curiae

10.   Antonin Scalia Law School Supreme Court Clinic – Counsel for Appellants

11.   Arizona Legislature  – Amicus Curiae

12.   Bell, Daniel W. – Counsel for Amicus Curiae

13.   Berg, Luke N. – Counsel for Amicus Curiae

14.   Broyles, Vernadette – Counsel for Appellants

15.   Center for Political Renewal – Amicus Curiae

16.     Center for Urban Renewal and Education (CURE) – Amicus Curiae

17.     Child and Parental Rights Campaign – Counsel for Appellants

18.     Christian Law Association – Amicus Curiae

19.     Christians Engaged – Amicus Curiae

20.     Clark, Matthew J. – Counsel for Amicus Curiae

21.     Claybrook LLC – Counsel for Amicus Curiae

22.     Claybrook, Jr., Frederick W. – Counsel for Amicus Curiae

23.     Coalition for Jewish Values – Amicus Curiae

24.     Concerned Women for America – Amicus Curiae

25.     Congresswoman Vicky Hartzler – Amicus Curiae

26.     Consovoy McCarthy PLLC – Counsel for Appellants

27.     Cornwall Alliance for the Stewardship of Creation – Amicus Curiae

28.     Corrigan, Christian B. – Counsel for Amicus Curiae

29.     Cory, Alyssa L. – Counsel for Amicus Curiae

30.     Costello, David M. – Counsel for Amicus Curiae

31.     Defending Education – Amicus Curiae

32.     Delaware Family Policy Council – Amicus Curiae

33.     DeSousa, Jeffrey P. – Counsel for Amicus Curiae

34.     Dewart, Deborah J. – Counsel for Amicus Curiae

35.     Dhillon Law Group, Inc. – Counsel for Amicus Curiae

36.     Dr. James Dobson Family Institute – Amicus Curiae

37.     Eagle Forum – Amicus Curiae

38.     Estrada, William A. – Counsel for Amicus Curiae

39.   Ethics & Public Policy Center – Counsel for Amicus Curiae

40.   Faith and Freedom Coalition – Amicus Curiae

41.   Family Foundation – Amicus Curiae

42.   Family Policy Institute of Washington – Amicus Curiae

43.   First Liberty Institute – Counsel for Amicus Curiae

44.   Fitschen, Steven W. – Counsel for Amicus Curiae

45.   Frontline Policy Action – Amicus Curiae

46.   Global Liberty Alliance – Amicus Curiae

47.   Goldwater Institute – Amicus Curiae

48.   Grabowski, Daniel – Counsel for Amicus Curiae

49.   Hanna, Rocky – Appellee

50.   Harle, Denise M. – Counsel for Amicus Curiae

51.   Harmon, Terry J. – Counsel for Appellee

52.   Hasson, James. F. – Counsel for Appellants

53.   Haynie, Ryan  – Counsel for Amicus Curiae

54.   Hetzel, Jeffrey S. – Counsel for Appellants

55.   Illinois Family Institute – Amicus Curiae

56.   Institute for Faith and Family – Amicus Curiae

57.   International Conference of Evangelical Chaplain Endorsers – Amicus Curiae

58.   Jones, Darryl – School Board Member

59.   Kniffin, Eric N. – Counsel for Amicus Curiae

60.   Knudsen, Austin – Counsel for Amicus Curiae

61.    Ketcham, John  – Counsel for Amicus Curiae

62.    Lawkowski, Gary M. – Counsel for Amicus Curiae

63.    Lawson Cox, Laurie – School Board Member

64.    Liberty Justice Center – Amicus Curiae

65.    Littlejohn, January – Appellant

66.    Littlejohn, Jeffrey – Appellant

67.    Manhattan Institute – Amicus Curiae

68.    Martinez, Abigail – Amicus Curiae

69.    Mateer, Jeffrey C. – Counsel for Amicus Curiae

70.    McAlister, Mary – Counsel for Appellants

71.    Meehan, Taylor A.R. – Counsel for Appellants

72.    Mills, Christopher – Counsel for Amicus Curiae

73.    Missouri Center-Right Coalition – Amicus Curiae

74    Moody, Ashley – Counsel for Amicus Curiae

75.    National Association of Parents, Inc. d/b/a Parents USA (or) National As- sociation of Parents, Inc. d/b/a ("ParentsUSA") – Amicus Curiae

