No. 23-10385-HH

# In the United States Court of Appeals for the Eleventh Circuit

*January Littlejohn and Jeffrey Littlejohn,*
Plaintiffs-Appellants,

v.

*School Board of Leon County, Florida, et al.,*
Defendant-Appellees.

U.S. District Court for the Northern District of Florida, No. 4:21-cv-415-MW-MAF
(Walker, C.J.)

### *AMICUS CURIAE* BRIEF OF AMERICAN PARENTS COALITION IN SUPPORT OF PLAINTIFFS-APPELLANTS

D. Kent Safriet
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC
119 South Monroe Street, Suite 500
Tallahassee, Florida 32301
Telephone: (850) 270-5938
kent@holtzmanvogel.com

*Counsel for Amicus Curiae*
*American Parents Coalition*

*January Littlejohn., et al. v. School Board of Leon County, Florida, et al.*

23-10385-HH

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Per Rule 26.1 and Circuit Rule 26.1, *Amicus Curiae* American Parents Coalition certifies that the Certificate of Interested Persons filed with Plaintiffs-Appellants' Reply Brief, Defendants-Appellees' Amended Answer Brief, and the various briefs of the *Amicus Curiae* are complete, subject to the following amendments:

1. American Parents Coalition, *Amicus Curiae*

2. Holtzman Vogel Baran Torchinsky & Josefiak, *Counsel for Amicus Curiae*

3. Marré, Alleigh, *Executive Director, Amicus Curiae American Parents Coalition*

4. Safriet, D. Kent, *Counsel for Amicus Curiae*

Per Circuit Rule 26.1-2(c), *Amicus Curiae* American Parents Coalition is a nonprofit organization, does not have a parent corporation, and does not issue shares to the public. *Amicus Curiae* American Parents Coalition is not aware of any publicly owned corporation, not a party to the appeal, with a financial interest in the outcome of this case.

Dated: April 30, 2025 /s/ D. Kent Safriet
*Counsel for Amicus Curiae*
*American Parents Coalition*

## TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ........................ C1

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... ii

INTEREST OF AMICUS ............................................................................................... 1

STATEMENT OF THE ISSUE ..................................................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................... 1

ARGUMENT ................................................................................................................... 3

    I.    Parents have a substantive-due-process right to be informed about the treatments a school administers to their *minor* child and right to *refuse* those treatments. ................................................................................................ 3

    II.   Social transitioning is a medical treatment—the first step on a road to puberty blockers, cross-sex hormones, and surgeries. ..................................... 5

CONCLUSION ............................................................................................................... 7

Certificate of compliance ................................................................................................. 9

Certificate of Service ....................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Abigail Alliance for Better Access to Devlepmental Drugs v. Von Eschenbach*,
    495 F.3d 695 (D.C. Cir. 2007) .................................................................... 2

*Bendiburg v. Dempsey*,
    909 F.2d 463 (11th Cir. 1990)..................................................................... 4

*Bendiburg v. Dempsey*,
    909 F.2d 463 (11th Cir. 1990)...............................................................2, 4, 5

*Brandt v. Rutledge*,
    677 F. Supp. 3d 877 (E.D. Ark. 2023).................................................... 6, 7

*Dobbs v. Jackson Women's Health Organization*,
    597 U.S. 215 (2022)..................................................................................... 3

*Eknes-Tucker v. Governor of Alabama*,
    80 F.4th 1205 (11th Cir. 2023) ................................................................ 2, 3

*Jacobson v. Massachusetts*,
    197 U.S. 11 (1905)....................................................................................... 4

*L.W. v. Skrmetti*,
    73 F.4th 408 (6th Cir. 2023) ....................................................................... 2

*Meyer v. Nebraska*,
    262 U.S. 390 (1923)..................................................................................... 3

*Troxel v. Granville*,
    530 U.S. 57 (2000)................................................................................... 1, 3

*Washington v. Glucksberg*,
    521 U.S. 702 (1997)................................................................................ 3, 4

## INTEREST OF AMICUS

American Parents Coalition ("APC") is a tax-exempt, non-profit organization that advocates for the rights of parents in the educational and medical settings. APC furthers this mission by advocating for parental rights before policymakers and by providing parents with the resources they need to advocate for their children. APC participates as an amicus here to underscore a parent's right to *refuse* treatments being offered to a *minor* child without the parent's knowledge or consent. APC also writes to underscore the problems inherent in socially transitioning a child from one gender to another without a parent's involvement. Finally, no party to this case authored APC's brief, either in whole or in part, and no person or entity, other than APC, contributed to the preparation or submission of this brief.

