No. 23-10385-HH

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

JANUARY LITTLEJOHN; JEFFREY LITTLEJOHN,

*Plaintiffs-Appellants,*

v.

SCHOOL BOARD OF LEON COUNTY, FLORIDA, et al.,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Northern District of Florida
The Honorable Mark E. Walker
Case No. 4:21-cv-00415-MW-MJF

---

**BRIEF OF ALLIANCE DEFENDING FREEDOM AS
*AMICUS CURIAE* SUPPORTING PLAINTIFFS-APPELLANTS'
PETITION FOR REHEARING EN BANC**

---

Katherine L. Anderson
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
kanderson@ADFlegal.org

Vincent M. Wagner
Daniel J. Grabowski
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, Virginia 20176
(571) 707-4655
vwagner@ADFlegal.org
dgrabowski@ADFlegal.org

*Counsel for* Amicus Curiae

*January Littlejohn v. School Board of Leon County, Florida*,
No. 23-10385-HH

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, the undersigned certifies his belief that the Certificate of Interested Persons filed with Plaintiffs-Appellants' Petition for Rehearing En Banc is complete, subject to the following amendments:

1. Grabowski, Daniel J. – Counsel for *Amicus Curiae*

The undersigned will enter this information in the Court's web-based CIP contemporaneously with filing this brief.

*Amicus curiae* Alliance Defending Freedom is a nonprofit organization, does not have a parent corporation, and does not issue stock. ADF is unaware of any publicly owned corporation, not a party to the appeal, with a financial interest in the outcome of this case.

                                                */s/ Vincent M. Wagner*
                                                Vincent M. Wagner
                                                ALLIANCE DEFENDING FREEDOM
                                                44180 Riverside Parkway
                                                Lansdowne, Virginia 20176
                                                (571) 707-4655
                                                vwagner@ADFlegal.org

## RULE 40-3 STATEMENT

Under Eleventh Circuit Rule 40-3(c), I express a belief, based on a reasoned and studied professional judgment, that this appeal involves one or more questions of exceptional importance:

(1) Does the shocks-the-conscience test apply to all substantive-due-process claims based on executive action implementing an official policy—even if the action violated a fundamental right?

(2) Does contravening parents' express instructions by "socially transitioning" their 13-year-old daughter *in secret* to a different gender identity shock the conscience?

*/s/Vincent M. Wagner*
Vincent M. Wagner
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, Virginia 20176
(571) 707-4655
vwagner@ADFlegal.org

i

# TABLE OF CONTENTS

RULE 40-3 STATEMENT ...................................................................................i

TABLE OF AUTHORITIES ............................................................................ iii

INTEREST OF *AMICUS CURIAE* ..................................................................1

STATEMENT OF THE ISSUES ........................................................................2

SUMMARY OF THE ARGUMENT ..................................................................2

ARGUMENT ......................................................................................................3

I.   The full Court should explain that fundamental-rights claims need not allege conscience-shocking conduct. .......................3

    A.   The fractured panel decision demonstrates the need for clarity on this question. ........................................................4

    B.   The full Court should clarify that its precedent does not support the panel majority's holding ...............................6

II.  Alternatively, the full Court should explain that a secret "social transition" shocks the conscience because it exceeds the traditional scope of executive authority. .................................8

CONCLUSION ................................................................................................12

CERTIFICATE OF COMPLIANCE ................................................................13

CERTIFICATE OF SERVICE ..........................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Arnold v. Board of Education of Escambia County,*
  880 F.2d 305 (11th Cir. 1989) .............................................................. 7

*Chavez v. Martinez,*
  538 U.S. 760 (2003) .............................................................................. 7

*County of Sacramento v. Lewis,*
  523 U.S. 833 (1998) ........................................................... 4, 7, 9, 11

*Dacosta v. Nwachukwa,*
  304 F.3d 1045 (11th Cir. 2002) .......................................................... 7

*Dobbs v. Jackson Women's Health Organization,*
  597 U.S. 215 (2022) .............................................................................. 4

*Littlejohn v. School Board of Leon County,*
  132 F.4th 1232 (11th Cir. 2025) ................................................ passim