76.    National Center for Public Policy Research – Amicus Curiae

77.    National Legal Foundation – Amicus Curiae

78.    National Religious Broadcasters – Amicus Curiae

79.    New Jersey Family Policy Center – Amicus Curiae

80.    New Mexico Family Action Movement – Amicus Curiae

81.    Nicolas, Marcus – School Board Member

82.    Norris, Cameron T. – Counsel for Appellants

83.   Oklahoma Council of Public Affairs – Amicus Curiae

84.   Oliveri, Robin – Appellee

85.   Our Duty – Amicus Curiae

86.   Pacific Justice Institute – Amicus Curiae

87.   Parental Rights Foundation – Amicus Curiae

88.   Project 21 Black Leadership Network – Amicus Curiae

89.   Rae, Emily – Counsel for Amicus Curiae

90.   Randall, Holly M. – Counsel for Amicus Curiae

91.   Religious Freedom Institute – Amicus Curiae

92.   Rodgers, Kathleen – Appellee

93.   Russell Kirk Center for Cultural Renewal – Amicus Curiae

94.   Russell, Keisha T. – Counsel for Amicus Curiae

95.   Safriet, Kent D. – Counsel for Amicus Curiae

96.   Sandefur, Timothy – Counsel for Amicus Curiae

97.   Sapir, Dr. Leor – Amicus Curiae

98.   Sarelson, Matthew – Counsel for Amicus Curiae

99.   Scharf-Norton Center for Constitutional Litigation – Counsel for Amicus Curiae

100.  School Board of Leon County – Appellee

101.  Seideman, Tina – Counsel for Amicus Curiae

102.  Shapiro, Ilya – Counsel for Amicus Curiae

103.  Shelton, Adam C. – Counsel for Amicus Curiae

104.  Slanker, Jeffrey D. – Counsel for Appellees

105. Sniffen & Spellman, P.A. – Counsel for Appellees

106. Spellman, Michael – Counsel for Appellees

107. State of Indiana – Amicus Curiae

108. State of Montana, Florida and 19 Other States – Amicus Curiae

109. State of South Dakota – Amicus Curiae

110. Students for Life of America – Amicus Curiae

111. Swafford Smith, Alva – School Board Member

112. The Center for American Liberty – Amicus Curiae

113. The Justice Foundation – Amicus Curiae

114. Thomas, Rachel – Appellee

115. Toney, Kayla A. – Counsel for Amicus Curiae

116. Torstensen, Jr., Peter M. – Counsel for Amicus Curiae

117. Trakas, Ernest – Counsel for Appellants

118. Wagner, Vincent M. – Counsel for Amicus Curiae

119. Walker, Hon. Mark E. – Chief U.S. District Court Judge

120. Wheat, J. Marc – Counsel for Amicus Curiae

121. Whitaker, Henry C. – Counsel for Amicus Curiae

122. Wood, Rosanne – School Board Member

123. Young America's Foundation – Amicus Curiae

The undersigned certifies that no publicly traded company or corporation has an interest in the outcome of the case or appeal. The undersigned will enter this information into the web-based CIP contemporaneous with the filing of this Certificate of Interested Persons and Corporate Disclosure Statement.

## <u>TABLE OF CONTENTS</u>

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT** ............................................................C-1

**TABLE OF CONTENTS** ..........................................................................i

**TABLE OF AUTHORITIES** .................................................... ii

**APPELLEES' RESPONSE IN OPPOSITION TO APPELLANTS'PETITION FOR REHEARING EN BANC** .............................1

**STATEMENT OF THE ISSUES**..............................................1

**STATEMENT OF CASE AND FACTS** ....................................2

**ARGUMENT** ..........................................................................4

    **I.**    **Substantive Due Process Challenges to Executive Action Require a Plaintiff to Establish Conscience-Shocking Behavior.** ....................................................4

    **II.**    **There is no Intracircuit Split.**....................................8

    **III.**    **This Case Does not Involve any Questions of Exceptional Importance.** ....................................12

**CONCLUSION**......................................................................17

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENT** ........................................................................18

**CERTIFICATE OF SERVICE** ...............................................19

# TABLE OF AUTHORITIES

**Cases**

*Arnold v. BOE of Escambia Cnty*
880 F.2d 305 (11th Cir. 1989) ...............................................................10