## STATEMENT OF THE ISSUE

Whether the Littlejohns plausibly asserted a violation of their fundamental constitutional right to direct their minor child's "upbringing," "education," and "care," *Troxel v. Granville*, 530 U.S. 57, 65 (2000), where their local school board excluded the Littlejohns from a medical decision to start the process of gender transitioning wherein the school provided medical counseling services.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Substantive-due-process jurisprudence has been called atextual and difficult to reconcile, and it's been suggested that the recognition (and preservation) of certain fundamental rights is better accomplished through other constitutional provisions. All

1

that may well be true; however, the APC takes the substantive-due-process jurisprudence as it finds it. And APC agrees with the Littlejohns that under that existing jurisprudence, "parents lack an affirmative right to 'obtain' risky treatments for their children," but "they have a negative right to avoid the State *imposing* those treatments without their knowledge or consent." Pet. at 5 (citations omitted).

There's a major difference between the right to access medical treatments for a minor and the right to refuse available treatments. If a state properly prohibits a treatment as being unsafe, as Alabama did in *Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205 (11th Cir. 2023), then parents can't demand those treatments for their children, *id.* at 1219-24. But if treatments are available, then the parents can refuse those treatments barring some kind of emergency. *Id.* at 1224 n.17 (discussing *Bendiburg v. Dempsey*, 909 F.2d 463, 466-67 (11th Cir. 1990)). This isn't a rules-for-me-not-for-thee situation. Rather, it's a well-worn distinction between demanding access to a treatment and refusing an available treatment. *See, e.g.*, *Eknes-Tucker*, 80 F.4th at 1224, n.17, *L.W. v. Skrmetti*, 73 F.4th 408, 418 (6th Cir. 2023); *Abigail All. for Better Access to Developmental Drugs v. Von Eschenbach*, 495 F.3d 695, 710 n. 18 (D.C. Cir. 2007) (collecting cases for the proposition that "[n]o circuit court has acceded to an affirmative access claim").

And there's no doubt that social transitioning is a medical treatment. It's the first step in a treatment train that leads to puberty blockers, cross-sex hormones, and potential surgery for the treatment of a psychiatric diagnosis of gender dysphoria.

2

Parents should be involved in the medical process from this very first step—they should walk with their children through the challenges of growing up.

## ARGUMENT

**I.     Parents have a substantive-due-process right to be informed about the medical treatments a school administers to their *minor* child and right to *refuse* those medical treatments.**

Parents have a substantive-due-process right "to make decisions concerning the care, custody, and control of their children." *Troxel*, 530 U.S. at 66. The Supreme Court has used strong language to side with parents when it comes to visitation rights, as in *Troxel v. Granville, id.*, and educational rights, as in *Meyer v. Nebraska*, 262 U.S. 390 (1923).

That said, neither parents for themselves nor for their minor children have a right to *access* specific medical treatments. The Supreme Court has refused to recognize a substantive-due-process right to *access* abortion in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), and a right to *access* assisted suicide in *Washington v. Glucksberg*, 521 U.S. 702 (1997). This Court recently refused to recognize a substantive-due-process right to *access* gender-affirming medical treatments in *Eknes-Tucker*.

Access to medical treatment is different from refusal of a medical treatment. *Dobbs*, *Glucksberg*, and *Eknes-Tucker* all concern whether the government erred in failing to make certain treatments available. The government's decision on availability comes with a "presumption of validity," because the government is in a better position to weigh the safety and efficacy of a treatment, and its effect on society at large. *Dobbs*, 597 U.S. at 301 (citations and quotations omitted). Once the government makes its choice,

3

however, the pendulum swings back toward the individual. The adult can refuse a treatment, and the parent can do the same for a minor child. That's consistent with our "long legal tradition protecting the decision to refuse unwanted medical treatment," *Glucksberg*, 521 U.S. at 725, absent some "emergency," *Jacobson v. Massachusetts.*, 197 U.S. 11, 27 (1905) (upholding mandatory smallpox vaccination requirement).

Examples help illustrate the point. A jurisdiction can choose to allow physicians to perform risky and cutting-edge cardiovascular procedures for a particular ailment. But it can't force adults to undergo the medical procedure. Nor can it force minors to undergo the medical procedure without the parent's knowledge and consent.

The same is true with abortions. Jurisdictions may choose to make abortion legal. But women can choose to carry a child to term. Forcing a woman to have an abortion would violate the constitution. And a school would surely violate the constitution where it helps a minor obtain an abortion with the parent's knowledge or consent.

This Court's decision in *Bendiburg v. Dempsey*, 909 F.2d 463 (11th Cir. 1990), grapples with the tension between government responsibility and individual choices. There, the state obtained temporary custody of a child after a car accident killed his mother. *Id.* at 466-67. Over the objections of the child's father, the state then performed a medical procedure to insert into the child's heart a catheter to administer certain antibiotics. *Id.* The child died, and the father sued. *Id.*

On appeal, this Court explained that "[u]nderlying this lawsuit are important issues of state responsibility and individual rights." *Id.* at 470. "The need for government

4

officials to act in an emergency is an important public policy consideration." *Id.* "On the other hand, neither the state nor private actors, concerned for the medical needs of a child, can willfully disregard the right of parents to generally make decisions concerning the treatment to be given to their children." *Id.* Ultimately, *Bendiburg* held that the state's obtaining custody in a medical emergency didn't give rise to a substantive-due-process claim. *Id.* at 468, 470. Barring an emergency, the logic of *Bendiburg* suggests that the state would have violated substantive due process to administer medical treatment over the parent's objection. *See id.* at 470.