*Maddox v. Stephens,*
  727 F.3d 1109 (11th Cir. 2013) .......................................................... 8

*Meyer v. Nebraska,*
  262 U.S. 390 (1923) .............................................................................. 4

*New York State Rifle & Pistol Association v. Bruen,*
  597 U.S. 1 (2022) ................................................................................ 11

*Pierce v. Society of Sisters,*
  268 U.S. 510 (1925) ............................................................................ 10

*Regino v. Staley,*
  133 F.4th 951 (9th Cir. 2025) ............................................................. 8

*Troxel v. Granville,*
  530 U.S. 57 (2000) ........................................................................ 4, 10

*United States v. Salerno,*
  481 U.S. 739 (1987) .............................................................................. 7

*Waldman v. Conway*,
   871 F.3d 1283 (11th Cir. 2017) ........................................................... 8

**<u>Rules</u>**

11th Cir. R. 40-6 ................................................................................... 3

**<u>Other Authorities</u>**

1 William Blackstone, *Commentaries on the Laws of England* (10th
   ed. 1787),
   http://bit.ly/3leX7za .................................................................... 10, 11

## INTEREST OF *AMICUS CURIAE*[*]

This case is about whether the Littlejohns can recover damages for a violation of their fundamental right to direct the care and upbringing of their child. A school board and its employees ignored their express instructions not to treat their 13-year-old daughter as a different gender identity, a controversial practice often called "social transitioning." And it kept its actions secret from the Littlejohns.

Alliance Defending Freedom is a nonprofit that helps defend key constitutional rights—including parents' fundamental right to direct the care and upbringing of their children. In fact, ADF represents families who have discovered that a school district socially transitioned their child without their consent. That includes situations where schools did not notify parents or acted over their express objection. ADF's panel-stage *amicus* brief details the stories of some of those families.

ADF agrees with the Littlejohns: The panel was wrong to hold that all fundamental-rights claims based on executive action must "shock the conscience." And it was wrong to hold that secretly transitioning a 13-year-old to a different gender identity doesn't. The full Court should grant the petition and reverse the judgment below.

---

[*] No counsel for a party authored this brief in whole or in part. And no one, other than *amicus* and its counsel, made a monetary contribution for its preparation or submission. Plaintiffs-Appellants consent to the filing of this brief; Defendants-Appellees do not object.

## STATEMENT OF THE ISSUES

(1) Does the shocks-the-conscience test apply to all substantive-due-process claims based on executive action implementing an official policy—even if the action violated a fundamental right?

(2) Does contravening parents' express instructions by socially transitioning their 13-year-old daughter *in secret* to a different gender identity shock the conscience?

## SUMMARY OF THE ARGUMENT

The full Court should decide this case. The stakes could hardly be higher. The panel majority held that, even if Defendants violated a fundamental right, the Littlejohns couldn't recover damages. On the one hand, in its view, the case law requires all fundamental-rights claims based on executive action to shock the conscience. And on the other, it thought that Defendants' secret social transition of the Littlejohns' daughter didn't do so. In dissent, Judge Tjoflat rightly saw things differently. Even Judge Newsom, who concurred, recognized substantive-due-process precedent on this question is a mess and the high bar for executive action makes no sense.

Both points warrant the full Court's consideration. First, the panel decision added to this Court's confused—and often conflicting—substantive-due-process precedent by applying the shocks-the-conscience test. The Court should clear up that confusion by holding that strict scrutiny protects fundamental rights like the Littlejohns'.

Second, the panel decision erred in holding that Defendants' actions don't shock the conscience. And that error goes beyond mere application. The majority did not consider the historical limits on the executive power at issue, an important part of the test. Given those historical limits, the result is plain. When a school intentionally and covertly contravenes parents' express instructions not to socially transition their child to another gender—a controversial psychosocial intervention—the school's actions shock the conscience.