*Browder v. City of Albuquerque*,
787 F.3d 1076 (10th Cir. 2015) ..................................................................7

*Chavez v. Martinez*,
538 U.S. 760 (2003)...................................................................................7

*Collins v. City of Harker Heights,*
503 U.S. 115 (1992) ......................................................................... 11, 17

*County of Sacramento v. Lewis,*
523 U.S. 833 (1998)............................................................... *passim*

*Dacosta v. Nwachukwa,*
304 F.3d 1045 (11th Cir. 2002) ..................................................... 10, 11

*DeMarcus v. University of South Alabama,*
133 F.4th 1305 (11th Cir. 2025) ..............................................................12

*Dep't of State v. Muñoz,*
602 U.S. 899 (2024)..................................................................................11

*Foote v. Ludlow School Committee*
128 F.4th 336(1st Cir. 2025)............................................................ 13, 14

*Graham v. Connor,*
490 U.S. 386 (1989) ...................................................................................9

*Hancock v. County of Rensselaer,*
882 F.3d 58 (2d Cir. 2018)..........................................................................7

*Hillcrest Property, LLP v. Pasco County*,
915 F.3d 1292 (11th Cir. 2019) ................................................................13

*Maddox v. Stephens,*
727 F.3d 1109 (11th Cir. 2013) ................................................................. 11

*McKinney v. Pate,*
20 F.3d 1550 (11th Cir. 1994) ........................................... 5, 10, 13

*Miller v. Davis,*
2015 WL 10692640 (6th Cir. Aug. 26) ...................................... 5

*Mitchum v. Foster,*
407 U.S. 225 (1972) ............................................................... 5

*Regino v. Staley,*
133 F.4th 951 (9th Cir. 2025) ........................................... 7, 8

*Reiter v. Sonotone Corp.,*
442 U.S. 330 (1979) ............................................................... 6

*Rosales-Mireles v. United States,*
585 U.S. 129 (2018) ............................................................. 12

*Seegmiller v. LaVerkin City,*
528 F.3d 762 (10th Cir. 2008) ............................................... 7

*United States v. Campbell,*
26 F.4th 860 (11th Cir. 2022) ............................................... 14

*United States v. Gillis,*
938 F.3d 1181 (11th Cir. 2019) ........................................... 11

*United States v. Salerno,*
481 U.S. 739 (1987) ........................................... 5, 6, 10

*Waldman v. Conway,*
871 F.3d 1283 (11th Cir. 2017) ........................................ 10, 11

*Watson v. Geren,*
587 F.3d 156 (2d Cir. 2009) ............................................... 16

*White v. Lemacks,*
183 F.3d 1253 (11th Cir. 1999) ..................................................................11

**Rules**

11th Circuit Rule 40-6..............................................................................12

**Other Authorities**

2024 Advisory Committee Notes to Rule 40(d)(4) ................................................15

## <u>APPELLEES' RESPONSE IN OPPOSITION TO APPELLANTS'</u> <u>PETITION FOR REHEARING EN BANC</u>

The petition for rehearing en banc should be denied. The panel correctly applied Supreme Court precedent that plaintiffs bringing substantive due process claims challenging executive action must establish the challenged conduct shocked the conscience. There is no intracircuit split. No Supreme Court or Circuit precedent permits a different result. Moreover, this case does not concern a question of exceptional importance. Appellants' disagreement with Supreme Court precedent cannot be addressed by this Court sitting en banc. And, broadly expanding the scope of substantive due process, as Appellants request, is contrary to the Supreme Court's directive to do so only with the utmost care.

## <u>STATEMENT OF THE ISSUES</u>

Appellants say the question is:

> Did Appellants plausibly allege violations of their fundamental constitutional rights, without separately alleging that the school's actions "shocked the conscience"?

Appellees submit the better question is:

> Must Appellants have plausibly alleged conscience-shocking behavior to maintain their challenge to executive action on substantive due process grounds?

This is the better question because the dispute is whether to state a substantive due process claim Appellants needed to establish conscience-shocking behavior. The answer to this question, as precedent commands, is yes.