For the Littlejohns, the substantive-due-process jurisprudence, such as it is, should mean this: the Littlejohns don't have a substantive-due-process right to obtain specific medical treatment for their minor child, but they do have a substantive-due-process right to be informed of and then refuse medical treatments absent some emergency. The local school board plausibly violated the requirements of substantive due process when it started a minor child on the road to gender transition without the knowledge and consent of the child's parents by providing medical counseling and guidance to the child. . And, to be sure, there was no emergency—no life-and-death need to take temporary custody of the child as there was in *Bendiburg*.

## II.　Social transitioning is a medical treatment—the first step on a road to puberty blockers, cross-sex hormones, and surgeries.

Much ink has been spilled on the safety and efficacy of so-called gender-affirming care before the courts, and before medical boards in this country and abroad.

5

But this much is clear: social transitioning is the first step in a process to treat a psychiatric diagnosis of gender dysphoria that then leads to puberty blockers, cross-sex hormones, and surgeries. Even for proponents of this care, this first step can't be taken lightly.

Consider the Endocrine Society's Guidelines for treating gender dysphoria, which proponents of gender-affirming care "recognize[] as best practices." *Brandt v. Rutledge*, 677 F. Supp. 3d 877, 889 (E.D. Ark. 2023). Those guidelines list social transitioning as a treatment. Endocrine Society Guidelines at 3870, 3872, 3877, 3879, 3893.[1] The treatments generally begin with social transitioning before the use of puberty blockers, cross-sex hormones, and surgeries. *Id.* at 3870-72 (summarizing recommendations).

As to social transitioning itself, the guidelines recognize that it's a form of mental health "counseling" where "a major focus" is on "social transformation." *Id.* at 3877. Said another way, social transitioning is a form of mental health counseling that accepts that an incongruence between natal sex and gender is possible and the best way to treat any related distress is to transition from the natal sex. *Id.*

Importantly, however, the guidelines do acknowledge the following about social transitioning as a treatment:

---

[1] The Endocrine Society's Guidelines are available here: https://academic.oup.com/jcem/article/102/11/3869/4157558?login=false. References are to the page numbers on the top right of the printed page.

6

> In most children diagnosed with GD/gender incongruence, it did not persist into adolescence. The percentages differed among studies, probably dependent on which version of the DSM clinicians used, the patient's age, the recruitment criteria, and perhaps cultural factors. However, the large majority (about 85%) of prepubertal children with a childhood diagnosis did not remain GD/ gender incongruent in adolescence (20). *If children have completely socially transitioned, they may have great difficulty in returning to the original gender role upon entering puberty* (40). Social transition is associated with the persistence of GD/gender incongruence as a child progresses into adolescence. It may be that the presence of GD/gender incongruence in prepubertal children is the earliest sign that a child is destined to be transgender as an adolescent/adult (20). *However, social transition (in addition to GD/gender incongruence) has been found to contribute to the likelihood of persistence.*

*Id.* at 3879 (emphases added). So, even according to the proponents of gender-affirming care, as much as 85% of prepubescent children desist from identifying with a gender different than that of their birth *unless* social transitioning begins. *Id.* Social transitioning is thus a first step—a medical treatment—with very serious consequences.

Yet in the Littlejohns' case the local school board decided that the parents should not be informed and need not consent before their middle-school age child is provided medical treatment in the form of mental health counseling to socially transition. That makes little sense when social transition "contribute[s] to the likelihood of persistence" in "gender incongruence," and the possible use of more invasive procedures to treat that incongruence. *Id.*

## CONCLUSION

Schools shouldn't have a secret plan to transition children (i.e., provide medical treatment without the parents' consent). Having one—and then attempting to

7

implement one—violates the substantive-due-process rights of the parents. Parents have a right to be informed about the treatments being offered to their children and to opt out when they think it best. That didn't happen here. Accordingly, this Court should grant *en banc* review.

Dated: April 30, 2025

Respectfully submitted,

/s/ D. Kent Safriet
D. Kent Safriet
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC
119 South Monroe Street, Suite 500
Tallahassee, Florida 32301
Telephone: (850) 270-5938
kent@holtzmanvogel.com

*Counsel for Amicus Curiae
American Parents Coalition*

8

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Rule 29 and 32, and the typeface and type-style requirements of Rule 32. The brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond. The brief contains 1,838 words, excluding the parts of the brief exempted.

Dated: April 30, 2025               /s/ D. Kent Safriet
                                    D. Kent Safriet

## CERTIFICATE OF SERVICE

I certify that on April 30, 2025, I electronically filed the foregoing brief with the Clerk through CM/ECF, which will serve an electronic copy to all counsel of record.

Dated: April 30, 2025               /s/ D. Kent Safriet
                                    D. Kent Safriet