## ARGUMENT

The full Court should grant the petition and reverse the order dismissing this case. No doubt, this case presents a "precedent-setting" question "of exceptional importance"—two, actually. 11th Cir. R. 40-6. Both call for the full Court to weigh in and clarify that the panel majority was wrong twice over. Because the complaint alleged a fundamental-rights violation, it did not need to separately allege conscience-shocking behavior. Even so, treating a child as a different gender identity behind her parents' backs *does* shock the conscience.

I. **The full Court should explain that fundamental-rights claims need not allege conscience-shocking conduct.**

In this case, a three-judge panel issued four fractured opinions. They reveal deep disagreements about this Court's substantive-due-process precedent, of which *all* future civil-rights plaintiffs will struggle to make sense. The full Court should now settle those disagreements.

3

### A. The fractured panel decision demonstrates the need for clarity on this question.

Start with the majority opinion, one of four. It assumed that the Littlejohns alleged a fundamental-rights violation—for good reason. *Littlejohn v. Sch. Bd. of Leon Cnty.*, 132 F.4th 1232, 1238 (11th Cir. 2025). For over a century, time and again, the Supreme Court has made clear that parents have a fundamental right to "make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality op.); *accord Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 256 (2022); *Meyer v. Nebraska*, 262 U.S. 390, 399–403 (1923).

Yet the majority opinion thought that didn't matter. Because it held the Littlejohns' fundamental-rights claim is based on executive action, the majority also held the claim had to pass the shocks-the-conscience test. *Littlejohn*, 132 F.4th at 1239. In its view, a single footnote in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)—footnote eight—required that holding. *Littlejohn*, 132 F.4th at 1239–42. But as the majority alluded to, decisions from both the Supreme Court and this Court contain statements to the contrary. *See id.* at 1240–41 & n.7 (discussing some of those decisions).

Compounding its error, the panel majority held that Defendants' conduct did not shock the conscience. But that holding rested on minimizing the harm caused by Defendants. The majority emphasized

4

that the Littlejohns' daughter "was not physically harmed," removed "from their custody," or forced "to do anything." *Id.* at 1245. Because of that, it said Defendants did not act "with intent to injure." *Id.*

But it didn't square that with the Littlejohns' alleged constitutional injury. According to the complaint, Defendants contravened their express instructions and socially transitioned their daughter behind their backs. *Id.* at 1236. That's *intentional* conduct allegedly violating the Littlejohns' fundamental rights. *See id.* at 1245 (noting that "reckless or deliberately indifferent" conduct won't "shock the conscience"). The panel majority was wrong to apply the shocks-the-conscience test. But once it did, it should have held that cutting parents out of such an important decision about their own child's very identity and psychosocial care shocks the conscience.

For his part, Judge Newsom recognized that the substantive-due-process doctrine "is anything but clean" when it comes to executive action. *Id.* at 1281 (Newsom, J., concurring). He thought that "the Supreme Court seems (?) to have said" that the shocks-the-conscience test applies to all executive actions. *Id.* Yet Judge Newsom recognized that the case law is "a mess." *Id.* at 1283. He could discern "no clear rule" from the "jurisprudential dumpster fire." *Id.* at 1285. But he thought the best reading was that the test applies to all executive-action challenges. *Id.* Judge Newsom called that a "totally bizarre" regime that "makes *no* sense." *Id.* at 1286. If legislative action violates a

5

fundamental right, then the challenger almost always wins. But if executive action does, the challenger almost always loses because, in his view of the case law, "pretty much *nothing* shocks the conscience." *Id.*

In dissent, Judge Tjoflat took a much different view than the majority opinion or either of the two concurrences. He disagreed that *Lewis* imposed the shocks-the-conscience test as a threshold question for all executive-action claims. *Id.* at 1288 (Tjoflat, J., dissenting). And he explained that other cases describe the test as another way to prove a violation from a fundamental-rights analysis. *Id.* at 1292, 1298. So for Judge Tjoflat, the answer to the "question of great and growing importance" posed by this case was clear. *Id.* at 1308 (citation omitted). The "Constitution still protect[s] parents' fundamental right to direct the upbringing of their children when government actors intrude without their knowledge or consent." *Id.*

### B. The full Court should clarify that its precedent does not support the panel majority's holding.

The case law applying the shocks-the-conscience test is a mess—a mess the en banc Court can and should clean up here. That would help provide civil-rights plaintiffs their day in court and protect parents like the Littlejohns most of all.