## STATEMENT OF CASE AND FACTS

Appellants sued Appellees claiming they violated their substantive due process rights under the 14th Amendment. Appellants' child, A.G., was enrolled in a middle school in the District. [R.38, at 6]. Before the school year, A.G. told her parents she was experiencing "gender confusion" and asked to use "J." as a name and "they/them" pronouns. [*Id.*, 23-24]. Thereafter, Mrs. Littlejohn emailed A.G.'s homeroom teacher to tell her A.G. was expressing gender confusion, they were seeing a counselor for A.G., and they did not want A.G. using "J." as a name or "they/them" pronouns. [*Id.*].

A.G. later approached Thomas, a school counselor, requesting to use a different name and pronouns. [*Id.*]. She suggested A.G. meet with her and staff members to discuss the request and create a support plan. [*Id.*, 27]. They met on September 8, 2020, to develop the support plan, which allowed A.G. to choose a preferred name, pronouns, restroom, and room sharing arrangements on field trips. [*Id.,* 25-27, 32-34]. The support plan was developed under the Lesbian, Gay, Bisexual, Transgender, Gender Nonconforming, and Questioning Support Guide. [*Id.*]. Rodgers developed the Guide and trained staff on it. [*Id.*, 7, 15].

2

Appellants were not notified about the meeting or invited to attend, because A.G. did not ask for them to be present. [*Id.*, 27]. The support plan says Appellants were "aware, but not supportive" of A.G.'s decision to use a preferred name and pronouns. [*Id.*, 27, 32].

After learning about the meeting from A.G. on September 14, 2020, Mrs. Littlejohn asked Thomas and Oliveri, an assistant principal, about it. [*Id.*, 25]. They did not provide her information about the meeting, stating A.G. was "'protected' under a non-discrimination law that does not provide for parental notification or input" and that A.G. had to request Appellants' attendance at the meeting. [*Id.*, 25-26]. Oliveri also stated that parents are not notified of such meetings without student approval to protect the student's safety. [*Id.*, 26]. After meeting with staff on November 2, 2020, and requesting additional information about the meeting, Appellants received a copy of A.G.'s Support Plan and more information about the meeting. [*Id.*, 30-31].

Appellants alleged that Thomas acted in accord "with the authorization and directive contained within the 2018 Guide that parents were not to be notified unless the child approved" and "in accordance with the 2018 Guide and training provided by Rodgers that claimed that children such as A.G. have a legal 'right of privacy' vis-a-vis their parents so that information regarding children's assertion of a discordant gender identity is not to be disclosed to parents without the child's

3

approval." [*Id.*, 27]. The support guide though contains only one reference concerning parental interaction, which provides teachers or administrators should not "out" a student to their parents that they think might be LGBTQ+. [R.38-1, 15].

The District Court granted Appellees' motion to dismiss the federal law claims, confining its analysis to facts pled by Appellants and determined that Appellants' equitable relief claims directed to the support guide were moot because the guide was no longer in effect. [R.66]. Appellants affirmatively represented to the District Court that "Defendants' course of conduct, not the contents of the [Support Guide], that is the focus of Plaintiffs' action." [R.57, 8–9].

## ARGUMENT

I.    **Substantive Due Process Challenges to Executive Action Require a Plaintiff to Establish Conscience-Shocking Behavior.**

Appellants are wrong that plaintiffs bringing a substantive due process claim challenging executive action state a claim so long as they plausibly allege infringement of a fundamental right. This conflicts with Supreme Court precedent in *County of Sacramento v. Lewis,* 523 U.S. 833 (1998), which the panel correctly applied.

The Court held in *Lewis* that to establish a substantive due process violation when executive action is challenged, one must show that the governmental defendant

4

engaged in conscience-shocking behavior. *Id.* at 846-847. It is only after determining whether conscience-shocking behavior exists do courts examine whether an asserted right is fundamental. *Id.* at 847 n. 8.

Appellees agree that this Court must apply Supreme Court precedents "faithfully" (Pet.6), however, Appellants ask this Court to do the opposite of what the Supreme Court held in *Lewis*. There is no justification to deviate from this precedent.

Appellants say that in evaluating substantive due process claims, "[t]he same test applies whether the right is infringed by executive, legislative, or judicial action." Pet.6 citing *Mitchum v. Foster*, 407 U.S. 225, 240 (1972) and *Miller v. Davis*, 2015 WL 10692640, at *1 (6th Cir. Aug. 26). But *Mitchum* predates *Lewis* and *Miller* does not address the issue.