Decades ago, the Supreme Court delineated two tests to show a substantive-due-process violation. The Due Process Clause "prevents the government from engaging in conduct that 'shocks the conscience,'

6

*or* interferes with rights 'implicit in the concept of ordered liberty.'" *United States v. Salerno*, 481 U.S. 739, 746 (1987) (emphasis added) (citations omitted). That's why this Court, in *Arnold v. Board of Education of Escambia County*, applied only strict scrutiny to a parental-rights claim based on executive action. 880 F.2d 305, 313 (11th Cir. 1989). It never even mentioned the shocks-the-conscience test, despite *Salerno*'s recent statement. There was no doubt the fundamental-rights inquiry was separate.

About a decade after *Salerno*, the Supreme Court muddied the waters in *Lewis*. In a single footnote, it called the shocks-the-conscience test a "threshold question" in executive-action challenges. 523 U.S. at 847 n.8. But the Court was less clear whether that threshold question applies to fundamental-rights claims. Perhaps that's why this Court continued to frame the tests as two sperate ways to show a substantive-due-process violation. *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1048 (11th Cir. 2002). A violation occurs if executive conduct "'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty.'" *Id.* (citation omitted). Likewise, the lack of clarity in *Lewis* might explain why a plurality thought the same in *Chavez v. Martinez*, 538 U.S. 760 (2003). The plurality there applied both the shocks-the-conscience test and separately the fundamental-rights test to an alleged executive-action violation. *Id.* at 775 (plurality op.).

7

Heightening the confusion about how to apply the shocks-the-conscience test, this Court arguably suggested a different approach in *Maddox v. Stephens*, 727 F.3d 1109 (11th Cir. 2013). There, it seemed to imply that executive action must both violate a fundamental right and shock the conscience. *Id.* at 1121. But that's hardly clear. Later, this Court again articulated the two-tests view in *Waldman v. Conway*, 871 F.3d 1283 (11th Cir. 2017). If "a fundamental liberty interest does not exist," then executive action can still violate substantive due process if it shocks the conscience. *Id.* at 1292.

In short, while the Supreme Court's shocks-the-conscience precedent remains elusive, this Court's conflicting applications of it have deepened confusion about the test. On top of that, the latest iteration of that test, the one applied by the panel majority, directly conflicts with at least another court of appeals. *E.g.*, *Regino v. Staley*, 133 F.4th 951, 960 n.5 (9th Cir. 2025). The result is uncertainty in this Court's case law on an issue of critical significance. If ever there were a case for en banc review, this is it.

II. **Alternatively, the full Court should explain that a secret "social transition" shocks the conscience because it exceeds the traditional scope of executive authority.**

Setting aside the question whether the shocks-the-conscience test *should* apply, the panel decision was still wrong. It should have held that Defendants' actions here shock the conscience.

8

Recall that the panel majority held that covertly contravening parents' express instructions not to socially transition a 13-year-old girl doesn't shock the conscience. *Littlejohn*, 132 F.4th at 1245. In support, the majority contrasted other situations in the case law. For example, Defendants did not permanently blind a student by intentionally using "a metal weight lock" as corporal punishment. *Id.* at 1244. But that takes a narrow and far too contemporary view of the shocks-the-conscience test.

The majority never viewed Defendants' conduct through a historical lens. It never considered whether executive power exercised by school officials traditionally included covertly contravening fit parents' instructions about the care of their child. And it should have.

In *Lewis*, the Supreme Court explained that deciding whether executive action shocks the conscience "may be informed by a history of liberty protection, but it necessarily reflects an understanding of traditional executive behavior, of contemporary practice, and of the standards of blame generally applied to them." 523 U.S. at 847 n.8. And in his concurrence, Justice Kennedy highlighted a similar point. The test is the starting point to determine whether "the objective character of certain conduct is consistent with our traditions, precedents, and historical understanding." *Id.* at 857 (Kennedy, J., concurring). Even for executive action, "objective considerations, including history and precedent, are the controlling principle." *Id.* at 858.