Appellants' point to *McKinney v. Pate*, and its assertion that the fundamental rights and shocks-the-conscience tests are alternative ways to prove a substantive due process violation. Pet.7 citing *McKinney v. Pate*, 20 F.3d 1550, 1556 n.7. (11th Cir. 1994). But the panel was right to hold this portion of *McKinney* was overruled by *Lewis*'s holding that all executive action claims must meet the shocks-the-conscience standard. For the same reason, Appellants' reliance on *United States v. Salerno*, 481 U.S. 739, 746 (1987), is also misplaced.

5

Appellants' reliance on *Salerno* is otherwise misplaced. They argue the Supreme Court explained in *Salerno* that "substantive due process prevents the government from engaging in conduct that shocks the conscience *or* interferes with rights implicit in the concept of ordered liberty." Pet.7 (quoting *Salerno*). But as the majority held in footnote 7 of the opinion, this relies on an over-literal interpretation of this language. In rejecting the dissent's assertion that *Lewis* does not require the shocks-the-conscience standard's application to executive state actions that burden a fundamental right, the majority noted that reliance on language like in *Salerno* that a plaintiff can state a substantive-due-process claim by alleging conduct that "shocks the conscience" *or* interferes with a right "implicit in the concept of ordered liberty" does not address the clear holding in *Lewis*. As the majority noted, courts do not parse the language of an opinion like the language of a statute. Maj.-Op.15 n.7 citing *Reiter v. Sonotone Corp.,* 442 U.S. 330, 341 (1979). The over-literal interpretation of the word "or" in *Salerno* says nothing about whether the shocks-the-conscience standard applies to Appellants' claims. As the majority noted, the better rationale, comporting with binding precedent, is that the shocks-the-conscience standard must be met when a plaintiff challenges executive action.

Appellants say other circuits have held the two tests are alternative ways to establish a substantive due process violation. Pet.8 (collecting citations). Appellants read too much into the cases cited, none of which squarely grappled with and

6

addressed the question here or, at best, did so in dicta. As the majority and the concurrence point out, numerous circuits hold that the shocks-the-conscience standard applies to challenges to executive action, even where the plaintiff alleges that the executive action infringes a fundamental right. Maj.-Op.20, Newsom-Concur.15 n.3 (collecting cases from the 10th, 9th, 8th, 7th, 6th, 4th, 3rd and 1st circuits); *see also Hancock v. County of Rensselaer*, 882 F.3d 58, 65–66 (2d Cir. 2018)(explaining how the fundamental-rights approach applies to legislation and the shocks-the-conscience test to executive action).

The evolution of this issue in the Tenth Circuit is worth exploring. Appellants reference *Seegmiller v. LaVerkin City*, 528 F.3d 762, 768-69 (10th Cir. 2008), as finding that the tests constituted "two separate approaches." Pet.8. And while *Seegmiller*, interpreting *Chavez v. Martinez*, 538 U.S. 760 (2003), suggested as much in dicta, then-Judge Gorsuch in a later case explained that "*Chavez* did not expressly overrule Lewis's holding that the 'arbitrary or conscience shocking' test is the appropriate one for executive action." *See Browder v. City of Albuquerque*, 787 F.3d 1076, 1078–79 (10th Cir. 2015).

Nor does the Ninth Circuit's decision in *Regino v. Staley,* 133 F.4th 951 (9th Cir. 2025), support Appellants' assertions. The facts are not "identical" as they claim. Pet.8. There, parents brought both facial and as-applied challenges to an existing policy. *Regino*, 133 F.4th at 956. Here, the support guide is no longer in

7

effect, and Appellants did not dispute the determination that their equitable relief challenges to the guide were moot. Actually, they affirmed they were challenging the course of Appellees' conduct, not the guide. Appellants say, "the Ninth Circuit faulted the district court for not applying the Supreme Court's framework on fundamental rights" and "[t]he court did not address whether the policy's enforcement 'shocks the conscience,' precisely because the plaintiff could alternatively prevail under the 'different' standard that governs 'fundamental rights.'" Pet.8-9. To be clear, the court expressed "no opinion" on the shocks-the-conscience standard's applicability. *Regino,* 133 F.4th at 950, n.5.