9

So the shocks-the-conscience test *can* consider the history of the relevant liberty interest. And the test *must* consider the traditional scope of executive power. It considers whether the executive action at issue falls within the traditional power of the government.

The panel majority did neither. It never considered the long history protecting parents' ability to "make decisions concerning the care, custody, and control of their children." *Troxel*, 530 U.S. at 66 (plurality op.). Nor did it consider whether the government traditionally has been allowed to supplant fit parents' express instructions regarding the care of their children—or to keep doing so secret from them.

Executive power has never been thought to extend that far. As long as a parent is "fit" (that is, "adequately cares for his or her children"), the government may not "further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Id.* at 68–69. In our society, the "child is not the mere creature of the state." *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 535 (1925).

Indeed, at common law, a school had only such power over a child as a parent might delegate. A father could "delegate part of his parental authority, during his life, to the tutor or schoolmaster, of his child; who is then *in loco parentis*, and has such a portion of the power of the parent committed to his charge." 1 William Blackstone, *Commentaries on the Laws of England* \*453 (10th ed. 1787), http://bit.ly/3leX7za. The authority belongs first to parents because, unlike other adults, nothing

10

"can totally suppress or extinguish" the "insuperable degree of affection" of parents for their children. *Id.* at *447.

A school's authority over a child self-evidently derives from the parents' delegation of their own authority. For a school can only claim authority over a child *after* the parents choose to partner with that school. Exercising delegated authority means a school generally should not contravene parents' express instructions about a child. And it certainly should not hide its treatment of a child from her parents.

In other words, the traditional understanding of executive power in the school context does not extend to overriding fit parents' instructions about the care of their child. Government officials can't do that. And they especially can't secretly do it on something as controversial as socially transitioning a minor to the opposite gender. The power that Defendants assert here lacks any historical analogue. And under *Lewis*, that factors into whether their conduct shocks the conscience. 523 U.S. at 847 n.8; *cf. N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 30 (2022) (requiring the government to "identify a well-established and representative historical *analogue*" under the Second Amendment).

At bottom, it cannot be right that—short of maliciously and permanently injuring a student—next to nothing shocks the conscience. *See Littlejohn*, 132 F.4th at 1245. The Court should clarify en banc that the shocks-the-conscience test does not leave history and tradition at the door. Rather, it factors in the historical limits on executive power.

11

Here, those limits make applying the test easy. Contravening parents' express instructions by treating a 13-year-old girl as a different gender identity behind their backs shocks the conscience. The full Court should grant review to say just that.

## CONCLUSION

This Court should grant the petition for rehearing en banc and reverse the district court's order dismissing the case.

Dated: April 30, 2025                    Respectfully submitted,

                                          */s/ Vincent M. Wagner*
Katherine L. Anderson                     Vincent M. Wagner
ALLIANCE DEFENDING FREEDOM                Daniel J. Grabowski
15100 N. 90th Street                      ALLIANCE DEFENDING FREEDOM
Scottsdale, Arizona 85260                 44180 Riverside Parkway
(480) 444-0020                            Lansdowne, Virginia 20176
kanderson@ADFlegal.org                    (571) 707-4655
                                          vwagner@ADFlegal.org
                                          dgrabowski@ADFlegal.org

*Counsel for* Amicus Curiae

## CERTIFICATE OF COMPLIANCE

This brief complies with the word-count limitation of Fed. R. App. P. 29(a)(5) because, according to the word-count feature of the program used to prepare it and excluding the items listed in Fed. R. App. P. 32(f), it contains 2,599 words and does not exceed 2,600 words.

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.

> */s/ Vincent M. Wagner*
> Vincent M. Wagner
> *Counsel for* Amicus Curiae

## CERTIFICATE OF SERVICE

    I hereby certify that on April 30, 2025, I electronically filed the foregoing brief with the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system. I certify that counsel for all parties in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Vincent M. Wagner*
Vincent M. Wagner
*Counsel for* Amicus Curiae