## II.    There is no Intracircuit Split.

As a threshold matter, Appellants are wrong that *Lewis* does not require courts to apply the conscience-shocking test to claims of executive deprivations of fundamental rights. Pet.11-12. They argue the Supreme Court in *Lewis* "made sure the challenged conduct did not implicate a fundamental right (there, the right to be free from unreasonable seizures) before it moved on to consider residual "principles of generalized substantive due process" and thus the shocks-the-conscience standard should only apply to these residual rights. They quote *Lewis* for the proposition that if the conduct at issue implicated a fundamental right, the Court would have analyzed it "'under the standard appropriate to that specific [right], not under the rubric of substantive due process.'" *Id.* citing and quoting *Lewis,* 523 U.S. at 843. The Court

though was not referencing unenumerated fundamental rights in the Fourteenth Amendment's substantive due process clause, but rather enumerated rights with textual support in another Constitutional Amendment. *See Lewis,* 523 U.S. at 842-843. Indeed, this portion of the opinion concerned the Court's reasoning why the plaintiff's Fourteenth Amendment claims were not barred by the holding in *Graham v. Connor*, 490 U.S. 386 (1989) that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Id*. The Court was ensuring that the case did not concern a right with specific textual support in another part of the Constitution, like the right to be free from unreasonable searches and seizures found in the Fourth Amendment, and not rights, like parental rights, which might have been deemed fundamental, but that derive from the due process clause's liberty guarantee.

Moreover, the Supreme Court in *Lewis* specifically rejected Justice Scalia's argument that the shocks-the-conscience test should not apply to executive action challenges, and that the focus should instead be on whether "our Nation has traditionally protected the right [the plaintiffs] assert[ed]." 523 U.S. at 862 (Scalia, J., concurring in the judgment). Indeed, the majority "gave every indication that the shocks-the-conscience standard applies, at the threshold and across the board,

9

to *all* challenges to executive action, of whatever stripe and in whatever context." Newsom-Concurrence.11-12, citing *Lewis*, 523 U.S. at 847-48 n.8.

Nothing about this Court's precedents require this Court sitting en banc to reach that conclusion. As explained, *McKinney*'s annunciation of a different standard has been overruled by *Lewis*. The same holds true for *Arnold v. BOE of Escambia Cnty.*, 880 F.2d 305 (11th Cir. 1989). Appellants say there is uncertainty because the majority did not explain how *Lewis* abrogated *Arnold* (Pet.10) which involved a challenge to executive deprivation of parental rights. But *Lewis's* holding that the shocks-the-conscience standard applies to all challenges to executive action abrogates *Arnold*.

Appellants also point to *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002) and *Waldman v. Conway*, 871 F.3d 1283, 1292 (11th Cir. 2017), arguing that the majority did not explain how *Lewis* abrogated these later decisions. Pet.9-10. But the Court in *Dacosta* used the same disjunctive language as *Salerno*, and the case did not clearly address the issue here, even if one could read the decision as suggesting the two tests are alternative ways to establish liability. 304 F.3d at 1048. The conclusion in this regard was also dicta, as *Dacosta* went on to find the plaintiff did not establish conscience-shocking behavior that could not be remedied by the state tort system and did not apply the fundamental rights test. *See id.* at 1048-1049.

10

Appellants' argument that the panel was bound by the prior panel precedent rule to apply their reading of *Dacosta* is thus off-base because dicta does not bind future panels. *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019). Regardless, the first time this Court addressed the issue in a published decision after *Lewis* was *White v. Lemacks*, 183 F.3d 1253, 1257-1259 (11th Cir. 1999). There, this Court explained that *Lewis* stood for the proposition that "where non-custodial relationships are involved, the government can be held liable under the substantive due process clause only where an official's act or omission is 'arbitrary[ ] or conscience shocking.'" *Id.* quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 128 (1992). This eviscerates the argument that *Dacosta* prevented the majority from deciding as it did based on the prior panel precedent rule.

The majority correctly noted that the binding precedent here is *Maddox v. Stephens*, 727 F.3d 1109 (11th Cir. 2013), predating *Waldman*, which involved a substantive due process challenge to executive action alleged to infringe on parental rights. This Court held that plaintiffs bringing such claims must establish conscience-shocking conduct. Ma.-Op.18.[1]

---

[1] Appellants' assertions that other circuits and the Supreme Court have treated the shocks-the-conscience test as an alternative are off-base. Pet.11. While the Supreme Court did not mention the shocks-the-conscience test in *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024), the Court did not find there was a fundamental right at play and did not squarely address this issue. *Lewis* holds that a plaintiff challenging executive action must meet the shocks-the-conscience test, and the Supreme Court

There is no intracircuit split or risk of confusion to future panels necessitating en banc review. This Court recently had no trouble explaining that conscience-shocking behavior must be established by a plaintiff challenging executive action under the Fourteenth Amendment's substantive due process clause. *DeMarcus v. University of South Alabama*, 133 F.4th 1305, 1316–17 (11th Cir. 2025).

### III.    This Case Does not Involve any Questions of Exceptional Importance.

This is not an extraordinary case involving a "precedent-setting error of exceptional importance." 11th Circuit Rule 40-6. Appellants variously argue that the requirement to establish infringement of a fundamental right and conscience-shocking conduct when challenging executive conduct as opposed to legislative conduct makes no sense. *See* Pet.13. But this outcome is compelled by precedent.

Indeed, the questions posed in the petition suffer from the same infirmities. Pet.13-14. First, Appellants fault the application of the shocks-the-conscience test to cases where an executive action results in the deprivation of fundamental right, but this is what *Lewis* requires.

Next, Appellants also pose the question of which deprivations count as executive. Initially, Appellants' claim that they "cannot sue policies" is obtuse. Of

has since cited this holding. *See Rosales-Mireles v. United States*, 585 U.S. 129, 137-138 (2018).

course, policies can be challenged, as can laws. Appellants though affirmatively waived any claims to the support guide in their opposition to the Appellees' motion to dismiss their amended complaint as explained by the majority when they said the focus of their action was Appellees' course of conduct, and not the support guide. Maj.-Op.19. Appellants do not even explain why the manner in which the distinction drawn between executive and legislative acts by the panel, founded on *McKinney*, (Maj-Op.18-21) and repeatedly reaffirmed by this Court, (*Hillcrest Property, LLP v. Pasco County*, 915 F.3d 1292, 1310 (11th Cir. 2019)(Newsom, J. concurring)), constitutes a precedent-setting error of exceptional importance. Appellants really bemoan the distinction in the first place. Pet.13 ("But the Constitution's *meaning* is not supposed to change because the claim is as-applied versus facial, the challenge is postenforcement versus preenforcement, or the relief is damages versus an injunction."). But *Lewis* compels courts to make this distinction.

Finally, Appellants pose the question of "[w]hen is a fundamental right rooted in 'substantive due process?'" lamenting that substantive due process claims are subject to what they assert is a higher standard than rights found explicitly in other amendments, such as the First Amendment, which are incorporated through the due process clause. But again, *Lewis* compels the result.

Appellants' remaining arguments fare no better. They complain of a perceived split with *Foote v. Ludlow School Committee*, 128 F.4th 336, 346-47 (1st Cir. 2025)

13

in terms of how the majority drew the legislative and executive distinction. Pet.14. But Appellants do not grapple with the differences between this case and *Foote*. As the majority explained, *Foote* involved a challenge to a protocol which was the "chief target" of the complaints and more characteristically a legislative action, a general policy and its routine applications, whereas Appellants waived their claims about the support guide, challenging only the specific application of a policy to one person, a hallmark executive action under Circuit precedent. Maj.-Op.19-20 n. 8.

Appellants could have framed their claims differently. The District Court gave them several chances to do that, even asking if they wanted to amend their complaint again upon its second dismissal or accept a judgment. R.66, 19. Appellants accepted the judgment, but argued new issues on appeal. Ans. Br., 10-17 (arguing Appellants forfeited their arguments they did not have to show conscience-shocking behavior, they were challenging legislative action, and that the deliberate indifference standard applied to their claims). They now assert yet another new argument, that the majority misconstrued when an executive act is conscience-shocking, arguing the test is whether the executive "intended to commit the acts in question" not whether the executive acted with intent to injure. Pet.14. Appellants never argued this in their brief. They argued the deliberate indifference standard should apply to their claims. *See* Initial Br.20-23. Arguments not raised in the initial brief are forfeited. *United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022)

14

Regardless, the majority applied *Lewis* correctly. *Lewis* held that "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." 523 U.S. at 849. The majority correctly noted that this standard was not met as no one forced A.G. to meet with them, to not invite Appellants to the meeting, or to do anything, and in fact sought to help her. As the majority held, "even if Appellants felt that Defendants' efforts to help their child were misguided or wrong, the mere fact that the school officials acted contrary to Appellants' wishes does not mean that their conduct 'shocks the conscience' in a constitutional sense." Maj.-Op.25. Even accepting Appellants' newest argument, the complaint does not allege Appellees took any actions with the intent to interfere with Appellants' fundamental parental rights, just that Appellees were deliberately indifferent to Appellants' rights. *E.g.*, R.38.41 (pleading deliberate indifference to parental right).

Furthermore, this case is not suited for en banc review. The 2024 Committee Note to Rule 40(d)(4) states that a party responding to an en banc petition may point out "that an argument raised in a rehearing petition had been waived or forfeited" Every argument in the petition has been forfeited, which an en banc court would have to address.

The panel opinion disturbs no settled rule of law nor impugns the continued validity of any previous Eleventh Circuit or Supreme Court decision further

15

warranting the petition's denial. *See Watson v. Geren*, 587 F.3d 156, 158 (2d Cir. 2009)(Pooler, J., et al., concurring in denial of rehearing en banc)("Given that the panel's decision does not seek to depart from existing standards, the issue presented by this appeal is not properly considered a 'question of exceptional importance'").

Nor does the panel's decision make it impossible to vindicate parental rights. Pet.15. Appellants say because they "challenged one of these policies after it was applied, the panel deemed their challenge 'executive' and made them satisfy an impossible test." But had the support guide still been in effect, Appellants could have argued that it was unconstitutional under the fundamental rights framework. The District Court correctly found Appellants' challenge to the support guide was moot, which they did not further challenge.

Finally, Appellants' argument that the majority's opinion should be reheard en banc to settle the legal standard for future cases, with specific reference to their argument that the majority opinion all but eliminates Section 1983 as a remedy to compensate citizens whose fundamental rights have been violated by state and local executive action, is also unpersuasive. Pet.15, citing Dissent.43-44. Again, *Lewis*, and well-established precedent, mandates the outcome of this case. Newsom-Concurrence.16, n. 4. And, to be sure, *Lewis* held that the due process clause "does not entail a body of constitutional law imposing liability whenever someone cloaked

16

with state authority causes harm" and is "not a font of tort law to be superimposed upon whatever systems may already be administered by the States." 523 U.S. at 848. It also held that the shocks-the-conscience standard was necessary because "executive action challenges raise a particular need to preserve the constitutional proportions of constitutional claims, lest the Constitution be demoted to what we have called a font of tort law." *Id.* at n. 8.

Appellants ask for an incredible expansion of the substantive due process doctrine. Applying the fundamental-rights test to the conduct of executive officials would turn all kinds of intentional torts into constitutionally significant events. The Supreme Court has emphasized that the "guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins,* 503 U.S. at 125. And the doctrine of judicial self-restraint requires courts "to exercise the utmost care whenever … asked to break new ground in this field." *Id.* Despite these commandments, Appellants ask the Court to re-hear the majority opinion which faithfully applies precedent, to expand the substantive due process doctrine in a wide-reaching way. That request should be rejected.

## CONCLUSION

The petition should be denied.

Respectfully submitted this 6th day of June 2025.

/s/ Jeffrey D. Slanker
**JEFFREY D. SLANKER**
Florida Bar Number: 100391
E-mail: jslanker@sniffenlaw.com
**TERRY J. HARMON**
Florida Bar Number: 0029001
E-mail: tharmon@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, FL 32301
Telephone: (850) 205-1996
Fax:   (850) 205-3004

*Appellees' Attorneys*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENT

1.     This document complies with the word limit of Fed. R. App. P. 40(d)(3) and 40(d)(4), because this document contains 3,845 words, exclusive of the portions permitted to be excluded by rule.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 in fourteen-point font, Times New Roman.

/s/ Jeffrey D. Slanker
**JEFFREY D. SLANKER**

## <u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the foregoing on June 6, 2025, with the Clerk of Court using the Eleventh Circuit CM/ECF system which will send notification of filing to all parties of record. I also certify that on this 6th day of June 2025, that I delivered 4 copies of this response in opposition to the petition for rehearing en banc, printed and spiral bound on the left-hand side, via Federal Express to:

Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St., N.W.
Atlanta, Georgia 30303

Dated this 6th day of June 2025.

/s/ Jeffrey D. Slanker
**JEFFREY D. SLANKER**